EXHIBIT 13

**JAMS**

NOTICE TO ALL PARTIES                                April 20, 2015

Re: *McKenzie, Kim v. AT&T Services Inc.*
JAMS Ref. #: 1100075003
Report of Hearing and Scheduling Order #3

Dear Parties:

On April 6, 2015 the hearing on the Claimant's Motion to Extend Time to Complete Discovery occurred as scheduled. The undersigned Arbitrator held the hearing. Timothy McCandless of the Law Offices of Timothy McCandless appeared for the Claimant, Kim McKenzie. Lisa Hamasaki and Jocelyn Chan of the Miller Law Group appeared for the Respondent, AT&T Services Inc. The arbitrator being fully informed, having reviewed the motion, opposition, and response and having considered the oral and written arguments of counsel, the following orders are made regarding the conduct of this hearing:

1. <u>Scheduling Orders #1 and #2.</u> Except as provided hereinafter the orders contained in Scheduling Orders shall remain in effect.
2. <u>Motion to Extend Time to Complete Discovery and Hearing on Dispositive Motion.</u> Claimant filed an electronic request to Extend Time to Complete Discovery and to Have Discovery Motions Heard and/or to Reopen Discovery after New Trial Date. Respondent filed opposition, and the Claimant filed a Response.
   a. The Claimant's motion is denied.
   b. Respondent may file its dispositive motion on or before April 23, 2015.
   c. Claimant shall file opposition on or before May 7, 2015.
   d. Respondent shall file its reply on or before May 14, 2015.
   e. Hearing on the dispositive motion shall occur telephonically on May 21, 2015, unless either party requests an in person hearing. If an in-person hearing is requested the hearing shall occur at 9:00 a.m. in the JAMS San Francisco Offices. If the hearing proceeds telephonically the parties shall appear by calling the JAMS Conference Center, 877-696-5267.
3. <u>Status Conference.</u> A Status Conference shall occur on May 21, 2015, immediately following the hearing on the dispositive motion. The parties shall be prepared to discuss the following:

a. Proposed Arbitration date, duration and location of the arbitration hearing (Sacramento);
b. Preparation of Exhibits and Identification of witnesses;
c. Pre-Arbitration Briefs deadline and format of briefs (courtesy copies by e-mail in word format);
d. Disclosure and Exchange of Expert Witness Reports, and scheduling of Depositions of Experts, or procedure in lieu of Depositions of Experts.
e. Filing of *Motions in Limine*.

So Ordered

Hon. David A. Garcia (Ret.)
Arbitrator

## PROOF OF SERVICE BY EMAIL & U.S. MAIL

Re: McKenzie, Kim vs. AT&T Services Inc.
Reference No. 1100075003

      I, Courtney N. Smith, not a party to the within action, hereby declare that on April 20, 2015 I served the attached SCHEDULING ORDER #3 on the parties in the within action by Email and by depositing true copies thereof enclosed in sealed envelopes with postage thereon fully prepaid, in the United States Mail, at San Francisco, CALIFORNIA, addressed as follows:

Timothy McCandless Esq.
L/O Timothy McCandless
820 Main St.
Martinez, CA  94553
Phone: 925-957-9797
tim@prodefenders.com
    Parties Represented:
     Kim McKenzie

Mr. Jerome Clay
5665 N. Pershing Ave.
Suite B3
Stockton, CA  95207
Phone: 209-603-9852
jclay@g1fs.net
    Parties Represented:
     Kim McKenzie

Lisa C. Hamasaki Esq.
Jocelyn M. Chan Esq.
Miller Law Group
111 Sutter Street
Suite 700
San Francisco, CA  94104
Phone: 415-464-4300
lch@millerlawgroup.com
jchan@millerlawgroup.com
    Parties Represented:
     AT&T Services Inc.

      I declare under penalty of perjury the foregoing to be true and correct. Executed at San Francisco, CALIFORNIA on April 20, 2015.

_____
Courtney N. Smith
Csmith@jamsader.com

EXHIBIT 14

Lisa C. Hamasaki (SBN 197628)
 *lch@millerlawgroup.com*
Jocelyn M. Chan (SBN 267937)
 *jchan@millerlawgroup.com*
MILLER LAW GROUP
111 Sutter St., Suite 700
San Francisco, CA 94104
Tel. 415-464-4300
Fax 415-464-4336

Attorneys for Respondent
PACIFIC BELL TELEPHONE COMPANY
(erroneously named as "AT&T SERVICES, INC.")

**JUDICIAL ARBITRATION AND MEDIATION SERVICES**

**(JAMS)**

| | |
|---|---|
| KIM MCKENZIE, an individual, | JAMS REFERENCE NO. 1100075003 |
| Claimant, | |
| v. | **RESPONDENT PACIFIC BELL TELEPHONE COMPANY'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT** |
| AT&T SERVICES, INC., and DOES 1 through 50, inclusive, | |
| Respondents. | **Date:   May 21, 2015**<br>**Time:   9:00 a.m.** |

MILLER LAW GROUP
A PROFESSIONAL CORPORATION
CALIFORNIA

# TABLE OF CONTENTS

Page

I.      INTRODUCTION ................................................................................................1

II.     STATEMENT OF FACTS ..................................................................................1

        A.      Pacific Bell Has A Demonstrated Commitment To A Workplace Free Of
                Discrimination And Harassment. ...........................................................1

        B.      McKenzie Held The Position Of Manager, Network Services. ...........2

        C.      The Implementation Of MSOC. .............................................................3

        D.      McKenzie Had A History Of Performance Problems. .........................4

        E.      McKenzie Moved To Rick Garcia's Group In Stockton And Committed To
                Improve Her Performance, Unfortunately To No Avail.........................5

        F.      McKenzie Was Placed On Repeated Performance Plans To Help Her
                Succeed, But Her Performance Did Not Improve. ...............................6

        G.      McKenzie Was Terminated For Failure To Successfully Complete The PIP. ...9

        H.      McKenzie Filed Two Charges With The EEOC. ................................10

III.    LEGAL ARGUMENT .......................................................................................11

        A.      McKenzie's Admissions Are Dispositive Of Her Disability, Gender, And Age
                Discrimination Claims. ..........................................................................11

        B.      McKenzie's Wrongful Termination Claim Fails On Similar Grounds. ................14

                1.      McKenzie Did Not Engage In Protected Activity. ...................15

                2.      McKenzie Cannot Establish A Causal Connection. ................17

                3.      McKenzie Also Has No Evidence Of Pretext. .........................18

        C.      McKenzie's Fifth Cause Of Action For Intentional Infliction Of Emotional
                Distress ("IIED") Also Fails As A Matter Of Law. ...............................18

        D.      Like Her Causes Of Action, McKenzie's Claim For Punitive Damages Fails. ...19

IV.     CONCLUSION ................................................................................................20

MILLER LAW GROUP
A PROFESSIONAL CORPORATION
CALIFORNIA

RESPONDENT'S MEMORANDUM OF POINTS AND AUTHORITIES ISO MOTION FOR SUMMARY JUDGMENT OR, IN
THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT - JAMS Reference No.: 1100075003

# TABLE OF AUTHORITIES

Page

**Cases**

*Ankeny v. Lockheed Missiles & Space Co.*
88 Cal. App. 3d 531 (1979) ........................................... 19

*Arteaga v. Brink's, Inc.*
163 Cal. App. 4th 327 (2008) ........................................ 11

*Buscemi v. McDonnell Douglas Corp.*
736 F.2d 1348 (9th Cir. 1984) ....................................... 19

*Chen v. County of Orange*
96 Cal. App. 4th 926 (2002) ......................................... 15

*Cochran v. Cochran*
65 Cal. App. 4th 488 (1996) ......................................... 19

*Cohen v. Fred Meyer, Inc.*
686 F.2d 793 (9th Cir. 1982) ........................................ 15

*Cole v. Fair Oaks Fire Protection Dist.*
43 Cal. 3d 148 (1987) ............................................... 18

*Flait v. N. Am. Watch Corp.*
3 Cal. App. 4th 467 (1992) .......................................... 15

*Fowler v. Varian Assoc., Inc.*
196 Cal. App. 3d 34 (1987) .......................................... 19

*Guz v. Bechtel Nat'l, Inc.*
24 Cal. 4th 317 (2000) ........................................... 12, 13

*Hanson v. Lucky Stores, Inc.*
74 Cal. App. 4th 215 (1999) ......................................... 15

*Heller v. Pillsbury Madison & Sutro*
50 Cal. App. 4th 1367 (1996) ........................................ 19

*Horn v. Cushman & Wakefield Western, Inc.*
72 Cal. App. 4th 798 (1999) ......................................... 13

*Hughes v. Pair*
46 Cal. 4th 1035 (2009) ............................................. 19

*Jennings v. Maralle*
8 Cal. 4th 121 (1994) ............................................... 15

*Jones v. Dept. of Correct. & Rehab.*
152 Cal. App. 4th 1367 (2007) ....................................... 11

MILLER LAW GROUP
A PROFESSIONAL CORPORATION
CALIFORNIA

*King v. United Parcel Serv., Inc.*
  152 Cal. App. 4th 426 (2007) ................................................................. 13

*Loggins v. Kaiser Permanente Int'l.*
  151 Cal. App. 4th 1102 (2007) ............................................................... 18

*McDonnell Douglas Corp. v. Green*
  411 U.S. 792 (1973) .............................................................................. 12

*Miller v. Dept. of Correct.*
  36 Cal. 4th 446 (2005) ........................................................................... 12

*Morgan v. Regents of the University of California*
  88 Cal. App. 4th 52 (2000) ............................................................... 13, 15

*Price v. Mulnomah County*
  132 F. Supp. 2d 1290 (D. Or. 2001) ....................................................... 17

*Shoemaker v. Myers*
  52 Cal. 3d 1 (1990) ............................................................................... 18

*Turner v. Anheuser-Busch, Inc.*
  7 Cal. 4th 1238 (1994) .......................................................................... 14

*Villanueva v. City of Colton*
  160 Cal. App. 4th 1188 (2008) .............................................................. 15

*White v. Ultramar, Inc.*
  21 Cal. 4th 563 (1999) .......................................................................... 20

*Yanowitz v. L'Oreal USA, Inc.*
  36 Cal. 4th 1028 (2005) ............................................................. 12, 16, 18

*Yau v. Santa Margarita Ford, Inc.*
  229 Cal. App. 4th 144 (2014) ................................................................ 18

**Statutes**

California Civil Code § 3294(a) ................................................................ 19

California Civil Code § 3294(b) ................................................................ 20

California Code of Civil Procedure § 335.1 ............................................... 19

California Government Code § 12940 ........................................................ 15

California Labor Code § 3600 *et seq.* ..................................................... 18

MILLER LAW GROUP
A PROFESSIONAL CORPORATION
CALIFORNIA

RESPONDENT'S MEMORANDUM OF POINTS AND AUTHORITIES ISO MOTION FOR SUMMARY JUDGMENT OR, IN
THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT - JAMS Reference No.: 1100075003

## I.   INTRODUCTION

Claimant Kim McKenzie ("McKenzie") a former Manager Network Services for Respondent Pacific Bell Telephone Company ("Pacific Bell" or the "Company") was dismissed for poor performance.  She was given every opportunity to improve.  The undisputed facts – including McKenzie's sworn deposition testimony – establish that she was coached extensively on her performance deficiencies, was placed on formalized and progressive performance plans spanning more than a year, was notified that her employment would be terminated if she failed to improve her performance, and she was *never* told that she successfully completed the plans or that her performance improved to satisfactory levels.  In fact, McKenzie admits to performance deficiencies, acknowledges the occurrence and substance of extensive documented coaching sessions, and admits that the explanation given to her for her termination was poor performance and failure to successfully complete her performance plan.  She even goes a step further and admits that no one at Pacific Bell ever said *or did* anything to her that suggested bias based on disability or gender, and that she has no evidence that her termination had anything to do with her age.  Nonetheless, McKenzie is now choosing to turn a blind eye to her own performance shortcomings and alleging that her employment was unlawfully terminated because of disability, gender, age, or because of an incident involving a subordinate's bucket truck that occurred just days before her termination.  Her claims are nonsensical and belied by her own testimony.

Indeed, the undisputed facts show the frivolous nature of McKenzie's claims and expose her pending arbitration as a blatant refusal to take responsibility for her own performance shortcomings and a transparent attempt to shift blame.  Unfortunately, McKenzie has no one to blame for her termination but herself.  As such, all of her claims fail as a matter of law and her arbitration should be dismissed in its entirety.

## II.   STATEMENT OF FACTS

**A.   Pacific Bell Has A Demonstrated Commitment To A Workplace Free Of Discrimination And Harassment.**

At all times relevant to this arbitration, Pacific Bell had a comprehensive Code of

MILLER LAW GROUP
A PROFESSIONAL CORPORATION
CALIFORNIA

Business Conduct ("COBC") and an Equal Employment Opportunity and Affirmative Action ("EEO") Policy that prohibited discrimination and harassment on the basis of all protected categories, including disability, gender, and age.   (Tr.[1] 115:25-116:24, 117:21-118:18, 110:17-20, 111:12-112:7, Exs. 7, 8; Declaration of Brigitte Timmons ("Timmons Dec.") ¶ 5-7, Exs. C, D)   These policies contain reporting requirements and describe avenues by which employees are expected and required to report perceived violations.   (*Id.*)   McKenzie received regular training on these policies, had access to them on the Company's intranet, and admitted to knowing of the policies at all times during her employment.   (Tr. 111:21-112:3, 115:25-116:7, 118:25-119:7)   Nonetheless, she never reported any purported discriminatory or harassing conduct to the Company's established hotline. (Tr. 114:24-115:4, 120:7-10; Declaration of Hilda Ramirez ("Ramirez Dec.") ¶ 6)

## B.   McKenzie Held The Position Of Manager, Network Services.

McKenzie was first hired as a 411 operator in 1991.  (Tr. 36:13-20)  Over the years, she held various job titles and worked at various geographic locations.   Around 2000, McKenzie was promoted to a first-level management position as an RMAC manager.  (Tr. 41:13-17; Timmons Dec. ¶ 10)  In January 2002, McKenzie moved laterally into the position of Manager Network Services ("MNS") (also referred to as a "field technician supervisor"), where she remained until her termination from employment in 2012.  (Tr. 43:12-45:25, 82:2-82:3; Timmons Dec. ¶ 10)  Specifically, McKenzie worked as an MNS in Oakdale under Shane Spencer; in Modesto under Spencer, Warren Anderson, and Philana Grayson; and in February 2011, she transferred to Stockton where she reported to Rick Garcia.  (Tr. 59:12-21, 60:25-61:17; Declaration of Rick Garcia ("Garcia Dec.") ¶ 6; Declaration of Philana Grayson ("Grayson Dec.") ¶ 7)

As an MNS, McKenzie was responsible for overseeing approximately 13 to 20 service technicians.  (Tr. 44:3-44:6, 56:14-17)  Among other things, her job duties included:

◘     Ensuring that her service technicians adhered to all Company policies,

---

[1] "Tr." refers to the deposition transcript of Claimant Kim McKenzie, attached to the Declaration of Lisa Hamasaki ("Hamasaki Dec.").

MILLER LAW GROUP
A PROFESSIONAL CORPORATION
CALIFORNIA

including safety policies;
- ❑ Preparing and delivering her technicians' performance reviews;
- ❑ Monitoring her technicians' attendance;
- ❑ Ensuring that her technicians met Company performance metrics; and
- ❑ Managing her technicians' performance, coaching them and placing them on performance plans if necessary.

(Tr. 43:20-44:2, 53:11-54:5)  McKenzie was also required to visit her technicians in the field to perform safety and quality observations ("Safeties" and "Qualities"), and to record notes from the observations into the Company's documentation system, WebAdd.  (Garcia Dec. ¶ 7)  As the evidence reflects, McKenzie failed to perform up to expectations.

**C.    The Implementation Of MSOC.**

Service technicians – including those who reported to McKenzie – were and are measured against Company performance metrics, known as "KMI" (Key Measurement Indicators), which measure efficiency, utilization and productivity.  (Garcia Dec. ¶ 7)  Whether a technician performs up to Company expectations vis-à-vis these metrics impacts his performance evaluations as well as those of his managers – including MNSs like McKenzie and Area Managers like Garcia.  (Tr. 69:9-13)  Over the course of the 10 years that McKenzie was an MNS, the responsibilities and expectations of her role evolved with respect to performance metrics and management of technicians.  (Tr. 55:12-16)

Of particular note, around 2009, the Company began rolling out a new tool – the Methods Systems Operating Control or "MSOC" – to manage and record the performance and development of employees.  (Garcia Dec. ¶ 8)  MSOC applied to all MNSs and to the technicians they supervised.  (Tr. 66:25-67:13)  To assist in the rollout process of MSOC, all MNSs – including McKenzie – were trained on how to track the performance of their technicians based on KMI, and were expected to review and analyze KMI performance results on a daily basis to identify and address potential performance issues with their technicians.  (Tr. 79:22-81:12; Garcia Dec. ¶ 9)  MNSs were also required to use the Demonstrated Performance Capability ("DPC") checklist to understand the skill level of their employees.  (Garcia Dec. ¶ 9)  If performance problems were identified, MNSs were required to utilize MSOC to place technicians on individual action plans ("IAPs") and/or performance improvement plans ("PIPs").  (Garcia Dec. ¶ 9)  The rollout of MSOC meant that McKenzie,

MILLER LAW GROUP
A PROFESSIONAL CORPORATION
CALIFORNIA

3

like her peers, was required to spend more time on the performance management of her technicians.  (Tr. 63:15-64:16, 71:3-10)

In addition to the performance metrics aspect of MSOC, around 2011, the Company began to focus on and enforce managers' documentation of performance-related discussions in WebAdd.  (Tr. 382:21-383:3; Garcia Dec. ¶ 10)  Indeed, McKenzie readily admits to this change, noting that the Company began enforcing MNSs' obligations to manage and document technician performance while she was working under Garcia in 2011.  (Tr. 87:25-88:13; *see also* Tr. 104:14-105:19)  Thus, any time an MNS held a performance-related discussion with a technician, notes from that conversation had to be recorded in WebAdd.  (Garcia Dec. ¶ 10)  Accurate documentation was necessary to ensure that technicians were being provided sufficient coaching to assist in the improvement of performance issues and to properly progress technicians to the next step of discipline, if appropriate.  (Garcia Dec. ¶ 10)  McKenzie, like her peers, was held accountable for accurately complying with these performance management documentation requirements.  (*Id.*)

## D.    McKenzie Had A History Of Performance Problems.

As a first level manager, McKenzie had frequent interaction with her technicians.[2]  However, management perceived McKenzie as struggling with the administrative aspects of MSOC, having "tough" conversations with her technicians, and with holding her technicians accountable for their performance.[3]  By way of example:

◘    In McKenzie's 2008 review, Grayson observed that McKenzie "seemed to

---

[2] McKenzie received complaints regarding her professionalism and management style.  For example, in 2006, a technician complained that McKenzie discriminated against him on the basis of race by unfairly suspending him.  (Tr. 276:12-277:1, 278:20-23, Ex. 24; Ramirez Dec. ¶ 5, Ex. A)  In 2007, another technician complained that McKenzie engaged in unprofessional conduct by stating that he "needed a kick in the ass."  (Tr. 279:14-18, 280:6-19, Ex. 25; Ramirez Dec. ¶ 5, Ex. B)

[3] McKenzie also had difficulty handling feedback from her supervisors.  For example, Grayson noted that "Kim also needs to learn how to accept constructive criticism.  Kim perceives critism [*sic*] as either blame or putting her down and our discussions sometimes come across as argumentative."  (Tr. 150:6-151:4, Ex. 16, p. 3)  In addition, in 2010, Grayson stated that "[o]ver the last year, Kim repeatedly did not accept accountability for her own decisions, actions, or results."  (Tr. 183:9-184:7, Ex. 20, p. 4)

MILLER LAW GROUP
A PROFESSIONAL CORPORATION
CALIFORNIA

struggle with the administration, documentation and follow through processes that relates [*sic*] to the MSOC process." (Tr. 150:6-151:4, Ex. 16, p. 3)

◘   In 2009, Grayson noted that "Kim was challenged the 1st of the year with staying current for CP09 as well as MSOC initiatives and running a combo crew." (Tr. 164:8-165:3, Ex. 17, p. 3) Grayson also indicated that "Kim is very protective of her employees, so much to the tune of when it comes to holding them accountable, she tends to get a little flustered. Kim can get better at holding employees accountable." (*Id.*)

◘   In 2010, Grayson noted that "Kim often deviates from department and company protocol in her actions," that she "performed at a below average level in the areas of coaching and developing, and giving feedback including performance management as it relates to MSOC forms (MPD's) and attendance documentation," and that McKenzie "did not handle other basic managerial functions well. She did not hold employees accountable and she did not closely monitor employee absenteeism, tardiness, time off request [*sic*] or payroll issues…." (Tr. 183:9-184:7, Ex. 20, p. 4)[4]

McKenzie's 2010 End of Year Rating was "Does Not Meet Goals." (*Id.*)

**E.   McKenzie Moved To Rick Garcia's Group In Stockton And Committed To Improve Her Performance, Unfortunately To No Avail.**

Around February 2011, McKenzie transferred from Modesto to Rick Garcia's group in Stockton. (Tr. 61:13-17) The working relationship between McKenzie and Garcia started off smoothly, but Garcia soon realized that McKenzie's performance did not meet Company expectations.[5] (Tr. 170:14-24; Garcia Dec. ¶ 11) Garcia provided McKenzie with 2011 midyear and end-of-year reviews reflecting his assessments. (Tr. 386:7-11, 387:16-388:4, Ex. 37) McKenzie agreed with Garcia's 2011 midyear comments, and her own comments [Tr. 390:21-23] in her 2011 performance evaluation acknowledged performance deficiencies in the same areas that management identified – *i.e.*, improving her KMI metrics, performance managing her technicians, and holding her technicians accountable. (Tr. 386:7-11, Ex. 37)

---

[4] Because McKenzie transferred from Modesto to Stockton in early 2011, before the 2010 performance review was scheduled to be delivered, Garcia, her new Area Manager, held the 2010 performance review meeting, even though Grayson prepared the review. (Tr. 184:1-7)

[5] McKenzie admits that her "results went down" under MSOC and that her numbers "got worse" when the Company started to enforce management responsibilities for documentation and performance management. (Tr. 104:14-22, 105:9-19)

**MILLER LAW GROUP**
A PROFESSIONAL CORPORATION
CALIFORNIA

Her comments also acknowledged that Garcia was "very good" and was working to help her improve.  She wrote:

> I will strive to improve on my overall results/rank & rating.  My focus for the remainder of the year is to fix what is broken.  My revisits and customer rules are two of the metrics that will be focused on immediately.  …  Another goal of mine by the end of the year is to get my technicians off of the plan they may be on (PIP, IAP, etc.) and I believe by being more visible in the field and holding the technicians more accountable for their results that this can happen. … I came from a [*sic*] Area Manager that didn't work with her first level managers in developing and coaching them to be successful.  I now have a [*sic*] Area Manager that holds ALL of his managers accountable and is very good at developing his managers to be successful.

(Tr. 386:7-11, 387:16-388:4, 392:5-397:6, Ex. 37, pp. 4-5; *see also* Tr. 387:11-15)   Despite Garcia's best efforts to manage McKenzie "to be successful," she did not improve.

## F.   McKenzie Was Placed On Repeated Performance Plans To Help Her Succeed, But Her Performance Did Not Improve.

After a few months of assessing McKenzie's job performance, Garcia decided to place McKenzie on an Action Plan to help her improve.  (Tr. 102:5-15, 376:13-22, Ex. 34)  The Action Plan was initiated on July 14, 2011 and laid out specific steps to help McKenzie meet Company expectations as a first level manager, including completing ride days and DPCs, completing the required Safeties and Qualities, ensuring that all of her technicians were disciplined appropriately, and documenting performance discussions in WebAdd.   (*Id.*) Garcia met with McKenzie approximately every two weeks to assess her adherence to the Action Plan steps.[6]  (Tr. 377:19-378:6, 378:13-22)  Unfortunately, McKenzie's performance did not improve sufficiently and she did not successfully complete the plan.  As a result, she was progressed to the next level.  (Tr. 378:10-380:13; Garcia Dec. ¶ 15)

On February 21, 2012, Garcia placed McKenzie on a pre-Performance Improvement Plan ("Pre-PIP") based on her failure to successfully complete the Action Plan and the fact

---

[6] With regard to the Action Plan, Garcia had 10 documented meetings including on: July 14 and 21, August 31, September 19, October 20 and 27, November 3 and 11, and December 1 and 14, 2011.  (Tr. 376:13-22, 378:1-6, 378:13-378:22, Ex. 34)

MILLER LAW GROUP
A PROFESSIONAL CORPORATION
CALIFORNIA

1   that she was still not meeting Company expectations.[7]  (Tr. 403:24-25, 404:5-21, 405:12-15,

2   Ex. 39)  Garcia met with McKenzie and reviewed the action steps that were required for her

3   to successfully complete the Pre-PIP, including completing the minimum number of IAPs,

4   PIPs, DPCs, Safeties and Qualities, and McKenzie understood that if she did not

5   successfully complete the Pre-PIP, she would be progressed to a formal PIP.  (Tr. 404:5-21,

6   405:24-406:13, 406:17-23, Ex. 39, p. 1)  During the 30-day Pre-PIP, McKenzie met with

7   Garcia on numerous occasions to discuss how she was doing against the requirements of

8   the Pre-PIP, including on February 21 and 29, and March 7, 14 and 21, 2012.  (Tr. 409:3-

9   409:11, 410:11-413:13)  A note taker was present at and documented each of these

10  meetings, and McKenzie confirmed in deposition that the meeting notes are accurate

11  reflections of the discussions held.  (Tr. 409:3-409:18, 410:11-413:13)  As reflected in the

12  notes, Garcia indicated that McKenzie continued to fall short of Company expectations.  (Tr.

13  404:5-21, Ex. 39)

14       On April 19, 2012, although McKenzie still was performing below expectations, Garcia

15  remained hopeful that her performance would improve.  To that end, rather than progressing

16  her to a PIP, he decided to place her on a second Pre-PIP.  (Tr. 414:11-415:13, Ex. 40;

17  Garcia Dec. ¶ 19)  As before, the Pre-PIP noted that if McKenzie's performance remained

18  below expectations, she would be placed on a PIP.  (*Id.*)  Garcia met with McKenzie on April

19  19 and 26, and May 10, 2012 regarding the second Pre-PIP.  (Tr. 420:2-421:9, 423:5-426:15,

20

---

21  [7] Around this same time period, McKenzie was investigated for falsification of Company
    documents, which is a violation of the COBC. (Tr. 286:9-287:14, 293:22-294:4)   More
22  specifically, McKenzie stated in the WebAdd documentation that a union steward was
    present during a disciplinary meeting she held with one of her technicians when, in fact, no
23  union steward had participated in the meeting. (Tr. 296:17-296:22)  Due to this type of
    conduct, the documentation for her technicians' performance discipline was inaccurate or
24  incomplete and, therefore, technicians with performance issues could not be progressed in
    steps of discipline appropriately. (Garcia Dec. ¶ 17)  Asset Protection conducted an
25  investigation regarding this incident and interviewed five of McKenzie's technicians. (Tr.
    301:13-301:23; Declaration of Robert Arno ¶ 5)  The investigator, Robert Arno, concluded
26  that McKenzie input information into WebAdd that was false and inaccurate and, as a result,
    Garcia placed McKenzie on a warning of dismissal for any future COBC violation. (Tr.
27  295:22-296:16, 302:7-302:25, Ex. 29; Garcia Dec. ¶ 18, Ex. G)

28

Exs. 42-44) Again, a note taker was present at and documented the meetings, and again McKenzie confirmed that the meeting notes are accurate reflections of the discussions held. (*Id.*) During those meetings, Garcia observed that McKenzie continued to fail to meet expectations regarding IAPs, PIPs, DPCs, documenting technicians' discipline, and conducting required Safeties and Qualities during the second 30-day Pre-PIP period. (Tr. 414:11-415:8, Ex. 40)

On June 7, 2012, McKenzie was progressed to a formal PIP because she still was not meeting Company performance expectations. (Tr. 426:24-427:14, Ex. 45) The PIP stated that McKenzie's performance was below expectations with regard to performing a DPC ride weekly and entering the information into WebAdd, performing IAPs for her technicians that had performance issues and entering the documentation into WebAdd, performing her Safeties and Qualities, and completing all required training. (*Id.*) The PIP set forth objectives, action steps, target dates, and ways to measure McKenzie's progress. (*Id.*) It also stated that "[t]ermination can occur at any time during the plan if performance continues to decline or adequate progress is not being made." (*Id.,* p. 5)

Garcia met with McKenzie on June 7, 14, 21 and 27, July 12, and August 2, 2012 regarding the PIP. (Tr. 429:18-431:14, 433:10-435:21, Exs. 46-49, 51) As before, a note taker was present at and documented these meetings, and McKenzie again confirmed in deposition that the meeting notes are accurate reflections of the discussions. (*Id.*) As of June 27, 2012, Garcia determined that McKenzie still was not meeting expectations, had not performed the required performance discussions or documentation for her technicians, and had not completed the required Safeties and Qualities.[8] (Tr. 426:24-427:14, Ex. 45, p. 8) Garcia met with McKenzie on August 2, 2012, explained that she was still struggling with performance managing her technicians pursuant to Company standards, and informed

---

[8] McKenzie also failed to comply with Garcia's requests regarding the PIP. For example, during the June 27, 2012 meeting, Garcia told McKenzie to prepare and bring an idling action plan to the next meeting. (Tr. 438:3-439:8, Ex. 50) McKenzie, however, failed to bring such a plan with her to the next meeting on July 12, 2012, and did not email it to Garcia until the day after that meeting. (*Id.*)

MILLER LAW GROUP
A PROFESSIONAL CORPORATION
CALIFORNIA

1    McKenzie that even within the bottom 20% of managers, McKenzie was "one of the bottom

2    managers."  (Tr. 439:9-440:5, Ex. 51)  Garcia told McKenzie that he would be meeting with

3    Brigitte Timmons, the HR Employee Relations Manager ("ERM"), and would then provide

4    McKenzie feedback.  (*Id.*)  At the conclusion of the August 2 meeting, and based on his belief

5    that all efforts to improve McKenzie's performance had proven futile, Garcia determined that

6    he would recommend termination of McKenzie's employment.  (Garcia Dec. ¶ 24)

7    **G.    McKenzie Was Terminated For Failure To Successfully Complete The PIP.**

8            Later on August 2, 2012, Garcia, Timmons, and Roger Odom, a Lead HR Specialist

9    who also was considered a subject matter expert ("SME"), discussed McKenzie's ongoing

10   performance problems and the status of McKenzie's PIP.  (Timmons Dec. ¶ 16, Ex. F; Garcia

11   Dec. ¶ 25)  Garcia informed Timmons and Odom that McKenzie was still "struggling" and not

12   placing her technicians on the appropriate steps of discipline.  (Garcia Dec. ¶ 25; Timmons

13   Dec. ¶ 16, Ex. F)  His thought at the time was to proceed with terminating McKenzie's

14   employment.  (*Id.* at ¶ 25)  HR, however, requested that Garcia send them copies of

15   McKenzie's 2011 end-of-year review and 2012 mid-year review before conducting a more

16   thorough discussion regarding potential termination.  (*Id.*)  On August 15, 2012, Timmons

17   followed up with Garcia about McKenzie's reviews, stating that once received, she would set

18   up a call to discuss possible termination of McKenzie.  (Timmons Dec. ¶ 17, Ex. G)  Garcia

19   sent the requested information to HR on September 4, 2012.  (Garcia Dec. ¶ 27)  On

20   September 16, 2012, Timmons scheduled a conference call for September 19, 2012 to

21   discuss possible termination of McKenzie's employment based on her failure to satisfactorily

22   complete the PIP.  (Timmons Dec. ¶ 19, Ex. F)  During the call, a final decision was made

23   that due to McKenzie's continued failure to improve her performance, HR would support the

24   termination of her employment.  (Timmons Dec. ¶ 19, Ex. F)

25           On September 20, 2012, after the termination decision had been made, Garcia

26   requested that McKenzie reassign a bucket truck from one of McKenzie's technicians, Ricky

27   Purviance, who was a member of the Communications Workers of America ("CWA") union

28   and who had been out on disability leave, to another technician to maximize the utility and

MILLER LAW GROUP
A PROFESSIONAL CORPORATION
CALIFORNIA

9

1  efficiency of the Company's tools.  (Tr. 221:3-222:4, 222:20-224:11, 454:10-25)  McKenzie

2  initially refused because, according to her, she thought it was "wrong" and "unfair" and that

3  Garcia's request was based on the fact that he "didn't like" Purviance.  Ultimately, however,

4  she did reassign the bucket truck. (Tr. 221:16-222:4, 224:22-225:5, 228:6-229:5)

5          Shortly thereafter, McKenzie's termination was finalized.  On September 20, 2012,

6  Timmons sent Garcia a talk piece for conducting the termination meeting.  (Timmons Dec. ¶

7  20, Ex. I)  Garcia held the termination meeting with McKenzie on September 25, 2012 and

8  informed her that she was being terminated for performance issues and because she had not

9  successfully completed her PIP.  (Tr. 201:21-202:8, 207:17-208:1, 210:9-19, 442:16-20)  A

10  note taker was present during the termination meeting, and – as admitted by McKenzie – the

11  notes accurately reflect the discussion between Garcia and McKenzie.  (Tr. 442:21-443:19,

12  443:20-444:17, Exs. 53-54)  In deposition, McKenzie also acknowledged that the only reason

13  given for her termination from employment was that she had "performance issues" and that

14  she failed to complete the PIP.  (Tr. 207:10-208:1, 210:9-19)  She also admitted that no one

15  ever told her that she had successfully completed the PIP.  (Tr. 208:2-9, 441:20-442:20)

## H.  McKenzie Filed Two Charges With The EEOC.

17          On January 3, 2013, McKenzie filed her first charge of discrimination with the United

18  States Equal Employment Commission ("EEOC").  (Tr. 446:2-20, Ex. 55)  In that charge,

19  McKenzie alleged discrimination based on: (1) sex; (2) retaliation; (3) age; and (4) "other"

20  (violence in the workplace), all arising from her September 25, 2012 termination.  (*Id.*)  The

21  EEOC conducted an investigation finding that "[b]ased upon its investigation, the EEOC is

22  unable to conclude that the information obtained establishes violations of the statutes" and

23  issued McKenzie a Notice of Right to Sue on December 27, 2013.[9]  (Tr. 463:9-464:16, Ex.

24  58; Hamasaki Dec. ¶ 5, Ex. C)  On June 7, 2013, while the first charge was still pending,

25  McKenzie filed a second, largely identical, EEOC charge, this time alleging discrimination

26  _____

27  [9] The California Department of Fair Employment and Housing ("DFEH") also issued a Notice
   of Right to Sue on the first charge, which had been filed concurrently, on January 23, 2013.

28  (Tr. 460:20-461:8, Ex. 57)

RESPONDENT'S MEMORANDUM OF POINTS AND AUTHORITIES ISO MOTION FOR SUMMARY JUDGMENT OR, IN
THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT – JAMS Reference No.: 1100075003

MILLER LAW GROUP
A PROFESSIONAL CORPORATION
CALIFORNIA

1   based on: (1) sex; (2) retaliation; and (3) age, again arising from her September 25, 2012

2   termination.  (Tr. 456:18-457:6, 459:10-16, Ex. 56)  A Notice of Right to Sue on McKenzie's

3   second EEOC charge was issued on February 3, 2015.  (Hamasaki Dec. ¶ 6, Ex. D)

4          On May 23, 2014, McKenzie filed her Notice of Claim with JAMS, initiating the instant

5   action.[10]  (*See* Hamasaki Dec. ¶ 3, Ex. A)  Her Notice of Claim asserts five causes of action:

6   (1) wrongful termination in violation of public policy, (2) California Fair Employment and

7   Housing Act ("FEHA") disability discrimination, (3) FEHA gender discrimination, (4) FEHA

8   age discrimination, and (5) intentional infliction of emotional distress.

## III.   LEGAL ARGUMENT

### A.   McKenzie's Admissions Are Dispositive Of Her Disability, Gender, And Age Discrimination Claims.

12          To establish a *prima facie* case of discrimination under the FEHA, McKenzie must

13   show that: (1) she was a member of a protected class; (2) she was qualified for the position;

14   (3) she suffered an adverse employment action; and (4) there were circumstances

15   suggesting that the employer acted with an unlawful motive – *i.e.*, because of her alleged

16   disability, gender or age.  *See Jones v. Dept. of Correct. & Rehab.*, 152 Cal. App. 4th 1367,

17   1379 (2007); *Arteaga v. Brink's, Inc.*, 163 Cal. App. 4th 327, 342-45 (2008).  McKenzie

18   cannot satisfy even this initial burden as she has admitted to having *no* evidence that any

19   action was taken against her on the basis of disability, gender or age.  **Her sworn**

20   **deposition testimony is dispositive of these claims.**

21          When asked in deposition why she believes her employment was terminated,

22   McKenzie never identified disability, gender or age.  (Tr. 218:17-219:9)  Further, she

23   unequivocally admitted that:

24   ◻          No one at Pacific Bell ever said *or did* anything to her that suggested bias

25              against her based on her disability (if any), or anything that led her to believe

26   [10] Just recently, and notwithstanding this pending action in JAMS, McKenzie filed and served
     a lawsuit in San Joaquin Superior Court, Case No. 39-2015-00323837, based on the same
27   operative set of facts and against the same party.  (Hamasaki Dec. ¶ 7, Ex. E)  McKenzie
     also is represented by the same counsel.

28

MILLER LAW GROUP
A PROFESSIONAL CORPORATION
CALIFORNIA

that her termination was based on her disability (if any).  (Tr. 122:21-123:9, 331:20-332:2, 332:16-19, 333:6-9, 505:17-506:1)

◘    No one at Pacific Bell ever said *or did* anything to her that suggested bias against her based on her gender, or anything that led her to believe that her termination was based on her gender.  (Tr. 330:15-18, 331:16-19, 332:12-15, 333:2-5, 505:15-22)

◘    Her age did not play any role in any personnel decision regarding her employment with Pacific Bell.  (Tr. 330:11-14, 330:19-331:15, 332:3-6, 332:20-333:1, 506:2-9, 507:1-509:24)[11]

Moreover, when asked about her contentions surrounding the termination of her employment, McKenzie testified to her belief that the *only* reason for her termination was because she refused to take away a bucket truck from one of her technicians.  (Tr. 217:20-218:21)  Given these admissions, McKenzie cannot set forth even a *prima facie* claim of disability, gender, or age discrimination and her Second, Third and Fourth Causes of Action must be dismissed on this basis alone.[12]

However, even if McKenzie could make out a *prima facie* case (she cannot), her claims would still fail because Pacific Bell articulated a legitimate, non-discriminatory reason for McKenzie's termination – her poor performance and failed PIP – and McKenzie has no evidence of pretext.  *See Yanowitz v. L'Oreal USA, Inc.*, 36 Cal. 4th 1028, 1042 (2005); *Guz v. Bechtel Nat'l, Inc.*, 24 Cal. 4th 317, 354-55 (2000); *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04 (1973).  The undisputed facts are clear in this regard.

Specifically, in the nineteen months that McKenzie worked in Stockton under Garcia,

[11] Although McKenzie does allege that Garcia – who is older than McKenzie –  made several comments that she perceived as age-based, she acknowledges having no evidence that age played any role in any personnel decisions Garcia made.  (Tr. 29:20-21, 509:21-24; Garcia Dec. ¶ 34)  Further, the "probably four" comments she alleges he made to her which consisted of comments like "How many years you got?" are not sufficient to state a claim. (Tr. 507:11-24)

[12] To the extent that McKenzie's Second, Third and Fourth Causes of Action purport to allege harassment on the basis of disability, gender and/or age, these same admissions are dispositive.  *See Miller v. Dept. of Correct.*, 36 Cal. 4th 446, 462 (2005) ("an employee claiming harassment based upon a hostile work environment must demonstrate that the conduct complained of was severe enough or sufficiently pervasive to alter the conditions of employment and create a work environment that qualifies as hostile or abusive to employees because of their [protected characteristic].").

MILLER LAW GROUP
A PROFESSIONAL CORPORATION
CALIFORNIA

she was placed on one Action Plan, two Pre-PIPs, and one PIP – all for the same issues: completing DPCs, Safeties and Qualities, holding performance discussions with technicians, and documenting the discussions in WebAdd – and she repeatedly failed to meet the expectations set forth in those plans.  (*See supra* at § II.F)  Furthermore, McKenzie admits that Garcia met with her regularly – at least 24 times – during the course of the four plans to go over the objectives and help her improve.  (*Id.*)  Despite all of this, McKenzie's performance remained subpar and stagnant.  Even after more than a year of focusing on the same goals and expectations, she still failed to complete the requisite Safeties and Qualities, failed to complete the DPCs, failed to hold the required performance discussions with her technicians, and failed to record discussions properly in WebAdd – all tasks that were required of all MNSs.  (*Id.*)  Although, McKenzie admitted in 2011 that she needed to "fix what was broken", she indisputably failed.  (*See* Tr. 386:7-11, Ex. 37)

The law is clear that where, as here, an employer presents evidence of a non-discriminatory reason for its actions, "the presumption of discrimination disappears" and the burden switches to the plaintiff to show that "the employer's proffered reasons [are] pretexts for discrimination."  *Guz*, 24 Cal. 4th at 356.  As explained by the Court of Appeal in *Morgan v. Regents of the University of California*:

> An employee in this situation can not [*sic*] simply show the employer's decision was wrong, mistaken, or unwise.  Rather, the employee must demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder *could* rationally find them unworthy of credence, and hence infer that the employer did not act for the [… asserted] non-discriminatory reasons.

88 Cal. App. 4th 52, 75 (2000) (internal quotations and citations omitted) (emphasis in original).  Not only must the plaintiff's evidence be "specific" and "substantial" in nature, but it also "must relate to the motivation of the decision makers to prove, by nonspeculative evidence, an actual causal link between prohibited motivation and termination."  *King v. United Parcel Serv., Inc.*, 152 Cal. App. 4th 426, 433-34 (2007); *Horn v. Cushman & Wakefield Western, Inc.,* 72 Cal. App. 4th 798, 807, 817 (1999) (plaintiff must have "specific, substantial evidence" that employer's non-discriminatory reason for termination was

MILLER LAW GROUP
A PROFESSIONAL CORPORATION
CALIFORNIA

1  pretextual).  McKenzie admitted in deposition that she has no evidence of pretext, much less

2  specific and substantial evidence required by the FEHA.  Her Second, Third and Fourth

3  Causes of Action fail for this reason as well.[13]

4  **B.    McKenzie's Wrongful Termination Claim Fails On Similar Grounds.**

5         In her First Cause of Action for Wrongful Termination in Violation of Public Policy,

6  McKenzie alleges that her employment was terminated based on "disability discrimination,

7  gender discrimination, retaliation, harassment, and unlawful labor practices." (Notice of

8  Claim, ¶ 19).  Each of these allegations is utterly without merit.  In addition to the deposition

9  admissions referenced above, which foreclose any possible claim for wrongful termination

10  based on disability, gender, or harassment [*see supra* at § III.A], McKenzie's testimony

11  makes clear that her claim for wrongful termination boils down to an unsupported allegation

12  that she was terminated in retaliation for the "bucket truck incident" (*i.e.*, initially refusing to

13  reassign Purviance's bucket truck).[14]  McKenzie's Notice of Claim, however, does not set

14  forth what statute or constitutional provision she alleges was violated by what she now

15  seemingly claims is retaliation.  Because a wrongful termination claim must allege violation of

16  a statute, and based on the other "violation of FEHA" allegations made in the Notice of Claim,

17  we assume for purposes of this motion that McKenzie alleges retaliation in violation of the

18  FEHA.  *See Turner v. Anheuser-Busch, Inc.*, 7 Cal. 4th 1238, 1256-57 (1994) (to state a

19  claim, plaintiff must show that his termination "violated a policy that is (1) fundamental, (2)

20  beneficial for the public, and (3) embodied in a statute or constitutional provision.").[15]  In light

21  ─────────────────

22  [13]  McKenzie's disability claim also fails because she failed to exhaust administrative
   remedies.  She did not check the box for "disability" and failed to mention any purported
23  disability in either of her EEOC charges.  (Tr. 446:2-20, 450:9-14, 456:18-457:6, 457:21-
   458:10, Exs. 55-56)

24  [14]  To the extent McKenzie alleges that Grayson retaliated against her, such claim also fails.
   For one thing, any conduct by Grayson is time barred because it occurred – if at all – prior to
25  February 2011.  (*See* Tr. 386:7-11, 387:16-389:5, 451:1-453:9, Ex. 37; *see also* fn. 16, *infra*).
   For another, there is no evidence that Grayson was involved in any way in the decision to
26  terminate McKenzie's employment.  (*See* Grayson Dec. ¶ 8)

27  [15]  Any other conceivable allegations of retaliation would also fail because McKenzie has not
   identified any statutory or constitutional policy implicated by her discharge, and violation of
28  internal policies or provisions does not give rise to a wrongful termination claim.  *Id.*

MILLER LAW GROUP
A PROFESSIONAL CORPORATION
CALIFORNIA

of this, McKenzie's wrongful termination claim fails for the reasons set forth above, as well as for all the reasons a FEHA retaliation claim would fail.  *See Hanson v. Lucky Stores, Inc.,* 74 Cal. App. 4th 215, 229 (1999) (because Plaintiff's underlying FEHA claim fails, his claim for wrongful termination must also fail); *Jennings v. Maralle*, 8 Cal. 4th 121, 136 (1994) (holding that when an employer is not subject to liability under the FEHA, it is not subject to tortious discharge liability premised on the FEHA).

To make out a *prima facie* case for retaliation under the FEHA, McKenzie must demonstrate that: (1) she engaged in protected activity; (2) she was thereafter subjected by her employer to an adverse employment action; and (3) there is a causal connection between the protected activity and the adverse employment action.  *Cohen v. Fred Meyer, Inc.*, 686 F.2d 793, 796 (9th Cir. 1982); *Flait v. N. Am. Watch Corp.*, 3 Cal. App. 4th 467, 476 (1992); *Morgan*, 88 Cal. App. 4th at 69.  McKenzie cannot meet this burden as she cannot satisfy either the first or third prongs of this test.  Moreover, even if she could, her claim is subject to the burden shifting analysis described above and McKenzie has no evidence of pretext.  *Chen v. County of Orange,* 96 Cal. App. 4th 926, 948-49 (2002).

### 1.    McKenzie Did Not Engage In Protected Activity.

As a threshold matter, McKenzie did not engage in FEHA protected activity.  Under the FEHA, "protected activity" includes: (1) opposing activity that is expressly forbidden by FEHA, including discrimination, harassment or retaliation on the basis of a protected characteristic; or (2) participation in a proceeding or investigation regarding possible FEHA violations.  Cal. Gov. Code § 12940; *Villanueva v. City of Colton*, 160 Cal. App. 4th 1188, 1198-99 (2008).  Neither is at issue here.

In her deposition, McKenzie stated that she believes that she was terminated because of the "bucket truck incident."  (Tr. 217:20-218:21)  Pacific Bell anticipates that McKenzie will argue that this incident constituted protected activity, but her testimony forecloses such argument.  Although Purviance was out on disability leave in August/September 2012 when Garcia requested that McKenzie reassign the bucket truck to another technician, McKenzie's objection to the request had nothing to do with any alleged disability.  (Tr. 221:3-222:4,

M<span>ILLER</span> L<span>AW</span> G<span>ROUP</span>
A PROFESSIONAL CORPORATION
CALIFORNIA

222:20-224:11)   Rather, McKenzie objected to Garcia's order because she thought it was "wrong" and "unfair" and because she believed Garcia's request stemmed from the fact that he "didn't like" Purvance.  (Tr. 221:16-222:4, 224:22-225:5, 228:6-229:5, 229:20-230:5)  She now claims that this "bucket truck incident" occurred just two days before her termination, testifying that "after the bucket truck incident with Ricky [Purvance], [Garcia] had issued [her final] check to be cut two days after that incident."  (Tr. 212:5-14)

　　　　As noted above, the record is devoid of any evidence that McKenzie ever complained to anyone about disability discrimination against Purvance (or any other employee) or did anything to suggest that her refusal to transfer the truck was because she thought Garcia was discriminating based on disability.   Under such circumstances, there is no FEHA protected conduct.   *Yanowitz* is instructive.  In *Yanowitz*, the plaintiff claimed that she was retaliated against after she refused to comply with her male supervisor's directive to fire a female subordinate.   In that lawsuit, the plaintiff claimed that she believed the directive was discriminatory based on gender because the male supervisor instructed her to fire the female subordinate on the basis of her appearance.   The trial court disagreed and dismissed the plaintiff's retaliation claim, finding that the plaintiff had not engaged in protected conduct because she had never explicitly told her supervisor that she thought the directive was discriminatory.  The California Supreme Court affirmed, stating:

> [s]tanding alone, an employee's unarticulated belief that an employer is engaging in discrimination will not suffice to establish protected conduct for the purposes of establishing a *prima facie* case of retaliation, where there is no evidence the employer knew that the employee's opposition was based upon a reasonable belief that the employer was engaging in discrimination.

*Yanowitz*, 36 Cal. App. 4th at 1046.  Like the plaintiff in *Yanowitz,* McKenzie never articulated – not even in deposition – a belief that Garcia's request was unlawfully motivated or was based on a protected characteristic.  (Garcia Dec. ¶ 33)   Rather, McKenzie's testimony makes clear that she believed Garcia's motivation was based on the fact that Garcia "did not like" Purvance, stating that "the whole garage knew […] that he did not care for Rick Proviance [sic]." (Tr. 221:16-222:4, 229:20-230:5)

MILLER LAW GROUP
A PROFESSIONAL CORPORATION
CALIFORNIA

RESPONDENT'S MEMORANDUM OF POINTS AND AUTHORITIES ISO MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT – JAMS Reference No.: 1100075003

### 2.    McKenzie Cannot Establish A Causal Connection.

Furthermore, even if McKenzie had evidence that she engaged in FEHA protected activity (she does not), there is no evidence of a causal connection between that activity and her termination.    As discussed *supra*, McKenzie had a long history of documented performance deficiencies and was on a PIP as of June 7, 2012.  (*See supra* § II.F)  Garcia met with McKenzie regarding the PIP on August 2, 2012.  (*Id.*)  That day, Garcia believed that termination was appropriate and discussed the status of the PIP with Timmons and Odom, stating that "Kim was still failing miserably as related to the msoc [*sic*] performance plan process."  (Timmons Dec. ¶ 16, Ex. F; Garcia Dec. ¶ 25)  Odom asked Garcia to provide copies of McKenzie's 2011 and 2012 performance reviews to HR, and on August 15, 2012, Timmons followed up with Garcia, stating that once the reviews were received, she would set up a call to discuss possible termination.  (Timmons Dec. ¶ 17, Ex. G)  Garcia provided these documents on September 4, 2012.  (Garcia Dec. ¶ 27, Ex. S)  Finally, a conference call was held on September 19, 2012 and, at that time, it was determined that McKenzie would be terminated for failure to successfully complete the PIP.  (Timmons Dec. ¶ 19; Garcia Dec. ¶ 28)

All of these events occurred **before** the alleged "bucket truck incident."  (*See* Tr. 212:5-212:14)  Indeed, McKenzie admitted that the first time she was instructed to take away Purviance's bucket truck and reassign it was September 20, 2012 – well after discussions regarding her termination were already underway and after the decision to terminate her employment had been made already.  (Tr. 454:10-454:25)  There can be no retaliation where – as here – the events leading up to termination began prior to the alleged protected conduct. *See Price v. Mulnomah County*, 132 F. Supp. 2d 1290, 1297 (D. Or. 2001) (finding that plaintiff cannot make out *prima facie* case of retaliation when "the evidence overwhelming [*sic*] shows that plaintiff was on 'thin ice' with [his employer] long before he raised any issue of FMLA leave, and that despite [plaintiff's supervisor's] sustained effort to counsel and work with him, plaintiff's own performance problems, not any discrimination based on leave requests, ultimately resulted in his suspension and termination.").

Miller Law Group
A Professional Corporation
California

### 3.    McKenzie Also Has No Evidence Of Pretext.

Even if McKenzie could state a *prima facie* case of retaliation (she cannot), her claim would still fail because she has no evidence of pretext.   *See supra* at § III.A; *Loggins v. Kaiser Permanente Int'l.*, 151 Cal. App. 4th 1102, 1112 (2007); *Yanowitz*, 36 Cal. 4th at 1042.   In fact, the only evidence that McKenzie has linking her termination to the "bucket truck incident" is the timing between that incident and her notification of termination. However, close proximity in time is not, as a matter of law, sufficient to establish pretext.   *See Loggins*, 151 Cal. App. 4th at 1112 (evidence of temporal proximity alone is not enough to meet employee's burden "to show a triable issue of fact on whether the employer's articulated reason was untrue and pretextual.")   And in a case like this, where the undisputed evidence actually shows that the chain of events leading to termination began more than a *year before* the alleged protected activity, and, indeed, the decision to terminate had been made before the alleged protected activity as well, any contention of temporal proximity being sufficient to survive summary judgment is simply preposterous.

### C.    McKenzie's Fifth Cause Of Action For Intentional Infliction Of Emotional Distress ("IIED") Also Fails As A Matter Of Law.

As a threshold matter, McKenzie's allegations of IIED are barred by the exclusivity provisions of the California Workers' Compensation statute, Cal. Labor Code § 3600 *et seq.*, because it is undisputed that McKenzie's emotional distress was caused by the treatment she received during her employment with Pacific Bell.   *See Cole v. Fair Oaks Fire Protection Dist.*, 43 Cal. 3d 148, 160 (1987).   As explained by the court in *Shoemaker v. Myers*, 52 Cal. 3d 1, 17-20 (1990), the Workers' Compensation statute preempts all IIED claims to the extent they are based on conduct that is a "normal part" of the employment relationship, "even if such conduct may be characterized as intentional, unfair or outrageous."   *See also Cole,* 43 Cal. 3d at 160; *Yau v. Santa Margarita Ford, Inc.*, 229 Cal. App. 4th 144, 161 (2014) (plaintiff's IIED claim barred by Workers' Compensation Act).   Emotional injuries caused by workplace discipline, including termination, fall within this rule.   *Id.*

Even if the Arbitrator elects to look beyond this dispositive defect, McKenzie's Fifth

MILLER LAW GROUP
A PROFESSIONAL CORPORATION
CALIFORNIA

Cause of Action still fails because she cannot point to any extreme or outrageous conduct.[16] *See Hughes v. Pair,* 46 Cal. 4th 1035, 1050-51 (2009) (conduct must be so extreme as to "exceed all bounds of that usually tolerated in a civilized community.")  Courts have held that "[o]utrageousness is an objective standard applied to actual conduct" and that "[l]iability does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities." *Fowler v. Varian Assoc., Inc.,* 196 Cal. App. 3d 34, 45 (1987); *Cochran v. Cochran*, 65 Cal. App. 4th 488, 496 (1996).  Moreover, termination does not constitute outrageous conduct.  *Buscemi v. McDonnell Douglas Corp.*, 736 F.2d 1348, 1352 (9th Cir. 1984) (allegation that discriminatory termination was done in a "callous and insensitive manner" is not outrageous as a matter of law); *see also Ankeny v. Lockheed Missiles & Space Co.,* 88 Cal. App. 3d 531, 536-37 (1979) (allegations of wrongful termination, verbal abuse and harassment held insufficient); *Heller v. Pillsbury Madison & Sutro*, 50 Cal. App. 4th 1367, 1389 (1996) ("[T]he distress of being terminated does not by itself give rise to a viable emotional distress cause of action.").  As McKenzie has no evidence of extreme or outrageous conduct, her Fifth Cause of Action must be dismissed.

## D.  Like Her Causes Of Action, McKenzie's Claim For Punitive Damages Fails.

California law is clear – punitive damages are available only "where it is proven by clear and convincing evidence that defendant has been guilty of oppression, fraud or malice." Cal. Civ. Code § 3294(a). Here, there is no evidence – let alone the required clear and convincing evidence – that anyone employed by Pacific Bell acted with the requisite malice, oppression or fraud to justify an award of punitive damages.

---

[16] McKenzie must show that Pacific Bell intentionally subjected her to extreme or outrageous conduct and that the conduct caused her to have severe emotional distress within two years of filing her Complaint.  *Hughes,* 46 Cal. 4th at 1050-51; Cal. Code Civ. Proc. § 335.1. However, based on McKenzie's testimony that she has not seen any psychiatrist, psychologists or therapists of any sort related to her symptoms of emotional distress [Tr. 485:8-16, 486:12-17], she has not shown severe emotional distress. Moreover, much of McKenzie's IIED claim appears to be based on alleged conduct which pre-dates the two year statute of limitations.  Specifically, she alleges conduct was perpetrated by her former Area Manager, Philana Grayson, during the time period that McKenzie reported to Grayson – prior to February 2011.  (*See* Notice of Claim ¶ 64; Tr. 328:5-328:24)  All such allegations must be disregarded as untimely.

MILLER LAW GROUP
A PROFESSIONAL CORPORATION
CALIFORNIA

1    Furthermore, for corporate defendants like Pacific Bell to be liable for punitive

2  damages, a plaintiff must prove that the "act of oppression, fraud or malice [was] on the part

3  of an *officer, director or managing agent of the corporation*."   Cal. Civ. Code § 3294(b)

4  (emphasis added).   The term "managing agent" "include[s] only those corporate employees

5  who exercise substantial independent authority and judgment in their corporate decision

6  making so that their decisions ultimately determine corporate policy."   *White v. Ultramar, Inc.*

7  21 Cal. 4th 563, 566-67 (1999) (emphasis added).   The only individuals McKenzie alleges

8  behaved unlawfully toward her are Rick Garcia, Philana Grayson and Gary Hardesty, none of

9  whom was or is an officer, director or managing agent of Pacific Bell.   (Tr. 325:13-326:4;

10  Garcia Dec. ¶ 3; Grayson Dec. ¶ 3; Declaration of Gary Hardesty ¶ 3)   On the contrary, it is

11  undisputed that these individuals had a limited scope of authority, did not establish (or have

12  the authority to create) corporate policy, and did not set the direction of Pacific Bell's

13  operations, business strategy or otherwise direct Pacific Bell's processes.   (*Id.*)   Thus, even if

14  any of McKenzie's claims for relief survive summary judgment, at a minimum, her claim for

15  punitive damages must be dismissed.

16                      **IV.    CONCLUSION**

17    For the foregoing reasons, Respondent Pacific Bell requests that the Court grant its

18  Motion for Summary Judgment and dismiss each of McKenzie's claims.

19

20

21  Dated:  April 23, 2015                                 MILLER LAW GROUP
                                                           A Professional Corporation
22

23

24                                         By:  _Jocelyn Chan_____
                                                Lisa C. Hamasaki
25                                              Jocelyn M. Chan
                                                Attorneys for Respondent
26                                              PACIFIC BELL TELEPHONE COMPANY

27  4846-9606-5827, v.  5

28

MILLER LAW GROUP
A PROFESSIONAL CORPORATION
CALIFORNIA

EXHIBIT 15

1  Judge David A. Garcia (Ret.)
2  JAMS
   2 Embarcadero Center
3  Suite 1500
   San Francisco, CA 94111
4  Tel: (415) 982-5267
5  Fax: (415) 982-5287

6

7
   **J A M S ARBITRATION NO. 11000750003**
8  KIM MCKENZIE, an individual,

9           Claimant,

10                                              **INTERIM AWARD**
          v.
11
   PACIFIC BELL TELEPHONE
12 COMPANY,

13
                 Respondent.
14

15 **Counsel:**

16 Timothy L. McCandless
   Law Offices of Timothy L. McCandless
17 820 Main Street, Suite 1
   Martinez, CA 94553
18 Telephone:   (925) 957-9797
19 Facsimile:   (925) 957-9799

20 Attorneys for Claimant

21
   Lisa C. Hamasaki
22 Jocelyn M. Chan
   Miller Law Group
23 111 Sutter Street., Suite 700
   San Francisco, CA 94104
24 Telephone:   (415) 464-4300
25 Facsimile:   (415) 464-4336

26
   Attorneys for Respondent
27 Pacific Bell Telephone Company
   (Named as AT&T Services, Inc.)
28

P

**Arbitrator:**
Hon. David A. Garcia, Ret
JAMS
2 Embarcadero Center, Suite 1500
San Francisco, California 94111
Telephone: (415) 982-5267
Facsimile: (415) 982-5287

**Place of Arbitration**: San Francisco, California

**Date of Interim Award:** June 22, 2015

THE UNDERSIGNED ARBITRATOR, having been designated as the sole Arbitrator in accordance with the arbitration agreement[1] existing between the parties, having duly heard and examined the submissions, proofs and allegations of the Parties, does hereby, conclude and AWARD, on an interim basis[2] as follows:

**I. Introduction and Procedural Statement**

THE UNDERSIGNED ARBITRATOR thanks each of the parties for the professional, considerate presentation of their respective positions. The legal authorities relied upon are principally those cited by the parties.

A dispute arose between the parties regarding the basis for the Respondent Pacific Bell Telephone Company's (Pacific Bell) having terminated Claimant Kim McKenzie's employment. The Claimant accordingly filed a Demand Arbitration with JAMS on August 12, 2013 and thereafter filed a Notice of Claim for Damages on May 23, 2014. The Respondent filed an Answer to Claimant's Notice of Claim and Affirmative Defenses on June 5, 2014.

Ms. McKenzie alleges that she was wrongfully terminated in violation of public policy in retaliation for having advised her supervisor that his instructions to her to remove the bucket truck from an employee and to reassign it to another employee constituted a violation of the Communications Workers of America (CWA) Contract because the bucket truck was a tool that could not be removed under the CWA Contract. Ms. McKenzie further alleges that she informed the affected employee of the intended actions of the supervisor and that the employee exercised their rights by filing a complaint with the company equal employment officer (EEO). After the supervisor was required to apologize to the affected employee, the supervisor harassed and criticized the Claimant using unprofessional

---

[1] Arbitration clauses are contained in the Arbitration Agreement signed by Claimant on January 31, 2013.
[2] As an interim award this Award is not subject to confirmation.

1

language. Immediately thereafter, the respondent terminated the Claimant from employment and informed her that her termination was based solely on her deficient performance over the preceding months. Claimant alleges that the Respondent's articulated basis for her termination is a pretext for her wrongful termination.

Claimant further alleges that prior to her termination she had to take a leave from work due to a hysterectomy surgery and due to the fact that she suffers from incurable Lupus disease. In addition Claimant was at all times over the age of 50. She asserts that the firing supervisor was aware of her health issues and age and that she was terminated because of these medical conditions.

Claimant alleges that she suffered financial losses and emotional distress as a proximate result of the intentional acts of the Respondent. She seeks by her Claims to recover for those losses and to be awarded punitive damages.

On July 6, 2014 the preliminary conference in the above-referenced matter occurred and the arbitrator issued Scheduling Order #1, which provided for a schedule of discovery and conduct of discovery. Furthermore, having discussed with the parties the propriety of dispositive motions, Scheduling Order #1 tentatively provided for a schedule for the filing of dispositive motions and scheduled a hearing on dispositive motions for January 15, 2015. Pursuant to stipulation, the parties extended the schedule provided for by Scheduling Order #1.

Subsequently, on February 4, 2015 the Claimant filed a motion to withdraw from the arbitration without prejudice on the ground that JAMS lacked subject matter jurisdiction to proceed with the Arbitration. The Claimant asserted as her basis for the motion that notwithstanding that she had received a right to sue letter from the EEOC and the DFEH, a related complaint remained unresolved by the EEOC and that the instant Arbitration was commenced prematurely. On February 14, 2015, the Respondent filed opposition to the motion on the ground that the EEOC issued a right to sue letter regarding the related claim, and that the related claim was a duplicate of the earlier claim for which the Claimant received right to sue letters from the EEOC and the DFEH prior to the initiation of the instant arbitration. The Claimant filed a reply on February 18, 2015.

The hearing regarding Claimant's Motion to Withdraw from Arbitration occurred on March 16, 2015, and on March 19, 2015 the Arbitrator issued Scheduling Order #2 and denied the Motion to Withdraw. The Arbitrator ruled therein that JAMS had subject matter jurisdiction at all times and that JAMS retained subject matter jurisdiction stating: "All complaints filed before the administrative agencies related to the same operative set of facts, and JAMS jurisdiction was unaffected by the pendency of the identical claims before the EEOC. Regardless, the EEOC's having issued a right to sue letter regarding the second claim, any claims that the Claimant has as a consequence are absorbed into the earlier filed Demand for Arbitration."

Scheduling Order #2 also provided a schedule for the filing and hearing of any dispositive motions, providing that such motions be heard on May 15, 2015 and that such hearing be conducted telephonically. Thereafter Claimant filed an electronic request to Extend Time to Complete Discovery and to Have Discovery Motions Heard and/or to Reopen Discovery after New Trial Date. Respondent filed opposition, and the Claimant filed a Response. The hearing on Claimant's motion occurred on April 6, 2015. During the hearing the Arbitrator orally denied the motion and set a schedule for any dispositive motions. On April 20, 2015 the Arbitrator issued Scheduling Order #3 formally denying the motion and scheduling the filing and hearing on dispositive motions.

Pursuant thereto, on April 23, 2015 the Respondent filed its dispositive motion styled as Motion for Summary Judgment or, in the Alternative Partial Summary Judgment.[3] The Claimant filed opposition and the Respondent filed a Reply. The hearing occurred telephonically on May 21, 2015.[4] During the hearing the Arbitrator indicated his intent to grant the Respondent's motion. At the conclusion of the hearing the Arbitrator took the matter under submission.

**II. The Dispositive Motion/Motion for Summary Judgment.**

After full consideration of all memoranda of points and authorities submitted by the parties, all evidence and supporting declarations submitted by the parties, the arguments of counsel, and all other matters presented to this Court, and good cause appearing, the Arbitrator hereby grants the dispositive motion on all Claims contained in Claimant's Notice of Claim, for the following reasons:

A. First Claim – Wrongful Termination in Violation of Public Policy

In her First Claim for Wrongful Termination in Violation of Public Policy, Ms. McKenzie alleges that her employment was terminated based on "disability discrimination, gender discrimination, retaliation, harassment, and unlawful labor practices." (Notice of Claim, ¶ 19). For the reasons discussed below at sections B through D, Ms. McKenzie's California Fair Employment and Housing Act (FEHA) discrimination and harassment claims fail as a matter of law.

As to her retaliation claim, Ms. McKenzie's Notice of Claim is unclear what statute or constitutional provision she alleges was violated by what she now claims as retaliation. It is generally considered that Ms. McKenzie is alleging violations of the FEHA.[5] [*Turner v.*

---

[3] The Arbitration Agreement at page 2 provides "[t]he Arbitrator shall have the authority to entertain a motion to dismiss and/or a motion for summary judgment by any party and shall apply the standards governing such motions under the Federal Rules of Civil Procedure."
[4] The hearing was not reported.
[5] As is discussed below, the Arbitrator has also analyzed this claim as asserting a claim for termination in violation of public policy on the basis that she alleges she was terminated for having

3

*Anheuser-Busch, Inc.* (1994) 7 Cal. 4th 1238, 1256-57 -- to state a claim, a plaintiff must show that his termination "violated a policy that is (1) fundamental, (2) beneficial for the public, and (3) embodied in a statute or constitutional provision."][6]

Ms. McKenzie's allegation of termination based on retaliation is evaluated under the same standards as a FEHA retaliation claim. It fails for the reasons a FEHA retaliation claim fails. [*Hanson v. Lucky Stores, Inc.* (1999) 74 Cal. App. 4th 215, 229 -- because Plaintiff's underlying FEHA claim fails, his claim for wrongful termination must also fail; *Jennings v. Maralle* (1994) 8 Cal. 4th 121, 136 -- holding that when an employer is not subject to liability under the FEHA, it is not subject to tortious discharge liability premised on the FEHA]

To make out a *prima facie* case for retaliation under the FEHA, Ms. McKenzie must demonstrate that: (1) she engaged in protected activity; (2) she was thereafter subjected by her employer to an adverse employment action; and (3) there is a causal connection between the protected activity and the adverse employment action.  [*Flait v. N. Am. Watch Corp.* (1992) 3 Cal. App. 4th 467, 476; *Morgan v. Regents of the University of California* (2000) 88 Cal. App. 4th 42, 69. Ms. McKenzie does not meet this burden, as she has presented no evidence supporting either the first or third prongs of this test. Moreover, even if she had established a prima facie case, her claim would fail because under the burden shifting analysis applicable to a resolution of the Respondent's motion, Ms. McKenzie has no evidence of pretext. [*Chen v. County of Orange* (2002) 96 Cal. App. 4th 926, 948-49]

　　　1. Ms. McKenzie did not engage in any FEHA protected activity.

Ms. McKenzie, who was a Manager Network Services (MNS) for Pacific Bell, did not engage in any FEHA protected activity.  Under the FEHA, "protected activity" includes: (1) opposing activity that is expressly forbidden by FEHA, including discrimination, harassment or retaliation on the basis of a protected characteristic; and (2) participation in a proceeding or investigation regarding possible FEHA violations. [Cal. Gov. Code § 12940; *Villanueva v. City of Colton* (2008) 160 Cal. App. 4th 1188, 1198-99] Ms. McKenzie does not contend nor has she presented any evidence that either type of protected activity is at issue here.

During her deposition, Ms. McKenzie testified that she believes that she was terminated because of the "bucket truck incident." (Tr. 217:20-218:21) One of Ms. McKenzie's technicians, Ricky Purviance, was out on disability leave in August/September 2012, and her supervisor, Rick Garcia, requested that she reassign Purviance's bucket truck to another technician. Ms. McKenzie objected to the request. However her objection had

---

complained regarding a violation of the collective bargaining agreement controlling the work conditions of the employee who the employer desired to have removed from the bucket truck.
[6] Other conceivable allegations of retaliation would fail because Ms. McKenzie has not identified any statutory or constitutional policy implicated by her discharge, and violation of internal policies or provisions does not give rise to a wrongful termination claim. *Id.*

4

nothing to do with Purviance's alleged disability. (Tr. 221:3-222:4, 222:20-224:11) The undisputed evidence shows that Ms. McKenzie objected to Garcia's order because she thought it was "wrong" and "unfair," and because she believed Garcia's request stemmed from the fact that he "didn't like" Purviance. (Tr. 221:16-222:4, 224:22-225:5, 228:6-229:5, 229:20-230:5)

Ms. McKenzie has offered no evidence that she complained to anyone about disability discrimination against Purviance (or anyone else) or did anything to suggest that her objection to transferring the truck was because she thought Garcia was discriminating based on disability.[7] Under such circumstances, there is no FEHA protected conduct. In *Yanowitz v. L'Oreal USA, Inc.* (2005) 36 Cal. 4th 1028, the plaintiff claimed that she was retaliated against after she refused to comply with her male supervisor's directive to fire a female subordinate. In that lawsuit, the plaintiff claimed that she believed the directive was discriminatory based on gender because the male supervisor instructed her to fire the female subordinate on the basis of her appearance. The trial court disagreed and dismissed the plaintiff's retaliation claim, finding that the plaintiff had not engaged in protected conduct because she had never explicitly told her supervisor that she thought the directive was discriminatory. The California Supreme Court affirmed stating:

> [s]tanding alone, an employee's unarticulated belief that an employer is engaging in discrimination will not suffice to establish protected conduct for the purposes of establishing a *prima facie* case of retaliation, where there is no evidence the employer knew that the employee's opposition was based upon a reasonable belief that the employer was engaging in discrimination. [*Yanowitz*, 36 Cal. App. 4th at 1046]

Just as in *Yanowitz,* Ms. McKenzie did not articulate a belief that Garcia's request was unlawfully motivated or was based on a protected characteristic. Rather, Ms. McKenzie's testimony is clear that she believed Garcia's motivation was based on the fact that Garcia "did not like" Purviance, stating that "the whole garage knew [...] that he did not care for Rick Proviance [*sic*]." (Tr. 221:16-222:4, 229:20-230:5) Ms. McKenzie has no evidence that she engaged in protected activity and fails to establish the first element of a *prima facie* case for retaliation.[8]

2. Claimant Failed to Establish a Nexus or Causal Connection

---

[7] Ms. McKenzie also admitted that although she was aware of a hotline for employees to call when they believed there was a violation of the EEO policy, she never called the hotline. (Tr. 113:4-10, 114:24-115:4, 120:7-10)

[8] This testimony likewise contradicts her opposition to the motion asserting that she was terminated for opposing a transfer proscribed by a collective bargaining agreement. The only nexus she offers to the fact that she was terminated for having ostensibly objected to a violation of the collective bargaining agreement is her assertion that the union later opposed the change in assignment to the bucket truck.

Furthermore, even if Ms. McKenzie had evidence that she engaged in FEHA protected activity,[9] there is no evidence of a causal connection between that activity and her termination.  The evidence shows that Ms. McKenzie had a long history of documented performance deficiencies and was on a Performance Improvement Plan (PIP) as of June 7, 2012.  Garcia met with Ms. McKenzie regarding the PIP on August 2, 2012.  That same day, Garcia believed that termination was appropriate and discussed the status of the PIP with Brigitte Timmons and Roger Odom from HR, stating that "Kim was still failing miserably as related to the msoc [*sic*] performance plan process." (Declaration of Brigitte Timmons ("Timmons Dec.") ¶ 16, Ex. F; Declaration of Rick Garcia ("Garcia Dec.") ¶ 25) Odom asked Garcia to provide copies of McKenzie's 2011 and 2012 performance reviews to HR, and on August 15, 2012, Timmons followed up with Garcia, stating that once the reviews were received, she would set up a call to discuss possible termination.  (Timmons Dec. ¶ 17, Ex. G) Garcia provided these documents on September 4, 2012.  (Garcia Dec. ¶ 27, Ex. S) Finally, a conference call was held on September 19, 2012 and, at that time, it was determined that McKenzie would be terminated for failure to successfully complete the PIP.  (Timmons Dec. ¶ 19; Garcia Dec. ¶ 28)

All of these events occurred prior to the alleged "bucket truck incident." (*See* Tr. 212:5-212:14) Ms. McKenzie admitted that the first time she was instructed to take away Purviance's bucket truck and reassign it was September 20, 2012 – well after discussions regarding her termination were already underway, and after the decision to terminate her employment had been made already. (Tr. 454:10-454:25)  There can be no retaliation where – as here – the events leading up to termination began prior to the alleged protected conduct. [*Price v. Mulnomah County* (D. Or. 2001) 132 F. Supp. 2d 1290, 1297 --  finding that plaintiff cannot make out *prima facie* case of retaliation when "the evidence overwhelming [*sic*] shows that plaintiff was on 'thin ice' with [his employer] long before he raised any issue of FMLA leave, and that despite [plaintiff's supervisor's] sustained effort to counsel and work with him, plaintiff's own performance problems, not any discrimination based on leave requests, ultimately resulted in his suspension and termination."] Ms. McKenzie has presented no evidence that establishes the third element of a *prima facie* case for retaliation – a nexus or causal connection between the protected activity and her termination.

### 3.  The Bucket Incident

The crux of McKenzie's wrongful termination claim is her allegation that she was terminated in retaliation for the "bucket truck incident." [10]  As with Ms. McKenzie's

---

[9] The same analysis applies to her assertions regarding retaliation based on her having engaged in protected activity by her objection to a violation of the collective bargaining agreement.

[10] In her Opposition, Ms. McKenzie argues that she objected to Garcia's directive to remove the bucket truck from one employee and give it to another, based on a belief that the instruction violated the applicable Union Contract. (Opposition at 2:24-28) Indeed counsel in oral argument conceded that her case rises and falls on this sole allegation. Unfortunately Ms. McKenzie has

discrimination claims, this claim also fails. Ms. McKenzie has presented no evidence that she engage in protected activity based on union considerations other than her after the fact re-characterization of her motivation for objecting to the reassignment, a motivation that was not communicated contemporaneously to Pacific Bell.

Even if refusing to transfer the bucket truck were to constitute protected activity, Ms. McKenzie cannot establish a causal connection between this incident and her termination. The undisputed evidence establishes that the "bucket truck incident" occurred well after discussions regarding McKenzie's termination were underway and after the decision to terminate her employment had already been made. For this reason her retaliation claim fails as a matter of law. [*Price v. Mulnomah County* (D. Or. 2001) 132 F. Supp. 2d 1290, 1297 -- finding no retaliation where employee was on "thin ice" and had performance problems long before engaging in any sort of protected activity and, ultimately, was terminated].

Moreover as is discussed generally below Ms. McKenzie fails to establish a triable issue regarding pretext.

### 4.   Ms. McKenzie Has no Evidence of Pretext

Even if Ms. McKenzie had presented evidence supporting a *prima facie* case of retaliation, her claim would nevertheless fail because she has presented no evidence of pretext. [*Loggins v. Kaiser Permanente Int'l.* (2007) 151 Cal. App. 4th 1102, 1112; (2007) *Yanowitz* 36 Cal. 4th at 1042] The only evidence that Ms. McKenzie supporting a nexus between her termination and the "bucket truck incident" is the timing between that incident and her notification of termination. However, close proximity in time is not, as a matter of law, sufficient to establish pretext. [*Loggins*, 151 Cal. App. 4th at 1112 -- evidence of temporal proximity alone is not enough to meet employee's burden "to show a triable issue of fact on whether the employer's articulated reason was untrue and pretextual."]

For all of these reasons, and because her underlying FEHA discrimination claims fail

---

presented no evidence that McKenzie's objection to Garcia's order had anything to do with concern about violation of a Union Contract. (Ms. McKenzie's Declaration makes no mention of any Union Contract]) On the contrary, McKenzie's sworn deposition testimony made clear that she objected to the order because she thought it was "wrong" and "unfair," not because it violated a Union Contract. (*See* Tr. 228:22-229:1 ["Q. So it wasn't an issue about this transfer of the tool violating any policy or anything like that; it was really just an ethics of [sic] fairness issue, is that correct?  A. Yes, that's correct."]; Motion at 15:23-16:6) Even if there was evidence suggesting opposition to violation of the Union Contract (there is not), such argument would not help Ms. McKenzie in this instance because any such claim would be preempted and time barred pursuant to Section 301 of the Labor Management Relations Act ("LMRA"). 29 U.S.C. § 185; 29 U.S.C. § 185(a); 29 U.S.C. § 160(b) (6-month statute of limitations); [*Kelecheva v. Multivision Cable T.V. Corp.*, 18 Cal. App. 4th 521, 528 (1993) -- holding that wrongful termination in violation of public policy claim of supervisor who alleged that he was discharged because he refused to participate in unlawful labor practices was "clearly preempted"]

as a matter of law, the Arbitrator finds that Ms. McKenzie's Claim for Wrongful Termination in Violation of Public Policy must be dismissed.[11]

### B. Second Claim – Violations of FEHA (Cal. Govt. Code §§ 12940 *et seq.* [Disability])

To establish a *prima facie* case of discrimination under the FEHA, Claimant must show that: (1) she was a member of a protected class; (2) she was qualified for the position; (3) she suffered an adverse employment action; and (4) there were circumstances suggesting that the employer acted with an unlawful motive – *i.e.*, because of her alleged disability. [*Jones v. Dept. of Correct. & Rehab.* (2007) 152 Cal. App. 4th 1367, 1379] Claimant's admissions are dispositive of her claim of disability discrimination. During her deposition, Claimant admitted that:

- No one at Pacific Bell ever said *or did* anything to her that suggested bias against her based on her disability (if any), or anything that led her to believe that her termination was based on her disability (if any). (Tr. 122:21-123:9, 331:20-332:2, 332:16-19, 333:6-9, 505:17-506:1)

Moreover, when asked about her contentions regarding the termination of her employment, Ms. McKenzie testified to her belief that the only reason for her termination was because she refused to take away a bucket truck from one of her technicians. (Tr. 217:20-218:21) Given these admissions, McKenzie fails to present evidence supporting a *prima facie* claim of disability discrimination and her Second Claim against Pacific Bell fails.

Additionally, Ms. McKenzie's Second Claim fails because Pacific Bell articulated a legitimate, non-discriminatory reason for McKenzie's termination – her poor performance and failed PIP – and Ms. McKenzie presented no evidence supporting a finding of pretext. [*Yanowitz*, 36 Cal. 4th at 1042; *Guz v. Bechtel Nat'l, Inc.* (2000) 24 Cal. 4th 317, 354-55; *McDonnell Douglas Corp. v. Green* (1973) 411 U.S. 792, 802-04]

The facts are undisputed. In the nineteen months – from February 2011 to September 2012 – that McKenzie worked in Stockton under Rick Garcia, she was placed on one Action Plan, two Pre-Performance Improvement Plans (Pre-PIP), and one PIP – all for the same issues: completing Demonstrated Performance Capability checklists (DPCs), Safeties and Qualities, holding performance discussions with technicians, and documenting the

---

[11] To the extent McKenzie alleges that Philana Grayson, her former supervisor, retaliated against her, such claim also fails. Any conduct by Grayson is time barred since it occurred – if at all – prior to February 2011. (*See* Tr. 386:7-11, 387:16-389:5, 451:1-453:9, Ex. 37). Moreover, there is no evidence that Grayson was involved in any way in the decision to terminate McKenzie's employment. (*See* Declaration of Philana Grayson ("Grayson Dec.") ¶ 8)

discussions in WebAdd – and she repeatedly failed to meet the expectations set forth in those plans.  Furthermore, McKenzie admits that Garcia, met with her regularly – at least 24 times – during the course of the four plans to go over the objectives and help her improve.  Despite all of this, McKenzie's performance remained subpar and stagnant.  Even after more than a year of focusing on the same goals and expectations, the evidence establishes that she failed to complete the requisite Safeties and Qualities, failed to complete the DPCs, failed to hold the required performance discussions with her technicians, and failed to record discussions properly in WebAdd – all tasks that were required of MNSs.

The law is clear that where, as here, an employer presents evidence of a non-discriminatory reason for its actions, "the presumption of discrimination disappears" and the burden switches to the plaintiff to show that "the employer's proffered reasons [are] pretexts for discrimination." [*Guz* 24 Cal. 4th at 356]  As explained by the Court of Appeal in *Morgan v. Regents of the University of California*:

> An employee in this situation can not [*sic*] simply show the employer's decision was wrong, mistaken, or unwise. Rather, the employee must demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder *could* rationally find them unworthy of credence, and hence infer that the employer did not act for the [… asserted] non-discriminatory reasons. [88 Cal. App. 4th 52, 75 (2000) (internal quotations and citations omitted) (emphasis in original)]

Not only must the plaintiff's evidence be "specific" and "substantial" in nature, but it also "must relate to the motivation of the decision makers to prove, by nonspeculative evidence, an actual causal link between prohibited motivation and termination." [*King v. United Parcel Serv., Inc.* (2007) 152 Cal. App. 4th 426, 433-34; *Horn v. Cushman & Wakefield Western, Inc.* (1999) 72 Cal. App. 4th 798, 807, 817 -- plaintiff must have "specific, substantial evidence" that employer's non-discriminatory reason for termination was pretextual]  Ms. McKenzie admitted in deposition, she has no evidence of pretext, much less specific and substantial evidence.  Her Second Claim fails for this reason.

Finally, although not articulated in McKenzie's Notice of Claim, to the extent she alleges disability harassment, she has no evidence of any harassing conduct, much less conduct that was "ever enough or sufficiently pervasive to alter the conditions of employment and create a work environment that qualifies as hostile or abusive to employees because of their [disability]." [*Miller v. Dept. of Correct.* (2005) 36 Cal. 4th 446, 462]

For all of these reasons, the Arbitrator finds that Ms. McKenzie's Second Claim for disability discrimination and/or harassment in violation of the FEHA must be dismissed dismissed.

C. Third Claim – Violations of FEHA (Cal. Govt. Code §§ 12940 *et seq.* [Gender])

As with Ms. McKenzie's claim for disability discrimination, her Third Claim for gender discrimination in violation of the FEHA must be dismissed.  Ms. McKenzie has no evidence of any gender discrimination and she admitted that:

- No one at Pacific Bell ever said *or did* anything to her that suggested bias against her based on her gender, or anything that led her to believe that her termination was based on her gender.  (Tr. 330:15-18, 331:16-19, 332:12-15, 333:2-5, 505:15-22)

Given this admission, Ms. McKenzie is unable to present any evidence supporting a *prima facie* claim of gender discrimination and her Third Claim against Pacific Bell fails. Moreover, as discussed above, Pacific Bell had a legitimate, non-discriminatory reason for McKenzie's termination – her poor performance and her failure to complete the PIP – and Ms. McKenzie has no evidence of pretext.

Finally, to the extent Ms. McKenzie alleges harassment on the basis of gender in her Third Cause of Action, she has presented no evidence of any conduct or treatment because of her gender that would create a hostile or abusive work environment. [*Miller*, 36 Cal. 4th at 462] For all of these reasons, the Arbitrator finds that Ms. McKenzie's Third Claim for gender discrimination and/or harassment in violation of the FEHA must be dismissed.

D. Fourth Claim – Age Discrimination in Violation of Cal. Govt. Code § 12940, *et seq.*

As with her disability and gender discrimination claims, Ms. McKenzie's Fourth Claim for age discrimination in violation of the FEHA must be dismissed.  As with her other claims, McKenzie has no evidence of any age discrimination and, in addition, admitted that:

- Her age did not play any role in any personnel decision regarding her employment with Pacific Bell.  (Tr. 330:11-14, 330:19-331:15, 332:3-6, 332:20-333:1, 506:2-9, 507:1-509:24)

Ms. McKenzie failed to present any evidence supporting a *prima facie* claim of age discrimination and her Fourth Claim against Pacific Bell fails. Furthermore, Pacific Bell articulated a legitimate, non-discriminatory reason for Ms. McKenzie's termination – her poor performance and failure to complete the PIP – and Ms. McKenzie has presented no evidence of pretext.  Finally, to the extent Ms. McKenzie alleges harassment on the basis of

age in her Fourth Claim, she has presented no evidence that any age-related comments that were made were "severe enough or sufficiently pervasive to alter the conditions of [her] employment". [*Miller*, 36 Cal. 4th at 462]  For all of these reasons, the Arbitrator finds that Ms. McKenzie's Fourth Claim for age discrimination and/or harassment in violation of the FEHA must be dismissed.

### E. Fifth Claim – Intentional Infliction of Emotional Distress (IIED)

As an initial matter, Ms. McKenzie's allegations of IIED are barred by the exclusivity provisions of the California Workers' Compensation statute, California Labor Code section 3600, *et seq.* because her emotional distress was caused by the treatment she received during her employment with Pacific Bell. [*Cole v. Fair Oaks Fire Protection Dist.* (1987) 43 Cal. 3d 148, 160]  As explained by the court in *Shoemaker v. Myers* (1990) 52 Cal. 3d 1, 17-20, the Workers' Compensation statute preempts all IIED claims to the extent they are based on conduct that is a "normal part" of the employment relationship, "even if such conduct may be characterized as intentional, unfair or outrageous." Thus, Ms. McKenzie's IIED claims, which stem from her termination, are barred by Section 3600.

Notwithstanding the Workers' Compensation preemption, to establish a claim for IIED, Ms. McKenzie must show that Pacific Bell intentionally subjected her to extreme or outrageous conduct and that the conduct caused her to have severe emotional distress within two years of filing her Complaint. [*Hughes v. Pair* (2009) 46 Cal. 4th 1035, 1050-51 -- conduct must be "so extreme" as to "exceed all bounds of that usually tolerated in a civilized community"; Cal. Code Civ. Proc. § 335.1]

Courts have held that "[o]utrageousness is an objective standard applied to actual conduct" and that "[l]iability does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities." [*Fowler v. Varian Assoc., Inc.* (1987) 196 Cal. App. 3d 34, 45; *Cochran v. Cochran* (1996) 65 Cal. App. 4th 488, 496]  Moreover, termination does not constitute outrageous conduct. [*Ankeny v. Lockheed Missiles & Space Co.* (1979) 88 Cal. App. 3d 531, 536-37 -- allegations of wrongful termination, verbal abuse and harassment held insufficient; *Heller v. Pillsbury Madison & Sutro* (1996) 50 Cal. App. 4th 1367, 1389 -- "[T]he distress of being terminated does not by itself give rise to a viable emotional distress cause of action."] Ms. McKenzie has no evidence of extreme or outrageous conduct.   Furthermore, McKenzie admits that she has not seen any psychiatrist, psychologist or therapist of any sort related to her symptoms of emotional distress, which indicates that she has not suffered any severe emotional distress.  (See Tr. 485:8-16, 486:12-17)  For these reasons, the Arbitrator finds that Ms. McKenzie's Fifth Claim for intentional infliction of emotional distress must be dismissed.

### F. Harassment

11

McKenzie v. Pacific Bell Telephone Co.
INTERIM AWARD OF ARBITRATOR,
JAMS #11000750003

1    While discussed in relation to other Claims above, the Arbitrator finds it appropriate

2  to address more generally the question of whether Ms. McKenzie has any evidence relating

   to harassment.[12] To establish a claim for harassment, Ms. McKenzie must prove unwelcome

3  conduct based on her disability, gender or age, or based on having engage in protected

   activity that is "sufficiently severe or pervasive to alter the conditions of her employment and

4  create an abusive working environment." [Cal. Gov. Code § 12940(j)(1)]

5

6    The prohibition of harassment "forbids only behavior so objectively offensive as to ...

   create a hostile or abusive work environment." [*Lyle v. Warner Bros. Tel. Prods* (2006). 38

7  Cal. 4th 264, 282-83]  McKenzie produced no evidence to satisfy this burden. Ms.

   McKenzie's Declaration contains only vague and conclusory statements. In her Declaration

8  she alleges that "Rick [Garcia] yelled at [her], Rick called [her] at home, Rick was very

   abusive and threatening to fire all [*sic*] the time." (McKenzie Declaration ¶¶ 3-4, 18-19, 21)

9  Unfortunately this evidence is insufficient to establish a *prima facie* case of harassment

10  under California Government Code section 12940(j).

11    Most critically, Ms. McKenzie has presented no evidence that any yelling, calling her

12  at home, abuse, or threats that she attributes to Garcia were based on her disability, gender,

   age, or her having engaged in any protected activity.  In fact, Ms. McKenzie admits that

13  Garcia was "nasty to everybody".  (Tr. at 456:14-17)  Along these same lines, in her

14  declaration, Ms. McKenzie states that Garcia's "method of operation is to yell and scream!"

   (McKenzie Declaration ¶ 22)  Furthermore, Ms. McKenzie admitted that no one at Pacific

15  Bell ever did or said anything to her based on her disability or gender, and that Garcia only

16  made "probably four" comments related to her age (all of which consisted of statements

   along the lines of "[h]ow many years you got?").  Given these admissions, Garcia's alleged

17  conduct toward Ms. McKenzie – even if it occurred on a regular basis – is not based on any

   protected characteristics or her having engaged in protected activity.[13]  Because

18  "[h]arassment, like discrimination, occurs only where an employee is treated differently and

   that difference was based on his [protected characteristic]," there can be no finding of

19  harassment based on the circumstances alleged here. [*Nielsen v. Trofholz Technologies, Inc.*

20  (E.D. Cal. 2010) 750 F. Supp. 2d 1157, 1169 -- finding no disability harassment because

   plaintiff failed to show that he was treated any differently than non-disabled employees]

21

22    The FEHA does not operate as a "general civility code." [*Cozzi v. County of Marin*

   (N.D. Cal. 2011) 787 F. Supp. 2d 1047, 1070; *Faragher v. City of Boca Raton*, (1998) 524

23  U.S. 775, 788 --Title VII is not a "general civility code"; *Lyle*, 38 Cal. 4th at 295]  Thus,

24  ⎯⎯⎯⎯⎯⎯⎯⎯⎯

25  [12] The claim as articulated by Ms. McKenzie is somewhat akin to her claim for intentional infliction
   of emotional distress, discussed hereafter.

26  [13] Furthermore, even if the alleged conduct by Garcia occurred, it did not constitute verbal
   harassment.  *See* Cal. Code Regs., tit. 2, § 11019(b)(1)(A) (examples of verbal harassment include

27  "epithets, derogatory comments or slurs on a basis enumerated in the [FEHA]").  The McKenzie
   Declaration alleges only generalized yelling and "abuse" by Garcia, none of which constitutes an

28  epithet, derogatory comment or slur.  And McKenzie makes no allegations of any sort of physical
   harassment.

even when a supervisor's conduct includes regular screaming, slamming doors, making threatening gestures, personal attacks, and anger, this still is not sufficient to raise a triable issue of harassment under the FEHA or other public policy when there is no evidence that such conduct was based on a protected characteristic, or based on her having engaged in protected activity. [*Cozzi*, 787 F. Supp. 2d at 1070]  Like the harassment claims of the plaintiff in *Cozzi*, Ms. McKenzie's harassment claims fails – among other reasons – because the FEHA and public policy does not protect against a supervisor's uncivil "method of operation."

Finally, whether an environment is hostile or abusive can be determined "only by looking at all the circumstances [including] the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." [*Lyle*, 38 Cal. 4th at 283]  Merely "offensive comments" in the workplace are not actionable. [*Id.*] Ms. McKenzie has presented no evidence that any of the alleged conduct was severe, pervasive, physically threatening or humiliating, or that it unreasonably interfered with her work performance.  Indeed, Ms. McKenzie's deposition admissions are dispositive. As explained previously, she testified under oath that no one at Pacific Bell ever said anything to her based on her disability or gender.[14] Ms. McKenzie also admitted that there were only "probably four" comments made to her by Garcia regarding her age, that all occurred in approximately "the last year" of her employment, and that all were along the lines of asking "[h]ow many years you got?" or saying "[y]ou know, you older people need to focus, focus, focus". These isolated incidents are neither "frequent" enough, nor "severe" enough, to give rise to a claim of harassment. [*Fisher v. San Pedro Peninsula Hospital* (1989) 214 Cal. App. 3d 590, 613 -- "if only a couple of acts occurred during the one year preceding the filing of the complaint, then [plaintiff] cannot properly plead a claim for … harassment."] Moreover, where – as here – there are only a few incidents of allegedly harassing conduct, the plaintiff must show that the conduct was "severe in the extreme." [*Herberg v. California Institute of the Arts* (2002) 101 Cal. App. 4th 142, 151; *Hughes v. Pair* (2009) 46 Cal. 4th 1035, 1043]  The alleged comments fail as a matter of law in meeting that requisite standard.

Only Ms. McKenzie's conclusory statements to the contrary [*see, e.g.*, McKenzie Declaration ¶ 4], serve to establish that any "yelling" or "screaming" was based on a protected characteristic, or that her work environment was hostile or abusive, and any claims for harassment under the FEHA therefore fail as a matter of law. [*Lyle*, 38 Cal. 4th at 283]

G. Claim for Punitive Damages

---

[14] The McKenzie Declaration attempts to insinuate that the conduct attributed to Garcia – *i.e.*, "Rick yelled at me, Rick called me at home, Rick was very abusive and threatening to fire [*sic*] all the time" – was because of McKenzie's lupus condition. (*See* McKenzie Declaration ¶¶ 18-19)  These statements must be disregarded as a "sham declaration" because they are directly contrary to her sworn deposition testimony. (Tr. 505:23-506:1 ["Q: Did [Garcia] ever say anything to you that suggested to you that he was biased or against you because of any disability or medical condition? A: No."]) *See Block v. City of Los Angeles*, 253 F.3d 410, 419 fn. 2 (9th Cir. 2001).

13

Under California law punitive damages are available only "where it is proven by clear and convincing evidence that defendant has been guilty of oppression, fraud or malice." [Cal. Civ. Code § 3294(a)] Ms. McKenzie has presented no evidence that anyone employed by Pacific Bell acted with the requisite malice, oppression or fraud to justify an award of punitive damages.

Furthermore, for corporate defendants like Pacific Bell to be liable for punitive damages, a plaintiff must prove that the "act of oppression, fraud or malice [was] on the part of an officer, director or managing agent of the corporation." [Cal. Civ. Code § 3294(b)] The term "managing agent" "include[s] only those corporate employees who exercise substantial independent authority and judgment in their corporate decision making so that their decisions ultimately determine corporate policy." [*White v. Ultramar, Inc.* (1999) 21 Cal. 4th 563, 566-67. The only individuals Ms. McKenzie alleges behaved unlawfully toward her are Rick Garcia, Philana Grayson and Gary Hardesty, none of whom was or is an officer, director or managing agent of Pacific Bell. (Tr. 325:13-326:4; Garcia Dec. ¶ 3; Grayson Dec. ¶ 3; Declaration of Gary Hardesty ¶ 3) On the contrary, it is undisputed that these individuals had a limited scope of authority, did not establish (or have the authority to create) corporate policy, and did not set the direction of Pacific Bell's operations, business strategy or otherwise direct Pacific Bell's processes. (*Id.*) Thus, the Arbitrator finds that Ms. McKenzie cannot recover punitive damages and that her claim for punitive damages must be dismissed.

G. Summary

The undisputed evidence in this case shows that Ms. McKenzie was not terminated because of her disability (if any), gender, age, or in retaliation for complaining about the "bucket truck incident." In short there is not evidence to establish a causal connection or nexus between any protected status or protected activity and her termination. Rather, the evidence establishes that Ms. McKenzie's employment was terminated because of her performance, which failed to meet Pacific Bell's standards for over a year and a half and which did not improve satisfactorily despite repeated informal and formal performance improvement plans. Ms. McKenzie has introduced no evidence to the contrary and fails to establish that the employer's articulated basis for her termination was pretextual. As such, and for the reasons discussed above the Arbitrator finds that Ms. McKenzie has not presented any evidence establishing triable issues of material fact regarding any of her claims and that each claim fails as a matter of law, and must accordingly be dismissed. The Arbitrator therefore finds that there is no basis for conducting an evidentiary hearing regarding the propriety of her termination and grants Pacific Bell's dispositive motion in its entirety.

**III. Administrative Fees and Costs**

Pursuant to the terms of the arbitration agreement and applicable law, Respondent Pacific Bell is not entitled to recover the administrative fees and expenses of JAMS, or the compensation and expenses of the Arbitrator.

**F. Attorney Fees and Cost**

The California Arbitration Act and JAMS Employment Arbitration Rules and Procedures Rule 24 (g) entitle the prevailing party to recover costs and expenses incurred in the arbitration from the non-prevailing party including Arbitration fees and Arbitrator compensation and expenses unless such is prohibited by the Parties' agreement or applicable law. The JAMS Employment Arbitration Rules and Procedures Rule 24(f) provide that the Arbitrator may allocate attorney fees if allowed by applicable law. Applicable law prohibits the recovery of Arbitration fees and the Arbitrator's compensation and expenses from the Claimant.

The Arbitrator finds that Respondent is the prevailing party. If Respondent believes that the Arbitrator should exercise his discretion to award costs, and believes that there is a basis under law for an application for attorney fees, or that the Arbitrator has erred in his ruling that applicable law proscribes the recovery of Arbitration fees and the Arbitrator's compensations and expenses, Respondent may apply for such recovery of costs and fees. Respondent shall have until July 20, 2015, to file and serve their application for Attorney Fees and costs, together with evidence and argument.

Claimant may file opposition, together with evidence and argument, by August 3, 2015. If opposition is filed the Respondents may reply by August 10, 2015. The matter shall be submitted for final decision at that time unless either party requests a telephonic or in person hearing in writing, by August 3, 2015. If requested the telephonic hearing shall be conducted on August 18, 2015, at 9:00 a.m. The parties shall appear by calling the JAMS Conference Center (877) 696-5267. If requested the in person hearing shall be conducted on August 18, 2015, at 9:00 a.m. at the San Francisco JAMS Offices.

If no opposition is filed to the Claimant's Application for Attorney Fees and Costs, the matter will be deemed submitted for Final Award on August 3, 2015.

**IV. Conclusion**

Accordingly, it is hereby declared that Claimant shall recover nothing from the Respondents.

DATE:      <u>June 22, 2015</u>

_____
                                    HON. DAVID A. GARCIA (RET.)

## PROOF OF SERVICE BY EMAIL & U.S. MAIL

Re: McKenzie, Kim vs. AT&T Services Inc.
Reference No. 1100075003

I, Julie McCool, not a party to the within action, hereby declare that on July 15, 2015 I served the attached INTERIM AWARD on the parties in the within action by Email and by depositing true copies thereof enclosed in sealed envelopes with postage thereon fully prepaid, in the United States Mail, at San Francisco, CALIFORNIA, addressed as follows:

Timothy McCandless Esq.
L/O Timothy McCandless
820 Main St.
Martinez, CA   94553
Phone: 925-957-9797
tim@prodefenders.com
   Parties Represented:
   Kim McKenzie

Mr. Jerome Clay
5665 N. Pershing Ave.
Suite B3
Stockton, CA   95207
Phone: 209-603-9852
jclay@g1fs.net
   Parties Represented:
   Kim McKenzie

Lisa C. Hamasaki Esq.
Jocelyn M. Chan Esq.
Miller Law Group
111 Sutter Street
Suite 700
San Francisco, CA   94104
Phone: 415-464-4300
lch@millerlawgroup.com
jchan@millerlawgroup.com
   Parties Represented:
   AT&T Services Inc.

I declare under penalty of perjury the foregoing to be true and correct. Executed at San Francisco, CALIFORNIA on July 15, 2015.

Julie McCool
jmccool@jamsadr.com

EXHIBIT 16

Judge David A. Garcia (Ret.)
JAMS
2 Embarcadero Center
Suite 1500
San Francisco, CA 94111
Tel: (415) 982-5267
Fax: (415) 982-5287

## JAMS ARBITRATION NO. 11000750003

KIM MCKENZIE, an individual,

    Claimant,

    v.

PACIFIC BELL TELEPHONE
COMPANY,

    Respondent.

**FINAL AWARD**

**Counsel:**

Timothy L. McCandless
Law Offices of Timothy L. McCandless
820 Main Street, Suite 1
Martinez, CA 94553
Telephone:  (925) 957-9797
Facsimile:  (925) 957-9799

Attorneys for Claimant

Lisa C. Hamasaki
Jocelyn M. Chan
Miller Law Group
111 Sutter Street, Suite 700
San Francisco, CA 94104
Telephone:  (415) 464-4300
Facsimile:  (415) 464-4336

Attorneys for Respondent
Pacific Bell Telephone Company
(Named as AT&T Services, Inc.)

**Arbitrator:**
Hon. David A. Garcia, Ret
JAMS
2 Embarcadero Center, Suite 1500
San Francisco, California 94111
Telephone: (415) 982-5267
Facsimile: (415) 982-5287

**Place of Arbitration**: San Francisco, California

**Date of Final Award:** October 7, 2015

THE UNDERSIGNED ARBITRATOR, having been designated as the sole Arbitrator in accordance with the arbitration agreement[1] existing between the parties, having duly heard and examined the submissions, proofs and allegations of the Parties, and having issued an Interim Award on June 22, 2015 does hereby, conclude and AWARD,[2] as follows:

**I. Introduction and Procedural Statement**

THE UNDERSIGNED ARBITRATOR thanks each of the parties for the professional, considerate presentation of their respective positions. The legal authorities relied upon are principally those cited by the parties.

A dispute arose between the parties regarding the basis for the Respondent Pacific Bell Telephone Company's (Pacific Bell) having terminated Claimant Kim McKenzie's employment. The Claimant accordingly filed a Demand for Arbitration with JAMS on August 12, 2013 and thereafter filed a Notice of Claim for Damages on May 23, 2014. The Respondent filed an Answer to Claimant's Notice of Claim and Affirmative Defenses on June 5, 2014.

Ms. McKenzie alleges that she was wrongfully terminated in violation of public policy in retaliation for having advised her supervisor that his instructions to her to remove the bucket truck from an employee and to reassign it to another employee constituted a violation of the Communications Workers of America (CWA) Contract because the bucket truck was a tool that could not be removed under the CWA Contract. Ms. McKenzie further alleges that she informed the affected employee of the intended actions of the supervisor and that the employee exercised their rights by filing a complaint with the company equal employment officer (EEO). After the supervisor was required to apologize to the affected employee, the supervisor harassed and criticized the Claimant using unprofessional

---

[1] Arbitration clauses are contained in the Arbitration Agreement signed by Claimant on January 31, 2013.
[2] As a final award this Award is subject to confirmation.

language. Immediately thereafter, the respondent terminated the Claimant from employment and informed her that her termination was based solely on her deficient performance over the preceding months. Claimant alleges that the Respondent's articulated basis for her termination is a pretext for her wrongful termination.

Claimant further alleges that prior to her termination she had to take a leave from work due to a hysterectomy surgery and due to the fact that she suffers from incurable Lupus disease. In addition Claimant was at all times over the age of 50. She asserts that the firing supervisor was aware of her health issues and age and that she was terminated because of these medical conditions.

Claimant alleges that she suffered financial losses and emotional distress as a proximate result of the intentional acts of the Respondent. She seeks by her Claims to recover for those losses and to be awarded punitive damages.

On July 6, 2014 the preliminary conference in the above-referenced matter occurred and the arbitrator issued Scheduling Order #1, which provided for a schedule of discovery and conduct of discovery. Furthermore, having discussed with the parties the propriety of dispositive motions, Scheduling Order #1 tentatively provided for a schedule for the filing of dispositive motions and scheduled a hearing on dispositive motions for January 15, 2015. Pursuant to stipulation, the parties extended the schedule provided for by Scheduling Order #1.

Subsequently, on February 4, 2015 the Claimant filed a motion to withdraw from the arbitration without prejudice on the ground that JAMS lacked subject matter jurisdiction to proceed with the Arbitration. The Claimant asserted as her basis for the motion that notwithstanding that she had received a right to sue letter from the EEOC and the DFEH, a related complaint remained unresolved by the EEOC and that the instant Arbitration was commenced prematurely. On February 14, 2015, the Respondent filed opposition to the motion on the ground that the EEOC issued a right to sue letter regarding the related claim, and that the related claim was a duplicate of the earlier claim for which the Claimant received right to sue letters from the EEOC and the DFEH prior to the initiation of the instant arbitration. The Claimant filed a reply on February 18, 2015.

The hearing regarding Claimant's Motion to Withdraw from Arbitration occurred on March 16, 2015, and on March 19, 2015 the Arbitrator issued Scheduling Order #2 and denied the Motion to Withdraw. The Arbitrator ruled therein that JAMS had subject matter jurisdiction at all times and that JAMS retained subject matter jurisdiction stating: "All complaints filed before the administrative agencies related to the same operative set of facts, and JAMS jurisdiction was unaffected by the pendency of the identical claims before the EEOC. Regardless, the EEOC's having issued a right to sue letter regarding the second claim, any claims that the Claimant has as a consequence are absorbed into the earlier filed Demand for Arbitration."

Scheduling Order #2 also provided a schedule for the filing and hearing of any dispositive motions, providing that such motions be heard on May 15, 2015 and that such hearing be conducted telephonically. Thereafter Claimant filed an electronic request to Extend Time to Complete Discovery and to Have Discovery Motions Heard and/or to Reopen Discovery after New Trial Date. Respondent filed opposition, and the Claimant filed a Response. The hearing on Claimant's motion occurred on April 6, 2015. During the hearing the Arbitrator orally denied the motion and set a schedule for any dispositive motions. On April 20, 2015 the Arbitrator issued Scheduling Order #3 formally denying the motion and scheduling the filing and hearing on dispositive motions.

Pursuant thereto, on April 23, 2015 the Respondent filed its dispositive motion styled as Motion for Summary Judgment or, in the Alternative Partial Summary Judgment.[3] The Claimant filed opposition and the Respondent filed a Reply. The hearing occurred telephonically on May 21, 2015.[4] During the hearing the Arbitrator indicated his intent to grant the Respondent's motion. At the conclusion of the hearing the Arbitrator took the matter under submission.

The Arbitrator thereafter granted the Respondent's dispositive motion and issued an Interim Award on June 22, 2015.[5]

The Arbitrator retained jurisdiction in the Interim Award to determine the propriety of an award of costs and attorney fees to the Respondent as the prevailing party. Pursuant thereto, the Respondent Moved for an award of attorney fees and costs on August 10, 2015, the Claimant served her Opposition to the Respondents' Motion for Attorney Fees on August 25, 2015,[6] and the Respondent filed its Reply

---

[3] The Arbitration Agreement at page 2 provides "[t]he Arbitrator shall have the authority to entertain a motion to dismiss and/or a motion for summary judgment by any party and shall apply the standards governing such motions under the Federal Rules of Civil Procedure."

[4] The hearing was reported. The Arbitrator noted in the Interim Award at footnote 4 that the hearing was not reported. This was an error. The Respondent requested correction of the error on July 22, 2015 pursuant to JAMS Employment Arbitration Rules and Procedures, Rule 24(J). Given that the award at issue was an interim award, essentially a tentative ruling, the Arbitrator retained jurisdiction as a matter of law to make any corrections or substantive amendments to the award that Arbitrator were to have subsequently deemed appropriate.

[5] Though issued by the Arbitrator on June 22, 2015, JAMS delayed service of the Interim Award for administrative reasons until July 15,2015. On July 16, 2015 the Arbitrator granted a three-week extension and revised the deadlines for filing an application for attorney fees and costs contained in the Interim Award. Pursuant thereto the Respondent was given until August 10, 2015 to apply for an award of attorney fees and costs, the Claimant was given until August 24, 2015 to file and serve opposition, and the Respondent was given until August 31 to file and serve its Reply in support of its application for attorney fees and costs.

[6] The Claimant did not file its opposition with JAMS. The Arbitrator only received a copy of the opposition as an attachment, Exhibit D to the Declaration of Jocelyn M. Chan in Support of Respondent Pacific Bell Telephone Company's Reply Memorandum in Support of its Motion for Attorneys' Fees and Costs. The Opposition indicates it was signed on August 23, 2015. The proof of service establishes that it was served on August 25, 2015. The filing and service deadline was August 24, 2015. Notwithstanding the failure to file the opposition and its late service on the

3

on August 31, 2015.[7] In the Reply Claimant requests a total of $102,857.35 in attorney fees[8] and a total of $4,789.05 in costs for a total award of $107,646.40 in attorney fees and costs.[9] Respondent seeks recovery of its attorney fees on the ground that the Claimant prosecuted frivolous FEHA claims.

Respondent further seeks to recover its attorney fees from Claimant's counsel pursuant to 28 U.S.C. §1927 or the Arbitrator's inherent power as a sanction. The Application requested as alternative sanction a minimum award of $45,264.00 in attorney fees incurred in defense of the FEHA claims after the deposition of the Claimant, which deposition contained admissions that completely undermined any basis for her FEHA claims, making a continuation of the litigation by Claimant's counsel patently unreasonable. The Respondent seeks also to recover as a sanction the fees incurred for the preparation of the application. The Respondent alternatively requested $56,000.60 ($45,264.00 in attorney fees, $10,736.60 in fees for preparation of the application).

## II. The Dispositive Motion/Motion for Summary Judgment.

After full consideration of all memoranda of points and authorities submitted by the parties, all evidence and supporting declarations submitted by the parties, the arguments of counsel, and all other matters presented to this Court, and good cause appearing, the Arbitrator hereby grants the dispositive motion on all Claims contained in Claimant's Notice of Claim, for the following reasons:

### A. First Claim – Wrongful Termination in Violation of Public Policy

In her First Claim for Wrongful Termination in Violation of Public Policy, Ms. McKenzie alleges that her employment was terminated based on "disability discrimination, gender discrimination, retaliation, harassment, and unlawful labor practices." (Notice of Claim, ¶ 19). For the reasons discussed below at sections B through D, Ms. McKenzie's California Fair Employment and Housing Act (FEHA) discrimination and harassment claims fail as a matter of law.

---

Respondent, the Arbitrator has read and considered the substance of the opposition. The Claimant did not oppose the Respondent's request for costs.
[7] In its Reply the Respondent both objected to the consideration of the Claimant's opposition and replied to the arguments of the opposition.
[8] The Respondent requests an award of $92,120.75 in attorney fees for defense of the Claim and $10,736.60 for preparation of the application for attorney fees. The Respondent allocated only 50% of the attorney fees it incurred in defense of the Claimant's claims to the FEHA claims. The total fees incurred in defense of the action were $184,241.50.
[9] The Respondent's application for attorney fees and costs made the same request.

As to her retaliation claim, Ms. McKenzie's Notice of Claim is unclear what statute or constitutional provision she alleges was violated by what she now claims as retaliation. It is generally considered that Ms. McKenzie is alleging violations of the FEHA.[10] [*Turner v. Anheuser-Busch, Inc.* (1994) 7 Cal. 4th 1238, 1256-57 -- to state a claim, a plaintiff must show that his termination "violated a policy that is (1) fundamental, (2) beneficial for the public, and (3) embodied in a statute or constitutional provision."][11]

Ms. McKenzie's allegation of termination based on retaliation is evaluated under the same standards as a FEHA retaliation claim. It fails for the reasons a FEHA retaliation claim fails. [*Hanson v. Lucky Stores, Inc.* (1999) 74 Cal. App. 4th 215, 229 -- because Plaintiff's underlying FEHA claim fails, his claim for wrongful termination must also fail; *Jennings v. Maralle* (1994) 8 Cal. 4th 121, 136 -- holding that when an employer is not subject to liability under the FEHA, it is not subject to tortious discharge liability premised on the FEHA]

To make out a *prima facie* case for retaliation under the FEHA, Ms. McKenzie must demonstrate that: (1) she engaged in protected activity; (2) she was thereafter subjected by her employer to an adverse employment action; and (3) there is a causal connection between the protected activity and the adverse employment action. [*Flait v. N. Am. Watch Corp.* (1992) 3 Cal. App. 4th 467, 476; *Morgan v. Regents of the University of California* (2000) 88 Cal. App. 4th 42, 69. Ms. McKenzie does not meet this burden, as she has presented no evidence supporting either the first or third prongs of this test. Moreover, even if she had established a prima facie case, her claim would fail because under the burden shifting analysis applicable to a resolution of the Respondent's motion, Ms. McKenzie has no evidence of pretext. [*Chen v. County of Orange* (2002) 96 Cal. App. 4th 926, 948-49]

    1. Ms. McKenzie did not engage in any FEHA protected activity.

Ms. McKenzie, who was a Manager Network Services (MNS) for Pacific Bell, did not engage in any FEHA protected activity. Under the FEHA, "protected activity" includes: (1) opposing activity that is expressly forbidden by FEHA, including discrimination, harassment or retaliation on the basis of a protected characteristic; and (2) participation in a proceeding or investigation regarding possible FEHA violations. [Cal. Gov. Code § 12940; *Villanueva v. City of Colton* (2008) 160 Cal. App. 4th 1188, 1198-99] Ms. McKenzie does not contend nor has she presented any evidence that either type of protected activity is at issue here.

---

[10] As is discussed below, the Arbitrator has also analyzed this claim as asserting a claim for termination in violation of public policy on the basis that she alleges she was terminated for having complained regarding a violation of the collective bargaining agreement controlling the work conditions of the employee who the employer desired to have removed from the bucket truck.

[11] Other conceivable allegations of retaliation would fail because Ms. McKenzie has not identified any statutory or constitutional policy implicated by her discharge, and violation of internal policies or provisions does not give rise to a wrongful termination claim. *Id.*

During her deposition, Ms. McKenzie testified that she believes that she was terminated because of the "bucket truck incident." (Tr. 217:20-218:21) One of Ms. McKenzie's technicians, Ricky Purviance, was out on disability leave in August/September 2012, and her supervisor, Rick Garcia, requested that she reassign Purviance's bucket truck to another technician. Ms. McKenzie objected to the request. However her objection had nothing to do with Purviance's alleged disability. (Tr. 221:3-222:4, 222:20-224:11) The undisputed evidence shows that Ms. McKenzie objected to Garcia's order because she thought it was "wrong" and "unfair," and because she believed Garcia's request stemmed from the fact that he "didn't like" Purviance.  (Tr. 221:16-222:4, 224:22-225:5, 228:6-229:5, 229:20-230:5)

Ms. McKenzie has offered no evidence that she complained to anyone about disability discrimination against Purviance (or anyone else) or did anything to suggest that her objection to transferring the truck was because she thought Garcia was discriminating based on disability.[12] Under such circumstances, there is no FEHA protected conduct. In *Yanowitz v. L'Oreal USA, Inc.* (2005) 36 Cal. 4th 1028, the plaintiff claimed that she was retaliated against after she refused to comply with her male supervisor's directive to fire a female subordinate. In that lawsuit, the plaintiff claimed that she believed the directive was discriminatory based on gender because the male supervisor instructed her to fire the female subordinate on the basis of her appearance. The trial court disagreed and dismissed the plaintiff's retaliation claim, finding that the plaintiff had not engaged in protected conduct because she had never explicitly told her supervisor that she thought the directive was discriminatory. The California Supreme Court affirmed stating:

> [s]tanding alone, an employee's unarticulated belief that an employer is engaging in discrimination will not suffice to establish protected conduct for the purposes of establishing a *prima facie* case of retaliation, where there is no evidence the employer knew that the employee's opposition was based upon a reasonable belief that the employer was engaging in discrimination. [*Yanowitz*, 36 Cal. App. 4th at 1046]

Just as in *Yanowitz,* Ms. McKenzie did not articulate a belief that Garcia's request was unlawfully motivated or was based on a protected characteristic.  Rather, Ms. McKenzie's testimony is clear that she believed Garcia's motivation was based on the fact that Garcia "did not like" Purviance, stating that "the whole garage knew […] that he did not care for Rick Proviance [*sic*]." (Tr. 221:16-222:4, 229:20-230:5) Ms. McKenzie has no evidence that she engaged in protected activity and fails to establish the first element of a *prima facie* case for retaliation.[13]

---

[12] Ms. McKenzie also admitted that although she was aware of a hotline for employees to call when they believed there was a violation of the EEO policy, she never called the hotline.  (Tr. 113:4-10, 114:24-115:4, 120:7-10)

[13] This testimony likewise contradicts her opposition to the motion asserting that she was terminated for opposing a transfer proscribed by a collective bargaining agreement. The only nexus she offers to the fact that she was terminated for having ostensibly objected to a violation of the

6

2.   Claimant Failed to Establish a Nexus or Causal Connection

Furthermore, even if Ms. McKenzie had evidence that she engaged in FEHA protected activity,[14] there is no evidence of a causal connection between that activity and her termination. The evidence shows that Ms. McKenzie had a long history of documented performance deficiencies and was on a Performance Improvement Plan (PIP) as of June 7, 2012. Garcia met with Ms. McKenzie regarding the PIP on August 2, 2012. That same day, Garcia believed that termination was appropriate and discussed the status of the PIP with Brigitte Timmons and Roger Odom from HR, stating that "Kim was still failing miserably as related to the msoc [sic] performance plan process." (Declaration of Brigitte Timmons ("Timmons Dec.") ¶ 16, Ex. F; Declaration of Rick Garcia ("Garcia Dec.") ¶ 25) Odom asked Garcia to provide copies of McKenzie's 2011 and 2012 performance reviews to HR, and on August 15, 2012, Timmons followed up with Garcia, stating that once the reviews were received, she would set up a call to discuss possible termination. (Timmons Dec. ¶ 17, Ex. G) Garcia provided these documents on September 4, 2012. (Garcia Dec. ¶ 27, Ex. S) Finally, a conference call was held on September 19, 2012 and, at that time, it was determined that McKenzie would be terminated for failure to successfully complete the PIP. (Timmons Dec. ¶ 19; Garcia Dec. ¶ 28)

All of these events occurred prior to the alleged "bucket truck incident." (*See* Tr. 212:5-212:14) Ms. McKenzie admitted that the first time she was instructed to take away Purviance's bucket truck and reassign it was September 20, 2012 – well after discussions regarding her termination were already underway, and after the decision to terminate her employment had been made already. (Tr. 454:10-454:25) There can be no retaliation where – as here – the events leading up to termination began prior to the alleged protected conduct. [*Price v. Mulnomah County* (D. Or. 2001) 132 F. Supp. 2d 1290, 1297 -- finding that plaintiff cannot make out *prima facie* case of retaliation when "the evidence overwhelming [sic] shows that plaintiff was on 'thin ice' with [his employer] long before he raised any issue of FMLA leave, and that despite [plaintiff's supervisor's] sustained effort to counsel and work with him, plaintiff's own performance problems, not any discrimination based on leave requests, ultimately resulted in his suspension and termination."] Ms. McKenzie has presented no evidence that establishes the third element of a *prima facie* case for retaliation – a nexus or causal connection between the protected activity and her termination.

3.   The Bucket Incident

The crux of McKenzie's wrongful termination claim is her allegation that she was

---

collective bargaining agreement is her assertion that the union later opposed the change in assignment to the bucket truck.
[14] The same analysis applies to her assertions regarding retaliation based on her having engaged in protected activity by her objection to a violation of the collective bargaining agreement.

terminated in retaliation for the "bucket truck incident." [15]  As with Ms. McKenzie's discrimination claims, this claim also fails. Ms. McKenzie has presented no evidence that she engage in protected activity based on union considerations other than her after the fact re-characterization of her motivation for objecting to the reassignment, a motivation that was not communicated contemporaneously to Pacific Bell.

Even if refusing to transfer the bucket truck were to constitute protected activity, Ms. McKenzie cannot establish a causal connection between this incident and her termination. The undisputed evidence establishes that the "bucket truck incident" occurred well after discussions regarding McKenzie's termination were underway and after the decision to terminate her employment had already been made. For this reason her retaliation claim fails as a matter of law. [*Price v. Mulnomah County* (D. Or. 2001) 132 F. Supp. 2d 1290, 1297 -- finding no retaliation where employee was on "thin ice" and had performance problems long before engaging in any sort of protected activity and, ultimately, was terminated].

Moreover as is discussed generally below Ms. McKenzie fails to establish a triable issue regarding pretext.

### 4.  Ms. McKenzie Has no Evidence of Pretext

Even if Ms. McKenzie had presented evidence supporting a *prima facie* case of retaliation, her claim would nevertheless fail because she has presented no evidence of pretext. [*Loggins v. Kaiser Permanente Int'l.* (2007) 151 Cal. App. 4th 1102, 1112; (2007) *Yanowitz* 36 Cal. 4th at 1042] The only evidence that Ms. McKenzie supporting a nexus between her termination and the "bucket truck incident" is the timing between that incident and her notification of termination. However, close proximity in time is not, as a matter of

---

[15] In her Opposition, Ms. McKenzie argues that she objected to Garcia's directive to remove the bucket truck from one employee and give it to another, based on a belief that the instruction violated the applicable Union Contract. (Opposition at 2:24-28) Indeed counsel in oral argument conceded that her case rises and falls on this sole allegation. Unfortunately Ms. McKenzie has presented no evidence that McKenzie's objection to Garcia's order had anything to do with concern about violation of a Union Contract. (Ms. McKenzie's Declaration makes no mention of any Union Contract]) On the contrary, McKenzie's sworn deposition testimony made clear that she objected to the order because she thought it was "wrong" and "unfair," not because it violated a Union Contract.  (*See* Tr. 228:22-229:1 ["Q. So it wasn't an issue about this transfer of the tool violating any policy or anything like that; it was really just an ethics of [sic] fairness issue, is that correct?  A. Yes, that's correct."]; Motion at 15:23-16:6) Even if there was evidence suggesting opposition to violation of the Union Contract (there is not), such argument would not help Ms. McKenzie in this instance because any such claim would be preempted and time barred pursuant to Section 301 of the Labor Management Relations Act ("LMRA").  29 U.S.C. § 185;  29 U.S.C. § 185(a); 29 U.S.C. § 160(b) (6-month statute of limitations); [*Kelecheva v. Multivision Cable T.V. Corp.*, 18 Cal. App. 4th 521, 528 (1993) -- holding that wrongful termination in violation of public policy claim of supervisor who alleged that he was discharged because he refused to participate in unlawful labor practices was "clearly preempted"]

8

law, sufficient to establish pretext. [*Loggins*, 151 Cal. App. 4th at 1112 -- evidence of temporal proximity alone is not enough to meet employee's burden "to show a triable issue of fact on whether the employer's articulated reason was untrue and pretextual."]

For all of these reasons, and because her underlying FEHA discrimination claims fail as a matter of law, the Arbitrator finds that Ms. McKenzie's Claim for Wrongful Termination in Violation of Public Policy must be dismissed.[16]

> B. Second Claim  – Violations of FEHA (Cal. Govt. Code §§ 12940 *et seq.*
> [Disability])

To establish a *prima facie* case of discrimination under the FEHA, Claimant must show that: (1) she was a member of a protected class; (2) she was qualified for the position; (3) she suffered an adverse employment action; and (4) there were circumstances suggesting that the employer acted with an unlawful motive – *i.e.*, because of her alleged disability. [*Jones v. Dept. of Correct. & Rehab.* (2007) 152 Cal. App. 4th 1367, 1379] Claimant's admissions are dispositive of her claim of disability discrimination.  During her deposition, Claimant admitted that:

> • No one at Pacific Bell ever said *or did* anything to her that suggested bias against her based on her disability (if any), or anything that led her to believe that her termination was based on her disability (if any).  (Tr. 122:21-123:9, 331:20-332:2, 332:16-19, 333:6-9, 505:17-506:1)

Moreover, when asked about her contentions regarding the termination of her employment, Ms. McKenzie testified to her belief that the only reason for her termination was because she refused to take away a bucket truck from one of her technicians.  (Tr. 217:20-218:21)  Given these admissions, McKenzie fails to present evidence supporting a *prima facie* claim of disability discrimination and her Second Claim against Pacific Bell fails.

Additionally, Ms. McKenzie's Second Claim fails because Pacific Bell articulated a legitimate, non-discriminatory reason for McKenzie's termination – her poor performance and failed PIP – and Ms. McKenzie presented no evidence supporting a finding of pretext. [*Yanowitz*, 36 Cal. 4th at 1042; *Guz v. Bechtel Nat'l, Inc.* (2000) 24 Cal. 4th 317, 354-55; *McDonnell Douglas Corp. v. Green* (1973) 411 U.S. 792, 802-04]

---

[16] To the extent McKenzie alleges that Philana Grayson, her former supervisor, retaliated against her, such claim also fails.  Any conduct by Grayson is time barred since it occurred – if at all – prior to February 2011.  (*See* Tr. 386:7-11, 387:16-389:5, 451:1-453:9, Ex. 37).  Moreover, there is no evidence that Grayson was involved in any way in the decision to terminate McKenzie's employment.  (*See* Declaration of Philana Grayson ("Grayson Dec.") ¶ 8)

9

The facts are undisputed. In the nineteen months – from February 2011 to September 2012 – that McKenzie worked in Stockton under Rick Garcia, she was placed on one Action Plan, two Pre-Performance Improvement Plans (Pre-PIP), and one PIP – all for the same issues: completing Demonstrated Performance Capability checklists (DPCs), Safeties and Qualities, holding performance discussions with technicians, and documenting the discussions in WebAdd – and she repeatedly failed to meet the expectations set forth in those plans. Furthermore, McKenzie admits that Garcia, met with her regularly – at least 24 times – during the course of the four plans to go over the objectives and help her improve. Despite all of this, McKenzie's performance remained subpar and stagnant. Even after more than a year of focusing on the same goals and expectations, the evidence establishes that she failed to complete the requisite Safeties and Qualities, failed to complete the DPCs, failed to hold the required performance discussions with her technicians, and failed to record discussions properly in WebAdd – all tasks that were required of MNSs.

The law is clear that where, as here, an employer presents evidence of a non-discriminatory reason for its actions, "the presumption of discrimination disappears" and the burden switches to the plaintiff to show that "the employer's proffered reasons [are] pretexts for discrimination." [Guz 24 Cal. 4th at 356] As explained by the Court of Appeal in *Morgan v. Regents of the University of California*:

> An employee in this situation can not [sic] simply show the employer's decision was wrong, mistaken, or unwise. Rather, the employee must demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder *could* rationally find them unworthy of credence, and hence infer that the employer did not act for the [... asserted] non-discriminatory reasons. [88 Cal. App. 4th 52, 75 (2000) (internal quotations and citations omitted) (emphasis in original)]

Not only must the plaintiff's evidence be "specific" and "substantial" in nature, but it also "must relate to the motivation of the decision makers to prove, by nonspeculative evidence, an actual causal link between prohibited motivation and termination." [*King v. United Parcel Serv., Inc.* (2007) 152 Cal. App. 4th 426, 433-34; *Horn v. Cushman & Wakefield Western, Inc.* (1999) 72 Cal. App. 4th 798, 807, 817 -- plaintiff must have "specific, substantial evidence" that employer's non-discriminatory reason for termination was pretextual] Ms. McKenzie admitted in deposition, she has no evidence of pretext, much less specific and substantial evidence. Her Second Claim fails for this reason.

Finally, although not articulated in McKenzie's Notice of Claim, to the extent she alleges disability harassment, she has no evidence of any harassing conduct, much less conduct that was "ever enough or sufficiently pervasive to alter the conditions of employment and create a work environment that qualifies as hostile or abusive to employees because of their [disability]." [*Miller v. Dept. of Correct.* (2005) 36 Cal. 4th 446, 462]

For all of these reasons, the Arbitrator finds that Ms. McKenzie's Second Claim for disability discrimination and/or harassment in violation of the FEHA must be dismissed dismissed.

C. Third Claim – Violations of FEHA (Cal. Govt. Code §§ 12940 *et seq.* [Gender])

As with Ms. McKenzie's claim for disability discrimination, her Third Claim for gender discrimination in violation of the FEHA must be dismissed.  Ms. McKenzie has no evidence of any gender discrimination and she admitted that:

- No one at Pacific Bell ever said *or did* anything to her that suggested bias against her based on her gender, or anything that led her to believe that her termination was based on her gender.  (Tr. 330:15-18, 331:16-19, 332:12-15, 333:2-5, 505:15-22)

Given this admission, Ms. McKenzie is unable to present any evidence supporting a *prima facie* claim of gender discrimination and her Third Claim against Pacific Bell fails.  Moreover, as discussed above, Pacific Bell had a legitimate, non-discriminatory reason for McKenzie's termination – her poor performance and her failure to complete the PIP – and Ms. McKenzie has no evidence of pretext.

Finally, to the extent Ms. McKenzie alleges harassment on the basis of gender in her Third Cause of Action, she has presented no evidence of any conduct or treatment because of her gender that would create a hostile or abusive work environment. [*Miller*, 36 Cal. 4th at 462] For all of these reasons, the Arbitrator finds that Ms. McKenzie's Third Claim for gender discrimination and/or harassment in violation of the FEHA must be dismissed.

D. Fourth Claim – Age Discrimination in Violation of Cal. Govt. Code § 12940, *et seq.*

As with her disability and gender discrimination claims, Ms. McKenzie's Fourth Claim for age discrimination in violation of the FEHA must be dismissed.  As with her other claims, McKenzie has no evidence of any age discrimination and, in addition, admitted that:

- Her age did not play any role in any personnel decision regarding her employment with Pacific Bell.  (Tr. 330:11-14, 330:19-331:15, 332:3-6, 332:20-333:1, 506:2-9, 507:1-509:24)

Ms. McKenzie failed to present any evidence supporting a *prima facie* claim of age discrimination and her Fourth Claim against Pacific Bell fails. Furthermore, Pacific Bell articulated a legitimate, non-discriminatory reason for Ms. McKenzie's termination – her poor performance and failure to complete the PIP – and Ms. McKenzie has presented no evidence of pretext. Finally, to the extent Ms. McKenzie alleges harassment on the basis of age in her Fourth Claim, she has presented no evidence that any age-related comments that were made were "severe enough or sufficiently pervasive to alter the conditions of [her] employment". [*Miller*, 36 Cal. 4th at 462] For all of these reasons, the Arbitrator finds that Ms. McKenzie's Fourth Claim for age discrimination and/or harassment in violation of the FEHA must be dismissed.

E. Fifth Claim – Intentional Infliction of Emotional Distress (IIED)

As an initial matter, Ms. McKenzie's allegations of IIED are barred by the exclusivity provisions of the California Workers' Compensation statute, California Labor Code section 3600, *et seq.* because her emotional distress was caused by the treatment she received during her employment with Pacific Bell. [*Cole v. Fair Oaks Fire Protection Dist.* (1987) 43 Cal. 3d 148, 160] As explained by the court in *Shoemaker v. Myers* (1990) 52 Cal. 3d 1, 17-20, the Workers' Compensation statute preempts all IIED claims to the extent they are based on conduct that is a "normal part" of the employment relationship, "even if such conduct may be characterized as intentional, unfair or outrageous." Thus, Ms. McKenzie's IIED claims, which stem from her termination, are barred by Section 3600.

Notwithstanding the Workers' Compensation preemption, to establish a claim for IIED, Ms. McKenzie must show that Pacific Bell intentionally subjected her to extreme or outrageous conduct and that the conduct caused her to have severe emotional distress within two years of filing her Complaint. [*Hughes v. Pair* (2009) 46 Cal. 4th 1035, 1050-51 -- conduct must be "so extreme" as to "exceed all bounds of that usually tolerated in a civilized community"; Cal. Code Civ. Proc. § 335.1]

Courts have held that "[o]utrageousness is an objective standard applied to actual conduct" and that "[l]iability does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities." [*Fowler v. Varian Assoc., Inc.* (1987) 196 Cal. App. 3d 34, 45; *Cochran v. Cochran* (1996) 65 Cal. App. 4th 488, 496] Moreover, termination does not constitute outrageous conduct. [*Ankeny v. Lockheed Missiles & Space Co.* (1979) 88 Cal. App. 3d 531, 536-37 -- allegations of wrongful termination, verbal abuse and harassment held insufficient; *Heller v. Pillsbury Madison & Sutro* (1996) 50 Cal. App. 4th 1367, 1389 -- "[T]he distress of being terminated does not by itself give rise to a viable emotional distress cause of action."] Ms. McKenzie has no evidence of extreme or outrageous conduct. Furthermore, McKenzie admits that she has not seen any psychiatrist, psychologist or therapist of any sort related to her symptoms of emotional distress, which indicates that she has not suffered any severe emotional distress. (See Tr. 485:8-16, 486:12-17) For these reasons, the Arbitrator finds that Ms. McKenzie's Fifth Claim for intentional infliction of emotional distress must be dismissed.

12

### F. Harassment

While discussed in relation to other Claims above, the Arbitrator finds it appropriate to address more generally the question of whether Ms. McKenzie has any evidence relating to harassment.[17] To establish a claim for harassment, Ms. McKenzie must prove unwelcome conduct based on her disability, gender or age, or based on having engage in protected activity that is "sufficiently severe or pervasive to alter the conditions of her employment and create an abusive working environment." [Cal. Gov. Code § 12940(j)(1)]

The prohibition of harassment "forbids only behavior so objectively offensive as to … create a hostile or abusive work environment." [*Lyle v. Warner Bros. Tel. Prods* (2006). 38 Cal. 4th 264, 282-83] McKenzie produced no evidence to satisfy this burden. Ms. McKenzie's Declaration contains only vague and conclusory statements. In her Declaration she alleges that "Rick [Garcia] yelled at [her], Rick called [her] at home, Rick was very abusive and threatening to fire all [*sic*] the time." (McKenzie Declaration ¶¶ 3-4, 18-19, 21) Unfortunately this evidence is insufficient to establish a *prima facie* case of harassment under California Government Code section 12940(j).

Most critically, Ms. McKenzie has presented no evidence that any yelling, calling her at home, abuse, or threats that she attributes to Garcia were based on her disability, gender, age, or her having engaged in any protected activity. In fact, Ms. McKenzie admits that Garcia was "nasty to everybody". (Tr. at 456:14-17) Along these same lines, in her declaration, Ms. McKenzie states that Garcia's "method of operation is to yell and scream!" (McKenzie Declaration ¶ 22) Furthermore, Ms. McKenzie admitted that no one at Pacific Bell ever did or said anything to her based on her disability or gender, and that Garcia only made "probably four" comments related to her age (all of which consisted of statements along the lines of "[h]ow many years you got?"). Given these admissions, Garcia's alleged conduct toward Ms. McKenzie – even if it occurred on a regular basis – is not based on any protected characteristics or her having engaged in protected activity.[18] Because "[h]arassment, like discrimination, occurs only where an employee is treated differently and that difference was based on his [protected characteristic]," there can be no finding of harassment based on the circumstances alleged here. [*Nielsen v. Trofholz Technologies, Inc.* (E.D. Cal. 2010) 750 F. Supp. 2d 1157, 1169 -- finding no disability harassment because plaintiff failed to show that he was treated any differently than non-disabled employees]

---

[17] The claim as articulated by Ms. McKenzie is somewhat akin to her claim for intentional infliction of emotional distress, discussed hereafter.

[18] Furthermore, even if the alleged conduct by Garcia occurred, it did not constitute verbal harassment. *See* Cal. Code Regs., tit. 2, § 11019(b)(1)(A) (examples of verbal harassment include "epithets, derogatory comments or slurs on a basis enumerated in the [FEHA]"). The McKenzie Declaration alleges only generalized yelling and "abuse" by Garcia, none of which constitutes an epithet, derogatory comment or slur. And McKenzie makes no allegations of any sort of physical harassment.

The FEHA does not operate as a "general civility code." [*Cozzi v. County of Marin* (N.D. Cal. 2011) 787 F. Supp. 2d 1047, 1070; *Faragher v. City of Boca Raton*, (1998) 524 U.S. 775, 788 --Title VII is not a "general civility code"; *Lyle*, 38 Cal. 4th at 295]  Thus, even when a supervisor's conduct includes regular screaming, slamming doors, making threatening gestures, personal attacks, and anger, this still is not sufficient to raise a triable issue of harassment under the FEHA or other public policy when there is no evidence that such conduct was based on a protected characteristic, or based on her having engaged in protected activity. [*Cozzi*, 787 F. Supp. 2d at 1070]  Like the harassment claims of the plaintiff in *Cozzi*, Ms. McKenzie's harassment claims fails – among other reasons – because the FEHA and public policy does not protect against a supervisor's uncivil "method of operation."

Finally, whether an environment is hostile or abusive can be determined "only by looking at all the circumstances [including] the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." [*Lyle*, 38 Cal. 4th at 283]  Merely "offensive comments" in the workplace are not actionable. [*Id.*] Ms. McKenzie has presented no evidence that any of the alleged conduct was severe, pervasive, physically threatening or humiliating, or that it unreasonably interfered with her work performance.  Indeed, Ms. McKenzie's deposition admissions are dispositive. As explained previously, she testified under oath that no one at Pacific Bell ever said anything to her based on her disability or gender.[19]  Ms. McKenzie also admitted that there were only "probably four" comments made to her by Garcia regarding her age, that all occurred in approximately "the last year" of her employment, and that all were along the lines of asking "[h]ow many years you got?" or saying "[y]ou know, you older people need to focus, focus, focus". These isolated incidents are neither "frequent" enough, nor "severe" enough, to give rise to a claim of harassment. [*Fisher v. San Pedro Peninsula Hospital* (1989) 214 Cal. App. 3d 590, 613 -- "if only a couple of acts occurred during the one year preceding the filing of the complaint, then [plaintiff] cannot properly plead a claim for … harassment."] Moreover, where – as here – there are only a few incidents of allegedly harassing conduct, the plaintiff must show that the conduct was "severe in the extreme." [*Herberg v. California Institute of the Arts* (2002) 101 Cal. App. 4th 142, 151; *Hughes v. Pair* (2009) 46 Cal. 4th 1035, 1043]  The alleged comments fail as a matter of law in meeting that requisite standard.

Only Ms. McKenzie's conclusory statements to the contrary [*see, e.g.*, McKenzie Declaration ¶ 4], serve to establish that any "yelling" or "screaming" was based on a protected characteristic, or that her work environment was hostile or abusive, and any claims

---

[19] The McKenzie Declaration attempts to insinuate that the conduct attributed to Garcia – *i.e.*, "Rick yelled at me, Rick called me at home, Rick was very abusive and threatening to fire [*sic*] all the time" – was because of McKenzie's lupus condition. (*See* McKenzie Declaration ¶¶ 18-19)  These statements must be disregarded as a "sham declaration" because they are directly contrary to her sworn deposition testimony.  (Tr. 505:23-506:1 ["Q: Did [Garcia] ever say anything to you that suggested to you that he was biased or against you because of any disability or medical condition? A: No."])  *See Block v. City of Los Angeles*, 253 F.3d 410, 419 fn. 2 (9th Cir. 2001).

for harassment under the FEHA therefore fail as a matter of law. [*Lyle*, 38 Cal. 4th at 283]

G. Claim for Punitive Damages

Under California law punitive damages are available only "where it is proven by clear and convincing evidence that defendant has been guilty of oppression, fraud or malice." [Cal. Civ. Code § 3294(a)] Ms. McKenzie has presented no evidence that anyone employed by Pacific Bell acted with the requisite malice, oppression or fraud to justify an award of punitive damages.

Furthermore, for corporate defendants like Pacific Bell to be liable for punitive damages, a plaintiff must prove that the "act of oppression, fraud or malice [was] on the part of an officer, director or managing agent of the corporation." [Cal. Civ. Code § 3294(b)] The term "managing agent" "include[s] only those corporate employees who exercise substantial independent authority and judgment in their corporate decision making so that their decisions ultimately determine corporate policy." [*White v. Ultramar, Inc.* (1999) 21 Cal. 4th 563, 566-67. The only individuals Ms. McKenzie alleges behaved unlawfully toward her are Rick Garcia, Philana Grayson and Gary Hardesty, none of whom was or is an officer, director or managing agent of Pacific Bell. (Tr. 325:13-326:4; Garcia Dec. ¶ 3; Grayson Dec. ¶ 3; Declaration of Gary Hardesty ¶ 3) On the contrary, it is undisputed that these individuals had a limited scope of authority, did not establish (or have the authority to create) corporate policy, and did not set the direction of Pacific Bell's operations, business strategy or otherwise direct Pacific Bell's processes. (*Id.*) Thus, the Arbitrator finds that Ms. McKenzie cannot recover punitive damages and that her claim for punitive damages must be dismissed.

G. Summary

The undisputed evidence in this case shows that Ms. McKenzie was not terminated because of her disability (if any), gender, age, or in retaliation for complaining about the "bucket truck incident." In short there is not evidence to establish a causal connection or nexus between any protected status or protected activity and her termination. Rather, the evidence establishes that Ms. McKenzie's employment was terminated because of her performance, which failed to meet Pacific Bell's standards for over a year and a half and which did not improve satisfactorily despite repeated informal and formal performance improvement plans. Ms. McKenzie has introduced no evidence to the contrary and fails to establish that the employer's articulated basis for her termination was pretextual. As such, and for the reasons discussed above the Arbitrator finds that Ms. McKenzie has not presented any evidence establishing triable issues of material fact regarding any of her claims and that each claim fails as a matter of law, and must accordingly be dismissed. The Arbitrator therefore finds that there is no basis for conducting an evidentiary hearing regarding the propriety of her termination and grants Pacific Bell's dispositive motion in its entirety.

### III. Administrative Fees and Costs

Pursuant to the terms of the arbitration agreement and applicable law, Respondent Pacific Bell is not entitled to recover the administrative fees and expenses of JAMS, or the compensation and expenses of the Arbitrator.

### F. Attorney Fees and Cost

The California Arbitration Act and JAMS Employment Arbitration Rules and Procedures Rule 24 (g) entitle the prevailing party to recover costs and expenses incurred in the arbitration from the non-prevailing party including Arbitration fees and Arbitrator compensation and expenses unless such is prohibited by the Parties' agreement or applicable law. The JAMS Employment Arbitration Rules and Procedures Rule 24(f) provide that the Arbitrator may allocate attorney fees if allowed by applicable law. Applicable law prohibits the recovery of Arbitration fees and the Arbitrator's compensation and expenses from the Claimant.

The Arbitrator finds that Respondent is the prevailing party. The Respondent has established that applicable law permits an award of attorney fees if a claimant prosecutes frivolous FEHA claims. [*Flannery v Prentice* (2001) 26 Cal.4th 572, 585 – Government Code §12965(b) permits an award of reasonable attorney fees and costs in FEHA actions for prosecution of frivolous actions] Claimant's claims were factually unsupported and groundless since their inception, as is evident from the analysis above, and Ms. McKenzie necessarily knew that prior to the commencement of the action. Ms. McKenzie's obstinate pursuit of her FEHA claims, which formed the foundation for her entire action, forced the Respondent to incur significant and unnecessary costs, entitling the Respondent to a recovery of its reasonable attorney fees and costs.[20]

Therefore an award of attorney fees in the amount of $107,646.40 ($92,120.75 reasonable attorney fees, $10,736.60 fees incurred for preparation of the application for fees and costs, and costs of $4,789.05) is fair and appropriate.

Respondent established that at the latest, McKenzie's counsel knew that such claims were frivolous when McKenzie testified at her deposition to having no evidence of bias or unlawful acts on the basis of gender, age, or any alleged disability authorizing an award of attorney fees in this case.[21] Continued prosecution of the FEHA claims was reckless and justifies an award of a sanction in the alternative amount of $45,264.35[22] as requested by the Respondent. While counsel had an obligation to investigate the claim, it is not clear that

---

[20] There is no question that the Respondent's attorney's fee request is reasonable, comprising a request for only half of the fees incurred in defense of the action.
[21] Indeed counsel essentially abandoned the FEHA claims in his opposition to the Respondent's dispositive motion.
[22] This sum is half the attorney fees incurred in defense of the action following the Claimant's deposition.

counsel had the same knowledge of the baselessness of the FEHA claims as the client at inception, and that the filing was frivolous. Nevertheless counsel clearly had knowledge of the baselessness of the FEHA claims following the Claimant's deposition and had an obligation not to pursue those claims further.

**IV. Conclusion**

Accordingly, it is hereby declared that Claimant shall recover nothing from the Respondents.

Respondent's application for attorney fees and costs is granted. Respondent shall accordingly recover $107,646.40 from the Claimant. Respondent shall recover from the Claimant's counsel, Timothy McCandless, the sum of $45,264.35. Ms. McKenzie shall be credited with any sums collected from Mr. McCandless.


DATE:       October 7, 2015



_____

HON. DAVID A. GARCIA (RET.)

## PROOF OF SERVICE BY EMAIL & U.S. MAIL

Re: McKenzie, Kim vs. AT&T Services Inc.
Reference No. 1100075003

I, Charron Johnson, not a party to the within action, hereby declare that on  October 07, 2015 I

served the attached FINAL AWARD on the parties in the within action by Email and by depositing true copies

thereof enclosed in sealed envelopes with postage thereon fully prepaid, in the United States Mail, at San

Francisco, CALIFORNIA, addressed as follows:

Timothy McCandless Esq.
L/O Timothy McCandless
820 Main St.
Martinez, CA  94553
Phone: 925-957-9797
tim@prodefenders.com
    Parties Represented:
    Kim McKenzie

Mr. Jerome Clay
5665 N. Pershing Ave.
Suite B3
Stockton, CA  95207
Phone: 209-603-9852
jclay@g1fs.net
    Parties Represented:
    Kim McKenzie

Lisa C. Hamasaki Esq.
Jocelyn M. Chan Esq.
Miller Law Group
111 Sutter Street
Suite 700
San Francisco, CA  94104
Phone: 415-464-4300
lch@millerlawgroup.com
jchan@millerlawgroup.com
    Parties Represented:
    AT&T Services Inc.

I declare under penalty of perjury the foregoing to be true and correct. Executed at San Francisco,

CALIFORNIA on  October 07, 2015.

Charron Johnson
cjohnson@jamsadr.com

EXHIBIT 17

**ADR-106**

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):* | FOR COURT USE ONLY |
|---|---|
| Lisa C. Hamasaki (SBN 197628); Jocelyn M. Chan (SBN 267937)<br>Miller Law Group<br>111 Sutter Street, Suite 700<br>San Francisco, CA 94104<br>TELEPHONE NO: 415-464-4300   FAX NO. *(Optional):* 415-464-4336<br>E-MAIL ADDRESS *(Optional):* lch@millerlawgroup.com; jchan@millerlawgroup.com<br>ATTORNEY FOR *(Name):* Pacific Bell Telephone Company | FILED<br>15 NOV 23 PM 3:19<br>ROSA JUNQUEIRO, CLERK<br>BY Angela Constantino<br>DEPUTY |

| SUPERIOR COURT OF CALIFORNIA, COUNTY OF San Joaquin |
|---|
| STREET ADDRESS: 222 E. Weber Avenue |
| MAILING ADDRESS: P.O. Box 201022, Stockton, CA 95202 |
| CITY AND ZIP CODE: Stockton, CA 95202 |
| BRANCH NAME: Stockton Branch |

| PETITIONER: Pacific Bell Telephone Company |
|---|
| RESPONDENT: Kim McKenzie |

| PETITION TO  ☑ CONFIRM  ☐ CORRECT  ☐ VACATE<br>CONTRACTUAL ARBITRATION AWARD |
|---|

| Jurisdiction *(check all that apply):* |   |
|---|---|
| ☐ Action is a limited civil case | STK-CV-UAW-2015-0010981 |
| Amount demanded   ☐ does not exceed $10,000 |  |
| ☐ exceeds $10,000, but does not exceed $25,000 |  |
| ☑ Action is an unlimited civil case (exceeds $25,000) |  |

**NOTICE:** You may use this form to request that the court confirm, correct, or vacate an award in an arbitration conducted pursuant to an agreement between the parties that is subject to Code of Civil Procedure section 1285 et seq. and that does not involve an attorney-client fee dispute. If you are requesting court action after an attorney-client fee arbitration award, please read Alternative Dispute Resolution form ADR-105, *Information Regarding Rights After Attorney-Client Fee Arbitration.*

1. **Petitioner and respondent.** Petitioner *(name each):*

   Pacific Bell Telephone Company ("Pacific Bell") (erroneously named as "AT&T Services, Inc." in JAMS Reference No. 1100075003)

   alleges and requests relief against respondent *(name each):*

   Kim McKenzie, an individual, and Timothy McCandless, an individual.

2. **Contractual arbitration.** This petition requests the court to confirm, correct, or vacate an award in an arbitration conducted according to an agreement between the parties that is subject to Code of Civil Procedure section 1285 et seq.

3. **Pending or new action.**
   a. ☐ A court case is already pending, and this is a petition filed in that action. *(If so, proceed to item 4.)*
   b. ☑ This petition commences a new action. *(If so, complete items 3b(1) through 3b(4).)*
      (1) **Petitioner's capacity.** Each petitioner named in item 1 is an individual,
         ☑ except petitioner *(state name and complete one or more of the following):* Pacific Bell
         (a) ☑ is a corporation qualified to do business in California.
         (b) ☐ is an unincorporated entity *(specify):*
         (c) ☐ is a representative *(specify):*
         (d) ☐ is *(specify other capacity):*
      (2) **Respondent's capacity.** Each respondent named in item 1 is an individual,
         ☐ except respondent *(state name and complete one or more of the following):*
         (a) ☐ is a business organization, form unknown.
         (b) ☐ is a corporation.
         (c) ☐ is an unincorporated entity *(specify):*
         (d) ☐ is a representative *(specify):*
         (e) ☐ is *(specify other capacity):*

THIS CASE HAS BEEN ASSIGNED TO JUDGE CARTER P. HOLLY IN DEPARTMENT 41 FOR ALL PURPOSES INCLUDING TRIAL

Page 1 of 3

| Form Approved for Optional Use<br>Judicial Council of California<br>ADR-106 [New January 1, 2004] | **PETITION TO CONFIRM, CORRECT, OR VACATE<br>CONTRACTUAL ARBITRATION AWARD<br>(Alternative Dispute Resolution)** | Code of Civil Procedure, § 1285 et seq. |
|---|---|---|

| PETITIONER: Pacific Bell Telephone Company | CASE NUMBER: |
|---|---|
| RESPONDENT: Kim McKenzie | |

3. b.　(3) **Amount or property in dispute.** This petition involves a dispute over *(check and complete all that apply)*:

    (a) ☑ the following amount of money *(specify amount)*: $ n/a, see 4b, 8c, 10g

    (b) ☐ property *(if the dispute involves property, complete both of the following)*:

        (i) consisting of *(identify property in dispute)*:

        (ii) having a value of *(specify value of property in dispute)*: $

  (4) ☑ **Venue.** This court is the proper court because *(check (a) or (b))*:

    (a) ☐ this is the court in the county in which the arbitration was held.

    (b) ☑ the arbitration was not held exclusively in any county of California, or was held outside of California, **and** *(check one or more of the following)*:

        (i) ☐ this is the court in the county where the agreement was made.

        (ii) ☐ this is the court in the county where the agreement is to be performed.

        (iii) ☑ the agreement does not specify a county where it is to be performed and was not made in any county in California, and the following party resides or has a place of business in this county *(name of party)*:

        Pacific Bell; Kim McKenzie

        (iv) ☐ the agreement does not specify a county where it is to be performed and was not made in any county in California, and no party to this action resides or has a place of business in California.

4. **Agreement to arbitrate.**

  a. **Date.** Petitioner and respondent entered into a written agreement on or about *(date)*: January 31, 2013

  b. ☑ **Attachment.** A copy of the agreement is submitted as Attachment 4(b) and incorporated herein by this reference.

  c. **Arbitration provision.** Paragraph __2__ of the agreement provides for arbitration of disputes arising out of the agreement as follows *(either copy the arbitration provision in full or summarize the provision)*:

    See Attachment 4(b).

5. **Dispute subject to arbitration.** A dispute arose between petitioner and respondent concerning the following matter covered by the agreement to arbitrate *(summarize the dispute)*:

  Alleged discrimination and harassment during McKenzie's employment in violation of state statutes (i.e., California Fair Employment and Housing Act), and termination of McKenzie's employment with Pacific Bell.

6. **Arbitrator.** The following person was duly selected or appointed as arbitrator *(name of each arbitrator)*:

  Hon. David A. Garcia (Ret.), JAMS, Inc.

7. **Arbitration hearing.** The arbitration hearing was conducted as follows *(complete both of the following)*:

  a. **Date** *(each date of arbitration)*: n/a - Final Award Issued Granting Pacific Bell's Dispositive Motion

  b. **Location** *(city and state where arbitration was conducted)*:

    San Francisco, CA

8. **Arbitration award.**

  a. **Date of award.** The arbitration award was made on *(date)*: Oct. 7, 2015

  b. **Terms of award.** The arbitration award *(check one or more of the following)*:

    (1) ☐ requires ☐ petitioner ☐ respondent to pay the other party this amount: $

    (2) ☐ requires neither party to pay the other anything.

    (3) ☐ is different as to different petitioners and respondents.

    (4) ☑ provides *(specify other terms or check item 8(c) and attach a copy of the award)*:

      No award of payment, but Pacific Bell shall recover attorneys' fees and costs (see Sections 10e-g).

  c. ☑ **Attachment of Award.** A copy of the award is submitted as Attachment 8(c).

9. **Service of award.**

  a. The signed award or an accompanying document indicates that the award was served on petitioner on *(date)*: Oct. 7, 2015

  b. ☐ Petitioner alleges that a signed copy of the award was actually served on *(date)*:

**PETITION TO CONFIRM, CORRECT, OR VACATE
CONTRACTUAL ARBITRATION AWARD
(Alternative Dispute Resolution)**

| PETITIONER: Pacific Bell Telephone Company | CASE NUMBER: |
|---|---|
| RESPONDENT: Kim McKenzie | |

10. **Petitioner requests that the court** *(check all that apply):*

    a. ☑ **Confirm the award, and enter judgment according to it.**

    b. ☐ **Correct the award and enter judgment according to the corrected award, as follows:**

        (1) The award should be corrected because *(check all that apply):*

            (a) ☐ the amount of the award was not calculated correctly, or a person, thing, or property was not described correctly.

            (b) ☐ the arbitrator exceeded his or her authority.

            (c) ☐ the award is imperfect as a matter of form.

        (2) The facts supporting the grounds for correcting the award alleged in item 10b(1) are as follows *(if additional space is required, check here ☐ and submit facts on an attachment labeled 10b(2)):*

        (3) The award should be corrected as follows *(if additional space is required, check here ☐ and describe requested correction on an attachment labeled 10b(3)):*

    c. ☐ **Vacate (cancel) the award.**

        (1) The award should be vacated because *(check all that apply):*

            (a) ☐ the award was obtained by corruption, fraud, or other unfair means.

            (b) ☐ an arbitrator was corrupt.

            (c) ☐ the misconduct of a neutral arbitrator substantially prejudiced petitioner's rights.

            (d) ☐ the arbitrator exceeded his or her authority, and the award cannot be fairly corrected.

            (e) ☐ the arbitrator unfairly refused to postpone the hearing or to hear evidence useful to settle the dispute.

            (f) ☐ an arbitrator failed to disclose within the time for disclosure a ground for disqualification of which the arbitrator was then aware.

            (g) ☐ an arbitrator should have disqualified himself or herself after petitioner made a demand to do so.

        (2) The facts supporting the grounds for vacating the award alleged in item 10c(1) are as follows *(if additional space is required, check here ☐ and submit facts on an attachment labeled 10c(2)):*

        (3) Petitioner ☐ does ☐ does not request a new arbitration hearing.

    d. ☐ **Award petitioner interest** from *(date):*

        (1) ☐ at the statutory rate.

        (2) ☐ at rate of ____ % per year.

    e. ☑ **Award petitioner costs of suit:**

        (1) ☐ in the amount of:  $ See 10g

        (2) ☐ according to proof.

    f. ☑ **Award petitioner attorney fees incurred in this action** *(check only if attorney fees are recoverable in this action according to statute or the parties' agreement):*

        (1) ☐ in the amount of:  $ See 10g

        (2) ☐ according to proof.

    g. ☑ **Award petitioner the following other relief** *(describe relief requested; if additional space is required, check here ☑ and describe relief on an attachment labeled 10g):*

        See Attachment 10g.

11. **Pages and attachments.** Number of pages attached: 23

Date: 11/23/15

Jocelyn M. Chan
                              ► *(signature)*

    (TYPE OR PRINT NAME)                               (SIGNATURE OF PETITIONER OR ATTORNEY)

**PETITION TO CONFIRM, CORRECT, OR VACATE
CONTRACTUAL ARBITRATION AWARD
(Alternative Dispute Resolution)**

## Attachment 2

This petition requests the court to confirm, correct, or vacate an award in an arbitration conducted according to an agreement between the parties that is subject to the Federal Arbitration Action and/or California Code of Civil Procedure section 1285 *et seq.*  This petition therefore seeks relief pursuant to both the Federal Arbitration Act and the California Code of Civil Procedure section 1285 *et seq.*

4824-3441-2073, v. 1

# ARBITRATION AGREEMENT

## Summary

Under this Arbitration Agreement ("Agreement"), you and the AT&T Company that employs you, or, if you are no longer employed by an AT&T Company, the AT&T Company that most recently employed you, ("the Company") agree that any dispute to which this Agreement applies will be decided by final and binding arbitration instead of court litigation.

## How This Agreement Applies

This Agreement is governed by the Federal Arbitration Act, 9 U.S.C. § 1 and following, and evidences a transaction involving interstate commerce. This agreement applies to any claim that you may have against any of the following: (1) any AT&T company, (2) its present or former officers, directors, employees or agents in their capacity as such or otherwise, (3) the Company's parent, subsidiary and affiliated entities, and all successors and assigns of any of them; and this agreement also applies to any claim that the Company or any other AT&T company may have against you. Unless stated otherwise in this Agreement, covered claims include without limitation those arising out of or related to your employment or termination of employment with the Company and any other disputes regarding the employment relationship, trade secrets, unfair competition, compensation, breaks and rest periods, termination, defamation, retaliation, discrimination or harassment and claims arising under the Uniform Trade Secrets Act, Civil Rights Act of 1964, Americans With Disabilities Act, Age Discrimination in Employment Act, Family Medical Leave Act, Fair Labor Standards Act, Genetic Information Non-Discrimination Act, and state statutes and local laws, if any, addressing the same or similar subject matters, and all other state and local statutory and common law claims. This Agreement survives after the employment relationship terminates. Nothing contained in this Agreement shall be construed to prevent or excuse you from utilizing the Company's or employee benefit plans' existing internal procedures for resolution of complaints.

Except as it otherwise provides, this Agreement is intended to apply to the resolution of disputes that otherwise would be resolved in a court. This Agreement requires all such disputes to be resolved only by an arbitrator through final and binding arbitration and not by way of a court or jury trial. Such disputes include without limitation disputes arising out of or relating to interpretation or application of this Agreement, but not as to the enforceability, revocability or validity of the Agreement or any portion of the Agreement, which shall be determined only by a court of competent jurisdiction.

## Limitations On How This Agreement Applies

This Agreement does not apply to claims for workers compensation, state disability insurance and unemployment insurance benefits. In order to ensure that employee benefit plan claims procedures comply fully with Department of Labor regulations (for example, 29 C.F.R. § 2560.503-1(c)(4)), this Agreement also does not apply to claims arising under the Employee Retirement Income Security Act ("ERISA").

This Agreement does not apply to any pending lawsuit that was on file in any federal or state court and to which you were a party as of April 19, 2012. Nor does this Agreement apply to any pending alleged or certified class, collective or representative lawsuit that was on file in any federal or state court as of April 19, 2012, in which you were reasonably identifiable as a class member (or in the case of representative action, a beneficiary) as of that date.

Regardless of any other terms of this Agreement, you may still bring certain claims before administrative agencies or government offices or officials if applicable law permits access to such an agency, office, or official, notwithstanding the existence of an agreement to arbitrate. Examples would include, but not be limited to, claims or charges brought before the Equal Employment Opportunity Commission (www.eeoc.gov), the U.S. Department of Labor (www.dol.gov), the National Labor Relations Board (www.nlrb.gov), or the Office of Federal Contract Compliance Programs (www.dol.gov/ofccp). Nothing in this Agreement shall be deemed to preclude or excuse a party from bringing an administrative claim before any agency or employee benefit plan in order to fulfill the party's obligation to exhaust administrative remedies before making a claim in arbitration.

Disputes that may not be subject to a pre-dispute arbitration agreement, such as provided by the Dodd-Frank Wall Street Reform and Consumer Protection Act (Public Law 111-203), also are excluded from the coverage of this Agreement.

To the maximum extent permitted by law, you hereby waive any right to bring on behalf of persons other than yourself, or to otherwise participate with other persons in: any class action; collective action; or representative action, including but not limited to any representative action under the California Private Attorneys General Act ("PAGA") or other, similar state statute. You retain the right, however, to bring claims in arbitration, including PAGA claims, but only for yourself as an individual. If a court determines that you cannot waive your right to bring a representative action under PAGA, any such claim may only be brought in court and not in arbitration.

100829401

### Arbitration Rules, Selecting The Arbitrator, And Location Of Hearing

The arbitration will be held under the auspices of a third party which will manage the arbitration process: JAMS, Inc. or any successor. The arbitration shall be in accordance with its Employment Arbitration Rules & Procedures (and no other JAMS rules), which are currently available at http://www.jamsadr.com/rules-employment-arbitration. The Company will supply you with a printed copy of those rules upon your request. Unless you and the Company mutually agree otherwise, the Arbitrator shall be either a retired judge, or an attorney who is experienced in employment law and licensed to practice law in the state in which the arbitration is convened (the "Arbitrator"), selected pursuant to JAMS rules or by mutual agreement of the parties.

The Arbitrator shall apply the substantive law (and the law of remedies, if applicable) of the state in which the claim arose, or federal law, or both, as applicable to the claim(s) asserted. The Arbitrator is without jurisdiction to apply any different substantive law or law of remedies. The Federal Rules of Evidence shall apply. The arbitration shall be final and binding upon the parties, except as provided in this Agreement.

Unless each party to the arbitration agrees in writing otherwise, the location of the arbitration proceeding shall be a facility chosen by JAMS within the county (or parish) where you work or last worked for the Company. If you so choose, and if your residence is not in the same county (or parish) where you work or last worked for the Company, you may designate that the proceeding will occur within the county (or parish) where you reside.

### Notice Requirements And Starting An Arbitration

The Company must, and you may, notify the other party of a claim to be arbitrated by using the forms provided on the JAMS website (http://www.jamsadr.com). Alternatively, you may commence an arbitration against the Company, its officers, directors, employees, or agents by sending to the Company a written Notice of Dispute ("Notice"). The Notice to AT&T should be addressed to: AT&T Legal Department, 208 S. Akard St., Room 3305, Dallas, TX 75202 ("Notice Address"). The Notice must (a) identify all parties, (b) describe the nature and basis of the claim or dispute; and (c) set forth the specific relief sought. Any party giving written notice of a claim to be arbitrated must do so no later than the expiration of the statute of limitations (deadline for filing) that the law prescribes for the claim.

The Arbitrator shall resolve all disputes regarding the timeliness or propriety of the demand for arbitration. To the extent permitted by law, a party may apply to a court of competent jurisdiction for temporary or preliminary injunctive relief in connection with an arbitrable controversy, but only upon the ground that the award to which that party may be entitled would be rendered ineffectual without such provisional relief.

### Paying For The Arbitration

The Company will be responsible for paying any filing fee and the fees and costs of the Arbitrator; provided, however, that if you are the party initiating the claim, you will contribute an amount equal to the filing fee to initiate a claim in the court of general jurisdiction in the state in which you are (or were last) employed by the Company. Each party shall pay in the first instance its own litigation costs and attorneys' fees, if any. However, if any party prevails on a statutory claim which affords the prevailing party attorneys' fees and litigation costs, or if there is a written agreement providing for attorneys' fees and/or litigation costs, the Arbitrator shall rule upon a motion for attorneys' fees and/or litigation costs under the same standards a court would apply under the law applicable to the claim(s) at issue.

### How Arbitration Proceedings Are Conducted

In arbitration, the parties will have the right to conduct limited civil discovery, bring dispositive motions, and present witnesses and evidence as needed to present their cases and defenses, and any disputes in this regard shall be resolved by the Arbitrator.

Each party shall have the right to take depositions of up to three fact witnesses and any expert witness designated by another party. Each party also shall have the right to make one request for production of documents to any party. Requests for additional depositions or discovery may be made to the Arbitrator selected pursuant to this Agreement. The Arbitrator may grant such additional discovery if the Arbitrator finds the party has demonstrated that it needs the requested discovery to adequately arbitrate the claim, taking into account the parties' mutual desire to have a fast, cost-effective dispute-resolution mechanism. Each party shall have the right to subpoena documents and witnesses from third parties subject to any limitations the Arbitrator shall impose for good cause shown.

The Arbitrator shall have jurisdiction to hear and rule on pre-hearing disputes and is authorized to hold pre-hearing conferences by telephone or in person, as the Arbitrator deems advisable. The Arbitrator shall have the authority to entertain a motion to dismiss and/or a motion for summary judgment by any party and shall apply the standards governing such motions under the Federal Rules of Civil Procedure.

149849_EX_dom/000430/004494

100829401

Should any party refuse or neglect to appear for, or participate in, the arbitration hearing, the Arbitrator shall have the authority to decide the dispute based upon whatever evidence is presented.

Either party shall have the right to file a post-hearing brief. The time for filing such a brief shall be set by the Arbitrator.

## The Arbitration Award

The Arbitrator may award any party any remedy to which that party is entitled under applicable law, but such remedies shall be limited to those that would be available to a party in his or her individual capacity in a court of law for the claims presented to and decided by the Arbitrator.

The Arbitrator will issue a decision or award in writing, stating the essential findings of fact and conclusions of law. A court of competent jurisdiction shall have the authority to enter a judgment upon the award made pursuant to the arbitration.

## Non-Retaliation

It is against Company policy for any employee to be subject to retaliation if he or she exercises his or her right to assert claims under this Agreement. If you believe that you have been retaliated against by anyone at the Company, you should immediately report this to the Ethics and Compliance Hot Line at 1-888-871-2622.

## Sole and Entire Agreement

This is the complete agreement of the parties on the subject of arbitration of disputes. This Agreement supersedes any prior or contemporaneous oral or written understandings on the subject. No party is relying on any representations, oral or written, on the subject of the effect, enforceability or meaning of this Agreement, except as specifically set forth in this Agreement.

## Construction and Severability

If any provision of this Arbitration Agreement is adjudicated to be void or otherwise unenforceable, in whole or in part, such adjudication shall not affect the validity of the remainder of the Arbitration Agreement. All provisions of this Arbitration Agreement not adjudicated to be void or otherwise unenforceable shall remain in full force and effect based on the parties' mutual intent to create a binding agreement to arbitrate their disputes.

## Voluntary Agreement

I ACKNOWLEDGE THAT I HAVE CAREFULLY READ THIS AGREEMENT, THAT I UNDERSTAND ITS TERMS, THAT ALL UNDERSTANDINGS AND AGREEMENTS BETWEEN THE COMPANY AND ME RELATING TO THE ARBITRATION OF EMPLOYMENT DISPUTES ARE CONTAINED IN IT, THAT IT SUPERSEDES ANY PRIOR AGREEMENTS BETWEEN THE COMPANY AND ME ON THE ARBITRATION OF EMPLOYMENT DISPUTES, AND THAT I HAVE ENTERED INTO THE AGREEMENT VOLUNTARILY AND NOT IN RELIANCE ON ANY PROMISES OR REPRESENTATIONS BY THE COMPANY OTHER THAN THOSE CONTAINED IN THIS CONSENT AND CLAIM FORM ITSELF AND THE NOTICE OF PROPOSED CLASS ACTION SETTLEMENT IN *LUQUE*. I FURTHER ACKNOWLEDGE THAT THE EXECUTION OF THIS AGREEMENT IS A TERM OF THE SETTLEMENT IN *LUQUE* AND THAT THE SETTLEMENT SHARE THAT I AM TO RECEIVE IN *LUQUE* IS CONSIDERATION FOR THIS AGREEMENT.

I UNDERSTAND THAT BY SIGNING THIS AGREEMENT I AM GIVING UP MY RIGHT TO A JURY TRIAL.

I FURTHER ACKNOWLEDGE THAT I HAVE BEEN GIVEN THE OPPORTUNITY TO DISCUSS THIS AGREEMENT WITH CLASS COUNSEL AND WITH PRIVATE LEGAL COUNSEL AND HAVE AVAILED MYSELF OF THAT OPPORTUNITY TO THE EXTENT I WISH TO DO SO.

Employee/Class Member:

_____
Signature of Employee/Class Member   KIM MCKENZIE,

_1-31-2013_
Date (mm/dd/yyyy)

149849_EX_dcm/000450/004495

Judge David A. Garcia (Ret.)
JAMS
2 Embarcadero Center
Suite 1500
San Francisco, CA 94111
Tel: (415) 982-5267
Fax: (415) 982-5287

## JAMS ARBITRATION NO. 11000750003

KIM MCKENZIE, an individual,

    Claimant,

    v.

PACIFIC BELL TELEPHONE
COMPANY,

    Respondent.

**FINAL AWARD**

**Counsel:**

Timothy L. McCandless
Law Offices of Timothy L. McCandless
820 Main Street, Suite 1
Martinez, CA 94553
Telephone:  (925) 957-9797
Facsimile:  (925) 957-9799

Attorneys for Claimant

Lisa C. Hamasaki
Jocelyn M. Chan
Miller Law Group
111 Sutter Street, Suite 700
San Francisco, CA 94104
Telephone:  (415) 464-4300
Facsimile:  (415) 464-4336

Attorneys for Respondent
Pacific Bell Telephone Company
(Named as AT&T Services, Inc.)

**Arbitrator:**
Hon. David A. Garcia, Ret
JAMS
2 Embarcadero Center, Suite 1500
San Francisco, California 94111
Telephone: (415) 982-5267
Facsimile: (415) 982-5287

**Place of Arbitration**: San Francisco, California

**Date of Final Award:** October 7, 2015

THE UNDERSIGNED ARBITRATOR, having been designated as the sole Arbitrator in accordance with the arbitration agreement[1] existing between the parties, having duly heard and examined the submissions, proofs and allegations of the Parties, and having issued an Interim Award on June 22, 2015 does hereby, conclude and AWARD,[2] as follows:

## I. Introduction and Procedural Statement

THE UNDERSIGNED ARBITRATOR thanks each of the parties for the professional, considerate presentation of their respective positions. The legal authorities relied upon are principally those cited by the parties.

A dispute arose between the parties regarding the basis for the Respondent Pacific Bell Telephone Company's (Pacific Bell) having terminated Claimant Kim McKenzie's employment. The Claimant accordingly filed a Demand for Arbitration with JAMS on August 12, 2013 and thereafter filed a Notice of Claim for Damages on May 23, 2014. The Respondent filed an Answer to Claimant's Notice of Claim and Affirmative Defenses on June 5, 2014.

Ms. McKenzie alleges that she was wrongfully terminated in violation of public policy in retaliation for having advised her supervisor that his instructions to her to remove the bucket truck from an employee and to reassign it to another employee constituted a violation of the Communications Workers of America (CWA) Contract because the bucket truck was a tool that could not be removed under the CWA Contract. Ms. McKenzie further alleges that she informed the affected employee of the intended actions of the supervisor and that the employee exercised their rights by filing a complaint with the company equal employment officer (EEO). After the supervisor was required to apologize to the affected employee, the supervisor harassed and criticized the Claimant using unprofessional

---

[1] Arbitration clauses are contained in the Arbitration Agreement signed by Claimant on January 31, 2013.

[2] As a final award this Award is subject to confirmation.

language. Immediately thereafter, the respondent terminated the Claimant from employment and informed her that her termination was based solely on her deficient performance over the preceding months. Claimant alleges that the Respondent's articulated basis for her termination is a pretext for her wrongful termination.

Claimant further alleges that prior to her termination she had to take a leave from work due to a hysterectomy surgery and due to the fact that she suffers from incurable Lupus disease. In addition Claimant was at all times over the age of 50. She asserts that the firing supervisor was aware of her health issues and age and that she was terminated because of these medical conditions.

Claimant alleges that she suffered financial losses and emotional distress as a proximate result of the intentional acts of the Respondent. She seeks by her Claims to recover for those losses and to be awarded punitive damages.

On July 6, 2014 the preliminary conference in the above-referenced matter occurred and the arbitrator issued Scheduling Order #1, which provided for a schedule of discovery and conduct of discovery. Furthermore, having discussed with the parties the propriety of dispositive motions, Scheduling Order #1 tentatively provided for a schedule for the filing of dispositive motions and scheduled a hearing on dispositive motions for January 15, 2015. Pursuant to stipulation, the parties extended the schedule provided for by Scheduling Order #1.

Subsequently, on February 4, 2015 the Claimant filed a motion to withdraw from the arbitration without prejudice on the ground that JAMS lacked subject matter jurisdiction to proceed with the Arbitration. The Claimant asserted as her basis for the motion that notwithstanding that she had received a right to sue letter from the EEOC and the DFEH, a related complaint remained unresolved by the EEOC and that the instant Arbitration was commenced prematurely. On February 14, 2015, the Respondent filed opposition to the motion on the ground that the EEOC issued a right to sue letter regarding the related claim, and that the related claim was a duplicate of the earlier claim for which the Claimant received right to sue letters from the EEOC and the DFEH prior to the initiation of the instant arbitration. The Claimant filed a reply on February 18, 2015.

The hearing regarding Claimant's Motion to Withdraw from Arbitration occurred on March 16, 2015, and on March 19, 2015 the Arbitrator issued Scheduling Order #2 and denied the Motion to Withdraw. The Arbitrator ruled therein that JAMS had subject matter jurisdiction at all times and that JAMS retained subject matter jurisdiction stating: "All complaints filed before the administrative agencies related to the same operative set of facts, and JAMS jurisdiction was unaffected by the pendency of the identical claims before the EEOC. Regardless, the EEOC's having issued a right to sue letter regarding the second claim, any claims that the Claimant has as a consequence are absorbed into the earlier filed Demand for Arbitration."

Scheduling Order #2 also provided a schedule for the filing and hearing of any dispositive motions, providing that such motions be heard on May 15, 2015 and that such hearing be conducted telephonically. Thereafter Claimant filed an electronic request to Extend Time to Complete Discovery and to Have Discovery Motions Heard and/or to Reopen Discovery after New Trial Date. Respondent filed opposition, and the Claimant filed a Response. The hearing on Claimant's motion occurred on April 6, 2015. During the hearing the Arbitrator orally denied the motion and set a schedule for any dispositive motions. On April 20, 2015 the Arbitrator issued Scheduling Order #3 formally denying the motion and scheduling the filing and hearing on dispositive motions.

Pursuant thereto, on April 23, 2015 the Respondent filed its dispositive motion styled as Motion for Summary Judgment or, in the Alternative Partial Summary Judgment.[3] The Claimant filed opposition and the Respondent filed a Reply. The hearing occurred telephonically on May 21, 2015.[4] During the hearing the Arbitrator indicated his intent to grant the Respondent's motion. At the conclusion of the hearing the Arbitrator took the matter under submission.

The Arbitrator thereafter granted the Respondent's dispositive motion and issued an Interim Award on June 22, 2015.[5]

The Arbitrator retained jurisdiction in the Interim Award to determine the propriety of an award of costs and attorney fees to the Respondent as the prevailing party. Pursuant thereto, the Respondent Moved for an award of attorney fees and costs on August 10, 2015, the Claimant served her Opposition to the Respondents' Motion for Attorney Fees on August 25, 2015,[6] and the Respondent filed its Reply

---

[3] The Arbitration Agreement at page 2 provides "[t]he Arbitrator shall have the authority to entertain a motion to dismiss and/or a motion for summary judgment by any party and shall apply the standards governing such motions under the Federal Rules of Civil Procedure."

[4] The hearing was reported. The Arbitrator noted in the Interim Award at footnote 4 that the hearing was not reported. This was an error. The Respondent requested correction of the error on July 22, 2015 pursuant to JAMS Employment Arbitration Rules and Procedures, Rule 24(J). Given that the award at issue was an interim award, essentially a tentative ruling, the Arbitrator retained jurisdiction as a matter of law to make any corrections or substantive amendments to the award that Arbitrator were to have subsequently deemed appropriate.

[5] Though issued by the Arbitrator on June 22, 2015, JAMS delayed service of the Interim Award for administrative reasons until July 15,2015. On July 16, 2015 the Arbitrator granted a three-week extension and revised the deadlines for filing an application for attorney fees and costs contained in the Interim Award. Pursuant thereto the Respondent was given until August 10, 2015 to apply for an award of attorney fees and costs, the Claimant was given until August 24, 2015 to file and serve opposition, and the Respondent was given until August 31 to file and serve its Reply in support of its application for attorney fees and costs.

[6] The Claimant did not file its opposition with JAMS. The Arbitrator only received a copy of the opposition as an attachment, Exhibit D to the Declaration of Jocelyn M. Chan in Support of Respondent Pacific Bell Telephone Company's Reply Memorandum in Support of its Motion for Attorneys' Fees and Costs. The Opposition indicates it was signed on August 23, 2015. The proof of service establishes that it was served on August 25, 2015. The filing and service deadline was August 24, 2015. Notwithstanding the failure to file the opposition and its late service on the

3

on August 31, 2015.[7] In the Reply Claimant requests a total of $102,857.35 in attorney fees[8] and a total of $4,789.05 in costs for a total award of $107,646.40 in attorney fees and costs.[9] Respondent seeks recovery of its attorney fees on the ground that the Claimant prosecuted frivolous FEHA claims.

Respondent further seeks to recover its attorney fees from Claimant's counsel pursuant to 28 U.S.C. §1927 or the Arbitrator's inherent power as a sanction. The Application requested as alternative sanction a minimum award of $45,264.00 in attorney fees incurred in defense of the FEHA claims after the deposition of the Claimant, which deposition contained admissions that completely undermined any basis for her FEHA claims, making a continuation of the litigation by Claimant's counsel patently unreasonable. The Respondent seeks also to recover as a sanction the fees incurred for the preparation of the application. The Respondent alternatively requested $56,000.60 ($45,264.00 in attorney fees, $10,736.60 in fees for preparation of the application).

## II. The Dispositive Motion/Motion for Summary Judgment.

After full consideration of all memoranda of points and authorities submitted by the parties, all evidence and supporting declarations submitted by the parties, the arguments of counsel, and all other matters presented to this Court, and good cause appearing, the Arbitrator hereby grants the dispositive motion on all Claims contained in Claimant's Notice of Claim, for the following reasons:

### A. First Claim – Wrongful Termination in Violation of Public Policy

In her First Claim for Wrongful Termination in Violation of Public Policy, Ms. McKenzie alleges that her employment was terminated based on "disability discrimination, gender discrimination, retaliation, harassment, and unlawful labor practices." (Notice of Claim, ¶ 19). For the reasons discussed below at sections B through D, Ms. McKenzie's California Fair Employment and Housing Act (FEHA) discrimination and harassment claims fail as a matter of law.

---

Respondent, the Arbitrator has read and considered the substance of the opposition. The Claimant did not oppose the Respondent's request for costs.
[7] In its Reply the Respondent both objected to the consideration of the Claimant's opposition and replied to the arguments of the opposition.
[8] The Respondent requests an award of $92,120.75 in attorney fees for defense of the Claim and $10,736.60 for preparation of the application for attorney fees. The Respondent allocated only 50% of the attorney fees it incurred in defense of the Claimant's claims to the FEHA claims. The total fees incurred in defense of the action were $184,241.50.
[9] The Respondent's application for attorney fees and costs made the same request.

As to her retaliation claim, Ms. McKenzie's Notice of Claim is unclear what statute or constitutional provision she alleges was violated by what she now claims as retaliation. It is generally considered that Ms. McKenzie is alleging violations of the FEHA.[10] [*Turner v. Anheuser-Busch, Inc.* (1994) 7 Cal. 4th 1238, 1256-57 -- to state a claim, a plaintiff must show that his termination "violated a policy that is (1) fundamental, (2) beneficial for the public, and (3) embodied in a statute or constitutional provision."][11]

Ms. McKenzie's allegation of termination based on retaliation is evaluated under the same standards as a FEHA retaliation claim. It fails for the reasons a FEHA retaliation claim fails. [*Hanson v. Lucky Stores, Inc.* (1999) 74 Cal. App. 4th 215, 229 -- because Plaintiff's underlying FEHA claim fails, his claim for wrongful termination must also fail; *Jennings v. Maralle* (1994) 8 Cal. 4th 121, 136 -- holding that when an employer is not subject to liability under the FEHA, it is not subject to tortious discharge liability premised on the FEHA]

To make out a *prima facie* case for retaliation under the FEHA, Ms. McKenzie must demonstrate that: (1) she engaged in protected activity; (2) she was thereafter subjected by her employer to an adverse employment action; and (3) there is a causal connection between the protected activity and the adverse employment action. [*Flait v. N. Am. Watch Corp.* (1992) 3 Cal. App. 4th 467, 476; *Morgan v. Regents of the University of California* (2000) 88 Cal. App. 4th 42, 69. Ms. McKenzie does not meet this burden, as she has presented no evidence supporting either the first or third prongs of this test. Moreover, even if she had established a prima facie case, her claim would fail because under the burden shifting analysis applicable to a resolution of the Respondent's motion, Ms. McKenzie has no evidence of pretext. [*Chen v. County of Orange* (2002) 96 Cal. App. 4th 926, 948-49]

1. Ms. McKenzie did not engage in any FEHA protected activity.

Ms. McKenzie, who was a Manager Network Services (MNS) for Pacific Bell, did not engage in any FEHA protected activity. Under the FEHA, "protected activity" includes: (1) opposing activity that is expressly forbidden by FEHA, including discrimination, harassment or retaliation on the basis of a protected characteristic; and (2) participation in a proceeding or investigation regarding possible FEHA violations. [Cal. Gov. Code § 12940; *Villanueva v. City of Colton* (2008) 160 Cal. App. 4th 1188, 1198-99] Ms. McKenzie does not contend nor has she presented any evidence that either type of protected activity is at issue here.

---

[10] As is discussed below, the Arbitrator has also analyzed this claim as asserting a claim for termination in violation of public policy on the basis that she alleges she was terminated for having complained regarding a violation of the collective bargaining agreement controlling the work conditions of the employee who the employer desired to have removed from the bucket truck.
[11] Other conceivable allegations of retaliation would fail because Ms. McKenzie has not identified any statutory or constitutional policy implicated by her discharge, and violation of internal policies or provisions does not give rise to a wrongful termination claim. *Id.*

During her deposition, Ms. McKenzie testified that she believes that she was terminated because of the "bucket truck incident." (Tr. 217:20-218:21) One of Ms. McKenzie's technicians, Ricky Purvance, was out on disability leave in August/September 2012, and her supervisor, Rick Garcia, requested that she reassign Purvance's bucket truck to another technician. Ms. McKenzie objected to the request. However her objection had nothing to do with Purvance's alleged disability. (Tr. 221:3-222:4, 222:20-224:11) The undisputed evidence shows that Ms. McKenzie objected to Garcia's order because she thought it was "wrong" and "unfair," and because she believed Garcia's request stemmed from the fact that he "didn't like" Purvance.  (Tr. 221:16-222:4, 224:22-225:5, 228:6-229:5, 229:20-230:5)

Ms. McKenzie has offered no evidence that she complained to anyone about disability discrimination against Purvance (or anyone else) or did anything to suggest that her objection to transferring the truck was because she thought Garcia was discriminating based on disability.[12]  Under such circumstances, there is no FEHA protected conduct. In *Yanowitz v. L'Oreal USA, Inc.* (2005) 36 Cal. 4th 1028, the plaintiff claimed that she was retaliated against after she refused to comply with her male supervisor's directive to fire a female subordinate. In that lawsuit, the plaintiff claimed that she believed the directive was discriminatory based on gender because the male supervisor instructed her to fire the female subordinate on the basis of her appearance. The trial court disagreed and dismissed the plaintiff's retaliation claim, finding that the plaintiff had not engaged in protected conduct because she had never explicitly told her supervisor that she thought the directive was discriminatory. The California Supreme Court affirmed stating:

> [s]tanding alone, an employee's unarticulated belief that an employer is engaging in discrimination will not suffice to establish protected conduct for the purposes of establishing a *prima facie* case of retaliation, where there is no evidence the employer knew that the employee's opposition was based upon a reasonable belief that the employer was engaging in discrimination. [*Yanowitz*, 36 Cal. App. 4th at 1046]

Just as in *Yanowitz*, Ms. McKenzie did not articulate a belief that Garcia's request was unlawfully motivated or was based on a protected characteristic.  Rather, Ms. McKenzie's testimony is clear that she believed Garcia's motivation was based on the fact that Garcia "did not like" Purvance, stating that "the whole garage knew [...] that he did not care for Rick Proviance [sic]." (Tr. 221:16-222:4, 229:20-230:5) Ms. McKenzie has no evidence that she engaged in protected activity and fails to establish the first element of a *prima facie* case for retaliation.[13]

---

[12] Ms. McKenzie also admitted that although she was aware of a hotline for employees to call when they believed there was a violation of the EEO policy, she never called the hotline.  (Tr. 113:4-10, 114:24-115:4, 120:7-10)

[13] This testimony likewise contradicts her opposition to the motion asserting that she was terminated for opposing a transfer proscribed by a collective bargaining agreement. The only nexus she offers to the fact that she was terminated for having ostensibly objected to a violation of the

2.  Claimant Failed to Establish a Nexus or Causal Connection

Furthermore, even if Ms. McKenzie had evidence that she engaged in FEHA protected activity,[14] there is no evidence of a causal connection between that activity and her termination. The evidence shows that Ms. McKenzie had a long history of documented performance deficiencies and was on a Performance Improvement Plan (PIP) as of June 7, 2012. Garcia met with Ms. McKenzie regarding the PIP on August 2, 2012. That same day, Garcia believed that termination was appropriate and discussed the status of the PIP with Brigitte Timmons and Roger Odom from HR, stating that "Kim was still failing miserably as related to the msoc [sic] performance plan process." (Declaration of Brigitte Timmons ("Timmons Dec.") ¶ 16, Ex. F; Declaration of Rick Garcia ("Garcia Dec.") ¶ 25) Odom asked Garcia to provide copies of McKenzie's 2011 and 2012 performance reviews to HR, and on August 15, 2012, Timmons followed up with Garcia, stating that once the reviews were received, she would set up a call to discuss possible termination. (Timmons Dec. ¶ 17, Ex. G) Garcia provided these documents on September 4, 2012. (Garcia Dec. ¶ 27, Ex. S) Finally, a conference call was held on September 19, 2012 and, at that time, it was determined that McKenzie would be terminated for failure to successfully complete the PIP. (Timmons Dec. ¶ 19; Garcia Dec. ¶ 28)

All of these events occurred prior to the alleged "bucket truck incident." (See Tr. 212:5-212:14) Ms. McKenzie admitted that the first time she was instructed to take away Purviance's bucket truck and reassign it was September 20, 2012 – well after discussions regarding her termination were already underway, and after the decision to terminate her employment had been made already. (Tr. 454:10-454:25) There can be no retaliation where – as here – the events leading up to termination began prior to the alleged protected conduct. [Price v. Mulnomah County (D. Or. 2001) 132 F. Supp. 2d 1290, 1297 -- finding that plaintiff cannot make out prima facie case of retaliation when "the evidence overwhelming [sic] shows that plaintiff was on 'thin ice' with [his employer] long before he raised any issue of FMLA leave, and that despite [plaintiff's supervisor's] sustained effort to counsel and work with him, plaintiff's own performance problems, not any discrimination based on leave requests, ultimately resulted in his suspension and termination."] Ms. McKenzie has presented no evidence that establishes the third element of a prima facie case for retaliation – a nexus or causal connection between the protected activity and her termination.

3.  The Bucket Incident

The crux of McKenzie's wrongful termination claim is her allegation that she was

---

collective bargaining agreement is her assertion that the union later opposed the change in assignment to the bucket truck.
[14] The same analysis applies to her assertions regarding retaliation based on her having engaged in protected activity by her objection to a violation of the collective bargaining agreement.

terminated in retaliation for the "bucket truck incident."[15]   As with Ms. McKenzie's discrimination claims, this claim also fails. Ms. McKenzie has presented no evidence that she engage in protected activity based on union considerations other than her after the fact re-characterization of her motivation for objecting to the reassignment, a motivation that was not communicated contemporaneously to Pacific Bell.

Even if refusing to transfer the bucket truck were to constitute protected activity, Ms. McKenzie cannot establish a causal connection between this incident and her termination. The undisputed evidence establishes that the "bucket truck incident" occurred well after discussions regarding McKenzie's termination were underway and after the decision to terminate her employment had already been made. For this reason her retaliation claim fails as a matter of law. [*Price v. Mulnomah County* (D. Or. 2001) 132 F. Supp. 2d 1290, 1297 -- finding no retaliation where employee was on "thin ice" and had performance problems long before engaging in any sort of protected activity and, ultimately, was terminated].

Moreover as is discussed generally below Ms. McKenzie fails to establish a triable issue regarding pretext.

### 4.  Ms. McKenzie Has no Evidence of Pretext

Even if Ms. McKenzie had presented evidence supporting a *prima facie* case of retaliation, her claim would nevertheless fail because she has presented no evidence of pretext. [*Loggins v. Kaiser Permanente Int'l.* (2007) 151 Cal. App. 4th 1102, 1112; (2007) *Yanowitz* 36 Cal. 4th at 1042] The only evidence that Ms. McKenzie supporting a nexus between her termination and the "bucket truck incident" is the timing between that incident and her notification of termination. However, close proximity in time is not, as a matter of

---

[15] In her Opposition, Ms. McKenzie argues that she objected to Garcia's directive to remove the bucket truck from one employee and give it to another, based on a belief that the instruction violated the applicable Union Contract. (Opposition at 2:24-28) Indeed counsel in oral argument conceded that her case rises and falls on this sole allegation. Unfortunately Ms. McKenzie has presented no evidence that McKenzie's objection to Garcia's order had anything to do with concern about violation of a Union Contract. (Ms. McKenzie's Declaration makes no mention of any Union Contract]) On the contrary, McKenzie's sworn deposition testimony made clear that she objected to the order because she thought it was "wrong" and "unfair," not because it violated a Union Contract.  (*See* Tr. 228:22-229:1 ["Q. So it wasn't an issue about this transfer of the tool violating any policy or anything like that; it was really just an ethics of [sic] fairness issue, is that correct?  A. Yes, that's correct."]; Motion at 15:23-16:6) Even if there was evidence suggesting opposition to violation of the Union Contract (there is not), such argument would not help Ms. McKenzie in this instance because any such claim would be preempted and time barred pursuant to Section 301 of the Labor Management Relations Act ("LMRA").  29 U.S.C. § 185; 29 U.S.C. § 185(a); 29 U.S.C. § 160(b) (6-month statute of limitations); [*Kelecheva v. Multivision Cable T.V. Corp.*, 18 Cal. App. 4th 521, 528 (1993) -- holding that wrongful termination in violation of public policy claim of supervisor who alleged that he was discharged because he refused to participate in unlawful labor practices was "clearly preempted"]

law, sufficient to establish pretext. [*Loggins*, 151 Cal. App. 4th at 1112 -- evidence of temporal proximity alone is not enough to meet employee's burden "to show a triable issue of fact on whether the employer's articulated reason was untrue and pretextual."]

For all of these reasons, and because her underlying FEHA discrimination claims fail as a matter of law, the Arbitrator finds that Ms. McKenzie's Claim for Wrongful Termination in Violation of Public Policy must be dismissed.[16]

> B. Second Claim  -- Violations of FEHA (Cal. Govt. Code §§ 12940 *et seq.* [Disability])

To establish a *prima facie* case of discrimination under the FEHA, Claimant must show that: (1) she was a member of a protected class; (2) she was qualified for the position; (3) she suffered an adverse employment action; and (4) there were circumstances suggesting that the employer acted with an unlawful motive – *i.e.*, because of her alleged disability. [*Jones v. Dept. of Correct. & Rehab.* (2007) 152 Cal. App. 4th 1367, 1379] Claimant's admissions are dispositive of her claim of disability discrimination.  During her deposition, Claimant admitted that:

- No one at Pacific Bell ever said *or did* anything to her that suggested bias against her based on her disability (if any), or anything that led her to believe that her termination was based on her disability (if any).  (Tr. 122:21-123:9, 331:20-332:2, 332:16-19, 333:6-9, 505:17-506:1)

Moreover, when asked about her contentions regarding the termination of her employment, Ms. McKenzie testified to her belief that the only reason for her termination was because she refused to take away a bucket truck from one of her technicians.  (Tr. 217:20-218:21)  Given these admissions, McKenzie fails to present evidence supporting a *prima facie* claim of disability discrimination and her Second Claim against Pacific Bell fails.

Additionally, Ms. McKenzie's Second Claim fails because Pacific Bell articulated a legitimate, non-discriminatory reason for McKenzie's termination – her poor performance and failed PIP – and Ms. McKenzie presented no evidence supporting a finding of pretext. [*Yanowitz*, 36 Cal. 4th at 1042; *Guz v. Bechtel Nat'l, Inc.* (2000) 24 Cal. 4th 317, 354-55; *McDonnell Douglas Corp. v. Green* (1973) 411 U.S. 792, 802-04]

---

[16] To the extent McKenzie alleges that Philana Grayson, her former supervisor, retaliated against her, such claim also fails.  Any conduct by Grayson is time barred since it occurred – if at all – prior to February 2011.  (*See* Tr. 386:7-11, 387:16-389:5, 451:1-453:9, Ex. 37).  Moreover, there is no evidence that Grayson was involved in any way in the decision to terminate McKenzie's employment. (*See* Declaration of Philana Grayson ("Grayson Dec.") ¶ 8)

The facts are undisputed. In the nineteen months – from February 2011 to September 2012 – that McKenzie worked in Stockton under Rick Garcia, she was placed on one Action Plan, two Pre-Performance Improvement Plans (Pre-PIP), and one PIP – all for the same issues: completing Demonstrated Performance Capability checklists (DPCs), Safeties and Qualities, holding performance discussions with technicians, and documenting the discussions in WebAdd – and she repeatedly failed to meet the expectations set forth in those plans. Furthermore, McKenzie admits that Garcia, met with her regularly – at least 24 times – during the course of the four plans to go over the objectives and help her improve. Despite all of this, McKenzie's performance remained subpar and stagnant. Even after more than a year of focusing on the same goals and expectations, the evidence establishes that she failed to complete the requisite Safeties and Qualities, failed to complete the DPCs, failed to hold the required performance discussions with her technicians, and failed to record discussions properly in WebAdd – all tasks that were required of MNSs.

The law is clear that where, as here, an employer presents evidence of a non-discriminatory reason for its actions, "the presumption of discrimination disappears" and the burden switches to the plaintiff to show that "the employer's proffered reasons [are] pretexts for discrimination." [*Guz* 24 Cal. 4th at 356] As explained by the Court of Appeal in *Morgan v. Regents of the University of California*:

> An employee in this situation can not [*sic*] simply show the employer's decision was wrong, mistaken, or unwise. Rather, the employee must demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder *could* rationally find them unworthy of credence, and hence infer that the employer did not act for the [… asserted] non-discriminatory reasons. [88 Cal. App. 4th 52, 75 (2000) (internal quotations and citations omitted) (emphasis in original)]

Not only must the plaintiff's evidence be "specific" and "substantial" in nature, but it also "must relate to the motivation of the decision makers to prove, by nonspeculative evidence, an actual causal link between prohibited motivation and termination." [*King v. United Parcel Serv., Inc.* (2007) 152 Cal. App. 4th 426, 433-34; *Horn v. Cushman & Wakefield Western, Inc.* (1999) 72 Cal. App. 4th 798, 807, 817 -- plaintiff must have "specific, substantial evidence" that employer's non-discriminatory reason for termination was pretextual] Ms. McKenzie admitted in deposition, she has no evidence of pretext, much less specific and substantial evidence. Her Second Claim fails for this reason.

Finally, although not articulated in McKenzie's Notice of Claim, to the extent she alleges disability harassment, she has no evidence of any harassing conduct, much less conduct that was "ever enough or sufficiently pervasive to alter the conditions of employment and create a work environment that qualifies as hostile or abusive to employees because of their [disability]." [*Miller v. Dept. of Correct.* (2005) 36 Cal. 4th 446, 462]

For all of these reasons, the Arbitrator finds that Ms. McKenzie's Second Claim for disability discrimination and/or harassment in violation of the FEHA must be dismissed dismissed.

C.   Third Claim – Violations of FEHA (Cal. Govt. Code §§ 12940 *et seq.* [Gender])

As with Ms. McKenzie's claim for disability discrimination, her Third Claim for gender discrimination in violation of the FEHA must be dismissed.  Ms. McKenzie has no evidence of any gender discrimination and she admitted that:

- No one at Pacific Bell ever said *or did* anything to her that suggested bias against her based on her gender, or anything that led her to believe that her termination was based on her gender.  (Tr. 330:15-18, 331:16-19, 332:12-15, 333:2-5, 505:15-22)

Given this admission, Ms. McKenzie is unable to present any evidence supporting a *prima facie* claim of gender discrimination and her Third Claim against Pacific Bell fails.  Moreover, as discussed above, Pacific Bell had a legitimate, non-discriminatory reason for McKenzie's termination – her poor performance and her failure to complete the PIP – and Ms. McKenzie has no evidence of pretext.

Finally, to the extent Ms. McKenzie alleges harassment on the basis of gender in her Third Cause of Action, she has presented no evidence of any conduct or treatment because of her gender that would create a hostile or abusive work environment. [*Miller*, 36 Cal. 4th at 462] For all of these reasons, the Arbitrator finds that Ms. McKenzie's Third Claim for gender discrimination and/or harassment in violation of the FEHA must be dismissed.

D.   Fourth Claim – Age Discrimination in Violation of Cal. Govt. Code § 12940, *et seq.*

As with her disability and gender discrimination claims, Ms. McKenzie's Fourth Claim for age discrimination in violation of the FEHA must be dismissed.  As with her other claims, McKenzie has no evidence of any age discrimination and, in addition, admitted that:

- Her age did not play any role in any personnel decision regarding her employment with Pacific Bell.  (Tr. 330:11-14, 330:19-331:15, 332:3-6, 332:20-333:1, 506:2-9, 507:1-509:24)

Ms. McKenzie failed to present any evidence supporting a *prima facie* claim of age discrimination and her Fourth Claim against Pacific Bell fails. Furthermore, Pacific Bell articulated a legitimate, non-discriminatory reason for Ms. McKenzie's termination – her poor performance and failure to complete the PIP – and Ms. McKenzie has presented no evidence of pretext.  Finally, to the extent Ms. McKenzie alleges harassment on the basis of age in her Fourth Claim, she has presented no evidence that any age-related comments that were made were "severe enough or sufficiently pervasive to alter the conditions of [her] employment". [*Miller*, 36 Cal. 4th at 462]  For all of these reasons, the Arbitrator finds that Ms. McKenzie's Fourth Claim for age discrimination and/or harassment in violation of the FEHA must be dismissed.

### E. Fifth Claim – Intentional Infliction of Emotional Distress (IIED)

As an initial matter, Ms. McKenzie's allegations of IIED are barred by the exclusivity provisions of the California Workers' Compensation statute, California Labor Code section 3600, *et seq.* because her emotional distress was caused by the treatment she received during her employment with Pacific Bell. [*Cole v. Fair Oaks Fire Protection Dist.* (1987) 43 Cal. 3d 148, 160]  As explained by the court in *Shoemaker v. Myers* (1990) 52 Cal. 3d 1, 17-20, the Workers' Compensation statute preempts all IIED claims to the extent they are based on conduct that is a "normal part" of the employment relationship, "even if such conduct may be characterized as intentional, unfair or outrageous." Thus, Ms. McKenzie's IIED claims, which stem from her termination, are barred by Section 3600.

Notwithstanding the Workers' Compensation preemption, to establish a claim for IIED, Ms. McKenzie must show that Pacific Bell intentionally subjected her to extreme or outrageous conduct and that the conduct caused her to have severe emotional distress within two years of filing her Complaint. [*Hughes v. Pair* (2009) 46 Cal. 4th 1035, 1050-51 -- conduct must be "so extreme" as to "exceed all bounds of that usually tolerated in a civilized community"; Cal. Code Civ. Proc. § 335.1]

Courts have held that "[o]utrageousness is an objective standard applied to actual conduct" and that "[l]iability does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities." [*Fowler v. Varian Assoc., Inc.* (1987) 196 Cal. App. 3d 34, 45; *Cochran v. Cochran* (1996) 65 Cal. App. 4th 488, 496] Moreover, termination does not constitute outrageous conduct. [*Ankeny v. Lockheed Missiles & Space Co.* (1979) 88 Cal. App. 3d 531, 536-37 -- allegations of wrongful termination, verbal abuse and harassment held insufficient; *Heller v. Pillsbury Madison & Sutro* (1996) 50 Cal. App. 4th 1367, 1389 -- "[T]he distress of being terminated does not by itself give rise to a viable emotional distress cause of action."] Ms. McKenzie has no evidence of extreme or outrageous conduct.  Furthermore, McKenzie admits that she has not seen any psychiatrist, psychologist or therapist of any sort related to her symptoms of emotional distress, which indicates that she has not suffered any severe emotional distress. (See Tr. 485:8-16, 486:12-17)  For these reasons, the Arbitrator finds that Ms. McKenzie's Fifth Claim for intentional infliction of emotional distress must be dismissed.

F. Harassment

While discussed in relation to other Claims above, the Arbitrator finds it appropriate to address more generally the question of whether Ms. McKenzie has any evidence relating to harassment.[17] To establish a claim for harassment, Ms. McKenzie must prove unwelcome conduct based on her disability, gender or age, or based on having engage in protected activity that is "sufficiently severe or pervasive to alter the conditions of her employment and create an abusive working environment." [Cal. Gov. Code § 12940(j)(1)]

The prohibition of harassment "forbids only behavior so objectively offensive as to … create a hostile or abusive work environment." [*Lyle v. Warner Bros. Tel. Prods* (2006). 38 Cal. 4th 264, 282-83]  McKenzie produced no evidence to satisfy this burden. Ms. McKenzie's Declaration contains only vague and conclusory statements. In her Declaration she alleges that "Rick [Garcia] yelled at [her], Rick called [her] at home, Rick was very abusive and threatening to fire all [*sic*] the time." (McKenzie Declaration ¶¶ 3-4, 18-19, 21) Unfortunately this evidence is insufficient to establish a *prima facie* case of harassment under California Government Code section 12940(j).

Most critically, Ms. McKenzie has presented no evidence that any yelling, calling her at home, abuse, or threats that she attributes to Garcia were based on her disability, gender, age, or her having engaged in any protected activity.  In fact, Ms. McKenzie admits that Garcia was "nasty to everybody". (Tr. at 456:14-17)  Along these same lines, in her declaration, Ms. McKenzie states that Garcia's "method of operation is to yell and scream!" (McKenzie Declaration ¶ 22)  Furthermore, Ms. McKenzie admitted that no one at Pacific Bell ever did or said anything to her based on her disability or gender, and that Garcia only made "probably four" comments related to her age (all of which consisted of statements along the lines of "[h]ow many years you got?").  Given these admissions, Garcia's alleged conduct toward Ms. McKenzie – even if it occurred on a regular basis – is not based on any protected characteristics or her having engaged in protected activity.[18]  Because "[h]arassment, like discrimination, occurs only where an employee is treated differently and that difference was based on his [protected characteristic]," there can be no finding of harassment based on the circumstances alleged here. [*Nielsen v. Trofholz Technologies, Inc.* (E.D. Cal. 2010) 750 F. Supp. 2d 1157, 1169 -- finding no disability harassment because plaintiff failed to show that he was treated any differently than non-disabled employees]

---

[17] The claim as articulated by Ms. McKenzie is somewhat akin to her claim for intentional infliction of emotional distress, discussed hereafter.

[18] Furthermore, even if the alleged conduct by Garcia occurred, it did not constitute verbal harassment. *See* Cal. Code Regs., tit. 2, § 11019(b)(1)(A) (examples of verbal harassment include "epithets, derogatory comments or slurs on a basis enumerated in the [FEHA]").  The McKenzie Declaration alleges only generalized yelling and "abuse" by Garcia, none of which constitutes an epithet, derogatory comment or slur.  And McKenzie makes no allegations of any sort of physical harassment.

The FEHA does not operate as a "general civility code." [*Cozzi v. County of Marin* (N.D. Cal. 2011) 787 F. Supp. 2d 1047, 1070; *Faragher v. City of Boca Raton*, (1998) 524 U.S. 775, 788 --Title VII is not a "general civility code"; *Lyle*, 38 Cal. 4th at 295] Thus, even when a supervisor's conduct includes regular screaming, slamming doors, making threatening gestures, personal attacks, and anger, this still is not sufficient to raise a triable issue of harassment under the FEHA or other public policy when there is no evidence that such conduct was based on a protected characteristic, or based on her having engaged in protected activity. [*Cozzi*, 787 F. Supp. 2d at 1070] Like the harassment claims of the plaintiff in *Cozzi*, Ms. McKenzie's harassment claims fails – among other reasons – because the FEHA and public policy does not protect against a supervisor's uncivil "method of operation."

Finally, whether an environment is hostile or abusive can be determined "only by looking at all the circumstances [including] the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." [*Lyle*, 38 Cal. 4th at 283] Merely "offensive comments" in the workplace are not actionable. [*Id.*] Ms. McKenzie has presented no evidence that any of the alleged conduct was severe, pervasive, physically threatening or humiliating, or that it unreasonably interfered with her work performance. Indeed, Ms. McKenzie's deposition admissions are dispositive. As explained previously, she testified under oath that no one at Pacific Bell ever said anything to her based on her disability or gender.[19] Ms. McKenzie also admitted that there were only "probably four" comments made to her by Garcia regarding her age, that all occurred in approximately "the last year" of her employment, and that all were along the lines of asking "[h]ow many years you got?" or saying "[y]ou know, you older people need to focus, focus, focus". These isolated incidents are neither "frequent" enough, nor "severe" enough, to give rise to a claim of harassment. [*Fisher v. San Pedro Peninsula Hospital* (1989) 214 Cal. App. 3d 590, 613 -- "if only a couple of acts occurred during the one year preceding the filing of the complaint, then [plaintiff] cannot properly plead a claim for … harassment."] Moreover, where – as here – there are only a few incidents of allegedly harassing conduct, the plaintiff must show that the conduct was "severe in the extreme." [*Herberg v. California Institute of the Arts* (2002) 101 Cal. App. 4th 142, 151; *Hughes v. Pair* (2009) 46 Cal. 4th 1035, 1043] The alleged comments fail as a matter of law in meeting that requisite standard.

Only Ms. McKenzie's conclusory statements to the contrary [*see, e.g.*, McKenzie Declaration ¶ 4], serve to establish that any "yelling" or "screaming" was based on a protected characteristic, or that her work environment was hostile or abusive, and any claims

---

[19] The McKenzie Declaration attempts to insinuate that the conduct attributed to Garcia – *i.e.*, "Rick yelled at me, Rick called me at home, Rick was very abusive and threatening to fire [*sic*] all the time" – was because of McKenzie's lupus condition. (*See* McKenzie Declaration ¶¶ 18-19) These statements must be disregarded as a "sham declaration" because they are directly contrary to her sworn deposition testimony. (Tr. 505:23-506:1 ["Q: Did [Garcia] ever say anything to you that suggested to you that he was biased or against you because of any disability or medical condition? A: No."]) *See Block v. City of Los Angeles*, 253 F.3d 410, 419 fn. 2 (9th Cir. 2001).

14

for harassment under the FEHA therefore fail as a matter of law. [*Lyle*, 38 Cal. 4th at 283]

G. Claim for Punitive Damages

Under California law punitive damages are available only "where it is proven by clear and convincing evidence that defendant has been guilty of oppression, fraud or malice." [Cal. Civ. Code § 3294(a)] Ms. McKenzie has presented no evidence that anyone employed by Pacific Bell acted with the requisite malice, oppression or fraud to justify an award of punitive damages.

Furthermore, for corporate defendants like Pacific Bell to be liable for punitive damages, a plaintiff must prove that the "act of oppression, fraud or malice [was] on the part of an officer, director or managing agent of the corporation." [Cal. Civ. Code § 3294(b)] The term "managing agent" "include[s] only those corporate employees who exercise substantial independent authority and judgment in their corporate decision making so that their decisions ultimately determine corporate policy." [*White v. Ultramar, Inc.* (1999) 21 Cal. 4th 563, 566-67. The only individuals Ms. McKenzie alleges behaved unlawfully toward her are Rick Garcia, Philana Grayson and Gary Hardesty, none of whom was or is an officer, director or managing agent of Pacific Bell. (Tr. 325:13-326:4; Garcia Dec. ¶ 3; Grayson Dec. ¶ 3; Declaration of Gary Hardesty ¶ 3) On the contrary, it is undisputed that these individuals had a limited scope of authority, did not establish (or have the authority to create) corporate policy, and did not set the direction of Pacific Bell's operations, business strategy or otherwise direct Pacific Bell's processes. (*Id.*) Thus, the Arbitrator finds that Ms. McKenzie cannot recover punitive damages and that her claim for punitive damages must be dismissed.

G. Summary

The undisputed evidence in this case shows that Ms. McKenzie was not terminated because of her disability (if any), gender, age, or in retaliation for complaining about the "bucket truck incident." In short there is not evidence to establish a causal connection or nexus between any protected status or protected activity and her termination. Rather, the evidence establishes that Ms. McKenzie's employment was terminated because of her performance, which failed to meet Pacific Bell's standards for over a year and a half and which did not improve satisfactorily despite repeated informal and formal performance improvement plans. Ms. McKenzie has introduced no evidence to the contrary and fails to establish that the employer's articulated basis for her termination was pretextual. As such, and for the reasons discussed above the Arbitrator finds that Ms. McKenzie has not presented any evidence establishing triable issues of material fact regarding any of her claims and that each claim fails as a matter of law, and must accordingly be dismissed. The Arbitrator therefore finds that there is no basis for conducting an evidentiary hearing regarding the propriety of her termination and grants Pacific Bell's dispositive motion in its entirety.

### III. Administrative Fees and Costs

Pursuant to the terms of the arbitration agreement and applicable law, Respondent Pacific Bell is not entitled to recover the administrative fees and expenses of JAMS, or the compensation and expenses of the Arbitrator.

### F. Attorney Fees and Cost

The California Arbitration Act and JAMS Employment Arbitration Rules and Procedures Rule 24 (g) entitle the prevailing party to recover costs and expenses incurred in the arbitration from the non-prevailing party including Arbitration fees and Arbitrator compensation and expenses unless such is prohibited by the Parties' agreement or applicable law. The JAMS Employment Arbitration Rules and Procedures Rule 24(f) provide that the Arbitrator may allocate attorney fees if allowed by applicable law. Applicable law prohibits the recovery of Arbitration fees and the Arbitrator's compensation and expenses from the Claimant.

The Arbitrator finds that Respondent is the prevailing party. The Respondent has established that applicable law permits an award of attorney fees if a claimant prosecutes frivolous FEHA claims. [*Flannery v Prentice* (2001) 26 Cal.4th 572, 585 – Government Code §12965(b) permits an award of reasonable attorney fees and costs in FEHA actions for prosecution of frivolous actions] Claimant's claims were factually unsupported and groundless since their inception, as is evident from the analysis above, and Ms. McKenzie necessarily knew that prior to the commencement of the action. Ms. McKenzie's obstinate pursuit of her FEHA claims, which formed the foundation for her entire action, forced the Respondent to incur significant and unnecessary costs, entitling the Respondent to a recovery of its reasonable attorney fees and costs.[20]

Therefore an award of attorney fees in the amount of $107,646.40 ($92,120.75 reasonable attorney fees, $10,736.60 fees incurred for preparation of the application for fees and costs, and costs of $4,789.05) is fair and appropriate.

Respondent established that at the latest, McKenzie's counsel knew that such claims were frivolous when McKenzie testified at her deposition to having no evidence of bias or unlawful acts on the basis of gender, age, or any alleged disability authorizing an award of attorney fees in this case.[21] Continued prosecution of the FEHA claims was reckless and justifies an award of a sanction in the alternative amount of $45,264.35[22] as requested by the Respondent. While counsel had an obligation to investigate the claim, it is not clear that

---

[20] There is no question that the Respondent's attorney's fee request is reasonable, comprising a request for only half of the fees incurred in defense of the action.

[21] Indeed counsel essentially abandoned the FEHA claims in his opposition to the Respondent's dispositive motion.

[22] This sum is half the attorney fees incurred in defense of the action following the Claimant's deposition.

counsel had the same knowledge of the baselessness of the FEHA claims as the client at inception, and that the filing was frivolous. Nevertheless counsel clearly had knowledge of the baselessness of the FEHA claims following the Claimant's deposition and had an obligation not to pursue those claims further.

**IV. Conclusion**

Accordingly, it is hereby declared that Claimant shall recover nothing from the Respondents.

Respondent's application for attorney fees and costs is granted. Respondent shall accordingly recover $107,646.40 from the Claimant. Respondent shall recover from the Claimant's counsel, Timothy McCandless, the sum of $45,264.35. Ms. McKenzie shall be credited with any sums collected from Mr. McCandless.


DATE:        October 7, 2015



HON. DAVID A. GARCIA (RET.)

## PROOF OF SERVICE BY EMAIL & U.S. MAIL

Re: McKenzie, Kim vs. AT&T Services Inc.
Reference No. 1100075003

I, Charron Johnson, not a party to the within action, hereby declare that on  October 07, 2015 I

served the attached FINAL AWARD on the parties in the within action by Email and by depositing true copies

thereof enclosed in sealed envelopes with postage thereon fully prepaid, in the United States Mail, at San

Francisco, CALIFORNIA, addressed as follows:

Timothy McCandless Esq.
L/O Timothy McCandless
820 Main St.
Martinez, CA  94553
Phone: 925-957-9797
tim@prodefenders.com
    Parties Represented:
    Kim McKenzie

Mr. Jerome Clay
5665 N. Pershing Ave.
Suite B3
Stockton, CA  95207
Phone: 209-603-9852
jclay@g1fs.net
    Parties Represented:
    Kim McKenzie

Lisa C. Hamasaki Esq.
Jocelyn M. Chan Esq.
Miller Law Group
111 Sutter Street
Suite 700
San Francisco, CA  94104
Phone: 415-464-4300
lch@millerlawgroup.com
jchan@millerlawgroup.com
    Parties Represented:
    AT&T Services Inc.

I declare under penalty of perjury the foregoing to be true and correct. Executed at San Francisco,

CALIFORNIA on  October 07, 2015.

Charron Johnson
cjohnson@jamsadr.com

**Attachment 10g**

The Arbitrator's Award in *Kim McKenzie v. Pacific Bell Telephone Co.*, JAMS Reference No. 11000750003, dated October 7, 2015, grants Respondent Pacific Bell's dispositive motion in its entirety and orders that McKenzie shall recover nothing from Pacific Bell.

The Arbitrator's Award further orders that Pacific Bell's application for attorneys' fees and costs (filed in JAMS Case No. 11000750003) is granted.   Pursuant to the Arbitrator's Award, Pacific Bell is to recover $107,646.40 from McKenzie.  Furthermore, Pacific Bell is to recover from McKenzie's counsel, Timothy McCandless, the sum of $45,264.35.  McKenzie shall be credited with any sums collected from McCandless.

4849-4568-6057, v. 1

EXHIBIT 18

FILED

16 JAN 11  PM 3: 08

ROSA JUNQUEIRO. CLERK

BY **ROCIO PIMENTEL**
DEPUTY

1  Lisa C. Hamasaki (SBN 197628)
    lch@millerlawgroup.com
2  Jocelyn M. Chan (SBN 267937)
    jchan@millerlawgroup.com
3  MILLER LAW GROUP
    111 Sutter St., Suite 700
4  San Francisco, CA 94104
5  Tel. 415-464-4300
    Fax 415-464-4336
6
7  Attorneys for Respondent
    AT&T SERVICES, INC. and
8  PACIFIC BELL TELEPHONE COMPANY
9
10
11              SUPERIOR COURT OF CALIFORNIA
12                 COUNTY OF SAN JOAQUIN
13
14  KIM MCKENZIE, an individual,          Case No. 39-2015-00323837-CU-WT-STK
15                                         THIS CASE HAS BEEN ASSIGNED TO
           Plaintiff,                      JUDGE LINDA LOFTHUS IN
16                                         DEPARTMENT 11 FOR ALL PURPOSES
                                           INCLUDING TRIAL
17  v.
                                           **NOTICE OF ENTRY OF ORDER ON**
18  AT&T SERVICES, INC., A CALIFORNIA      **NOTICE OF RELATED CASES**
    CORPORATION, PACIFIC BELL
19  TELEPHONE COMPANY; and DOES 1
    through 50, inclusive,                 Complaint filed: April 10, 2015
20
21         Defendants.
22
23
24         PLEASE TAKE NOTICE that on December 28, 2015, the Honorable Linda L.
25  Loftus, Judge of the Superior Court of California, County of San Joaquin, entered an Order
26  on Notice of Related Cases, CRC 3.300(h) ("Order"). Pursuant to the Order, Case No. 39-
27  2015-00323837 (CV-3155) and Case No. STK-CV-UAW-2015-0010981, both pending in the
28  Superior Court of California, County of San Joaquin, have been related and assigned to

BY FAX

1 │ Department 11. In addition, the related cases are set for Case Management Conference on

2 │ February 4, 2016 in Department 11 at 8:30 a.m. A true and correct copy of the Order is

3 │ attached hereto as Exhibit A, and incorporated into this notice by Reference.

4 │

5 │ Dated: January 11, 2016                          MILLER LAW GROUP

6 │                                                  A Professional Corporation

7 │

8 │                                           By: _Joelyn Chan_____

9 │                                                  Lisa C. Hamasaki

10 │                                                 Jocelyn M. Chan
   │                                                 Attorneys for Respondent
   │                                                 PACIFIC BELL TELEPHONE COMPANY

11 │

12 │ 4821-7185-5660, v. 1

13 │

14 │

15 │

16 │

17 │

18 │

19 │

20 │

21 │

22 │

23 │

24 │

25 │

26 │

27 │

28 │

MILLER LAW GROUP
A PROFESSIONAL CORPORATION
CALIFORNIA

# EXHIBIT A

Filed   DEC 28 2015
ROSA JUNQUEIRO, CLERK

By _Rita L. _____ DEPUTY

SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN JOAQUIN

Plaintiff/Petitioner: Pacific Bell Telephone Company )
                                                    )

**ORDER ON NOTICE OF RELATED CASES, CRC 3.300(h)**

Defendant/Respondent: Kim McKenzie )

Case No. 39-2015-00323837 (CV-3155)

Case No. STK-CV-UAW-2015-0010981

1. All Unlimited Civil cases have been  filed in the Superior Court of California, County of San Joaquin:

    ☒  The above listed cases are ordered related and are assigned to Department __11__ .

    ☐  The cases are not ordered related.

2. All Limited Civil cases have been filed in Superior Court of California, County of San Joaquin:

    ☐  The cases are ordered related and assigned to Department _____ .

    ☐  The case are not ordered related.

3. All Limited and Unlimited Civil cases filed in Superior Court of California, County of San Joaquin:

    ☐  The cases are ordered related and assigned to Department _____ .

    ☐  The cases are not ordered related.

4. Pursuant to a Motion to have the Cases Related having been heard on _____ in Dept. _____ the cases are:

    ☐  Ordered related and assigned to Department _____ .

    ☐  Not ordered related.

5. **NOTICE:** Counsel for _Pacific Bell Tele Co._ is directed to file Notice of this order in all pending cases and serve a copy on all parties.

6. **CASE MANAGEMENT:** The related cases are set for Case Management Conference on _2/4/16_ in Dept. _11_ at _8:30_ a.m.

    All previously set Case Management Conferences are dropped.

DATED: _12/28/15_

_____
Judge of the Superior Court

LINDA L. LOFTHUS

| CASE TITLE: Kim Mckenzie vs. AT&T Services, Inc. a California Corporation | CASE NUMBER: STK-CV-UWT-2015-0003155 |
|---|---|

## CLERK'S CERTIFICATE OF MAILING

I certify that I am not a party to this cause. I certify that a true copy of the order on notice of related cases was mailed following standard court practices in a sealed envelope with postage fully prepaid, addressed as indicated below. The mailing and this certification occurred at Stockton, California, on 01/06/2016.

By: <u>Rita Gomez</u>, Deputy Clerk

Timothy Lee McCandless
26875 Calle Hermosa Ste A
Capistrano Beach CA 92624

Lisa C. Hamasaki
111 Sutter Street, Suite 700
San Francisco CA 94104

i

**PROOF OF SERVICE**

I, Brandilynn Thomas, declare that I am employed at Miller Law Group, A Professional Corporation, whose address is 111 Sutter Street, Suite 700, San Francisco, CA 94104; I am over the age of eighteen (18) years and am not a party to this action. On the below date, by the method noted below, I served the following document(s):

- **NOTICE OF ENTRY OF ORDER ON NOTICE OF RELATED CASES**

on the interested parties in this action by placing a true and correct copy thereof, enclosed in a sealed envelope addressed as follows:

Timothy L. McCandless, Esq.                    Attorney for Plaintiff: *Kim McKenzie*
Law Office of Timothy L. McCandless
26875 Calle Hermosa, Ste. A
Capistrano Beach, CA 92624

Tel: (925) 957-9797
Fax: (925) 957-9799
Email: mccandlesslaw@gmail.com

☒      **BY MAIL:** By placing a true copy thereof enclosed in a sealed envelope with postage thereon fully prepaid, in the ordinary course of business for collection and mailing on this date at Miller Law Group, 111 Sutter Street, Suite 700, San Francisco, CA 94104. I declare that I am readily familiar with the business practice of Miller Law Group for collection and processing of correspondence for mailing with the United States Postal Service and that the correspondence would be deposited with the United States Postal Service that same day in the ordinary course of business.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on January 11, 2016 at San Francisco, California.

Brandilynn Thomas

EXHIBIT 19

Timothy L. McCandless, Esq.SBN 147715
Law Office of Timothy L. McCandless, Esq.
820 Main Street, Suite 1
Martinez, CA 94553
Tel: (925) 957-9797
Fax: (925) 957-9799
Email: mccandlesslaw@gmail.com

*Attorney for Plaintiff*
Kim McKenzie

FILED

2015 APR 10 PM 12:07

DEPUTY

#435.00
#394034

SUPERIOR COURT FOR THE STATE OF CALIFORNIA
IN AND FOR THE COUNTY OF SAN JOAQUIN – STOCKTON COURTHOUSE
UNLIMITED CIVIL CASE

KIM MCKENZIE, an individual,                    Case No.: 39-2015-00323837-CU-WT-STK

PLAINTIFF,                                       **PLAINTIFF COMPLAINT FOR:
                                                 WRONGFUL TERMINATION**
vs.

AT&T SERVICES, INC., A CALIFORNIA               **DEMAND FOR JURY TRIAL**
CORPORATION, PACIFIC BELL
TELEPHONE COMPANY; and DOES 1
through 50, inclusive,                           THIS CASE HAS BEEN ASSIGNED TO
                                                 JUDGE LINDA L. LOFTHUS IN
DEFENDANTS.                                      DEPARTMENT 11 FOR ALL PURPOSES.

        COMES NOW Plaintiff KIM MCKENZIE (hereinafter referred to as "Plaintiff") and by

and through her attorney, submits this complaint against Defendants, AT&T Services, Inc., a

California corporation, PACIFIC BELL TELEPHONE COMPANY; and DOES 1 through 50,

inclusive (hereinafter referred to as "Defendant") whereby she seek damages based on actions

and omissions under color of law, including discrimination, harassment, and retaliation, which

operated to deprive Plaintiff of rights secured to her under the laws of the great State of

California.

Complaint for Wrongful Termination, etc. - 1

**PARTIES**

1. Plaintiff is over the age of 50 years old at all relevant times herein, and residents of the State of California.

2. At all relevant times, Plaintiff was employed by Defendant and or their I Subsidiaries.

3. At all times relevant to the allegations in this Complaint, Defendant operated in San Joaquin, California.

4. At all times mentioned herein, Plaintiff was an employee within the meaning of the California Fair Employment and Housing Act ("FEHA") (Government Code § 12940 et seq.), and Plaintiff was an employee within the meaning of the Act.

5. At all times mentioned in the causes of action into which this paragraph is incorporated by reference, each and every Defendant was the agent or employee of each and every other Defendant.

6. In doing the things alleged in the causes of action into which this paragraph is Incorporated by reference, each and every Defendant was acting within the course and scope of this agency or employment and was acting with the consent, permission, and authorization of each remaining Defendant.

7. All actions of each Defendant alleged in the causes of action into which this paragraph is incorporated by reference were ratified and approved by the officers or managing agents of every other Defendant.

8. The following is based on information and belief, Defendant is a Delaware Corporation with its principal place of business in Dallas, Texas. It is one of the 25 largest companies in the world as well as the largest telephone company in the United States.

**JURISDICTION AND VENUE**

9. Plaintiff hereby incorporates all of the preceding paragraphs, as though fully set forth Herein.

Timothy L. McConnifree, Esq ESN 147715
Law Offices of Timothy L. McConniffree, Esq.
1220 Main Street, Suite 1
Martinez, CA 94553

Complaint for Wrongful Termination, etc. - 2

1    10. This is an action based upon Plaintiff's employment claims which include, discrimination,

2         harassment, and retaliation, violations of the Family Medical Leave Act, wrongful

3         termination, in violation of public policy, under Common Law and California Labor Code

4         Housing Act ("FEHA") and California Government Code § 12900, et seq., the California

5         Family Rights Act ('CFRA"), California Government Code § 12945, et seq., and California

6         Labor Code § 1102.5, and inter alia. Thus, this Court has jurisdiction.

7    11. This Court has personal jurisdiction over Defendant because Defendant operates their

8         business in the City and County of San Joaquin, California, in Stockton, Ca

9    12. The discrimination, harassment, retaliation and other claims complained of herein

10        occurred in the City of County of San Joaquin, California, in Stockton, Ca.

11   13. Venue is proper because the claims which include, among others charges, discrimination,

12        harassment, wrongful termination and retaliation complained of herein occurred in the City

13        and County of San Joaquin, California, in Stockton, Ca. Defendant operate their business

14        within the City and County of San Joaquin, California, in Stockton, Ca.

15                           **EXHAUSTION OF ADMINISTRATIVE REMEDIES**

16   14. Plaintiff has exhausted her administrative remedies. The complaint was filed within one

17        year of the discrimination, harassment, retaliation and other employment practices

18        described in this complaint.

19   15. Plaintiff received Right to Sue Notices from the Department of Fair Employment and

20        Housing (DEFH) and The Equal Employment Opportunity Commission ("EEOC").

21                               **PROCEDURAL PREREQUISITES**

22   16. On or about May, 2013 Plaintiff filed a charge of discrimination against Defendant with

23        The Equal Employment Opportunity Commission ("EEOC").

24   17. More than sixty days have elapsed since plaintiff filed her charge with the EEOC.

25   18. EEOC filed a dual charge with the California Department of Fair Employment & Housing

26        (DEFH).

27

28

Timothy L. McCandless. Esq. SBN 147715
Law Office of Timothy L. McCandless, Esq.
220 Main Street, Suite 1
Martinez, CA 94553

Complaint for Wrongful Termination, etc. - 3

19. DEFH issued a Right to Sue letter on June 10th, 2013 which has a statute of limitation of one (1) year. However, the Statute is tolled for ninety (90) days once the EEOC right to sue letter is issued.

20. EEOC issued plaintiff received a right to sue letter dated February 3rd, 2015 charge number 550-2013-00472 (Exhibit A) and fewer Than ninety days have elapsed since plaintiff received same.

## GENERAL ALLEGATIONS

21. Plaintiff is an individual who is, and at all times relevant to this complaint was working in San Joaquin County.

22. Defendant was at all times relevant to this complaint, a California corporation doing business in the County of San Joaquin, the State of California, and in this judicial district.

23. Plaintiff is unaware of the true names and capacities, whether individual, corporate, or otherwise of Defendant Does 1 to 50, inclusive and therefore sues Defendant by such fictitious names and will ask leave of court, if necessary, to amend this complaint to show the true names and capacities when the same have been ascertained.

24. Plaintiff is informed and thereon alleges that Defendant and each of them, including those designated as Does 1 through 50, inclusive, are responsible in some manner for the occurrences and happenings herein alleged, and that Plaintiff's damages as herein alleged, were and are the direct and proximate result of the actions of said Defendant, and each of them. Said Defendant are sued as principles, agents, partners, servants, employees, and co-conspirators, whose alleged actions was performed within the course and scope of their authority and employment, and with the knowledge, consent, approval, and ratification of said principals, and each of them.

25. Whenever in this complaint reference is made to any act of "Defendant" such allegations shall be deemed to mean the acts of the Defendant named in the particular cause of action and each of them, acting individually, jointly, and severally. This action is not subject to Civil Code section 1812.10, or to Civil Code section 2984.4 and inconsistent allegations are pleaded throughout in the alternative.

Complaint for Wrongful Termination, etc. - 4

26. At all material times herein, Plaintiff was an individual with disabilities within the meaning of FEHA [Government Code § 12926(i), (k), and (1)], and within the meaning of the ADA [42 U.S.C. §12102(1)].

27. At all material times herein, Defendant has continuously been an employer within the meaning of FEHA [Government Code § 12926(d)], and the ADA [42 U.S.C. §12111(5)].

28. Plaintiff had spoken with Rick Garcia (AT&T's AREA MANAGER & PLAINTIFF'S SUPERVISOR) about her performance in June, 2012 because Plaintiff believed she was off the Performance Improvement Program (hereinafter referred to as PIP).

29. On information and belief, plaintiff on numerous occasion asked Mr. Garcia to meet with her to review her performance but Rick Garcia (hereinafter referred to as "Mr. Garcia") would never schedule a meeting. Since Mr. Garcia would not meet with plaintiff, plaintiff assumed her performance had improved and therefore she was off the PIP program.

30. The issue occurred when Plaintiff's technician Ricky Purviance (hereinafter referred to as "Tech") was about to returned to work on or about September 1st, 2012, from a disability claim. Mr. Garcia and Tech had an ongoing feud, because of prior incidents unrelated to this case.

31. Prior to being on disability Tech was a top performer who operated Defendant's equipment with the utmost integrity and care.

32. Furthermore, tech had a Bucket truck prior to him going on disability and plaintiff allowed another technician John Lawrence to use Tech bucket truck until he returned to work.

33. Before Tech returned to work Mr. Garcia gave plaintiff strict instructions to remove the Bucket truck from Tech and give it to John Lawrence for no reason at all.

34. Plaintiff explained to Mr. Garcia that his action was violating Communication Workers of America (CWA) Contract because Tech's truck was a tool and therefore could not be removed per CWA Contract.

Complaint for Wrongful Termination, etc. - 5

35. Plaintiff also expresses her feelings about the incident by Stating "Tech did not deserve this Kind of treatment". Mr. Garcia's response was that "I did not care what kind of worker Tech appeared to be just take the Truck when he returns."

36. Plaintiff then called Tech at home and told him what Mr. Garcia was planning to do, and advised Tech of his options.

37. First, Tech immediately called the company EEO ( internal process for AT&T) and filed a complaint against Mr. Garcia.

38. Second, Tech contacted CWA president (Penny Knipp) who immediately got a hold of Mr. Garcia and advised him to apologize to Tech for his actions or she would file a complaint with his immediate supervisor for harassment.

39. Mr. Garcia had to apologize to Tech and after the apology, Mr. Garcia called Plaintiff to his office where he harassed her and used un-professional language towards Plaintiff.

40. On information and belief, plaintiff was terminated a few days later after the apology.

41. Mr. Garcia claimed because of Plaintiff's Performance over the last several months. however, plaintiff believes this is just a pretext to cover up the real reason why Mr. Garcia fired her.

42. Because she told tech about Mr. Garcia's plan to remove the bucket tuck, therefore Mr. Garcia retaliated against her.

43. While Plaintiff was out on hysterectomy surgery, Patricia Navarro (AT&T Manager) and Vanessa Macias (AT&T Manager) covered Plaintiff's Technicians on their MSOC Numbers.

44. Plaintiff had already covered her technicians verbally and had put that verbal conversation in WEBADD.  Patricia had gone into plaintiff's WEBADD without permission and informed Mr. Garcia of the verbal findings.

45. Tech texted Plaintiff on her personal Cell phone to inform her that Patricia and Vanessa was there covering her technicians over the PIP again and while they was doing the coverage they was continuously laughing.

46. Tech warned Plaintiff that something was wrong and to be careful.

Complaint for Wrongful Termination, etc. - 6

47. When Plaintiff returned to work from being out due to her hysterectomy surgery, Mr. Garcia called Plaintiff to his office about the incident.

48. On information and belief, plaintiff explained what happen and thought the matter was resolved.

49. A few days later a man approached Plaintiff at her desk from Asset Protection and questioned Plaintiff about putting verbal conversations in web add and not covering the technicians.

50. Plaintiff told Asset Protection that she did speak with her technicians verbally but didn't have the union present at all her discussions. However, Plaintiff had put the union was present during the PIP process.

51. Plaintiff was unaware that not having the union present during meetings was a violation of the Weingarten rights.

52. Plaintiff would have one –on- one conversation at Plaintiff's desk or Plaintiff would visits her technicians in the field and had conversation then.

53. Plaintiff's only motivate was to protect her Technicians from disciplinary actions.

54. When Plaintiff's technicians were interviewed by Asset Protection the technicians knew that if they said they were _never covered_ they would go back a step or two on the PIP and would not be disciplined.

55. Plaintiff was placed on final warning for violation of the code of business conduct.

56. Mr. Garcia could have terminated plaintiff, but did not because he really did not care about the violations or numbers.

57. Mr. Garcia only intentions were to harass, belittle and berate plaintiff.

58. On the day of Plaintiff's Termination, Mr. Garcia told Plaintiff, He had a meeting with Plaintiff's peer (Brett Pokorney) at 1:30pm, and after the meeting, Plaintiff and Mr. Garcia would meet.

59. Mr. Pokorney told all my peers that he was terminating Plaintiff, before Plaintiff knew about the incident.

60. Plaintiff heard from a peer that her meeting at 3:00 pm was for termination.

Complaint for Wrongful Termination, etc. - 7

1   61. Plaintiff attended the meeting and to plaintiff surprise the note Taker was Plaintiff's Peer

2      (Sharyle Ray) Instead of the protocol which was to have another Area Manager present.

3   62. Plaintiff Believes Mr. Garcia had Ms. Ray taking note so that she would share the findings

4      of the meeting to the other peers.

5   63. Plaintiff's assumptions were *right* because Ms. Ray told several individuals what occurred

6      in the meeting which was supposed to be confidential. Plaintiff was so embarrassed how

7      the meeting was conducted and the information that was said about her after the meeting.

8                           **FIRST CAUSE OF ACTION**
                **WRONGFUL TERMINATION INVIOLATION OF PUBLIC POLICY**
9               **DISPARTE TREATMENT (AGAINST DEFENDANT AND DOES 1-50)**
10  64. Plaintiff re-alleges and incorporates by reference paragraphs 1 through 63 supra as through

11     fully set forth herein

12  65. The true names and capacities of the Defendant, Does 1 through 50, whether individual,

13     corporate, associate or otherwise, are unknown to Plaintiff at the time of filing this

14     Complaint and Plaintiff, therefore, sues said Defendant by such fictitious names and will

15     ask leave of court to amend this Complaint to show their true names or capacities when the

16     same have been ascertained. Plaintiff is informed and believes, and therefore alleges, that

17     each of the DOE Defendants is, in some manner, responsible for the events and happenings

18     herein set forth and proximately caused injury and damages to the plaintiff as herein

19     alleged.

20  66. Defendant, and Does 1 through 50, are and was at all times herein mentioned business

21     organizations, form unknown, duly organized and existing under and by virtue of the laws

22     of the State of California, and or authorized to do business and doing business in the

23     County of San Joaquin, State of California.

24  67. At all times herein mentioned, each of the Defendant was the agent and employee of each

25     of the remaining Defendant and was at all times herein mentioned acting within the scope

26     of said agency and employment. Plaintiff is further informed and believes, and thereon

27     alleges, that each of the Defendants herein gave consent to, ratified, and authorized the acts

28     alleged herein to Mr. Garcia.

120M636027148.tif - 4/14/2015 3:43:39 PM

68. The acts described herein above violate the public policy against disparate treatment[1].

69. To establish a prima facie case of intentional discrimination (disparate treatment), Plaintiff must demonstrate that:

   1. plaintiff is a member of a *protected class*;

   2. Plaintiff was *qualified*;

   3. Plaintiff was terminated despite her *qualifications [adverse action]*; and

   4. Defendant did not terminate any other employees who had lower PIP numbers then Plaintiff. The *[causal connection between the protected class and the adverse action]* is the timing of the termination as it relates to the protected activity[1]. See *McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973)*.

70. Plaintiff has to established a prima facie case, the burden shifts to Defendant to come forward with a legitimate non-discriminatory [Emphasis Added] reason for terminating claimant. See *McDonnell Douglas, at 804*.

71. The acts described herein below violate the public policy against retaliation for protected activity[2].

72. The acts described herein below violate the public policy against disability.

73. The acts described herein below violate the public policy against age discrimination.

74. The acts described herein below violate the public policy against gender discrimination.

75. On information and belief plaintiff entered into an employment relationship with Defendant Twenty (20) years ago.

76. Defendant discharged Plaintiff on September 25, 2012, because she would not take tech's bucket truck.

77. Plaintiff was discharged because of her incurable lupus.

---

[1]Disaparte treatment: is *intentional discrimination* and Plaintiff must prove 4 elements:
1) Plaintiff was a member of a protected class;
2) Plaintiff was qualified to do the job;
3) plaintiff suffered an adverse action; and
4) causal connection between the protected class and adverse action
[2]Protected activity: Ricky Purviance was out on disability and Rick Garcia told Plaintiff to take Tech's bucket truck because Tech was out on disability. Plaintiff warned Tech and told Mr. Garcia she did not want to take his bucket truck. Plaintiff opposed taking the bucket truck from tech.

Complaint for Wrongful Termination, etc. - 9

Timothy L. McCandless, Esq. SBN 147715
Law Office of Timothy L. McCandless, Esq.
820 Main Street, Suite 1
Martinez, CA 94553

78. Defendant terminated Plaintiff's employment due to her age in violation of and in violation of the public policy of the State of California with respect to disability discrimination, gender discrimination, retaliation, harassment, and unlawful labor practices. Said policies are stated in the FEHA, the Labor Code, the California Constitution, and other statutes and in criminal and common laws.

79. Plaintiff's earning capacity and future benefits have been substantially diminished as a result of Defendant's acts alleged herein.

80. As a further legal (proximate) result of the Defendant's discriminatory actions, and in violation of public policy, Plaintiff has been harmed in that she has suffered the intangible loss of employment-related opportunities and experience in the position which Plaintiff would have garnered.

81. As a further legal (proximate) result of the Defendant's discriminatory actions, and in violation of public policy, Plaintiff has been harmed in that she has suffered humiliation, mental anguish, and emotional distress. Plaintiff has been damaged in an amount according to proof at trial.

82. Because of the wrongful termination by the Defendant, Plaintiff has suffered, and continues to suffer general and special damages in excess of the jurisdictional requirements of this court in an amount to be proven at the time of trial.

83. Plaintiff is informed and believes that she will incur further material expenses, the exact amount of which is presently unknown to Plaintiff.

84. Specifically, and among other things, such conduct was in violation of public policy including, but not limited to, FEHA (Cal. Gov't Code §§ 12940 (a), (j), (k), (m), and (n); as well as ADA (42 U.S.C. §§ 12112 (a), (b) (5), 12203(a), (b), is discriminatory, outrageous and tortuous.

85. Plaintiff's termination was wrongful and in violation of the fundamental principles of public policy of the State of California as reflected by its law, objectives and policies.

86. As a result of the Plaintiff employment relationship with Defendant, and their agents was obligated to restrain from discharging Plaintiff, or any employee, for reasons which violate or circumvent public policy, law, or the objectives which underlie each and not to compound their illegal conduct by retaliating against Plaintiff.

Complaint for Wrongful Termination, etc. - 10

87. As a direct and proximate result of the misconduct and unlawfulness of Defendant, and their agents, Plaintiff sustained severe and serious injury to her person, including, but not limited to, loss of income and emotional distress of at least $200,000, in a sum to be shown according to proof. Plaintiff claims such amount as damages together with pre-judgment interest pursuant to Civil Code Section 3287 and/or any other provision of law providing for pre-judgment interest.

88. Such conduct by Defendant was a substantial factor in causing harm to Plaintiff's occupation, in causing humiliation, embarrassment, and mental anguish to Plaintiff, and discourages others in the community from disclosing disabilities, requesting accommodations, and taking medical leave.

89. Plaintiff is informed and believes, and thereon alleges, that her termination by Defendant was done with intent to cause injury to Plaintiff.

90. The acts and omissions of Defendant, and each of them, alleged herein are deliberate, cold, malicious, despicable, fraudulent, oppressive, intentional and was done in conscious disregard of the rights of individuals, such as Plaintiff, and have evidenced actual or implied malicious intent toward Plaintiff, thereby entitling her to an award of punitive damages pursuant to § 3294 Civil Code in an amount sufficient to make an example of Defendant and discourage other from conscious disregard for the rights of individuals.

### SECOND CAUSE OF ACTION
### WRONGFUL TERMINATION IN VIOLATION OF PUBLIC POLICY – RETALIATION
### AGAINST ALL DEFENDANT AND DOES 1-50

91. Plaintiff re-alleges and incorporates by reference paragraphs 1 through 90 supra as through fully set forth herein.

92. Under California law, there is a fundamental and well-established public policy against employer retaliation against an individual for having participated in protected activity or opposing a protective activity. Said public policy is embodied in the Constitution of the State of California.

Complaint for Wrongful Termination, etc. - 11

120M636027148.tif - 4/14/2015 3:43:39 PM

1    93. Plaintiff believes and thereon alleges that Defendant's adverse actions taken against her as

2    set forth herein occurred in retaliation for plaintiff's complaints of unlawful discriminatory

3    treatment in his employment with Defendant, as hereinabove alleged. Such actions are

4    unlawful, discriminatory and retaliatory in violation of Government Code section 12940 et

5    seq., and have resulted in damages and injury to plaintiff, as alleged herein.

6    94. To establish a prima facie case of retaliation, Plaintiff must demonstrate that:

7          1.  Plaintiff was *opposing prohibited activities*;

8          2.  Plaintiff was *terminated  because she opposed protected activity* ( Bucket truck

9               incident) and;

10         3.  Defendant only terminated Plaintiff, because she told Tech about Mr. Garcia's

11              plans; and the causal connection is the *timing* [emphasis added] of the termination

12              as it relates to the Protected activity. *See* (*Yanowitz v. L'Oreal USA, Inc.* (2005) 36

13              Cal.4th 1028, Yanowitz.)

14    95. Plaintiff has to establish a prima facie case, the burden shifts to Defendant to come forward

15    with a legitimate non -retaliatory reason for terminating defendant. *See* Yanowitz.

16    96. Plaintiff believes that because she did not take bucket truck from (Tech) when her manager

17    (Mr. Garcia) told her to; her actions were protested under the meaning of EEOC and

18    DEFH.

19    97. Plaintiff believes she was terminated for opposing a protected activity.

20    98. Plaintiff believes the causal connection between opposing protective activity and the

21    adverse action is the timing[3] of the termination.

22    99. The acts described herein above violate the public policy against retaliation for opposing a

23    protected activity.

24    100.  The acts complained of herein was approved, condoned, or actively participated in by one

25    or more managing agents of the Defendant, each of whom had the authority to make policy

26    and or to direct a substantial portion of the Defendant's business. Additionally, on

27    information and belief, Defendant later ratified these acts through said managing agents.

28

[3]Timing: Mr. Purviance filed an EEO against Mr. Garcia because he was retaliating against him for being out on disability. Mr. Purviance also called Mr. Garcia's supervisor, Gary Hardesty, and CWA President Penny Knipp, to verbal complain about the retaliation. Within a week after Mr. Garcia had to apologize to Tech, and then Mr. Garcia terminated Plaintiff.

Complaint for Wrongful Termination, etc. - 12

Timothy L. McCandless, Esq./SBN 147715
Law Offices of Timothy L. McCandless, Esq.
820 Main Street, Suite 1
Martinez, CA 94553

101. Furthermore, Plaintiff's complaints was ignored and or refused, in part or in whole, notwithstanding the fact that Defendant had been made aware of said unjustified treatment.

102. As a direct, foreseeable, and proximate result of said wrongful acts by Defendant, Plaintiff has suffered and will continue to suffer substantial losses in earnings and other employment benefits, along with other incidental and consequential damages and losses, all in an amount to be proven at time of trial.

103. Plaintiff's claim such amounts as damages together with prejudgment interest pursuant to Civil Code § 3287 and any other provision of law providing for prejudgment interest.

104. As a further direct, foreseeable, and proximate result of said wrongful acts by Defendant, Plaintiff has suffered and will continue to suffer humiliation, shame, despair, embarrassment, depression, and mental pain and anguish, all to Plaintiff's damage in an amount to be proven at time of trial.

105. As a direct, foreseeable, and proximate result of said wrongful acts by Defendant, Plaintiff have suffered and will continue to suffer loss of reputation, and goodwill, and standing in the industry in which Plaintiff have worked, thus precluding or diminishing Plaintiff opportunity of employment in the industry in which they have worked, all to Plaintiff damage in an amount to be proven at time of trial.

106. Defendant and their agents/employees, engaging in the conduct as herein above alleged, acted fraudulently, maliciously, oppressively and with reckless disregard of Plaintiff right and safety, thereby entitling Plaintiff to an award of punitive damages.

### THIRD CAUSE OF ACTION
### *WRONGFUL DISCHARGE IN VIOLATION OF PUBLIC POLICY*
### *CAL LABOR CODE § 1102.5*

107. Plaintiff re-alleges and incorporates by reference paragraphs 1 through 106 supra as through fully set forth herein.

Complaint for Wrongful Termination, etc. - 13

108. It is, and at all times relevant to this action it has been, the law and fundamental public policy of the state of California that an employer may not retaliate against an employee for refusing to participate in an activity that they reasonably believed would result in a violation of a state statute.

109. This public policy is embodied in statutes including, but not limited to, California Labor Code § 1102.5.

110. Defendant harassed and discriminated against plaintiff, ultimately terminating her Employment, in retaliation for refusing to participate in activities that she reasonably believed was in violation of state statutes, including the California False Claims Act.

111. Accordingly, plaintiff was unlawfully terminated in violation of the fundamental public policies of the State of California.

112. As a direct, foreseeable and proximate result of Defendant's unlawful actions, Plaintiff suffered and continues to suffer substantial losses in earnings and other employment benefits and have incurred other economic losses in an amount to be proven at trial.

113. As a direct, foreseeable, and proximate result of Defendant's unlawful actions, Plaintiff suffered emotional distress, humiliation, shame, and embarrassment, all to their damage in an amount to be proven at the time of trial

114. Defendant committed the acts herein despicably, maliciously, fraudulently, and oppressively, with the wrongful intention of injuring plaintiff, from an improper and evil motive amounting to malice, and in conscious disregard of the rights and safety of plaintiff.

115. Plaintiff is therefore, entitled to the relief provided by Labor Code § *1102.5* including damages and punitive damages in an amount to be determined at trial along with litigation costs and reasonable attorney's fees.

### FOURTH CAUSE OF ACTION
*WRONGFUL TERMINATION IN VIOLATION OF PUBLIC POLICY - RETALIATION COMMON LAW*

116. Plaintiff re-alleges and incorporates by reference paragraphs 1 through 115 supra as through fully set forth herein.

Complaint for Wrongful Termination, etc. - 14

117. Under California law, there is a fundamental and well-established public policy against employer retaliation against an individual for having participated in protected activity. Said public policy is embodied in the Constitution of the State of California.

118. The acts described herein above violate the public policy against retaliation for protected activity.

119. Defendant discharged Plaintiff in retaliation for opposing an protected activity.

120. As a further direct, foreseeable, and proximate result of said wrongful acts by Defendant, Plaintiff has incurred attorneys' fees in an amount to be determined, for which Plaintiff's claim a sum to be established according to proof.

**FIFTH CAUSE OF ACTION**
**(VIOLATIONS OF FEHA (CAL. GOV'T CODE §§ 12940 ET SEQ. (DISABILITY)**
**(AGAINST DEFENDANT AND DOES 1-50)**

121. Plaintiff re-alleges and incorporates by reference paragraphs 1 through 120 supra as through fully set forth herein

122. Plaintiff alleges violations of California Government Code § §12940 et seq., against Defendant and Does 1 through 50, inclusive.

123. Defendant was an employer covered under California's Fair Employment and Housing Act as defined by Cal. Gov. Code § 12940(1)(d).

124. Plaintiff had a "disability" as defined by California Government Code §12926, 2 C.C.R. § 7293.6, and 42 U.S.C. 12102(1) in that she suffered from incurable Lupus.

**SIXTH CAUSE OF ACTION**
**(VIOLATIONS OF FEHA (CAL. GOV'T CODE §§ 12940 ET SEQ. (GENDER))**
**(AGAINST DEFENDANT AND DOES 1-20)**

125. Plaintiff re-alleges and incorporates by reference paragraphs 1 through 124 supra as through fully set forth herein.

126. FEHA prohibits discrimination on the basis of gender in employment.

127. Defendant, and each of them, through their course of conduct denied Plaintiff a benefit of employment, in whole or in part, because of her gender in violation of Section 12940(a) C.C.R. §7290.6 and 7291.2 (p).–

128. Defendant knew that Plaintiff was a female.

Complaint for Wrongful Termination, etc. - 15

Timothy L. McCandless, Esq SBN 147715
Law Office of Timothy L. McCandless, Esq.
820 Main Street, Suite I
Martinez, CA  94553

129. Defendant also knew that her disability of incurable lupus and hysterectomy was one from a woman suffers and could result in time off due to the medication.

130. Plaintiff was subjected to harassing conduct because she was a female and suffering from an incurable disease.

131. Defendant harassed, berated, and/or subjected Plaintiff to other adverse employment actions because she was female, at least in part.

132. Defendant terminated Plaintiff because she was female, at least in part.

133. Plaintiff's gender (female) was a motivating reason for the discharge, harassment, and or berating of Plaintiff.

134. Plaintiff suffered lost wages and economic damages in an amount not less than $1,000,000. Plaintiff suffered emotional distress damages in an amount not less than $200,000.

135. The acts and omissions of Defendant alleged herein, are deliberate, cold, malicious, despicable, fraudulent, oppressive, intentional and was done in conscious disregard of the rights of individuals, such as Plaintiff, and have evidenced actual or implied malicious intent toward Plaintiff, thereby entitling her to an award of punitive damages pursuant to § 3294 Civil Code in an amount sufficient to make an example of Defendant and discourage other from conscious disregard for the rights of individuals, not less than $5,000,000.

136. Plaintiff is entitled to reasonable attorneys' fees and costs, according to proof, under FEHA.

## SEVENTH CAUSE OF ACTION
### (AGE DISCRIMINATION IN VIOLATION OF CAL. GOVT. CODE § 12940, ET SEQ.)

137. Plaintiff re-alleges and incorporates by reference paragraphs 1 through136 supra as through fully set forth herein

138. Plaintiff is over 50 years old, Plaintiff believes and alleges she was terminated on the basis of her age.

139. The misconduct of Defendant, and each of them, in the unlawful discrimination of the Plaintiff on the basis of her age, was in violation of Cal. Gov. Code § 12940 (a) et seq.

140. Plaintiff is informed and believes based thereon allege, that individuals who were less than 40 years old were treated differently and more favorably than Plaintiff.

120M636027148.tif - 4/14/2015 3:43:39 PM

141. As a legal (proximate) result of Defendant's, and each of their, discriminatory actions against plaintiff, as alleged above, plaintiff has been harmed in that she has suffered the loss of the wages, salary, benefits, raises, retirement, and additional amounts of money she would have received if promoted without regard to her age. Plaintiff has been damaged in an amount according to proof at trial.

142. The acts complained of herein were approved, condoned, or actively participated in by one or more managing agents of the Defendant, each of whom had the authority to make policy and or to direct a substantial portion of the Defendant business. Additionally, on information and belief, Defendant later ratified these acts through said managing agents. Furthermore, Plaintiff's complaints was ignored and/or refused, in part or in whole, notwithstanding the fact that Defendant had been made aware of said unjustified treatment.

143. Defendant retained, promoted, and coddled vicious employees and managers

144. Known by them to be prejudiced against members of Plaintiff's protected class. Defendant conduct was despicable, cruel, and oppressive.

145. As a further legal (proximate) result of Defendant's, and each of their, discriminatory actions, plaintiff has been harmed in that she has suffered the intangible loss of employment-related opportunities and experience in the position which plaintiff would have garnered. Plaintiff has been damaged in an amount according to proof at trial.

146. As a further legal (proximate) result of Defendant's discriminatory actions, plaintiff has been harmed in that she has suffered humiliation, mental anguish, and emotional and physical distress, and has been injured in mind and in body. Plaintiff has been damaged in an amount according to proof at trial.

147. Because of the discrimination by the Defendant, Plaintiff has suffered, and continues to suffer general and special damages in excess of the jurisdictional requirements of this Court in an amount to be proven at the time of trial.

148. Plaintiff is informed and believes she will incur further material expenses, the exact amount of which is presently unknown to plaintiff.

120M636027148.tif - 4/14/2015 3:43:39 PM

**EIGHTH CAUSE OF ACTION**
**RETALIATION FOR OPPOSING AGE DISCRIMINATION**
**[CAL. GM'. CEDE § 129001**

149. Plaintiff re-alleges and incorporates by reference paragraphs 1 through 148 supra as through fully set forth herein.

150. This is an action for damages arising from retaliation against the Plaintiff for having opposed unlawful employment practices based on age. This action is brought pursuant to the California Fair Employment and Housing Act ["FEHA "]. i.e., Cal. Gov . Code §§ 12900, 12921, 12926, 129240 and 12965. This cause of action for retaliation is pursuant to Cal. Gov , Code§ 12940(h).

151. The Plaintiff is a member of a class protected by FEHA.

152. Plaintiff has opposed employment practices forbidden under FEHA for retaliation, discrimination and harassment based on age, or which she believed in good faith to have been so forbidden.

153. Because of having opposed employment practices based on age Plaintiff has suffered many adverse actions, among which are the following adverse employment actions:

- Unlawful termination;
- Prevention of opportunity for advancement;
- Failure to provide Plaintiff with the necessary tools to perform her job;
- Unfair and untruthful performance reviews;
- Unfair and unjust discipline;
- Placement on Performance Improvement Plan;
- Unequal treatment; and
- The creation of a hostile work environment;

154. The above adverse employment actions towards Plaintiff were either taken, condoned, and or ratified by the managing agents of Defendant.

84. On information and belief, plaintiff petitioned her superior on many occasions to cease and desist, the retaliation described above.

Timothy L. McCandless, Esq.SBN 147715
Law Offices of Timothy L. McCandless, Esq.
820 Main Street, Suite 1
Martinez, CA. 94553

Complaint for Wrongful Termination, etc. - 18

155. On each occasion, the petitions of the Plaintiff were ignored and/or summarily rejected, despite the fact that the Defendant was aware of said unjustified treatment. Is In fact, the retaliation was only intensified because of these petitions. For these reasons, the Plaintiff was required to submit an administrative complaint to the Department of Fair Employment and Housing and to sue herein.

156. The job performance of the Plaintiff was at all times satisfactory.

157. The acts complained of herein was approved, condoned or taken by one or more managing agents of the Defendant each of whom had the authority to make corporate policy and/or to direct a substantial portion of the Defendant's business.

158. This action is not preempted by the California Workers' Compensation Act because retaliation for opposing age discrimination is not a risk or condition of employment.

159. Because of the aforesaid acts of Defendant, Plaintiff has suffered, and continue to suffer losses of wages/salary, commissions and other employee compensation in an amount which is currently un-ascertained.

160. Plaintiff will therefore request leave of the court to amend this Complaint to state the amount of all such damages when they have been ascertained or upon proof at the time of trial.

161. The Plaintiff was held up to great derision and embarrassment with fellow workers, friends, members of the community and family, and suffered emotional distress because the Defendant demonstrated to the Plaintiff that they intended to punish her for daring to object to age discrimination and harassment.

162. Plaintiff is informed and believes that the Defendant and their management acted deliberately with the intent of making examples of the Plaintiff to other employees in the work place. Defendant by and through their managing agents and employees, further acted intentionally and unreasonably because they knew and/or should a have known that their conduct was likely to result in severe mental distress.

163. Plaintiff therefore seeks damages for such emotional distress in an amount to be proven at time of trial.

Complaint for Wrongful Termination, etc. - 19

1   164. Because of the wrongful acts of Defendant as herein above alleged, plaintiff have been

2       and will in the future be required to employ physicians to examine, treat and care for them

3       and will incur additional medical expenses in an amount to be proven at the time of trial.

4   165. In doing the acts set forth above, Defendant acted as herein alleged with a conscious

5       disregard of Plaintiff's' right to be free from discrimination on the basis of age. Defendant

6       acted, as alleged, with the malicious intention of depriving the Plaintiff of employment

7       opportunities and benefits that must be accorded to all employees regardless of her

8       membership in the protected classes.

9   166. Defendant have retained, promoted and coddled vicious employees and managers known

10      by them to be prejudiced against employees over the age of 40. This conduct by Defendant

11      was despicable, cruel and oppressive.

12  167. Plaintiff is therefore entitled to an award of punitive damages in an amount to be proven

13      at trial.

14  168. In bringing this action, Plaintiff has been required to retain the services of the Law Office

15      of Timothy McCandless. California Government Code § 12965(b) provides that the court

16      may award reasonable attorney's fees and Plaintiff request such fees to be ordered upon the

17      completion of trial.

18                             NINTH CAUSE OF ACTION
19                   HOSTILE WORK ENVIRONMENT/HARASSMENT
                     VIOLATION OF GOVERNMENT CODE § 12940 ET SEQ.

20  169. Plaintiff re-alleges and incorporates by reference paragraphs 1 through 168 supra as

21      through fully set forth herein.

22  170. This is an action for damages arising from harassment in employment, This action is

23      brought pursuant to the California Fair Employment and Housing Act [FEHA "], i.e., Cal.

24      Gov . Code §§ 12900, 12921, 12926, 129240 and *12965*. This cause of action for

25      harassment is pursuant to Cal. Gov. Code § 12940(j).

26  171. As detailed above, Defendant, directly and through their employees and agents, have

27      subjected Plaintiff to a hostile work environment and harassed Plaintiff notwithstanding the

28      fact that Defendant have been made aware of said unjustified treatment.

Timothy L. McCandless, Esq.SBN 147716
Law Office of Timothy L. McCandless, Esq.
820 Main Street, Suite 1
Merlano,CA 94553

120M636027148.tif - 4/14/2015 3:43:39 PM

172. The acts complained of herein were approved, condoned, or actively participated in by
     one or more managing agents of Defendant, each of whom had the authority to make

173. This action is not preempted by the California Workers' Compensation Act because
     discrimination and retaliation are not risks or conditions of employment.

174. Plaintiff is therefore entitled to an award of punitive damages in an amount to be proven
     at trial.

175. As a direct, foreseeable, and proximate result of said wrongful acts by Defendant,
     Plaintiff has suffered and will continue to suffer substantial losses in earnings and other
     employment benefits, along with other incidental and consequential damages and losses, all
     in an amount to be proven at time of trial.

176. Plaintiff's claim such amounts as damages together with prejudgment interest pursuant to
     Civil Code § 3287 and any other provision of law providing for prejudgment interest.

177. As a direct, foreseeable, and proximate result of said wrongful acts by Defendant,
     Plaintiff has suffered and will continue to suffer humiliation, shame, despair,
     embarrassment, depression, and mental pain and anguish, all to Plaintiff's' damage in an
     amount to be proven at time of trial.

178. As a direct, foreseeable, and proximate result of said wrongful acts by Defendant,
     Plaintiff has suffered and will continue to suffer loss of reputation, goodwill, and standing
     in the industry in which Plaintiff has worked, thus precluding or diminishing Plaintiff
     opportunity of employment in the industry in which they worked, all to Plaintiff's damage
     in an amount to be proven at time of trial.

179. As a further direct, foreseeable, and proximate result of said wrongful acts by Defendant,
     Plaintiff has incurred attorneys' fees in an amount to be determined, for which Plaintiff's
     claim sums to be established according to proof.

120M636027148.tif - 4/14/2015 3:43:39 PM

### TENTH CAUSE OF ACTION
*WRONGFUL TERMINATION IN VIOLATION OF PUBLIC POLICY— FAMILY*
*MEDICAL LEAVE ACT*
*COMMON LAW*

180. Plaintiff re-alleges and incorporates by reference paragraphs 1 through 179 supra as through fully set forth herein

181. Under California law, there is a fundamental and well-established public policy against employer retaliation against an individual for having participated in protected activity and requesting protected medical leave. Said public policy is embodied in the Constitution of the State of California.

182. The acts described herein above violate the public policy against retaliation and requesting medical leave.

183. Defendant discharged Plaintiff in retaliation for requesting medical leave.

184. The acts complained of herein were approved, condoned, or actively participated in by one or more managing agents of the Defendant, each of whom had the authority to make policy and or to direct a substantial portion of the Defendant's business. Additionally, on information and belief, Defendant later ratified these acts through said managing agents.

185. Furthermore, Plaintiff's complaints were ignored and or refused, in part or in whole, notwithstanding the *fact* that Defendant had been made aware of said unjustified treatment.

186. Plaintiff has suffered and will continue to suffer substantial losses in earnings and other employment benefits, along with other incidental and consequential damages and losses, all in an amount to be proven at time of trial.

187. Plaintiff's claim such amounts as damages together with prejudgment interest pursuant to Civil Code § 3287 and any other provision of law providing for prejudgment interest.

188. As a further direct. foreseeable, and proximate result of said wrongful acts by Defendant, Plaintiff has suffered and will continue to suffer humiliation, shame, despair, embarrassment, depression, and mental pain and anguish, all to plaintiff damage in an amount to be proven at time of trial.

120M636027148.tif - 4/14/2015 3:43:39 PM

189. As a direct, foreseeable, and proximate result of said wrongful acts by Defendant, Plaintiff has suffered and will continue to suffer loss of reputation, goodwill, and standing in the industry in which Plaintiff has worked, thus precluding or diminishing Plaintiff opportunities of employment in the industry in which they have worked, all to Plaintiff damage in an amount to be proven at time of trial.

190. Defendant and their agents/employees, engaging in the conduct as hereinabove alleged, acted fraudulently, maliciously, oppressively and with reckless disregard of Plaintiff's, rights and safety, thereby entitling plaintiff to an award of punitive damages.

191. Plaintiff's claim a sum to be established according to proof.

## ELEVENTH CAUSE OF ACTION
*VIOLATION OF CALIFORNIA FAMILY RIGHTS ACT, CAL GOV. CODE 12945, ETSEQ*

192. Plaintiff re-allege and incorporate by reference paragraphs 1 through 191 supra as through fully set forth herein

193. Plaintiff was a full-time employee who Defendant employed for over 12 months.

194. Plaintiff served over 1250 hours of service with Defendant during the previous 12-month period.

195. Plaintiff was terminated due to her exercising their right to Family Medical Leave due to a disability in violation of the law and/or the mental health disability that led to their leave.

196. Defendant took no action to accommodate or attempt to accommodate Plaintiff as required by law.

197. The acts complained of herein were approved, condoned, or actively participated in by one or more managing agents of the Defendant, each of whom had the authority to make policy and/or to direct a substantial portion of the Defendant's business. Additionally, on information and belief, Defendant later ratified these acts through said managing agents. Furthermore, Plaintiff's complaints were ignored and/or refused, in part or in whole, notwithstanding the fact that Defendant had been made aware of said unjustified treatment.

198. Because of the wrongful acts of Defendant as alleged above, Plaintiff has been and will in the future require the employment of physicians to examine, treat, and care for them and will incur additional medical expenses in an amount to be proven at time of trial.

Complaint for Wrongful Termination, etc. - 23

Timothy L. McCandless, Esq.SBN 147715
Law Office of Timothy L. McCandless, Esq.
820 Main Street, Suite 1
Martinez, CA 94553

1    199. As a direct, foreseeable, and proximate result of said wrongful acts by Defendant.

2    200. Plaintiff has suffered and will continue to suffer substantial losses in earnings and other

3       employment benefits, along with other incidental and consequential damages and losses, all

4       in an amount to be proven at time of trial.

5    201. Plaintiff's claim such amounts as damages together with prejudgment interest pursuant to

6       Civil Cede § 3287 and any other provision of law providing for prejudgment interest.

7    202. As a further direct, foreseeable, and proximate result of said wrongful acts by Defendant,

8       Plaintiff has suffered and will continue to suffer humiliation, shame, despair,

9       embarrassment, depression, and mental pain and anguish, all to Plaintiff damage in an

10       amount to be proven at time of trial.

11    203. As a direct, foreseeable, and proximate result of said wrongful acts by Defendant,

12       Plaintiff has suffered and will continue to suffer loss of reputation, goodwill, and standing

13       in the industry in which Plaintiff has worked, thus precluding or diminishing Plaintiff's

14       opportunity of employment in the industry in which they have worked, all to Plaintiff

15       damage in an amount to be proven at time of trial.

16    204. Defendant and their agents/employees, engaging in the conduct as hereinabove alleged,

17       acted fraudulently, maliciously, oppressively and with reckless disregard of Plaintiff rights

18       and safety, thereby entitling Plaintiff to an award of punitive damages.

19    205. As a further direct, foreseeable, and proximate result of said wrongful acts by Defendant,

20       Plaintiff has incurred attorneys' fees in an amount to be determined, for which Plaintiff's

21       claim a sum to be established according to proof:

22                          TWELFTH CAUSE OF ACTION
                        *NEGLIGENT SUPERVISION AND RETENTION*

23    206. Plaintiff re-allege and incorporate by reference paragraphs 1 through 205 supra as

24       through fully set forth herein

25    207. At all times mentioned in this complaint, Defendant, negligently and carelessly trained

26       and retained its agents/employees including, but not limited to Mr. Garcia.

Complaint for Wrongful Termination, etc. - 24

208. Defendant breached their duty to exercise reasonable care and acted negligently and carelessly in the training and retention by failing to give Mr. Garcia ageist and disability sensitivity training including, but not limited to, the laws and regulations against harassment and discrimination on the job as required by the FEHA.

209. Furthermore, Defendant are owners and operators of the business, negligently failed to investigate the background of their agents/employees including, but not limited to Mr. Garcia.

210. Defendant also failed to take reasonable steps to protect plaintiff from the ageist, disability, and whistleblowing motivated are actions of these and other employees as discussed above.

211. Defendant have retained, promoted, and coddled vicious employees and managers known by them to be prejudiced against members of plaintiff's protected classes.

212. Defendant's conduct was despicable, cruel, and oppressive. Plaintiff is therefore entitled to an award of punitive damages in an amount to be proven at trial.

213. Because of the wrongful acts of Defendant as alleged above, plaintiff has been and will in the future require the employment of physicians to examine, treat, and care for them and will incur additional medical expenses in an amount to be proven at time of trial.

214. As a direct, foreseeable, and proximate result of said wrongful acts by Defendant, plaintiff has suffered and will continue to suffer substantial losses in earnings and other employment benefits, along with other incidental and consequential damages and losses, all in an amount to be proven at time of trial.

215. Plaintiff's claim such amount as damages together *with* prejudgment interest pursuant to Civil Code § 3287 and any other provision of law providing for prejudgment interest.

216. As a further direct, foreseeable, and proximate result of said wrongful acts by Defendant.

217. Plaintiff has suffered and will continue to suffer humiliation, shame, despair, embarrassment, depression, and mental pain and anguish, all to plaintiff's damage in an amount to be proven at time of trial.

120M636027148.lif - 4/14/2015 3:43:39 PM

218. As a further direct, foreseeable, and proximate result of said wrongful acts by Defendant.

219. Plaintiff has and will continue to suffer loss of reputation, goodwill, and standing in the industry in which Plaintiff has worked, thus precluding or diminishing

220. Plaintiff's opportunities of employment in the industry in which they have worked, all to plaintiff's damage in an amount to be proven at time of trial.

221. As a further direct, foreseeable, and proximate result of said wrongful acts by Defendant, plaintiff has incurred attorneys' fees in an amount to be determined, for which plaintiff's claim a sum to be established according to proof, pursuant to Government Code § 12965(b).

### THIRTEENTH CAUSE OF ACTION
### INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
### (AGAINST ALL DEFENDANT AND DOES 1-50)

222. Plaintiff re-allege and incorporate by reference paragraphs 1 through 221 supra as through fully set forth herein

223. Defendant conduct and each of them, in their deliberate, cold, malicious, despicable, fraudulent, oppressive, intentional, threatening, hostile, harassing, embarrassing, and callous treatment of Plaintiff while she was dealing with a severe medical disability, culminating with her termination. Defendant conduct was so extreme as to not be tolerated by a civilized community.

224. Defendant had a special relationship with Plaintiff in that they had an employer-employee relationship with Plaintiff. Defendant abused a position that gives them power to damage Plaintiff's interests.

225. Defendant knew Plaintiff was susceptible to injuries through mental distress, and acted intentionally or unreasonably with the recognition that their acts are likely to result in illness through mental distress.

226. Defendant's intentional conduct, as stated herein, was outrageous and done for the purpose of causing Plaintiff to suffer humiliation, mental anguish and emotional and physical distress.

Complaint for Wrongful Termination, etc. - 26

120M636027148.tif - 4/14/2015 3:43:39 PM

227. Defendant intended to cause Plaintiff to suffer emotional distress, or acted with reckless disregard of the probability that Plaintiff would suffer emotional distress, knowing that Plaintiff was present when the conduct occurred.

228. As a proximate result of Defendant's conduct, Plaintiff suffered severe emotional distress, including, but not limited to loss of sleep, extreme stress, anxiety, humiliation, and mental anguish.

229. Defendant's outrageous conduct was directed at Plaintiff. Defendant, and each of them, intended to cause Plaintiff emotional distress, and/or acted with reckless disregard of the probability that Plaintiff would suffer emotional distress from Defendant wrongful conduct.

230. Prior to the Termination of plaintiff, she believes this event is what leads up to the termination. Plaintiff's prior manager Philana Grayson (AT&T Area manager) was her manager in Modesto and prior to her arrival, Alice Huerta was Plaintiff's Manager and Plaintiff was a top performer.

231. Philana moved Plaintiff to Turlock because she wanted Plaintiff to fail, but instead Plaintiff excelled and created another top performing team. Philana never visited Plaintiff or assisted her which was in violation of the PIP program. However, Philana wanted to move her friend from Merced to Modesto, but a technician (Chuck Earn) told Plaintiff he heard Philana tell Ayana, "that she would back fill Merced with Kim".

232. Plaintiff complained To Philana's Boss (Gary Hardesty General Manger of AT&T) because this move would have created a hardship on Plaintiff and her family. Philana was outraged and told Plaintiff in Kathy Gladney's office her days in the Turlock area was coming to an end. Philana advised Plaintiff, she was going to be placed in Stockton because of her low numbers.

233. Plaintiff was surprise because Philana never did her due diligence in assisting Plaintiff with her numbers.

234. Plaintiff brought this behavior to Gary Hardesty's (hereafter referred to as Gary ) attention several times and he said he would talk to her. Philana would go around and tell the technicians that Defendant would never fire her because she would slap a suit on them so quick their head would spin.

120M636027148.tif - 4/14/2015 3:43:39 PM

1   235. Finally, Kathy Gladney then got moved to Merced and Plaintiff got moved to Stockton

2        but Plaintiff was up for a job as a black belt associate. Philana knew if Plaintiff got the job

3        she would not have to report to Stockton, therefore Philana made false accusation on

4        Plaintiff's evaluation. Philana then told Plaintiff she didn't get the job she wanted and that

5        she had to report to Stockton or be terminated.

6   236. Plaintiff received her Does not Meet (DNM) evaluation from Philana on bogus charges

7        to prevent Plaintiff from receiving the black belt job, but Philana's evaluation was

8        completely false because she never seen Plaintiff. Plaintiff was upset about these false

9        accusations.

10   237. Plaintiff once again spoke with Gary about Philana's behavior and he said he would talk

11        to her. Plaintiff waited for a reply from Gary but he never did so.

12   238. Plaintiff then contacted Brigitte Timmons and Brooke Cisneros in Human Resources

13        (HR) and both of them told Plaintiff that they would investigate. Plaintiff was assured they

14        would fix the evaluation but it never occurred.

15   239. A few months later, the job came open again for the "Black Belt Associate". Plaintiff

16        was so excited because she was told she would get the job because Plaintiff spoke with

17        Domenic Cusolito who was the Area Manager for that department and he said he would

18        speak with Gary about releasing plaintiff.

19   240. A long period of time went by and Domenic said he couldn't get a hold of Gary. When

20        he finally got a hold of Gary, his reply was that Kim's ranking was too low and he couldn't

21        let Plaintiff have that opportunity at this time.

22   241. Plaintiff told Gary my ranking is low because of several incidents that he was aware of.

23        Gary knew that a lot of managers were cheating but he never discipline them. Gary

24        informed Plaintiff during that phone call that he would help Plaintiff get her rankings up

25        and he would help Plaintiff succeed.

26   242. Gary never helped Plaintiff but was one of the managers who signed off on the

27        termination for being a low performer. Plaintiff feels the move from Modesto to stockon

28        and the false evaluation was the one of reasons the company had to justify her termination.

Complaint for Wrongful Termination, etc. - 28

1    243. As a result of such acts, Plaintiff suffered severe emotional distress, including the

2         humiliation, embarrassment, and mental anguish, associated with the loss of one's life work

3         all to Plaintiff's damage in a sum to be shown according to proof.

4    244. Further as a result of such acts, Plaintiff suffered severe emotional distress, including the

5         anxiety, depression, fear, stress, and mental anguish associated with losing medical

6         coverage while suffering from severe medical issues all to Plaintiff's damage in a sum to be

7         shown according to proof.

8    245. As a direct and proximate result of the misconduct and unlawfulness of Defendant

9         Plaintiff sustained severe and serious injury to her person, including, but not limited to,

10        emotional distress damages in a sum to be shown according to proof.

11   246. The acts and omissions of Defendant, and each of them, alleged herein are deliberate,

12        cold, malicious, despicable, fraudulent, oppressive, intentional and was done in conscious

13        disregard of the rights of individuals, such as Plaintiff, and have evidenced actual or

14        implied malicious intent toward Plaintiff, thereby entitling her to an award of punitive

15        damages pursuant to § 3294 Civil Code in an amount sufficient to make an example of

16        Defendant and discourage other from conscious disregard for the rights of individuals.

17                          **FOURTEENTH CAUSE OF ACTION**
                      **NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS**
18                                    **COMMON LAW**

19   247. Plaintiff re-allege and incorporate by reference paragraphs 1 through 245 supra as

20        through fully set forth herein

21   248. In the alternative, if said conduct of Defendant, and of its agents and employees, is not

22        found to be intentional, said conduct was negligent and Plaintiff is entitled to general

23        damages for the negligent infliction of emotional distress.

24   249. The aforementioned conduct complained of is outside the bounds of decency expected to

25        exist in a civilized society, and, malicious, an abuse of authority, negligently causing

26        Plaintiff to suffer humiliation, mental anguish, and emotional and physical distress.

27   250. As a proximate result of Defendant, and that of their agents/employees, negligent

28        infliction of emotional distress as hereinabove alleged, Plaintiff has been harmed in that

Timothy J. McCandless, Esq. SBN 147715
Law Offices of Timothy L. McCandless, Esq.
820 Main Street, Suite 1
Martinez, CA 94553

Complaint for Wrongful Termination, etc. - 29

251. Plaintiff has suffered humiliation, mental anguish, emotional and physical distress, been
    injured in mind and health, and continue to suffer from said distress.

252. As a result of said distress and consequent harm, Plaintiff has suffered such damages in
    an amount in accordance with proof at time of trial

253. Defendant negligent infliction of emotional distress was a substantial factor in causing
Plaintiff harm.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment against Defendant as follows:

1.Entry of judgment in favor of Plaintiff and against Defendant;

2.For monetary damages to compensate for the emotional distress suffered by Plaintiff;

3.For prejudgment and post judgment interest pursuant to California Civil Code § 3287 and
Other applicable state laws, along with an upward adjustment for inflation;

4.For an order enjoining Defendant from engaging in the unlawful conduct complained
Of herein;

5.For a money judgment representing compensatory damages including lost wages, lost
Earnings, lost benefits, lost retirement benefits all based upon lest seniority, along with all other
Compensation denied or lost to Plaintiff by reason of Defendant unlawful actions including
interest on those amounts, and for compensatory damages for Plaintiff emotional pain and
suffering in an amount of $15,000,000 or in an amount to be proven at trial;

6.For punitive damages in an amount appropriate to punish all Defendant;

7.For costs of suit, attorney fees and expert witness fees pursuant to California Government
Code §12965(b);

8.For any other relief that is just and proper.

### REQUEST FOR JURY TRAIL

PLAINTIFF hereby requests a Trial by Jury.

Dated: April 9, 2015

Timothy L. McCandless
Attorney for Plaintiff Kim McKenzie

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Timothy L. McCandless, Esq SBN 147715
Law Office of Timothy L. McCandless, Esq.
820 Main Street, Suite 1
Martinez, CA 94553

# EXHIBIT A (EEOC RIGHT TO SUE LETTER)

EEOC Form 161-B (11/09)

U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

## NOTICE OF RIGHT TO SUE (ISSUED ON REQUEST)

| To: | Kim E. McKenzie<br>4516 Wessex Lane<br>Salida, CA 95368 | From: | San Francisco District Office<br>450 Golden Gate Avenue<br>5 West, P.O. Box 36025<br>San Francisco, CA 94102 |
|---|---|---|---|

☐ On behalf of person(s) aggrieved whose identity is
CONFIDENTIAL (29 CFR §1601.7(a))

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 550-2013-00472 | Deborah Randall,<br>Enforcement Manager | (415) 522-3107 |

(See also the additional information enclosed with this form.)

NOTICE TO THE PERSON AGGRIEVED:

Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Act (ADA), or the Genetic Information Nondiscrimination Act (GINA): This is your Notice of Right to Sue, issued under Title VII, the ADA or GINA based on the above-numbered charge. It has been issued at your request. Your lawsuit under Title VII, the ADA or GINA must be filed in a federal or state court WITHIN 90 DAYS of your receipt of this notice; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

[X]  More than 180 days have passed since the filing of this charge.

☐  Less than 180 days have passed since the filing of this charge, but I have determined that it is unlikely that the EEOC will be able to complete its administrative processing within 180 days from the filing of this charge.

[X]  The EEOC is terminating its processing of this charge.

☐  The EEOC will continue to process this charge.

Age Discrimination in Employment Act (ADEA): You may sue under the ADEA at any time from 60 days after the charge was filed until 90 days after you receive notice that we have completed action on the charge. In this regard, the paragraph marked below applies to your case:

[X]  The EEOC is closing your case. Therefore, your lawsuit under the ADEA must be filed in federal or state court WITHIN 90 DAYS of your receipt of this Notice. Otherwise, your right to sue based on the above-numbered charge will be lost.

☐  The EEOC is continuing its handling of your ADEA case. However, if 60 days have passed since the filing of the charge, you may file suit in federal or state court under the ADEA at this time.

Equal Pay Act (EPA): You already have the right to sue under the EPA (filing an EEOC charge is not required.) EPA suits must be brought in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that backpay due for any violations that occurred more than 2 years (3 years) before you file suit may not be collectible.

If you file suit, based on this charge, please send a copy of your court complaint to this office.

On behalf of the Commission

Enclosures(s)

Michael P. Connolly,
Acting District Director

02/03/2015
(Date Mailed)

cc:

Gerald (Gerry) Connors
Sr. EEO Consultant
AT&T Communications
2600 CAMINO RAMON, Rm. 3E502
San Ramon, CA 94583

Enclosure with EEOC
Form 161-B (11/09)

# INFORMATION RELATED TO FILING SUIT
## UNDER THE LAWS ENFORCED BY THE EEOC

*(This information relates to filing suit in Federal or State court under Federal law.*
*If you also plan to sue claiming violations of State law, please be aware that time limits and other*
*provisions of State law may be shorter or more limited than those described below.)*

PRIVATE SUIT RIGHTS    --    **Title VII of the Civil Rights Act, the Americans with Disabilities Act (ADA),
the Genetic Information Nondiscrimination Act (GINA), or the Age
Discrimination in Employment Act (ADEA):**

In order to pursue this matter further, you must file a lawsuit against the respondent(s) named in the charge **within
90 days** of the date you *receive* this Notice. Therefore, you should keep a record of this date. Once this 90-
day period is over, your right to sue based on the charge referred to in this Notice will be lost. If you intend to
consult an attorney, you should do so promptly. Give your attorney a copy of this Notice, and its envelope, and tell
him or her the date you received it. Furthermore, in order to avoid any question that you did not act in a timely
manner, it is prudent that your suit be filed **within 90 days of the date this Notice** was *mailed* to you (as
indicated where the Notice is signed) or the date of the postmark, if later.

Your lawsuit may be filed in U.S. District Court or a State court of competent jurisdiction. (Usually, the appropriate
State court is the general civil trial court.) Whether you file in Federal or State court is a matter for you to decide
after talking to your attorney. Filing this Notice is not enough. You must file a "complaint" that contains a short
statement of the facts of your case which shows that you are entitled to relief. Your suit may include any matter
alleged in the charge or, to the extent permitted by court decisions, matters like or related to the matters alleged in
the charge. Generally, suits are brought in the State where the alleged unlawful practice occurred, but in some
cases can be brought where relevant employment records are kept, where the employment would have been, or
where the respondent has its main office. If you have simple questions, you usually can get answers from the
office of the clerk of the court where you are bringing suit, but do not expect that office to write your complaint or
make legal strategy decisions for you.

PRIVATE SUIT RIGHTS    --    **Equal Pay Act (EPA):**

EPA suits must be filed in court within 2 years (3 years for willful violations) of the alleged EPA underpayment: back
pay due for violations that occurred more than **2 years (3 years)** before you file suit may not be collectible. For
example, if you were underpaid under the EPA for work performed from 7/1/08 to 12/1/08, you should file suit
before 7/1/10 – *not* 12/1/10 -- in order to recover unpaid wages due for July 2008. This time limit for filing an EPA
suit is separate from the 90-day filing period under Title VII, the ADA, GINA or the ADEA referred to above.
Therefore, if you also plan to sue under Title VII, the ADA, GINA or the ADEA, in addition to suing on the EPA
claim, suit must be filed within 90 days of this Notice *and* within the 2- or 3-year EPA back pay recovery period.

ATTORNEY REPRESENTATION    --    **Title VII, the ADA or GINA:**

If you cannot afford or have been unable to obtain a lawyer to represent you, the U.S. District Court having jurisdiction
in your case may, in limited circumstances, assist you in obtaining a lawyer. Requests for such assistance must be
made to the U.S. District Court in the form and manner it requires (you should be prepared to explain in detail your
efforts to retain an attorney). Requests should be made well before the end of the 90-day period mentioned above,
because such requests do not relieve you of the requirement to bring suit within 90 days.

ATTORNEY REFERRAL AND EEOC ASSISTANCE    --    **All Statutes:**

You may contact the EEOC representative shown on your Notice if you need help in finding a lawyer or if you have any
questions about your legal rights, including advice on which U.S. District Court can hear your case. If you need to
inspect or obtain a copy of information in EEOC's file on the charge, please request it promptly in writing and provide
your charge number (as shown on your Notice). While EEOC destroys charge files after a certain time, all charge files
are kept for at least 6 months after our last action on the case. Therefore, if you file suit and want to review the charge
file, **please make your review request within 6 months of this Notice.** (Before filing suit, any request should be
made within the next 90 days.)

*IF YOU FILE SUIT, PLEASE SEND A COPY OF YOUR COURT COMPLAINT TO THIS OFFICE.*

EXHIBIT 20

1  Timothy L. McCandless, Esq.SBN 147715
2  Law Office of Timothy L. McCandless
   820 Main Street, Suite 1
3  Martinez, CA  94553
   Tel:  (925) 957-9797
4  Fax:  (925) 957-9799
5  Email:  mccandlesslaw@gmail.com

6  *Attorney for Plaintiff*
7  Kim McKenzie

8            **SUPERIOR COURT FOR THE STATE OF CALIFORNIA**

9        **IN AND FOR THE COUNTY OF SAN JOAQUIN – STOCKTON COURTHOUSE**

10                        **UNLIMITED CIVIL CASE**

11 | KIM MCKENZIE, an individual, | Case No.: 39-2015-00323837-CU-WT-STK |

12                 Plaintiff,          **NOTICE OF MOTION AND MOTION
13                                      OF PLAINTIFF KIM McKENZIE FOR
                    vs.                 ORDER OF REVOCATION OF THE
14                                      ARBITRATION AGREEMENT AND
   AT&T SERVICES, INC., A CALIFORNIA   DISMISSAL OF PENDING
15 CORPORATION, PACIFIC BELL           ARBITRATION;DECLARATION OF
   TELEPHONE COMPANY; and DOES 1       TIMOTHY L. McCANDLESS;
16 through  50, inclusive,             MEMORANDUM OF POINTS AND
17                                      AUTHORITIES IN SUPPORT THEREOF**

18                 Defendants.         Hearing Date: May 15, 2015
                                       Time: 9:00 am .
19                                     Dept.:11
                                       Reservation No. 2058008
20

21    TO: DEFENDANTS, AT&T Services, Inc., a California corporation, Pacific Bell

22 Telephone Company ("Defendants"), and their attorneys of record:

23    PLEASE TAKE NOTICE that on May 15, 2015, at 9:00 a.m., or as soon thereafter as the

24 matter may be heard in Department 11 of the Stockton Courthouse of the San Joaquin County

25 Superior Court located at 222 E. Weber Avenue, Stockton, California 95202, Plaintiff, Kim

26 McKenzie, will move this court for an order of revocation of the arbitration agreement (including

27 any arbitration clause within any related agreement) and dismissal of pending arbitration. This

28 motion is made pursuant to Code of Civil Procedure section1281.2(b) on the following grounds:

   1. This Court shall govern the interpretation and enforceability of an Arbitration agreement;

   2. This Court is the proper jurisdiction; and

   3. The arbitration agreement is substantively and procedurally unconscionable;

---

Motion for Revocation of Arbitration Agreement and Dismissal of Arbitration          1

1         This motion will be based upon this Notice of Motion and Motion, the Memorandum of

2    Points and Authorities and Declaration of Timothy L McCandless filed and served herewith, any

3    matters judicially noticed by this court, the pleadings and papers on file with the court, and on

4    any additional oral and or written argument as may be presented at the hearing of this motion.

5

6

7    Dated: April 27, 2015                              LAW OFFICE OF TIMOTHY L. McCANDLESS

8

9

10

11   By: _Tim McCandless_____

12       Timothy L. McCandless, Esq.
         Attorney for Plaintiff Kim McKenzie

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Motion for Revocation of Arbitration Agreement and Dismissal of Arbitration       2

## DECLARATION OF TIMOTHY L. MCCANDLESS

I, Timothy L. McCandless, declare as follows:

1. I am an attorney at law, duly licensed to practice law before all courts of the State of California. My law firm, The Law Office of Timothy L. McCandless, is counsel for Plaintiff Kim Mckenzie, in this action. I am making this declaration in support of Plaintiff's Notice of Motion and Motion of Plaintiff Kim Mckenzie for Order of Revocation of the Arbitration Agreement and Dismissal of Pending Arbitration.

2. On June 25, 2013, Lara-Beye Molina (Senior Attorney for Defendants) informed me by letter that Plaintiff had to arbitrate her wrongful termination claim through JAMS, Inc. The letter stated, inter alia, that according to the arbitration agreement, my client was required to pay an amount equal to court fees in order to proceed with an arbitration of her claim. **Exhibit A** attached hereto is a true copy of this letter and it is incorporated herein as part of this motion.

3. On August 23, 2013, Plaintiff filed notice with JAMS, Inc. to arbitrate.

4. On May 12, 2014, arbitration with JAMS, Inc. commenced.

5. On February 3, 2015, Plaintiff received a right to sue letter from The Equal Employment Opportunity Commission ("EEOC"). **Exhibit B** attached hereto is a true and correct copy of this letter. It is incorporated by reference as part of this motion.

6. I have reviewed the "Arbitration Agreement" signed by Plaintiff on January31, 2013. After a further in-depth review of that document, I discovered that the arbitration agreement was only related to a class action settlement of a federal court case entitled Joe Lewis Luque, et al. v. AT&T Corp., et al., 3:09-CV-0. At the top of the document, it is entitled "CONSENT AND CLAIM FORM." Beneath that, in bold letters, it states **"IF YOU WANT TO RECEIVE MONEY UNDER THIS SETTLEMENT, YOU MUST COMPLETE THIS FORM, WITHOUT MODIFICATION, IN ACCORDANCE WITH THE INSTRUCTIONS BELOW."** Further down on page 1 of this document, under the heading **"INSTRUCTIONS"**, it states, in pertinent part, as follows: "**1.You must complete, sign and mail, fax, or email this Consent and Claim Form in order to be eligible for monetary recovery…You will not be eligible for monetary recovery unless you sign and return, without modification, the Release of Claims (page 2), and the Arbitration Agreement (pages 3-5). 4. If you do not complete the Consent and Claim**

Law Office of Timothy L. McCandless, Esq
820 Main Street, Suite 1
Martinez, CA 94553

---

7. **Form in full without modification, including, but not limited to, the Arbitration Agreement, you will not be eligible to receive any monetary recovery."** It is my position that this document is not related to and does not require arbitration of Plaintiff's wrongful termination case or claim. Furthermore, Plaintiff had already been terminated when she signed this document. This document will be hereinafter referred to in this motion as the "Arbitration Agreement." A true copy of this document is attached hereto, marked as **Exhibit C**, and incorporated by reference as part of this motion.

8. Plaintiff was terminated on September 25, 2012. Plaintiff subsequently signed the Arbitration Agreement on January 31, 2015 solely in order to receive compensation resulting from a class action lawsuit settlement.

9. Plaintiff never stipulated or waived her rights to go to arbitration but was misled and fraudulently induced to commence arbitration by Attorney Molina's letter.

10. Plaintiff never wanted to arbitrate and felt this matter should be resolved by a jury.

11. I am filing this motion because I am convinced that plaintiff has a meritorious case against the defendants for Wrongful termination and the other causes of action. **Exhibit D** is a true copy of the Plaintiff's Right to Sue letter issues to Plaintiff by the California Department of Fair Employment & Housing. **Exhibit E** is a true copy of Plaintiff's Option to Mediate letter issued to Plaintiff by the U.S. Equal Employment Opportunity Commission. These exhibits are incorporated by reference as part of this motion. I am willing to comply with any condition the Court may impose as a condition of granting this motion.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Dated: April 27, 2015

Timothy L. McCandless
Declarant

## MEMORANDUM OF POINTS AND AUTHORITIES

## I. SUMMARY OF FACTS

Defendants AT&T Services, Inc., Pacific Bell Telephone Company (Defendant) was and now is a California corporation doing business in the State of California, County of San Joaquin. On or about January 31st, 2013 Plaintiff signed the subject arbitration agreement ("Agreement") (EXHIBIT A) after plaintiff was terminated with defendant to receive compensation for case titled: *JOE LEWIS LUQUE, ETAL. V AT&TCORP., ETAL., 3:09-CV-05885 (CRB)(JCS).*

the agreement stated:

> YOU MUST COMPLETE ALL PAGES OF THE CONSENT AND CLAIM FORM AND SIGN IT FULLY WHERE INDICATED, WITHOUT MODIFICATION.
> PacBell's records show that between December 16, 2005 and May 3, 2012, you held one or more of the following positions: 1) Manager Construction & Engineering ("C&E Field Manager"); 2) Manager Network Services in Installation & Maintenance ("I&M Field Manager"); 3) Manager Network Services in U-verse ("U-verse Field Manager"); or 4) AT&T Corp. Manager Network Operations Center ("T Corp Field Manager") and that you supervised outside technicians in one of the following titles while holding these position(s): Network Technical Specialist, Network Technical Specialist-G, Communications Technician Toll, Company Telecommunications Technician, Outside Plant Technician, Premises Technician, Splicing Technician, Systems Technician, Services Technician, Antenna Technician, and Cable Locator (collectively "the Class Positions"). According to the Company's records, your total number of Compensable Workweeks (i.e., the number of workweeks you received pay for work performed while you were employed in a Class Position within these date ranges) is: Based on the settlement formula, the Parties estimate that the gross amount you will, receive, prior to applicable tax withholdings, if you file a claim is approximately: An additional service payment has been requested on your behalf in the amount of:

On or about September 25th, 2012 Plaintiff was terminated by defendant and immediately filed for wrongful termination claims with the EEOC and DEFH. Plaintiff at the time was an unemployed I&M Field Manager when she signed the agreement on January 31st, 2013. Plaintiff thought she was signing a release of claim form to be compensated. Plaintiff received a right to sue from the DEFH on or about June 10th, 2013 (EXHIBIT B) but not from the EEOC that investigation was still pending. Plaintiff contacted the legal counsel for defendant (Lara Beye

Law Office of Timothy L. McCandless, Esq<br>820 Main Street, Suite I<br>Martinez, CA 94553

Molina) because the EEOC had an option to mediate (EXHIBIT C). Plaintiff signed the agreement to mediate on July 11th, 2013. Defendant told Plaintiff defendant would not mediate the only option was to arbitrate so Plaintiff filed for arbitration with JAMS.

Ms. Beye Mollnia Letter (EXHIBIT D) states as follows:

"The Demand for Employment Arbitration attached to your letter is defective as it fails to comply with the requirements set forth in the parties' agreement for initiating arbitration. First, Ms. McKenzie identified the incorrect third pay responsible for managing the arbitration process. Asset forth in the parties' agreement, JAMS, Inc. is the proper entity, not the American Arbitration Association, Second, Ms. McKenzie failed to properly initiate the arbitration and provide notice m required under the parties' agreement. Although the parties' agreement sets forth several ways for Ms. McKenzie to initiate an arbitration. The manner in which Ms. McKenzie seemingly attempted to do so, i.e., completing an American Arbitration Association Demand for Arbitration and serving it on Pacific Bell's agent of process, is not a proper form of notice as set forth in the parties' argument. Third, even if Ms. McKenzie had properly initiated an arbitration and provided the requisite notice (which she has not), her claims as allered in the Demand for Arbitration are subject to a motion to dismiss that will be entertained by an arbitrator that will apply the federal Rules of Civil Procedure. It is not enough simply to allege that a wrong has been committed and demand relief. Rather, a pleading must give "fair notice" of the claim being asserted and the "grounds upon which it resists." Bell Atlantic Corp. v. Twombly. 550 U.S. 544, 555 (2007)."

On or about May 12th, 2014 arbitration with JAMS commence per Ms. Bye-Mollnia's letter. Plaintiff was going through with arbitration but did not understand why she had to arbitrate because she was an *AT WILL* employee [Emphasis Added]. Plaintiff has contended that arbitration was the wrong venue. On or about February 3rd, 2015, plaintiff received the EEOC right to sue letter (EXHIBIT E) which allows Plaintiff to bring suit in this court. Plaintiff tried to withdrawal from arbitration to seek her claims in this court but the arbitrator denied plaintiff's request. Plaintiff reviewed the agreement and to plaintiff's surprise, the agreement to arbitrate only arose out of claims dealing with the class action lawsuit. In addition, plaintiff had been terminated by defendant when she signed the agreement. Plaintiff was under the impression it was only a consent and claim form. Further, defendant must file any answers, briefs or papers on

Law Office of Timothy L. McCandless, Esq
820 Main Street, Suite 1
Martinez, CA 94553

1   or before May 6th, 2015. Accordingly, it is respectfully submitted that the court set the hearings

2   on plaintiff's Motion to Stay Arbitration and Revocation of Arbitration Agreement, defendant's

3   Motion to Stay Action Pending Arbitration and Application for Injunction be heard prior to May

4   6th, 2015.

## II. GROUNDS EXIST TO STAY THE PENDING ARBITRATION AND A FINDING THAT THE ARBITRATION AGREEMENT SHOULD BE REVOKED

7   *Code of Civil Procedure § 1281* states, "A written agreement to submit to arbitration an existing

8   controversy or a controversy thereafter arising is valid, enforceable and irrevocable, save upon

9   such grounds as exists for the revocation of any contract."

10  *Code of Civil Procedure § 1281.2* states in pertinent part:

11  "On petition of a party to an arbitration agreement alleging the existence of a written agreement

12  to arbitration a controversy and that a party thereto refused to arbitrate such controversy, the

13  court shall order the petitioner and the respondent to arbitrate the controversy if it determines

14  that an agreement to arbitrate the controversy exists unless it determines that:... or (b) *grounds*

15  *exist for the revocation of the agreement....* (c) a party to the arbitration agreement is also a party

16  to a pending court action or special proceeding with a third party, arising out of the same

17  transaction or series of related transactions and there is a possibility of conflicting rulings on a

18  common issue of law or fact. For purposes of this section, a pending court action or special

19  proceeding includes an action or proceeding initiated by the party refusing to arbitrate after the

20  petition to compel arbitration has been filed, but on or before the date of hearing on the petition

21  ... or (4) may stay arbitration pending the outcome of the court action or special proceeding."

22  As set forth in the attached Declaration of Timothy L McCandless defendant has entered into an

23  arbitration contract with plaintiff after she was terminated. Plaintiff's agreement must be void

24  and deemed unconscionable. This court must ask its self how can defendant enter into an

25  agreement to arbitrate a wrongful termination action after plaintiff was terminated? The

26  agreement should be void on its face! This court has jurisdiction over this matter, the authority

27  for which is clearly provided for in CCP § 1281.2(b).

28  **A. The Entire Agreement Is Void**

Anticipating an argument from Defendant of the signed Agreement, "*Knowledge*" will save the

Agreement even if plaintiff was unaware of the arbitration provision. This cannot be saved by

Plaintiff's signature because at the time of the agreement Plaintiff was not an employee and

Law Office of Timothy L. McCandless, Esq
820 Main Street, Suite 1
Martinez, CA 94553

Law Office of Timothy L. McCandless, Esq
820 Main Street, Suite 1
Martinez, CA 94553

1   defendant had no bargaining power therefore the  arbitration agreement is void as a matter of

2   public policy under California law. Generally, courts reform contracts only where parties have

3   made mistakes, and not for the purposes of saving a legal contract. See *Kolani, supra* at pp. 407-

4   408. As the court in *Kolani* recognized, the policy of *B&P* § 16600 would be undermined by

5   doing so. Employers would have no disincentive to use the broad illegal clauses if permitted to

6   retreat to a narrow, lawful construction in the event of litigation. See *Kolani, supra* p. 408.

7   That is exactly the case here, and this Agreement should be found void in its entirety under

8   California law.

## III. THE ARBITRATION CLAUSE IS PROCEDURALLY AND SUBSTANTIVELY UNCONSCIONABLE

**A. Agreements to Arbitrate Are Not Self-Executing**

Plaintiff initiated the arbitration process with JAMS Arbitration because defendant told plaintiff

that was the proper venue. Plaintiff refused to participate in the arbitration proceeding, because

after reviewing the agreement, JAMS has no jurisdiction to hear this matter. Plaintiff has filed an

action in the Superior Court of the State of California addressing the enforceability of the

Agreement. The arbitration process is not self-executing and one desiring arbitration must take

steps to secure it. In order to compel arbitration, the defendant has to seek relief in the court in

which plaintiff's cause of action is pending and until defendant seeks to compel arbitration and

to stay plaintiff's cause of action, plaintiff would be free to prosecute his suit. See *Code of Civil*

*Procedure* §1281.2 and *Sauter v. Superior Court* (1969) Cal.App.3d 25, 29, 82 Cal.Rptr. 395.

Defendant's course of conduct in this matter is demonstrative as to why the arbitration clause is

substantive and procedurally unconscionable.

**B. The Enforceability of Arbitration Agreement Will Be Governed by California Contract Law**

When grounds exist at law or in equity for the revocation of any contract, courts may decline to

enforce such agreements. See *Ferguson v. Countrywide Credit Industries, Inc.* 298, F.3d 778,

782 (9th Cir. 2002). Because unconscionability is a generally applicable defense to contracts,

California courts may refuse to enforce an unconscionable arbitration agreement. See *Ferguson,*

*supra* at 782. Unconscionability refers to an absence of meaningful choice on the part of one of

the parties together with contract terms which are unreasonably favorable to the other party. See

*A & M Produce Co. vs. FMC Corp.,* (1982) 135 Cal.App. 3d 473, 486, 186 Cal.Rptr. 114, and

California *Code of Civil Procedure* §1670.5. Thus, a contract to arbitrate is unenforceable under

the doctrine of unconscionability where there is both a procedural and substantive element of unconscionability. See *Armendariz v. Foundation Health Services, Inc.* (2002) 24 Cal. 4th 883, 114, 99 Cal.Rptr.2d 745.

Under California Law, the doctrine of unconscionability has a procedural and a substantive element. Both elements must appear in order to invalidate a contract or one of its individual terms. These elements, however, need not be present in the same degree. Here plaintiff signed an agreement after she was terminated and therefore the agreement should be void. The more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the term is unenforceable or vice versa. See *Armendariz, supra* at p. 114.

**C. The Arbitration Agreement is Substantively Unconscionable**

Substantive unconscionability centers on the terms of the agreement and whether those terms are so one-sided as to shock the conscious. See *Kinney v. United Health Care Services, Inc.* (1999) Cal.App. 4th 1322, 1330, 83 Cal.Rptr.2d 348. Finding that a contract is substantively unconscionable requires more than that the court findings that the terms are unreasonable. Rather, the terms must shock the conscious. See *Marin Storage & Trucking, Inc. v. Benco Contracting and Engineering, Inc.* (2001) 89 Cal.App. 4th 1042, 1055, 107 Cal.Rptr.2d 645. There are certain statutory rights that are unwaivable. In *Armendariz,* the Supreme Court concluded that the Fair Employment and Housing Act (FEHA) were enacted for public reasons and that the rights conferred on employees were unwaivable. See *Armendariz, supra* pp. 100-101. The rights are not limited to just FEHA claims and said scrutiny should apply to the enforcement of rights under any statutory enactment for a public reason. See *Armendariz, supra* at p. 101 and *Mercuro v. Superior Court,* (2002) 96 Cal.App. 4th 167, 180, 116 Cal.Rptr.2d 671. This provision is an expression of public policy to insure that every citizen shall retain the right to pursue any lawful employment and enterprise of their choice. Further, California *Labor Code* §227.3, provides an employee certain protection against employers who do not compensate them at the time of their termination of employment. In *Armendariz,* the Supreme Court held that an Arbitration Agreement cannot be made to serve as a vehicle for the waiver of statutory rights created by the FEHA. See *Armendariz,* supra at P. 101. These specific statutory rights are unwaivable and cannot be waived by this Arbitration Agreement.

Law Office of Timothy L. McCandless, Esq
820 Main Street, Suite 1
Martinez, CA 94553

Enforcement of this arbitration agreement would mean that any California employee of Defendant, in this case Plaintiff, completely waives any rights he or she may have under California law, including *B&P § 16600*, *Labor Code §227.3*, and any other potential rights he or she may have under California law including the FEHA or any other conduct that violates California Public Policy. This makes this arbitration agreement substantively unconscionable.

**D. The Arbitration Agreement Is Procedurally Unconscionable**

A finding of a contract of adhesion is essentially a finding of procedural unconscionability. See *Flores v. Trans America HomeFirst, Inc., (2001) 93 Cal.App.4th 846, 853, 113 Cal.Rptr.2d 376*. Unconscionability turns on the adhesiveness of the contract under a set of circumstances in which the weaker or the adhering party is presented a contract drafted by the stronger party on a take it or leave it basis. See *Armendariz, supra* at pp. 113-114. The *Armendariz* court held that it is procedurally unconscionable to require employees, as a condition of employment to waive their right to seek redress of grievances in a judicial form. See *Armanderiz, supra* at pp. 114-115. Merely because a choice of law or forum selection provision is contained in a contract of adhesion does not render the provision unenforceable on policy grounds as a matter of law, but, the courts will scrutinize such contracts with care and refuse to honor the selection if to do so would result in substantial injustice to the adherent. See *Bos Material Handling. Inc. v. Crown Controls Corporation, (1982) 137 Cal.App.3d 99, 108, 186 Cal.Rptr. 740*. The purpose of an arbitration clause is it expedites and facilitates the settlement of disputes and to overcome delays caused by litigation. See *Player v. Geo. M. Brewster & Son. Inc. (1971) 18 Cal.App.3d 526, 536, 96 Cal.Rptr. 149*.

Although there is strong public policy favoring arbitration, that policy is manifestly undermined by provisions in arbitration clauses which seek to make the arbitration process an offensive weapon in one party's arsenal. See *Saika v. Gold, (1996) 49 Cal.App.4th 1074, 1079, 56 Cal.Rptr.2d 922*. This is precisely what Defendant is doing in this case. They have misled plaintiff to file for arbitration with JAMS based on a void, unconscionable, unenforceable and adhesion agreement. Defendant is clear violation of California law to force compliance of a weaker party, in this case one of their terminated employee, Plaintiff.

### IV. CONCLUSION

It is respectfully submitted that this court shall govern the interpretation and enforceability of the agreement. This court is the proper jurisdiction. Plaintiff believed when she signed the agreement

Law Office of Timothy L. McCandless, Esq
820 Main Street, Suite I
Martinez, CA 94553

on January 31st, 2013 that she was only agreeing to a consent and claim form. Therefore, the Arbitration Agreement is substantively and procedurally unconscionable. Therefore, grounds exist for the revocation of the Arbitration Agreement.

Dated: April 27, 2015                    LAW OFFICE OF TIMOTHY L. McCANDLESS


By: _Tim McCandless_____

Timothy L. McCandless, Esq.
Attorney for Plaintiff Kim McKenzie

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Law Office of Timothy L. McCandless, esq.
820 Main Street, Suite l
Martinez, CA 94553

# LETTER FROM AT&T COUNSEL (EXHIBIT A)

 **at&t**

| | | |
|---|---|---|
| **Lara-Beye Molina** | AT&T Services, Inc. | T: 415-778-1277 |
| *Senior Attorney* | 525 Market Street | F: 415-974-1990 |
| *Legal Department* | Suite 2030 | lara-beye.molina@att.com |
| | San Francisco, CA 94105 | |

DELIVERED VIA U.S. MAIL AND FACSIMILE

June 25, 2013

JUN 2 6 2013

RECEIVED

Timothy L. McCandless, Esq.
Law Office of Timothy L. McCandless
820 Main Street
P.O. Box 149
Martinez, California 94553

    Re:   Kim McKenzie

Dear Mr. McCandless:

I am in receipt of your letter dated June 20, 2013 and the attached Demand for Employment Arbitration on behalf of Kim McKenzie.

As you know, Ms. McKenzie and her former employer, Pacific Bell Telephone Company ("Pacific Bell" or the "Company"), have agreed that any disputes arising out of or related to Ms. McKenzie's employment or termination of employment are subject to an arbitration agreement signed by Ms. McKenzie on January 31, 2013. The parties' agreement sets forth the notice requirements for commencing an arbitration and the third party managing the arbitration process, among other things.

The Demand for Employment Arbitration attached to your letter is defective as it fails to comply with the requirements set forth in the parties' agreement for initiating an arbitration. First, Ms. McKenzie identified the incorrect third party responsible for managing the arbitration process. As set forth in the parties' agreement, JAMS, Inc. is the proper entity, not the American Arbitration Association. Second, Ms. McKenzie failed to properly initiate the arbitration and provide notice as required under the parties' agreement. Although the parties' agreement sets forth several ways for Ms. McKenzie to initiate an arbitration, the manner in which Ms. McKenzie seemingly attempted to do so, i.e., completing an American Arbitration Association Demand for Arbitration and serving it on Pacific Bell's agent of process, is not a proper form of notice as set forth in the parties' agreement. Third, even if Ms. McKenzie had properly initiated an arbitration and provided the requisite notice (which she has not), her claims as alleged in the Demand for Arbitration are subject to a motion to dismiss that will be entertained by an arbitrator that will apply the Federal Rules of Civil Procedure. It is not enough simply to allege that a wrong has been committed and demand relief. Rather, a pleading must give "fair notice" of the claim being asserted and the "grounds upon which it resists." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

If you wish to remedy the defects in Ms. McKenzie's demand and properly initiate the arbitration as required by the parties' agreement, please also note that as the party initiating the claim, she is responsible to contribute "an amount equal to the filing fee to initiate a claim in the court of general jurisdiction in the state in which [she was last] employed by the

Timothy L. McCandless, Esq.
June 25, 2013
Page 2

Company." Alternatively, if your client wishes, you may provide me with a demand letter that more fully outlines Ms. McKenzie's claims and request for damages. I can review such a letter and discuss the possibility of engaging in settlement negotiations outside of the arbitration process with my client.

I look forward to hearing from you.

Very truly yours,

Lara-Beye Molina

#593195

Proud member of the U.S. Lawyer Team

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Law Office of Timothy L. McCandless, Esq.
820 Main Street, Suite I
Martinez, CA 94553

# EEOC RIGHT TO SUE LETTER (EXHIBIT B)

EEOC Form 161-B (11/09)

## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

### NOTICE OF RIGHT TO SUE *(ISSUED ON REQUEST)*

| To: | Kim E. McKenzie | From: | San Francisco District Office |
|---|---|---|---|
| | 4516 Wessex Lane | | 450 Golden Gate Avenue |
| | Salida, CA 95368 | | 5 West, P.O. Box 36025 |
| | | | San Francisco, CA 94102 |

[ ] *On behalf of person(s) aggrieved whose identity is CONFIDENTIAL (29 CFR §1601.7(a))*

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| **550-2013-00472** | **Deborah Randall,** **Enforcement Manager** | **(415) 522-3107** |

*(See also the additional information enclosed with this form.)*

**NOTICE TO THE PERSON AGGRIEVED:**

**Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Act (ADA), or the Genetic Information Nondiscrimination Act (GINA):** This is your Notice of Right to Sue, issued under Title VII, the ADA or GINA based on the above-numbered charge. It has been issued at your request. Your lawsuit under Title VII, the ADA or GINA **must be filed in a federal or state court WITHIN 90 DAYS of your receipt of this notice;** or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

[ X ]  More than 180 days have passed since the filing of this charge.

[ ]  Less than 180 days have passed since the filing of this charge, but I have determined that it is unlikely that the EEOC will be able to complete its administrative processing within 180 days from the filing of this charge.

[ X ]  The EEOC is terminating its processing of this charge.

[ ]  The EEOC will continue to process this charge.

**Age Discrimination in Employment Act (ADEA):** You may sue under the ADEA at any time from 60 days after the charge was filed until 90 days after you receive notice that we have completed action on the charge. In this regard, **the paragraph marked below applies to your case:**

[ X ]  The EEOC is closing your case. Therefore, your lawsuit under the ADEA **must be filed in federal or state court WITHIN 90 DAYS** of your receipt of this Notice. Otherwise, your right to sue based on the above-numbered charge will be lost.

[ ]  The EEOC is continuing its handling of your ADEA case. However, if 60 days have passed since the filing of the charge, you may file suit in federal or state court under the ADEA at this time.

**Equal Pay Act (EPA):** You already have the right to sue under the EPA (filing an EEOC charge is not required.) EPA suits must be brought in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred more than 2 years (3 years)** before you file suit may not be collectible.

If you file suit, based on this charge, please send a copy of your court complaint to this office.

On behalf of the Commission

Enclosures(s)

_____                     02/03/2015
Michael P. Connolly,                                            *(Date Mailed)*
**Acting District Director**

cc:

Gerald (Gerry) Connors
Sr. EEO Consultant
AT&T Communications
2600 CAMINO RAMON, Rm. 3E502
San Ramon, CA 94583

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Law Office of Timothy L. McCandless, Esq.
820 Main Street, Suite 1
Martinez, CA 94553

# ARBITRATION AGREEMENT (EXHIBIT C)

02/07/2013 00:51 FAX  2095454555          POSTALANNEXPLUS                    002/004

PacBell/Luque Settlement Administrator
c/o KCC Class Action Services
P.O. Box 6177
Novato, CA 94948-6177

**ATQ**                    000450              Name/Address Changes, if any:

Claim #: ATQ-100829401 450

| First Name | Last Name | | |
|---|---|---|---|
| Address | | | |
| City | | State | Zip |

KIM MCKENZIE
4516 WESSEX LN
SALIDA, CA 95368-9188

Home or Cell Phone: (201) 614-1664    E-Mail Address: *Kim.mckenzie76@*
209                                                      *gmail.com*

## CONSENT AND CLAIM FORM

*JOE LEWIS LUQUE, ET AL. V. AT&T CORP., ET AL.,* 3:09-CV-05885 (CRB)(JCS)

**IF YOU WANT TO RECEIVE MONEY UNDER THIS SETTLEMENT, YOU MUST COMPLETE THIS FORM, WITHOUT MODIFICATION, IN ACCORDANCE WITH THE INSTRUCTIONS BELOW.**

YOU MUST COMPLETE, SIGN, AND MAIL (BY FIRST CLASS U.S. MAIL OR EQUIVALENT), FAX, OR EMAIL THIS CONSENT AND CLAIM FORM. IT MUST BE POSTMARKED (IF MAILED), FAXED, OR EMAILED ON OR BEFORE FEBRUARY 9, 2013, ADDRESSED AS FOLLOWS, OR YOU WILL BE INELIGIBLE TO RECEIVE A MONETARY RECOVERY.

MAIL TO:
PacBell/Luque Settlement Administrator, c/o KCC Class Action Services
P.O. Box 6177, Novato, CA 94948-6177
Phone number: 1-888-338-8835
FAX TO: 1-866-858-1434
OR EMAIL TO: ATTLuqueSettlement@kccllc.com

### INSTRUCTIONS

1. You must complete, sign and mail, fax, or email this Consent and Claim Form in order to be eligible for monetary recovery. You must include the last four digits of your Social Security Number (which will be kept confidential) in the space provided below. You will not be eligible for monetary recovery unless you sign and return, without modification, the Release of Claims (page 2), AND the Arbitration Agreement (pages 3-5).

2. If you move to a different address or change other forms of contact information such as telephone numbers and email addresses, please send the Settlement Administrator your new contact information. It is your responsibility to keep current contact information on file with the Settlement Administrator.

3. If you wish to challenge the employment data below, you must submit your challenge by February 9, 2013.

4. If you do not complete the Consent and Claim Form in full without modification, including, but not limited to, the Arbitration Agreement, you will not be eligible to receive any monetary recovery. The Arbitration Agreement is substantially similar to the Arbitration Agreement previously distributed by the Company to all Field Managers on or about December, 2011.

### YOU MUST COMPLETE ALL PAGES OF THE CONSENT AND CLAIM FORM AND SIGN IT FULLY WHERE INDICATED, WITHOUT MODIFICATION.

PacBell's records show that between December 16, 2005 and May 3, 2012, you held one or more of the following positions: 1) Manager Construction & Engineering ("C&E Field Manager"); 2) Manager Network Services in Installation & Maintenance ("I&M Field Manager"); 3) Manager Network Services in U-verse ("U-verse Field Manager"); or 4) AT&T Corp. Manager Network Operations Center ("T Corp Field Manager") and that you supervised outside technicians in one of the following titles while holding these position(s): Network Technical Specialist, Network Technical Specialist-G, Communications Technician Toll, Company Telecommunications Technician, Outside Plant Technician, Premises Technician, Splicing Technician, Systems Technician, Services Technician, Antenna Technician, and Cable Locator (collectively "the Class Positions").

02/07/2013 00:52 FAX  2095454755          POSTALANNEXPLUS                              ☑003/004

100829401

According to the Company's records, your total number of Compensable Workweeks (i.e., the number of workweeks you received pay for work performed while you were employed in a Class Position within these date ranges) is:                                    334.57.

Based on the settlement formula, the Parties estimate that the gross amount you will receive, prior to applicable tax withholdings, if you file a claim is approximately:        $17,010.51

**Note: The amount you receive could be higher or lower than this estimate.**

## CHALLENGE

*Check one:*

☒ I do not wish to challenge the number of Compensable Workweeks listed above.

☐ I wish to challenge the number of Compensable Workweeks listed above. I have included with my signed Claim Form a written statement with what I believe is the correct number of Compensable Workweeks. I have also included documentary evidence that supports my claim. I recognize that my claim will not be reviewed without such evidence. I understand that by submitting this challenge, I hereby authorize the parties and the Settlement Administrator to review PacBell's records and make a determination based on its records and the records I submitted, subject to final determination by the Settlement Administrator. I understand that this determination may increase or decrease the amount of my Settlement Share. I understand that such determinations are final and binding. I understand that I may contact Class Counsel regarding my challenge, if I wish.

**IF YOU WISH TO CHALLENGE THE NUMBER OF COMPENSABLE WORKWEEKS LISTED ABOVE, YOU MUST SUBMIT THIS CHALLENGE, ALONG WITH THE COMPLETED CONSENT AND CLAIM FORM, ON OR BEFORE FEBRUARY 9, 2013 (WITHIN 60 DAYS AFTER THIS FORM WAS MAILED TO YOU).**

## RELEASE OF CLAIMS

My signature below constitutes my full and complete release of all known and unknown claims against AT&T Corp., Pacific Bell Telephone Company, and AT&T Communications of California, Inc., and their present and former parents, subsidiaries, and affiliated companies, and their respective present and former officers, directors, employees, partners, shareholders, and agents, and any other successors, assigns, or legal representatives (collectively, "the Released Parties") from all known and unknown claims they may have against the Released Parties arising from or related to allegations of having not been paid all wages owed in accordance with California or federal law, and any other wage-and-hour or related claims that were or could have been alleged in the Complaint in *Joe Lewis Luque, et al. v. AT&T Corp., et al.*, filed in the United States District Court for the Northern District of California, Case No. 3:09-CV-05885 (CRB)(JCS)("*Luque*") or derive from the same factual predicate, to the fullest extent permitted by law, including, but not limited to, all claims of allegedly unpaid wages, including overtime wages; alleged meal and rest period violations; alleged pay stub violations; alleged failure to pay all wages due upon termination; alleged breach of contract or unjust enrichment; any and all related penalties, including but not limited to record-keeping penalties, pay stub penalties, waiting time penalties, and civil penalties; interest; liquidated damages; and attorneys' fees, costs, and expenses, from December 16, 2005, up to and including the date of final court approval of the Settlement, whether arising under the California Labor Code; California Business and Professions Code section 17200 et seq.; the California Labor Code Private Attorneys General Act of 2004, Cal. Lab. Code § 2698 et seq.); the California Industrial Welfare Commission Wage Orders; the federal Fair Labor Standards Act ("FLSA"); or common law contract or tort law. This Settlement does not release claims that are not of a wage-and-hour or related nature, such as discrimination claims. This release does not serve as a waiver of your rights to address any claims arising from or related to events that occur after the date of final court approval of the Settlement.

## TAXPAYER IDENTIFICATION NUMBER CERTIFICATION

| Substitute IRS Form W-9 |
| --- |

Enter the last four digits of your Social Security Number:   XXX—XX— 2  1  1  4

I certify that:

1.   The partial social security number shown on this form correctly states the last 4 digits of my taxpayer identification number. and

2.   I am not subject to backup withholding because: (a) I am exempt from backup withholding, or (b) I have not been notified by the Internal Revenue Service (IRS) that I am subject to backup withholding as a result of a failure to report all interest or dividends, or (c) the IRS has notified me that I am no longer subject to backup withholding; and

3.   I am a U.S. citizen or authorized to work in the U.S.

Note: If you have been notified by the IRS that you are subject to backup withholding, you must cross out item 2 above.

The IRS does not require your consent to any provision of this document other than this Form W-9 certification to avoid backup withholding.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

⟹  _K McKenzie_

Signature of Employee/Class Member   KIM MCKENZIE

_1-3-2013_

Date (mm/dd/yyyy)

2                                          140049_EX_domi000450/004101

100829401

Should any party refuse or neglect to appear for, or participate in, the arbitration hearing, the Arbitrator shall have the authority to decide the dispute based upon whatever evidence is presented.

Either party shall have the right to file a post-hearing brief. The time for filing such a brief shall be set by the Arbitrator.

### The Arbitration Award

The Arbitrator may award any party any remedy to which that party is entitled under applicable law, but such remedies shall be limited to those that would be available to a party in his or her individual capacity in a court of law for the claims presented to and decided by the Arbitrator.

The Arbitrator will issue a decision or award in writing, stating the essential findings of fact and conclusions of law. A court of competent jurisdiction shall have the authority to enter a judgment upon the award made pursuant to the arbitration.

### Non-Retaliation

It is against Company policy for any employee to be subject to retaliation if he or she exercises his or her right to assert claims under this Agreement. If you believe that you have been retaliated against by anyone at the Company, you should immediately report this to the Ethics and Compliance Hot Line at 1-888-871-2622.

### Sole and Entire Agreement

This is the complete agreement of the parties on the subject of arbitration of disputes. This Agreement supersedes any prior or contemporaneous oral or written understandings on the subject. No party is relying on any representations, oral or written, on the subject of the effect, enforceability or meaning of this Agreement, except as specifically set forth in this Agreement.

### Construction and Severability

If any provision of this Arbitration Agreement is adjudicated to be void or otherwise unenforceable, in whole or in part, such adjudication shall not affect the validity of the remainder of the Arbitration Agreement. All provisions of this Arbitration Agreement not adjudicated to be void or otherwise unenforceable shall remain in full force and effect based on the parties' mutual intent to create a binding agreement to arbitrate their disputes.

### Voluntary Agreement

I ACKNOWLEDGE THAT I HAVE CAREFULLY READ THIS AGREEMENT, THAT I UNDERSTAND ITS TERMS, THAT ALL UNDERSTANDINGS AND AGREEMENTS BETWEEN THE COMPANY AND ME RELATING TO THE ARBITRATION OF EMPLOYMENT DISPUTES ARE CONTAINED IN IT, THAT IT SUPERSEDES ANY PRIOR AGREEMENTS BETWEEN THE COMPANY AND ME ON THE ARBITRATION OF EMPLOYMENT DISPUTES, AND THAT I HAVE ENTERED INTO THE AGREEMENT VOLUNTARILY AND NOT IN RELIANCE ON ANY PROMISES OR REPRESENTATIONS BY THE COMPANY OTHER THAN THOSE CONTAINED IN THIS CONSENT AND CLAIM FORM ITSELF AND THE NOTICE OF PROPOSED CLASS ACTION SETTLEMENT IN *LUQUE*. I FURTHER ACKNOWLEDGE THAT THE EXECUTION OF THIS AGREEMENT IS A TERM OF THE SETTLEMENT IN *LUQUE* AND THAT THE SETTLEMENT SHARE THAT I AM TO RECEIVE IN *LUQUE* IS CONSIDERATION FOR THIS AGREEMENT.

I UNDERSTAND THAT BY SIGNING THIS AGREEMENT I AM GIVING UP MY RIGHT TO A JURY TRIAL.

I FURTHER ACKNOWLEDGE THAT I HAVE BEEN GIVEN THE OPPORTUNITY TO DISCUSS THIS AGREEMENT WITH CLASS COUNSEL AND WITH PRIVATE LEGAL COUNSEL AND HAVE AVAILED MYSELF OF THAT OPPORTUNITY TO THE EXTENT I WISH TO DO SO.

Employee/Class Member:

Signature of Employee/Class Member   KIM MCKENZIE.

1-31-2013

Date (mm/dd/yyyy)

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Law Office of Timothy L. McCandless, Esq
820 Main Street, Suite 1
Martinez, CA 94553

# CALIF. DEPT. FAIR EMPLOYMENT & HOUSING RIGHT TO SUE LETTER (EXHIBIT D)

STATE OF CALIFORNIA | State and Consumer Services Agency                                         GOVERNOR EDMUND G. BROWN, JR.

**DEPARTMENT OF FAIR EMPLOYMENT & HOUSING**                      DIRECTOR PHYLLIS W. CHENG
(800) 884-1684 | TDD (800) 700-2320 | Videophone for the DEAF (916) 226-5285
www.dfeh.ca.gov | email: contact.center@dfeh.ca.gov

EEOC Number: 550-2013-00472
Case Name: Kim McKenzie vs. A&T Communications
Filing Date:   June 28, 2013

### NOTICE TO COMPLAINANT AND RESPONDENT

This is to advise you that the above-referenced complaint is being dual filed with the
California Department of Fair Employment and Housing (DFEH) by the U.S. Equal
Employment Opportunity Commission (EEOC). The complaint will be filed in
accordance with California Government Code section 12960. This notice constitutes
service pursuant to Government Code section 12962.

The EEOC is responsible for the processing of this complaint and the DFEH will not be
conducting an investigation into this matter. Please contact EEOC directly for any
discussion of the complaint or the investigation.

### NOTICE TO COMPLAINANT OF RIGHT-TO-SUE

This letter is also your Right to Sue notice. This Right-To-Sue Notice allows you to file a
private lawsuit in State court. According to Government Code section 12965,
subdivision (b), you may bring a civil action under the provisions of the Fair Employment
and Housing Act against the person, employer, labor organization or employment
agency named in the above-referenced complaint. The lawsuit may be filed in a State
of California Superior Court. Government Code section 12965, subdivision (b), provides
that such a civil action must be brought within one year from the date of this notice.
Pursuant to Government Code section 12965, subdivision (d)(1), this one-year period
will be tolled during the pendency of the EEOC's investigation of your complaint. You
should consult an attorney to determine with accuracy the date by which a civil action
must be filed. This right to file a civil action may be waived in the event a settlement
agreement is signed.

If you have questions about the right to file under federal law, please contact the EEOC
using the contact information below.

| EEOC Northern California | EEOC Southern California |
|---|---|
| 350 The Embarcadero, Suite 500 | 255 East Temple Ste., 4th Floor |
| San Francisco, CA  94106 | Los Angeles, CA  90012 |
| (415) 625-5600 | (213) 894-1100 |

DFEH-200-02 (01/13)

EEOC Form 5 (11/09)

| CHARGE OF DISCRIMINATION | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | ☐ FEPA ☒ EEOC | 550-2013-00472 |

| California Department Of Fair Employment & Housing | and EEOC |
|---|---|
| *State or local Agency, if any* | |

| Name *(indicate Mr., Ms., Mrs.)* | Home Phone *(incl. Area Code)* | Date of Birth |
|---|---|---|
| **Ms. Kim McKenzie** | **(209) 614-1664** | 06-05-1961 |

| Street Address | City, State and ZIP Code |
|---|---|
| **4516 Wessex Lane, Salida CA, 95368** | |

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. *(If more than two, list under PARTICULARS below.)*

| Name | No. Employees, Members | Phone No. *(include Area Code)* |
|---|---|---|
| **AT&T Communications** | **500+** | **(559) 454-4602** |

| Street Address | City, State and ZIP Code |
|---|---|
| **4051 Newton Rd, Stockton CA, 95205  (Field Office)** | |

| Name | No. Employees, Members | Phone No. *(include Area Code)* |
|---|---|---|
| | | |

| Street Address | City, State and ZIP Code |
|---|---|
| | |

DISCRIMINATION BASED ON *(Check appropriate box(es).)*

☐ RACE   ☐ COLOR   ☒ SEX   ☐ RELIGION   ☐ NATIONAL ORIGIN
☒ RETALIATION   ☒ AGE   ~~DISABILITY~~ *KM*   ☐ GENETIC INFORMATION
☐ OTHER *(Specify)*

DATE(S) DISCRIMINATION TOOK PLACE
Earliest                    Latest

☐ CONTINUING ACTION

THE PARTICULARS ARE *(If additional paper is needed, attach extra sheet(s)):*

On or about March 11, 1991, I was hired by Respondent as an operator. My most recent position was manager. Rick Garcia (Area Manager) made me do things others in my protected class were not made to do. For example he made me have bucket trucks; I was given a low performance rating for similar performances.

On or about September 25, 2012 I was discharged by R for performance issues by Rick Garcia (Area Manager). Respondents reason for my termination was because of performance reasons.

I believe that I have been discriminated against because of my sex (female), in violation of Title VII of the Civil Rights Act of 1964, as amended and my age (40), in violation of Age of Discrimination in Employment Act and retaliated against for participating in a protected activity in violation of the same statutes.

RECEIVED

JUN 10 2013

EEOC
SFDO

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – *When necessary for State and Local Agency Requirements* |
|---|---|
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief. SIGNATURE OF COMPLAINANT |
| 6-7-13          *K McKenzie*  Date          Charging Party Signature | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE *(month, day, year)* |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Law Office of Timothy L. McCandless, Esq.
820 Main Street, Suite 1
Martinez, CA 94553

# EEOC OPTION TO MEDIATE LETTER (EXHIBIT E)



**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**
San Francisco District Office

FAX  510 - 280 - 2841

350 The Embarcadero, Suite 500
San Francisco, CA 94105
(415) 625-5600
TTY (415) 625-5610
FAX (415) 625-5609
Toll Free (800) 669-4000

Respondent:        A&T COMMUNICATIONS
EEOC Charge No:    550-2013-00472

Ms. Kim McKenzie
4516 Wessex Lane
Salida, CA 95368

EEOC Number: 550-2013-00472

Ms. McKenzie:

Now that you have filed a charge with the U.S. Equal Employment Opportunity Commission
(EEOC), it is important for you to understand some of our case processing procedures.

A Copy of your charge will automatically be filed with the State of California, Department of
Fair Employment and Housing. This is being done to protect your right to file a suit in state
court, should you desire to do so at a later date. It is not necessary for you to contact the state
agency. Because of the formal agreement between the EEOC and the state agency, the EEOC
will be processing your charge. The state agency will not process it unless we request them to do
so. This rarely happens, but, it does, we will certainly let you know that we are transferring your
charge to the state agency for processing.

In the interest of saving both your time and the time of the state agency, please do not contact
that office either to file your charge or to inquire regarding it.

A copy of your charge will be served upon the Respondent within the time limitation set forth
under both federal and state laws. In this instance, your charge will be served within ten (10)
days following receipt of it by this office.

Finally, we suggest that you keep this notice and a copy of your charge for your records. Be sure
to advise us of any change in your address or telephone number. Failure to do so could result in
dismissal of your charge. Please use your charge number on all correspondence.

If you need further assistance, please contact Darlene Turner (415) 625-5673.

Sincerely,
*Eric Darius*
CR/TIU Supervisor

**Charge No.: 550-2013-00472   KIM MCKENZIE VS. AT&T COMMUNICATIONS**

The San Francisco District Office of the Equal Employment Opportunity Commission (EEOC) has a mediation program designed as an alternative approach in assisting the parties in finding a way to resolve the matter prior to the initiating of an in-depth investigation into the allegations.   **Please see attached Mediation Fact Sheet and Questions & Answer Sheet.**

**Participation is voluntary**; both parties must agree to participate in the program.  If you are interested in participating, please complete the bottom portion of this notice and sign and return (or fax) this entire form to the address below.  If both parties agree to participate, we will assign the case to a neutral mediator who will conduct the mediation at no cost to the parties.  If a settlement is reached as a result of the mediation, the mediator is required to report to the EEOC any benefits received for purposes of providing aggregate data to the EEOC for Mediation Program evaluation purposes only, and the individual terms of the agreement will not be disclosed to the public.

The parties acknowledge that the mediator possesses the discretion to terminate the mediation at any time if an impasse occurs or either party or the mediator deems the case inappropriate for mediation.  In the event the mediation does not result in a settlement, the case will be transferred to the Enforcement Unit of the appropriate EEOC office and an investigation will begin.

If you have any questions, please call Charla Vazquez, ADR Program Assistant, at (415) 625-5630 or Fax this form to  (415) 625-5631, or mail it to us at :

> EEOC San Francisco District Office
> 350 The Embarcadero, Suite 500
> San Francisco, CA  94105-1260

**Please place a "X" on your choice:**

I/we ARE INTERESTED in participating in the Mediation program.  _X_

I/we ARE NOT INTERESTED in participating in the Mediation program.  _____

| | | |
|---|---|---|
| _McEgrie_ | _Field Manager_ | _7-11-13_ |
| Signature | Job Title | Date |
| _Kim McKenzie_ | _209-614-1664_ | _Kim.mckenzie716 @ gmail.com_ |
| Print Full Name | Daytime Phone Number: | E-Mail Address |
| _4516 Wessex Lane_ | | _Salida, CA 95368_ |
| Address/P.O. Box | | City, State and Zip Code |
| _Timothy McCandless_ | _820 Main St_ | _323-454-2905_ |
| Name & Phone Number of Representative (if any) | _Martinez, CA_ | _or 925-957-9797_ |

**Due to demand and limited resources, failure to respond within 15 days from the date of this letter will result in the charge being removed from the Mediation Program. If you decline to mediate this charge, your case will be forwarded to the Enforcement Unit and the investigatory process will proceed in accordance with established procedures.**



Enclosure with EEOC
Form 161-B (11/09)

# INFORMATION RELATED TO FILING SUIT
## UNDER THE LAWS ENFORCED BY THE EEOC

*(This information relates to filing suit in Federal or State court under Federal law.*
*If you also plan to sue claiming violations of State law, please be aware that time limits and other*
*provisions of State law may be shorter or more limited than those described below.)*

**PRIVATE SUIT RIGHTS   --   Title VII of the Civil Rights Act, the Americans with Disabilities Act (ADA), the Genetic Information Nondiscrimination Act (GINA), or the Age Discrimination in Employment Act (ADEA):**

In order to pursue this matter further, you must file a lawsuit against the respondent(s) named in the charge **within 90 days** of the date you *receive* this Notice. Therefore, you should **keep a record of this date**. Once this 90-day period is over, your right to sue based on the charge referred to in this Notice will be lost. If you intend to consult an attorney, you should do so promptly. Give your attorney a copy of this Notice, and its envelope, and tell him or her the date you received it. Furthermore, in order to avoid any question that you did not act in a timely manner, it is prudent that your suit be filed **within 90 days of the date this Notice was *mailed* to you** (as indicated where the Notice is signed) or the date of the postmark, if later.

Your lawsuit may be filed in U.S. District Court or a State court of competent jurisdiction. (Usually, the appropriate State court is the general civil trial court.) Whether you file in Federal or State court is a matter for you to decide after talking to your attorney. Filing this Notice is not enough. You must file a "complaint" that contains a short statement of the facts of your case which shows that you are entitled to relief. Your suit may include any matter alleged in the charge or, to the extent permitted by court decisions, matters like or related to the matters alleged in the charge. Generally, suits are brought in the State where the alleged unlawful practice occurred, but in some cases can be brought where relevant employment records are kept, where the employment would have been, or where the respondent has its main office. If you have simple questions, you usually can get answers from the office of the clerk of the court where you are bringing suit, but do not expect that office to write your complaint or make legal strategy decisions for you.

**PRIVATE SUIT RIGHTS   --   Equal Pay Act (EPA):**

EPA suits must be filed in court within 2 years (3 years for willful violations) of the alleged EPA underpayment: back pay due for violations that occurred **more than 2 years (3 years)** before you file suit may not be collectible. For example, if you were underpaid under the EPA for work performed from 7/1/08 to 12/1/08, you should file suit before 7/1/10 – *not* 12/1/10 -- in order to recover unpaid wages due for July 2008. This time limit for filing an EPA suit is separate from the 90-day filing period under Title VII, the ADA, GINA or the ADEA referred to above. Therefore, if you also plan to sue under Title VII, the ADA, GINA or the ADEA, in addition to suing on the EPA claim, suit must be filed within 90 days of this Notice **and** within the 2- or 3-year EPA back pay recovery period.

**ATTORNEY REPRESENTATION   --   Title VII, the ADA or GINA:**

If you cannot afford or have been unable to obtain a lawyer to represent you, the U.S. District Court having jurisdiction in your case may, in limited circumstances, assist you in obtaining a lawyer. Requests for such assistance must be made to the U.S. District Court in the form and manner it requires (you should be prepared to explain in detail your efforts to retain an attorney). Requests should be made well before the end of the 90-day period mentioned above, because such requests do not relieve you of the requirement to bring suit within 90 days.

**ATTORNEY REFERRAL AND EEOC ASSISTANCE   --   All Statutes:**

You may contact the EEOC representative shown on your Notice if you need help in finding a lawyer or if you have any questions about your legal rights, including advice on which U.S. District Court can hear your case. If you need to inspect or obtain a copy of information in EEOC's file on the charge, please request it promptly in writing and provide your charge number (as shown on your Notice). While EEOC destroys charge files after a certain time, all charge files are kept for at least 6 months after our last action on the case. Therefore, if you file suit and want to review the charge file, **please make your review request within 6 months of this Notice**. (Before filing suit, any request should be made within the next 90 days.)

*IF YOU FILE SUIT, PLEASE SEND A COPY OF YOUR COURT COMPLAINT TO THIS OFFICE.*

## PROOF OF SERVICE

**STATE OF CALIFORNIA, COUNTY OF SAN JOAQUIN**

I, Jerome clay, declare that I am employed at Law Office of Timothy L. McCandless, 820 Main Street, Suite 1 Martinez, CA 94553; I am over the age of eighteen (18) years and am not a party to this action. On the below date, by the method noted below, I served the following document(s):

On the date set forth below, I served the following document(s) described as;

**NOTICE OF MOTION AND MOTIONOF PLAINTIFF KIM McKENZIE FOR ORDER OF REVOCATION OF THE ARBITRATION AGREEMENT AND DISMISSAL OF PENDING ARBITRATION;DECLARATION OF TIMOTHY L. McCANDLESS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**

On the interested parties in this action by placing a true and correct copy thereof, enclosed in a sealed envelope addressed as follows:

MILLER LAW GROUP
111 Sutter St., Suite 700
San Francisco, CA 94104
Tel. 415-464-4300
Fax 415-464-4336

Attorneys for Respondent

*CT Corp.*
*818 West Seventh st , 2nd floor*
*Los Angles, CA   90017*
*Agent for AT&T services &*
*Pacific Bell*

____ (MAIL) I placed the envelope for collection and mailing, following our ordinary business practices. I am readily familiar with this firm's practice for collecting and processing correspondence for mailing. On the same day that correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service, in a sealed envelope with postage fully prepaid. I am a resident or employed in the county where the mailing occurred. The envelope or package was placed in the mail at Los Angeles, California.

____(OVERNIGHT DELIVERY) I deposited in a box or other facility regularly maintained by Federal Express, an express service carrier, or delivered to a courier or driver authorized by said express service carrier to receive documents, a true copy of the foregoing document in sealed envelopes or packages designated by the express service carrier, addressed as stated above with fees for overnight delivery paid or provided for.

___(MESSENGER SERVICE) I served the documents by placing them in an envelope or package addressed to the persons at the addresses listed and provided them to a professional messenger service for service. A separate Personal Proof of Service provided by the professional messenger will be filed under separate cover.

## PROOF OF SERVICE

____(FACSIMILE) Based on an agreement of the parties to accept service by fax transmission, I faxed the documents to the persons at the fax numbers listed. No error was reported by the fax machine that I used. A copy of the record of the fax transmission, which I printed out, is attached.

____(E-MAIL or ELECTRONIC TRANSMISSION) Based on a court order or an agreement of the parties to accept service by e-mail or electronic transmission, I caused the documents to be sent to the persons at the e-mail addresses listed, I did not receive, within a reasonable time after the transmission, any electronic message or other indication that the transmission was I unsuccessful.

___(CM/ECF Electronic Filing) I caused the above document(s) to be transmitted to the office(s) of the addresses listed above by electronic mail at the email address(s) set forth above pursuant to Fed. R. Civ. P.5, (d)(1). "A Notice of Electronic Filing (NEF) is generated automatically by the ECF system upon completion of an electronic filing. The NEF, when e-mailed to the e-mail address of record in the case, shall constitute the proof of service as required by Fed. R. Civ.P.5.(d)(1). A copy of the NEF shall be attached to any document served in the traditional manner upon any party appearing pro Se.

___(State) I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

___(Federal) I declare that I am employed in the office of a member of the Bar of this Court at whose direction the service was made. I declare under penalty of perjury under the laws of the United States of America that the above is true and correct.

Executed on Monday, April 27, 2015Stockton, California


_____
                              Jerome A. Clay


**PROOF OF SERVICE**

EXHIBIT 21

# SUPERIOR COURT OF CALIFORNIA,

## COUNTY OF SAN JOAQUIN

### STOCKTON DIVISION

### TENTATIVE RULINGS -  May 14, 2015

EVENT DATE:  05/15/2015        EVENT TIME:   09:00:00 AM      DEPT.:  11

JUDICIAL OFFICER: Linda L Lofthus

CASE NO.:    39-2015-00323837-CU-WT-STK

CASE TITLE:  MCKENZIE VS. AT&T SERVICES, INC. A CALIFORNIA CORPORATION

CASE CATEGORY:  Civil - Unlimited          CASE TYPE:  Wrongful Termination

EVENT TYPE:  Motion - Other (CLM)

CAUSAL DOCUMENT/DATE FILED: Motion - Other, 04/29/2015

---

Plaintiff has filed a motion for an order revoking the arbitration agreement and dismissing the pending arbitration. Defendants have filed an opposition. Plaintiff filed a reply.

Defendants also filed a Request for Judicial Notice. There is no opposition to the RJN filed by Plaintiff. The RJN is granted and the court takes judicial notice of Exhibit 1 pursuant to EC § 452 (d).

Plaintiff's motion has not provided Defendants with the requisite time to respond and Defendants have objected to the shortened notice. Plaintiff's motion was filed on April 29, 2015. The motion was served by overnight delivery to Defendants on April 27, 2015. CCP § 1005 provides that motions shall be served and filed at least 16 court days before the hearing. Here, using the overnight delivery date of April 27th, Plaintiff has not provided the requisite time allowed for Defendants. And, certainly, one can see that when using the filing date of April 29th, the statute has not been satisfied.

The motion is untimely and has failed to provide Defendants with enough notice. (Plaintiff never responded to this point in her reply.) It is denied without prejudice.

Linda L. Lofthus
Judge of the Superior Court

---

EXHIBIT 22

1  | Lisa C. Hamasaki (SBN 197628)
   |   lch@millerlawgroup.com
2  | Jocelyn M. Chan (SBN 267937)
   |   jchan@millerlawgroup.com
3  | MILLER LAW GROUP
   | A Professional Corporation
4  | 111 Sutter Street, Suite 700
   | San Francisco, CA 94104
5  | Tel. (415) 464-4300
   | Fax (415) 464-4336
6  |
7  | Attorneys for Defendants
   | AT&T SERVICES, INC. and
   | PACIFIC BELL TELEPHONE COMPANY
8  |
9  |

SUPERIOR COURT OF CALIFORNIA

COUNTY OF COUNTY OF SAN JOAQUIN

SUPERIOR ... 

2015 JUN 16  PM 12: 12

ROSA JUNQUEIRO, CLERK

By ~~Angela Constantino~~
DEPUTY

| KIM MCKENZIE, an individual, | Case No.: 39-2015-00323837-CU-WT-STK |
| Plaintiff, | THIS CASE HAS BEEN ASSIGNED TO JUDGE LINDA L. LOFTHUS IN DEPARTMENT 11 FOR ALL PURPOSES INCLUDING TRIAL |
| v. | |
| AT&T SERVICES, INC., A CALIFORNIA CORPORATION, PACIFIC BELL TELEPHONE COMPANY; and DOES 1 through 50, inclusive, | **NOTICE OF ENTRY OF ORDER DENYING PLAINTIFF'S MOTION FOR REVOCATION OF THE ARBITRATION AGREEMENT AND DISMISSAL OF PENDING ARBITRATION** |
| Defendants. | Complaint filed:  April 10, 2015 |

By Fax

1         PLEASE TAKE NOTICE that on June 8, 2015, the Court entered its Order

2  Denying Plaintiff KIM McKENZIE's Motion for Revocation of the Arbitration Agreement and

3  Dismissal of Pending Arbitration in the above-referenced case.  A true and correct copy of

4  that Order is attached hereto as Exhibit A, and incorporated into this notice by reference.

5

6  Dated:  June 15, 2015               MILLER LAW GROUP
                                   A Professional Corporation

7

8                         By: _____

9                           Jocelyn M. Chan
                           Attorneys for Defendants

10                        AT&T   SERVICES,   INC.   and   PACIFIC
                         BELL TELEPHONE COMPANY

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MILLER LAW GROUP
A PROFESSIONAL CORPORATION
CALIFORNIA

# EXHIBIT A

1 │ Lisa C. Hamasaki (SBN 197628)
  │   lch@millerlawgroup.com
2 │ Jocelyn M. Chan (SBN 267937)
  │   jchan@millerlawgroup.com
3 │ MILLER LAW GROUP
  │ A Professional Corporation
4 │ 111 Sutter Street, Suite 700
  │ San Francisco, CA 94104
5 │ Tel. (415) 464-4300
  │ Fax (415) 464-4336
6 │
7 │ Attorneys for Defendants
  │ AT&T SERVICES, INC. and
8 │ PACIFIC BELL TELEPHONE COMPANY

JUN 0 8 2015

Filed _____
ROSA JUNQUEIRO, CLERK
By _____ ALICIA MARTIN
         DEPUTY

9 │          SUPERIOR COURT FOR THE STATE OF CALIFORNIA

10 │            IN AND FOR THE COUNTY OF SAN JOAQUIN

11 │

12 │

13 │ KIM MCKENZIE, an individual,          Case No.: 39-2015-00323837-CU-WT-STK

14 │                                        THIS CASE HAS BEEN ASSIGNED TO
   │             Plaintiff,                 JUDGE LINDA L. LOFTHUS IN
15 │                                        DEPARTMENT 11 FOR ALL PURPOSES
   │ v.                                     INCLUDING TRIAL
16 │
17 │ AT&T SERVICES, INC., A CALIFORNIA      [PROPOSED] ORDER DENYING
   │ CORPORATION, PACIFIC BELL              PLAINTIFF'S MOTION FOR REVOCATION
18 │ TELEPHONE COMPANY; and DOES 1          OF THE ARBITRATION AGREEMENT
   │ through 50, inclusive,                 AND DISMISSAL OF PENDING
19 │                                        ARBITRATION
20 │             Defendants.
   │                                        Date:    May 15, 2015
21 │                                        Time:    9:00 a.m.
   │                                        Dept.:   11
22 │
   │                                        Reservation No.: 2058008
23 │
24 │                                        Complaint filed:  April 10, 2015
25 │
26 │
27 │
28 │

MILLER LAW GROUP
A Professional Corporation
California

By Fax

─────────────────────────────────────────────────────────
[PROPOSED] ORDER DENYING PLAINTIFF'S MOTION FOR REVOCATION OF THE ARBITRATION AGREEMENT
AND DISMISSAL OF PENDING ARBITRATION - Case No.: 39-2015-00323837-CU-WT-STK

1    Plaintiff Kim McKenzie's ("McKenzie") Motion For Order of Revocation of the

2  Arbitration Agreement and Dismissal of Pending Arbitration ("Motion") was set for hearing

3  on May 15, 2015 at 9:00 a.m. in Department 11 of this Court, the Honorable Linda Lofthus

4  presiding.  Pursuant to Local Rule 3-113.D, the Court issued a tentative ruling on May 14,

5  2015, a copy of which is attached to this Order as **Exhibit A**, and which is incorporated

6  herein in its entirety.

7

8    All parties submitted to the tentative ruling.   Accordingly, after full

9  consideration of all papers filed in support of and in opposition to the Motion, and there

10  having been no opposition by counsel to the tentative ruling, the Court HEREBY ORDERS

11  that McKenzie's Motion is DENIED without prejudice based on the grounds set forth in the

12  attached and incorporated tentative ruling.

13

14                                          LINDA LOFTHUS

15  Dated: _____JUN 0 8 2015_____

16                                          HON. LINDA LOFTHUS
                                            JUDGE OF THE SUPERIOR COURT

17

18  Approved as to Form:

19

20  _____

21  Timothy L. McCandless
    Attorneys for Plaintiff Kim McKenzie

22

23

24

25

26  4822-5126-4804, v. 1

27

28

MILLER LAW GROUP
A PROFESSIONAL CORPORATION
CALIFORNIA

---

1

[PROPOSED] ORDER DENYING PLAINTIFF'S MOTION FOR REVOCATION OF THE ARBITRATION AGREEMENT
AND DISMISSAL OF PENDING ARBITRATION - Case No.: 39-2015-00323837-CU-WT-STK

# EXHIBIT A

1

# SUPERIOR COURT OF CALIFORNIA,

COUNTY OF SAN JOAQUIN
STOCKTON DIVISION
TENTATIVE RULINGS - May 14, 2015

EVENT DATE: 05/15/2015     EVENT TIME:   09:00:00 AM     DEPT.: 11
JUDICIAL OFFICER:Linda L Lofthus


CASE NO.:   39-2015-00323837-CU-WT-STK

CASE TITLE:  MCKENZIE VS. AT&T SERVICES, INC. A CALIFORNIA CORPORATION


CASE CATEGORY:  Civil - Unlimited          CASE TYPE:  Wrongful Termination


EVENT TYPE:  Motion - Other (CLM)

CAUSAL DOCUMENT/DATE FILED: Motion - Other, 04/29/2015

Plaintiff has filed a motion for an order revoking the arbitration agreement and dismissing the pending arbitration. Defendants have filed an opposition. Plaintiff filed a reply.

Defendants also filed a Request for Judicial Notice. There is no opposition to the RJN filed by Plaintiff. The RJN is granted and the court takes judicial notice of Exhibit 1 pursuant to EC § 452 (d).

Plaintiff's motion has not provided Defendants with the requisite time to respond and Defendants have objected to the shortened notice. Plaintiff's motion was filed on April 29, 2015. The motion was served by overnight delivery to Defendants on April 27, 2015. CCP § 1005 provides that motions shall be served and filed at least 16 court days before the hearing. Here, using the overnight delivery date of April 27th, Plaintiff has not provided the requisite time allowed for Defendants. And, certainly, one can see that when using the filing date of April 29th, the statute has not been satisfied.

The motion is untimely and has failed to provide Defendants with enough notice. (Plaintiff never responded to this point in her reply.) It is denied without prejudice.

Linda L. Lofthus
Judge of the Superior Court

1

## PROOF OF SERVICE

2

I, Tyhera Payton, declare that I am employed at Miller Law Group, A Professional Corporation, whose address is 111 Sutter Street, Suite 700, San Francisco, CA 94104; I am over the age of eighteen (18) years and am not a party to this action. On the below date, by the method noted below, I served the following document(s):

3

4

5

**NOTICE OF ENTRY OF ORDER DENYING PLAINTIFF'S MOTION FOR REVOCATION OF THE ARBITRATION AGREEMENT AND DISMISSAL OF PENDING ARBITRATION**

6

on the interested parties in this action by placing a true and correct copy thereof, enclosed in a sealed envelope addressed as follows:

7

8

Timothy L. McCandless, Esq.          Attorney for Plaintiff: *Kim McKenzie*
Law Office of Timothy L. McCandless, Esq.
4740 Green River Road, Suite 206
Corona, CA 92880

9

10

11

Tel: (925) 957-9797
Fax: (925) 957-9799
Email: mccandlesslaw@gmail.com

12

13

Timothy L. McCandless, Esq.
Law Office of Timothy L. McCandless, Esq.
5665 N Pershing Avenue, Suite A1
Stockton, CA 95207

14

15

16

Timothy L. McCandless, Esq.
Law Office of Timothy L. McCandless, Esq.
820 Main Street, Suite 1
Martinez, CA 94553

17

18

19

20

☒   **BY MAIL:**   By placing a true copy thereof enclosed in a sealed envelope with postage thereon fully prepaid, in the ordinary course of business for collection and mailing on this date at Miller Law Group, 111 Sutter Street, Suite 700, San Francisco, CA 94104. I declare that I am readily familiar with the business practice of Miller Law Group for collection and processing of correspondence for mailing with the United States Postal Service and that the correspondence would be deposited with the United States Postal Service that same day in the ordinary course of business.

21

22

23

24

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

25

Executed on June 16, 2015 at San Francisco, California.

26

27

Tyhera Payton

28

---

MILLER LAW GROUP
A PROFESSIONAL CORPORATION
CALIFORNIA

EXHIBIT 23

1  Lisa C. Hamasaki (SBN 197628)
     lch@millerlawgroup.com
2  Jocelyn M. Chan (SBN 267937)
     jchan@millerlawgroup.com
3  MILLER LAW GROUP
   A Professional Corporation
4  111 Sutter Street, Suite 700
   San Francisco, CA 94104
5  Tel. (415) 464-4300
   Fax (415) 464-4336
6
   Attorneys for Defendants
7  AT&T SERVICES, INC. and
   PACIFIC BELL TELEPHONE COMPANY
8

9

10              SUPERIOR COURT OF CALIFORNIA

11            COUNTY OF COUNTY OF SAN JOAQUIN

12  KIM MCKENZIE, an individual,        Case No.: 39-2015-00323837-CU-WT-STK

13                                       THIS CASE HAS BEEN ASSIGNED TO
              Plaintiff,                 JUDGE LINDA L. LOFTHUS IN
14                                       DEPARTMENT 11 FOR ALL PURPOSES
    v.                                   INCLUDING TRIAL
15
                                         **DEFENDANTS AT&T SERVICES, INC.
16  AT&T SERVICES, INC., A CALIFORNIA    AND PACIFIC BELL TELEPHONE
    CORPORATION, PACIFIC BELL            COMPANY'S MEMORANDUM OF POINTS
17  TELEPHONE COMPANY; and DOES 1        AND AUTHORITIES IN SUPPORT OF
    through 50, inclusive,               DEMURRER TO PLAINTIFF KIM
18                                       MCKENZIE'S COMPLAINT PURSUANT
                                         TO CAL. CODE CIV. PROC. § 430.10(c),
19            Defendants.                OR IN THE ALTERNATIVE, MOTION FOR
                                         STAY**
20
                                         **DATE:    June 18, 2015**
21                                       **TIME:    9:00 a.m.**
                                         **DEPT:    11**
22
                                         **Reservation No.:  2061497**
23
                                         Complaint filed:  April 10, 2015
24

25

26

27

28

---

DEFENDANTS' MPAS ISO DEMURRER TO PLAINTIFF'S COMPLAINT PURSUANT TO CAL. CODE CIV. PROC.
§ 430.10(c), OR IN THE ALTERNATIVE, MOTION FOR STAY - Case No.: 39-2015-00323837-CU-WT-STK

# TABLE OF CONTENTS

Page

I.     INTRODUCTION ...................................................................................................1

II.    RELEVANT FACTS ............................................................................................1

       A.    Plaintiff Was A Manager Network Services With Pacific Bell.....................1

       B.    Plaintiff Entered Into An Arbitration Agreement Which Governs All
             Disputes With Pacific Bell. ...............................................................................2

       C.    Plaintiff Filed Two, Virtually Identical, Charges With The EEOC. ..............2

             1.    The First EEOC Charge...................................................................2

             2.    The Second EEOC Charge..............................................................3

       D.    Plaintiff Filed A Notice Of Claim With JAMS Regarding Her September
             25, 2012 Dismissal From The Company. .......................................................3

       E.    Plaintiff Filed Her Complaint – Which Is Duplicative Of Her Notice of
             Claim – And Then Filed A Motion Seeking to Dismiss The JAMS Action
             Before Defendants Had Even Appeared In This Case. ..............................5

III.   LEGAL ARGUMENT ..........................................................................................5

       A.    The Pendency Of Plaintiff's JAMS Action Constitutes Another Action
             Pending For Purposes Of This Demurrer. ....................................................6

             1.    The Court Is Entitled To Take Judicial Notice Of Relevant
                   Documents From The JAMS Action................................................6

             2.    The JAMS Action Constitutes "Another Action Pending." ...............7

             3.    The JAMS Action And This Action Involve The Same Parties. ........7

             4.    The JAMS Action And This Case Involve The Same Causes of
                   Action For Purposes of Res Judicata..............................................8

       B.    In The Alternative, The Court Should Stay All Litigation In This Case
             Pending The Outcome Of The JAMS Action. ............................................11

IV.    CONCLUSION ...................................................................................................13

MILLER LAW GROUP
A PROFESSIONAL CORPORATION
CALIFORNIA

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

DEFENDANTS' MPAS ISO DEMURRER TO PLAINTIFF'S COMPLAINT PURSUANT TO CAL. CODE CIV. PROC.
§ 430.10(c), OR IN THE ALTERNATIVE, MOTION FOR STAY - Case No.: 39-2015-00323837-CU-WT-STK

# TABLE OF AUTHORITIES

Page

**Cases**

*Amisil Holdings, Ltd. v. Clarium Capital Mgmt.*
  622 F.Supp.2d 825 (N.D. Cal. 2007) ...................................................12

*Bescos v. Bank of America*
  105 Cal. App. 4th 378 (2003) .............................................................10

*Blank v. Kirwan*
  39 Cal. 3d 311 (1985).........................................................................6

*Boeken v. Philip Morris USA, Inc.*
  48 Cal. 4th 788 (2010).......................................................................8

*Britton v. Girardi*
  235 Cal. App. 4th 721
  185 Cal. Rptr. 3d 509 (2015)..............................................................6

*Brock v. Kaiser Foundation Hosp.*
  10 Cal. App. 4th 1790 (1992) .............................................................12

*Colvig v. RKO Gen., Inc.*
  232 Cal. App. 2d 56 (1965) ................................................................8

*Complaint of Hornbeck Offshore (1984) Corp.*
  981 F.2d 752 (5th Cir. 1993) ..............................................................12

*Dial 800 v. Fesbinder*
  118 Cal. App. 4th 32 (2004) ..........................................................11, 12

*Farrow v. Fujitsu America, Inc.*
  37 F.Supp.3d 1115 (N.D. Cal. 2014) ...................................................12

*Federal Ins. Co. v. Super. Ct.*
  60 Cal. App. 4th 1370 (1998) .............................................................11

*Gallup v. Super. Ct.*
  235 Cal. App. 4th 682
  185 Cal. Rptr. 3d 496 (2015)..............................................................7

*Greenspan v. LADT, LLC*
  191 Cal. App. 4th 486 (2010) .............................................................7

*Kustom Kraft Homes v. Leivenstein*
  14 Cal. App. 3d 805 (1971) ................................................................5

*Lehto v. Underground Constr. Co.*
  69 Cal. App. 3d 933 (1977) ................................................................10

*Moncharsh v. Heily & Blase*
  3 Cal. 4th 1 (1992)............................................................................7

MILLER LAW GROUP
A PROFESSIONAL CORPORATION
CALIFORNIA

ii

*People v. Barragan*
    32 Cal. 4th 236 (2004)..........................................................................8

*Plant Insulation Co. v. Fibreboard Corp.*
    224 Cal. App. 3d 781 (1990) ...........................................................10, 11

*Rodriguez v. American Technologies, Inc.*
    136 Cal. App. 4th 1110 (2006) ...........................................................11

*Slater v. Blackwood*
    15 Cal. 3d 791 (1975)........................................................................8, 9

*Thibodeau v. Crum*
    4 Cal. App. 4th 749 (1992) ...............................................................8, 9

*Wulfjen v. Dolton*
    24 Cal. 2d 891 (1944).............................................................................6

**Statutes**

9 U.S.C. § 1 ..............................................................................................2

9 U.S.C. § 3 ............................................................................................12

California Code of Civil Procedure § 1281.2 ............................................2

California Code of Civil Procedure § 1281.4 ..........................................11

California Code of Civil Procedure § 430.10(c) ................................. passim

California Evidence Code § 452(d)(1) .......................................................6

California Evidence Code § 452(h) .............................................................6

California Government Code § 12940, *et seq.* ........................................3, 9

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

MILLER LAW GROUP
A PROFESSIONAL CORPORATION
CALIFORNIA

**DEFENDANTS' MPAS ISO DEMURRER TO PLAINTIFF'S COMPLAINT PURSUANT TO CAL. CODE CIV. PROC.
§ 430.10(c), OR IN THE ALTERNATIVE, MOTION FOR STAY - Case No.: 39-2015-00323837-CU-WT-STK**

## I.   INTRODUCTION

This alleged employment discrimination lawsuit represents Plaintiff's misguided attempt to derail a long-pending arbitration she initiated with JAMS, Inc. ("the JAMS Action"). The JAMS Action, which is based on a court-approved Arbitration Agreement that Plaintiff signed, involves the same parties and the same fundamental causes of action as this case. The reason Plaintiff filed this action is obvious — she and her counsel believe they will not prevail in the JAMS Action and want to stop that proceeding in its tracks so they can start over and try their luck in this Court.  Simply put, Plaintiff is engaging in blatant forum shopping. No court should countenance such tactics.

Fortunately, the Court has the ready means to end Plaintiff's forum shopping gambit before it is underway.  Because there is another action pending between the parties dealing with the same subject matter as this action, the Court may grant this demurrer pursuant to California Code of Civil Procedure section 430.10(c) and stay this litigation pending resolution of the JAMS Action.

In the alternative, under both state and federal statutes that protect the efficacy of arbitrations, the Court has the authority to stay this action until the JAMS Action concludes.

For these reasons, Defendants AT&T SERVICES, INC. and PACIFIC BELL TELEPHONE COMPANY (together, "Defendants") request that the Court sustain this demurrer to Plaintiff's Complaint or, in the alternative, stay this action until there is a final judgment in the JAMS Action.

## II.   RELEVANT FACTS

### A.   Plaintiff Was A Manager Network Services With Pacific Bell.

Pacific Bell Telephone Company ("Pacific Bell" or the "Company")[1] employed Plaintiff Kim McKenzie as a Manager Network Services, a first level management position, from approximately 2002 until her dismissal on September 25, 2012.  Complaint ¶¶ 2, 76; Request for Judicial Notice ("RJN") ¶ 12, Ex. 12 at p. 5:12; RJN ¶ 13, Ex. 13 at p. 1:15-19.

---

[1] Plaintiff never was employed by AT&T Services, Inc.

MILLER LAW GROUP
A PROFESSIONAL CORPORATION
CALIFORNIA

**B.    Plaintiff Entered Into An Arbitration Agreement Which Governs All Disputes With Pacific Bell.**

Plaintiff was a class member in a large class action lawsuit styled *Luque v. AT&T Corp., et al.*, Northern District of California Case No. 3:09-cv-5885.  RJN ¶ 14, Ex. 14 at ¶¶ 3-4.  On January 31, 2013, as a term of her participation in the settlement of that action, Plaintiff signed a court-approved Arbitration Agreement with the Company.  RJN ¶ 14, Ex. 14 at ¶¶ 5-6, Exs. 2-3. Under the Arbitration Agreement Plaintiff and the Company agreed that, with just a few express exceptions, any claims they may have against each other would be brought before JAMS rather than in court.[2]  RJN ¶ 14, Ex. 14 at Ex. 1, pp. 3-4.  The Arbitration Agreement is expressly "governed by the Federal Arbitration Act, 9 U.S.C. § 1 and following," and also expressly applies to claims based on federal or state laws concerning employment discrimination.  RJN ¶ 14, Ex. 14 at Ex. 1, p. 3.

**C.    Plaintiff Filed Two, Virtually Identical, Charges With The EEOC.**

**1.    The First EEOC Charge.**

Following her dismissal from employment from Pacific Bell, Plaintiff filed two, virtually identical, Charges of Discrimination with the United States Equal Employment Commission ("EEOC").  First, on January 3, 2013, Plaintiff filed EEOC Charge No. 485-2013-00030 ("-030 Charge"), alleging discrimination based on: (1) sex, (2) retaliation, (3) age, and (4) "other" (violence in the workplace).  RJN ¶ 1, Ex. 1.  Shortly thereafter, on January 23, 2013, the California Department of Fair Employment & Housing ("DFEH") informed Plaintiff that the -030 Charge would be referred to the EEOC, and issued her a Notice of Right to Sue.  RJN ¶ 2, Ex. 2.  Some months later, on December 27, 2013 – after the EEOC completed its investigation and after Pacific Bell prepared and submitted a Position Statement addressing each of Plaintiff's allegations – the EEOC closed the -030 Charge and issued a Dismissal and

MILLER LAW GROUP
A PROFESSIONAL CORPORATION
CALIFORNIA

---

[2] By filing this Demurrer and motion, both of which seek a stay of this litigation, Defendants are not waiving their right to petition to compel arbitration under the Arbitration Agreement and California Code of Civil Procedure § 1281.2.  Furthermore, as the Court is aware, Plaintiff filed a Motion for Order of Revocation of the Arbitration Agreement and Dismissal of Pending Arbitration ("Revocation Motion") on April 29, 2015, which was to be heard by the Court on May 15, 2015, three days <u>before</u> Defendants' responsive pleading to Plaintiff's Complaint came due.  RJN ¶ 12, Ex. 12.  The Court denied the Revocation Motion as untimely and failing to provide Defendants with enough notice.  RJN ¶ 15 Ex. 15.

2

1  Notice of Rights ("Notice").  RJN ¶ 3, Ex. 3.  That Notice made clear that Plaintiff had the right

2  to sue and that any action stemming from the -030 Charge needed to be initiated within 90

3  days of that Notice.  *Id.*  As such, Plaintiff's last day to initiate an action based on that EEOC

4  Notice was March 27, 2014.

5      **2.    The Second EEOC Charge.**

6      While the -030 Charge was pending, Plaintiff filed a second Charge of

7  Discrimination – EEOC Charge No. 550-2013-00472 (the "-472 Charge") – arising from the

8  same common nucleus of operative fact (*i.e.*, her September 25, 2012 termination from Pacific

9  Bell).  RJN ¶ 4, Ex. 4.  Like the initial -030 Charge, Plaintiff's -472 Charge, filed on June 7,

10 2013, asserted discrimination based on: (1) sex, (2) retaliation, and (3) age, all stemming from

11 her September 25, 2012 termination of employment.  *See Id.*  Upon learning that Plaintiff's

12 second EEOC charge remained open even though she had initiated an action in JAMS

13 regarding her termination, counsel for Pacific Bell requested that McKenzie close her second

14 EEOC charge.  Plaintiff did so, and on February 3, 2015, the EEOC issued a Notice of Right

15 to Sue *on request*.[3]  Complaint ¶ 20, Ex. A.

16 **D.    Plaintiff Filed A Notice Of Claim With JAMS Regarding Her September 25, 2012**
17 **Dismissal From The Company.**

18     On August 12, 2013, Plaintiff's counsel, Timothy McCandless, initiated the

19 JAMS Action on her behalf.  RJN ¶ 5, Ex. 5.  JAMS issued a Notice of Commencement on

20 May 12, 2014.  RJN ¶ 6, Ex. 6.  Shortly thereafter, on May 23, 2014, Plaintiff filed a Notice of

21 Claim for Damages ("Notice of Claim") stating that "JAMS has jurisdiction over this complaint

22 and all of the causes of action asserted."  RJN ¶ 7, Ex. 7.  The Notice of Claim alleged: (1)

23 Wrongful Termination in Violation of Public Policy; (2) Disability Discrimination, pled as

24 violations of FEHA [Cal. Gov't Code 12940 (A), (J), (K), (M) and (N) (Disability)]; (3) Gender

25 Discrimination, pled as violations of FEHA [Cal. Gov't Code 12940 (A), (J), (K), (M) and (N)

26 (Gender)]; (4) Age Discrimination in Violation of Cal. Govt. Code § 12940, *et seq.*; and (5)

27

28 [3] Plaintiff refers to the February 3, 2015 Notice in her Complaint, suggesting that it is evidence
that she satisfied the procedural prerequisites to initiate this matter.  *See* Complaint ¶¶ 16-20.
She makes no mention of the virtually identical -030 Charge or its outcome.

MILLER LAW GROUP
A PROFESSIONAL CORPORATION
CALIFORNIA

1  Intentional Infliction of Emotional Distress.  *Id.*  Each of these five causes of action related

2  directly to Plaintiff's September 25, 2012, termination.  The Notice of Claim also stated that

3  Plaintiff seeks all remedies available under the law and briefly describes substantial alleged

4  damages.  *Id.* at p.14:1-9.

5        On February 5, 2015, even though Plaintiff initiated the JAMS Action nearly a

6  year-and-a-half earlier, she filed a Motion to Withdraw from Arbitration Without Prejudice

7  ("Motion to Withdraw").  Plaintiff argued that the action was "premature" and JAMS lacked

8  jurisdiction because the EEOC had not yet issued a Notice of Right to Sue regarding the

9  second of her two EEOC charges at the time she initiated the JAMS Action.  RJN ¶ 9, Ex. 9.

10  The Arbitrator disagreed and denied Plaintiff's Motion to Withdraw, finding that "All complaints

11  filed before the administrative agencies related to the same operative set of facts, and JAMS

12  jurisdiction was unaffected by the pendency of the identical claims before the EEOC.

13  Regardless, the EEOC's having issued a right to sue letter regarding the second claim, any

14  claims that the Claimant [McKenzie] has as a consequence are absorbed into the earlier filed

15  Demand for Arbitration."  RJN ¶ 10, Ex. 10.

16        After Plaintiff's attempt to pull the plug on the JAMS Action was unsuccessful,

17  she subsequently sought to re-open discovery in the JAMS Action, having failed to

18  expeditiously pursue discovery during the generous time available under the JAMS rules.  The

19  Arbitrator denied this motion as well.  RJN ¶ 11, Ex. 11.

20        More recently, Pacific Bell, respondent in the JAMS Action[4], filed a Motion for

21  Summary Judgment or, in the Alternative, Partial Summary Judgment ("MSJ") on April 23,

22  2015.  RJN ¶ 11, Ex. 11 at ¶ 2.b.  Plaintiff filed her opposition to the MSJ on May 7, 2015

23  (notwithstanding the fact that she had already filed the Complaint and initiated this lawsuit,

24  and preemptively sought to invalidate the Arbitration Agreement and dismiss the JAMS

25  Action).  The MSJ is set for hearing by the Arbitrator, the Honorable David A. Garcia (Ret.),

26

27  _____

28  [4] In the JAMS Action, McKenzie named only AT&T Services, Inc.  Counsel for Pacific Bell informed McKenzie that the proper entity should be Pacific Bell Telephone Company, her former employer, and has consistently reemphasized this fact in correspondence with opposing counsel, as well as in filings with JAMS.

MILLER LAW GROUP
A PROFESSIONAL CORPORATION
CALIFORNIA

4

1  on May 21, 2015.  RJN ¶ 11, Ex. 11 at ¶ 2.e.

2  **E.     Plaintiff Filed Her Complaint – Which Is Duplicative Of Her Notice of Claim – And**
3  **Then Filed A Motion Seeking to Dismiss The JAMS Action Before Defendants**
**Had Even Appeared In This Case.**

4

5  On April 10, 2015, Plaintiff, fearing a loss in the JAMS Action, filed the Complaint

6  in this action and served it on Defendants on April 17, 2015.  The Complaint and the JAMS

7  Action both concern the same key event — *i.e.*, Plaintiff's September 25, 2012, termination

8  — and the Complaint asserts theories of liability virtually identical to the Notice of Claim.   A

9  little more than a week after filing the Complaint, Plaintiff filed her Revocation Motion, which

10  was fully briefed and noticed to be heard by the Court on May 15, 2015 – three days before

11  Defendants' responsive pleading was even due.  RJN ¶ 12, Ex. 12.  The Court denied

12  Plaintiff's Revocation Motion without prejudice on the grounds that it was untimely and failed

13  to provide Defendants with sufficient notice.  RJN ¶ 15, Ex. 15.

14

15                              **III.     LEGAL ARGUMENT**

16  California Code of Civil Procedure ("CCP") section 430.10(c) ("CCP 430.10(c)")

17  authorizes a demurrer when "[t]here is another action pending between the same parties on

18  the same cause of action."  Where, as here, such circumstances exist, the appropriate request

19  for relief is a plea for abatement and a stay of the later action pending resolution of the earlier

20  one.  *See* Cal. Code Civ. Proc. § 430.10(c); *Kustom Kraft Homes v. Leivenstein*, 14 Cal. App.

21  3d 805, 808 (1971) (affirming trial court's sustaining demurrer and ordering action "abated

22  pending arbitration").  In the alternative, both the California Arbitration Act and the Federal

23  Arbitration Act authorize a stay of this action until the JAMS Action concludes.

24  As shown below, the Court should sustain this demurrer or otherwise stay this

25  action until a final judgment has been entered in the JAMS Action.  This result is necessary

26  to bar Plaintiff's blatantly improper forum shopping.   A stay also is necessary to stymy

27  Plaintiff's attempts at repudiating the court-approved Arbitration Agreement (which she

28  willingly signed) and undermining the arbitration proceeding (which she voluntarily initiated).

MILLER LAW GROUP
A PROFESSIONAL CORPORATION
CALIFORNIA

5

DEFENDANTS' MPAS ISO DEMURRER TO PLAINTIFF'S COMPLAINT PURSUANT TO CAL. CODE CIV. PROC.
§ 430.10(c), OR IN THE ALTERNATIVE, MOTION FOR STAY - Case No.: 39-2015-00323837-CU-WT-STK

Further, this result promotes judicial economy because the judgment in the JAMS Action will have res judicata effect in this case, thereby avoiding the need for the Court to devote its time and resources to this duplicative dispute.

**A.     The Pendency Of Plaintiff's JAMS Action Constitutes Another Action Pending For Purposes Of This Demurrer.**

A demurrer for another action pending promotes the principles underlying the doctrine of res judicata, which prevents a plaintiff from splitting her cause of action by pursuing separate actions that involve the same cause of action and the same parties.  *See Wulfjen v. Dolton*, 24 Cal. 2d 891, 896 (1944) (affirming ruling that abated the plaintiff's second lawsuit against defendants sued in first action).  Under these circumstances, the second action is unnecessary, vexatious and undermines the goals of judicial economy.  Here, Plaintiff's Complaint is both unnecessary and vexatious, and the Court should sustain this Demurrer.

**1.     The Court Is Entitled To Take Judicial Notice Of Relevant Documents From The JAMS Action.**

As an initial matter, courts may consider facts subject to judicial notice when ruling on a demurrer.  *Blank v. Kirwan*, 39 Cal. 3d 311, 318 (1985).  In particular, a Court may take judicial notice of a pending action when considering a demurrer made on the ground that another action is pending between the parties.  Cal. Evid. Code § 452(d)(1); *see, e.g.*, *Britton v. Girardi*, 235 Cal. App. 4th 721, 185 Cal. Rptr. 3d 509, 515 n.5 (2015) (taking judicial notice of complaint and orders in pending suit).  Here, although Plaintiff's Complaint neglects to mention the pending JAMS Action, the Court may take judicial notice of the JAMS files.  *See Id.*  Specifically, Plaintiff's Demand for Arbitration, the Notice of Claim, and Judge Garcia's orders "are not reasonably subject to dispute and are capable of immediate and accurate determination by resort to sources of reasonably indisputable accuracy."[5]  Cal. Evid. Code § 452(h); *see also Gallup v. Super. Ct.*, 235 Cal. App. 4th 682, 185 Cal. Rptr. 3d 496, 508 n.8

MILLER LAW GROUP
A PROFESSIONAL CORPORATION
CALIFORNIA

---

[5] Plaintiff's related pleadings in this litigation concede she initiated an arbitration with JAMS, and, indeed, requested this Court to dismiss that pending arbitration.  *See* RJN ¶ 12, Ex. 12 (Declaration of Timothy L. McCandless, filed with Plaintiff's Revocation Motion, on April 29, 2015, ¶¶ 3-4).  Plaintiff also admits that she attempted to withdraw from the JAMS Action, but the Arbitrator denied her request.  *Id.* (Plaintiff's Revocation Motion at p. 6:26-28.)

**DEFENDANTS' MPAS ISO DEMURRER TO PLAINTIFF'S COMPLAINT PURSUANT TO CAL. CODE CIV. PROC. § 430.10(c), OR IN THE ALTERNATIVE, MOTION FOR STAY - Case No.: 39-2015-00323837-CU-WT-STK**

(2015) (granting request for judicial notice as to documents filed in arbitration); *Greenspan v. LADT, LLC*, 191 Cal. App. 4th 486, 525 (2010) (judicial notice of arbitration award proper). Thus, it is appropriate for the Court to take judicial notice of Plaintiff's pending JAMS Action for purposes of this Demurrer and Motion.

**2.      The JAMS Action Constitutes "Another Action Pending."**

The JAMS Action is "another action pending" for purposes of this Demurrer.[6] Plaintiff voluntarily initiated an arbitration with JAMS by filing a Demand for Arbitration on August 12, 2013.  RJN ¶ 5, Ex. 5.  The JAMS Action officially commenced on May 12, 2014, and remains pending.  The parties have engaged in discovery, respondent filed its MSJ on April 23, 2015, Plaintiff filed her opposition on May 7, 2015, and the MSJ is set for hearing on May 21, 2015.  RJN ¶ 11, Ex. 11.

**3.      The JAMS Action And This Action Involve The Same Parties.**

Both the JAMS Action and this case involve the same parties.  In the JAMS Action, Plaintiff named AT&T Services, Inc. as the respondent although her employer always was Pacific Bell Telephone Company.  Counsel for respondent in the JAMS Action informed Plaintiff's counsel, Timothy McCandless, and her "legal representative," Jerome Clay, that the proper entity is Pacific Bell Telephone Company, and all papers filed by respondent in the JAMS Action clearly state that they are being filed on behalf of "PACIFIC BELL TELEPHONE COMPANY (erroneously named as "AT&T SERVICES, INC.")".  *See*, *e.g.*, RJN ¶ 8, Ex. 8 (Respondent's Answer in JAMS Action).  Plaintiff has never objected to this notice or claimed, much less demonstrated, that AT&T Services, Inc. is a proper party.

In this litigation, Plaintiff has again named AT&T Services, Inc., and also has

_____

[6]  Defendants have not located a case in which a court has considered whether an arbitration initiated without the need of a prior court order compelling arbitration constitutes "another action pending" under Code of Civil Procedure section 430.10(c).  However, it would make little sense for a court to decline to apply the "another action pending" rule to such an arbitration, particularly given California's strong public policy supporting arbitration as a fair and relatively speedy means of dispute resolution.  *See Moncharsh v. Heily & Blase*, 3 Cal. 4th 1, 9 (1992).  Indeed, such a result would have the perverse effect of according different treatment to litigants who are similarly situated in all fundamental respects: (1) a litigant who is in arbitration after having voluntarily commenced that proceeding; and (2) a litigant who is in arbitration due to a court order compelling arbitration.  In both cases, the fact that an arbitration is pending justifies application of the "another action pending" rule.

7

MILLER LAW GROUP
A PROFESSIONAL CORPORATION
CALIFORNIA

1  added the proper entity, her former employer, Pacific Bell Telephone Company.  Although, as

2  a technical matter, there is not exact symmetry, as a practical matter, Plaintiff has sued her

3  former employer, Pacific Bell Telephone Company, in both actions.  Defendants should not

4  be prejudiced by Plaintiff's ongoing, but plainly erroneous, tactic of suing AT&T Services, Inc.

5  as well.

6   **4.    The JAMS Action And This Case Involve The Same Causes of Action For**
       **Purposes of Res Judicata.**

7

8      The remaining factor for a demurrer on the ground that another action is pending

9  is whether the two actions are sufficiently similar so that a final judgment in the first action

10  would have res judicata effect in the second.  *Colvig v. RKO Gen., Inc.*, 232 Cal. App. 2d 56,

11  73 (1965).  "The doctrine of res judicata applies not only to judicial proceedings <u>but also to</u>

12  <u>arbitration proceedings</u>" because "arbitrating parties are obliged … to place before their

13  arbitrator all matters within the scope of the arbitration, related to the subject matter, and

14  relevant to the issues."  *Thibodeau v. Crum*, 4 Cal. App. 4th 749, 755 (1992) (emphasis

15  added).

16      When res judicata applies, it bars relitigation of the same "cause of action" in

17  subsequent litigation.[7]  *See Boeken v. Philip Morris USA, Inc.*, 48 Cal. 4th 788, 797 (2010).

18  The scope of a "cause of action" is defined by the "primary rights" test.  *Slater v. Blackwood*,

19  15 Cal. 3d 791, 795 (1975) (stating that the "invasion of one primary right gives rise to a single

20  cause of action").  Under this test, the phrase "cause of action" has a more precise meaning:

21  "The cause of action is the right to obtain redress for a harm suffered, regardless of the

22  specific remedy sought or the legal theory (common law or statutory) advanced."  *Boeken*, 48

23  Cal. 4th at 798; *see Slater v. Blackwood*, 15 Cal. 3d 791, 795 (1975) (the scope of the primary

24  right asserted is "based upon the harm suffered, as opposed to the particular theory asserted

25  by the litigant").  Thus, "[e]ven where there are multiple legal theories upon which recovery

26  _____

27  [7]   The basic elements of the doctrine of res judicata are: "'(1) A claim or issue raised in the
present action is identical to a claim or issue litigated in a prior proceeding; (2) the prior
proceeding resulted in a final judgment on the merits; and (3) the party against whom the

28  doctrine is being asserted was a party or in privity with a party to the prior proceeding.
[Citations.]'"  *Boeken v. Philip Morris USA, Inc.*, 48 Cal. 4th 788, 797 (2010), quoting *People
v. Barragan*, 32 Cal. 4th 236, 252-53 (2004).

1   might be predicated, one injury gives rise to only one claim for relief."  *Slater*, 15 Cal. 3d at

2   795.

3   Here, it is indisputable that the JAMS Action and Plaintiff's Complaint both

4   involve the same "cause of action" so that a final judgment in the JAMS Action will have res

5   judicata effect in this case.  The primary right at issue is Plaintiff's right to be terminated only

6   for lawful reasons, and each one of her specific theories of liability rests on that primary right.

7   Indeed, because Plaintiff's termination severed her relationship with Pacific Bell, she has had

8   no further interactions with Pacific Bell outside of litigation and, thus, has not acquired any

9   sort of new cause of action, much less any cause of action unrelated to the circumstances of

10   her termination.  As a result, any allegedly "new" facts and theories of liability Plaintiff raises

11   in her Complaint could, and should, have been brought in the JAMS Action.  *See*, *e.g.*,

12   *Thibodeau*, 4 Cal. App. 4th at 758 (because "[t]here were no successive breaches of

13   obligations owed the [plaintiffs], no separate and distinct torts, and no new rights accrued after

14   first proceeding," res judicata barred subsequent action).

15   More specifically, Plaintiff's Notice of Claim in the JAMS Action alleged the

16   following claims, all related to and regarding her September 25, 2012, dismissal from Pacific

17   Bell:

18   �«ms» □   <u>Claim 1</u>: Wrongful Termination in Violation of Public Policy;

19   □   <u>Claim 2</u>: Violations of FEHA (Cal. Gov't Code §§ 12940 *et seq.*) (Disability);

20   □   <u>Claim 3</u>: Violations of FEHA (Cal. Gov't Code §§ 12940 *et seq.*) (Gender);

21   □   <u>Claim 4</u>: Age Discrimination in Violation of Cal. Govt. Code § 12940, *et seq.*; and

22   □   <u>Claim 5</u>: Intentional Infliction of Emotional Distress.

23   Although Plaintiff's Complaint includes additional theories of recovery, they too

24   are directly related to her September 25, 2012, dismissal from Pacific Bell.  The Complaint

25   alleges a full array of discrimination, retaliation and harassment claims based on FEHA and

26   related statutes, as well as various common law claims that arise out of precisely the same

27   set of core facts.  (For the Court's convenience, <u>Exhibit A</u> to this Demurrer and Motion is a

28   chart that compares the substance of the Notice of Claim to the Complaint's myriad theories

M**ILLER** L**AW** G**ROUP**
A PROFESSIONAL CORPORATION
CALIFORNIA

9

of recovery.)  Indeed, the underlying factual contentions that support the Complaint's alleged theories of recovery are *virtually identical* to the factual contentions alleged in the Notice of Claim.  All these factual contentions were either expressly alleged in the Notice of Claim or have been fully addressed during Plaintiff's deposition in the JAMS Action and in the parties' MSJ filings.  *Compare* Complaint ¶¶ 26-63 *with* Notice of Claim ¶¶ 13-15; *compare* Complaint ¶¶ 77-90 *with* Notice of Claim ¶¶ 18-31; *compare* Complaint ¶¶ 229-242 *with* Notice of Claim ¶¶ 64.

It is of no consequence, therefore, that the Complaint includes factual and evidentiary detail that goes beyond the Notice of Claim.  The Complaint's degree of specificity does not change the fact that it, like the JAMS Action, involves only the "harm" or "wrong" allegedly caused by Pacific Bell's decision to terminate Plaintiff's employment.  To the extent the Complaint alleges a somewhat broader set of legal theories, "[t]hese additional theories are not 'different wrongs' that give rise to different primary rights … but rather are different ways of committing the same wrongs."  *Bescos v. Bank of America*, 105 Cal. App. 4th 378, 397 (2003) (affirming dismissal of action after trial court sustained demurrer based on § 430.10(c)).

Thus, because the same primary right is involved in the JAMS Action and in this case, once the arbitrator makes an award and the award is confirmed as a judgment, it will be "conclusive on matters of fact and law and all matters in the award are thereafter res judicata."  *Lehto v. Underground Constr. Co.*, 69 Cal. App. 3d 933, 939 (1977) (stating that "[a]rbitration is a voluntary procedure for settling disputes, leading to a final determination of the rights of the parties.  The policy of the law is to favor arbitration, and every reasonable intendment is indulged to give effect to such proceedings.").   Accordingly, the Court should grant Defendants' Demurrer pursuant to CCP 430.10(c) and stay the litigation pending the resolution of the JAMS Action.[8]

---

[8] Even if the Court is not inclined to sustain a demurrer under CCP 430.10(c), based on the facts and circumstances, exclusive concurrent jurisdiction exists and abatement and a stay of the litigation must be granted as a matter of right.  *See Plant Insulation Co. v. Fibreboard Corp.*, 224 Cal. App. 3d 781, 786-87 (1990) ("Under the rule of exclusive concurrent jurisdiction, when there is "concurrent jurisdiction over the subject matter and all parties involved in litigation, the first to assume jurisdiction has exclusive and continuing jurisdiction

MILLER LAW GROUP
A PROFESSIONAL CORPORATION
CALIFORNIA

**B.**   **In The Alternative, The Court Should Stay All Litigation In This Case Pending The Outcome Of The JAMS Action.**

Even if the Court were to conclude that it cannot sustain a demurrer under CCP 430.10(c), it nevertheless should apply provisions of either the California Arbitration Act ("CAA") or the Federal Arbitration Act ("FAA") by ordering a stay of all litigation in this case until the JAMS Action concludes.[9]

Code of Civil Procedure section 1281.4 ("Section 1281.4") provides, in relevant part:

> If a court of competent jurisdiction … has ordered arbitration of a controversy which is an issue involved in an action or proceeding pending before a court of this State, the court in which such action or proceeding is pending shall, upon motion of a party to such action or proceeding, stay the action or proceeding until an arbitration is had in accordance with the order to arbitrate or until such earlier time as the court specifies.

As case law teaches, this provision applies where, as here, the arbitration was voluntarily commenced without the need for a court order compelling arbitration.   *See Dial 800 v. Fesbinder*, 118 Cal. App. 4th 32, 45 (2004) (explaining that party may invoke Section 1281.4 in action where parties voluntarily commenced arbitration before an Israeli rabbinical panel).

The purpose of the stay under Section 1281.4 is to preserve the status quo until the arbitration is resolved.  *Federal Ins. Co. v. Super. Ct.*, 60 Cal. App. 4th 1370, 1374 (1998). "In the absence of a stay, the continuation of the proceedings in the trial court disrupts the arbitration proceedings and can render them ineffective."  *Id.* at 1375.  Once a court orders a stay, it retains "'merely a vestigial jurisdiction over matters submitted to arbitration,'" which

_____

over the subject matter and all parties involved until such time as all necessarily related matters have been resolved.'").   The relevant standard for exclusive concurrent jurisdiction is whether the first action and the second action "arise from the same transaction" (which is a broader standard than for res judicata), and which certainly is met here.  *Id.* at 789.

[9]  Defendants are entitled to invoke the FAA's procedural provisions because the court-approved Arbitration Agreement Plaintiff signed expressly "evidences a transaction involving interstate commerce" and provides that it is "governed by the Federal Arbitration Act."  RJN ¶ 14, Ex. 14 at Ex. 1, p. 3.  The Agreement, which was plainly drafted to accommodate class members who reside in various states, refers to application of only the relevant state's *substantive* law.  *Id.* at Ex. 1, p. 4.  *See Rodriguez v. American Technologies, Inc.*, 136 Cal. App. 4th 1110, 1121-22 (2006) (applying the FAA's procedural provisions where the arbitration agreement specified arbitration "pursuant to the Federal Arbitration Act," which the court held meant that the parties had "adopted the FAA—all of it—to govern their arbitration").

11

MILLER LAW GROUP
A PROFESSIONAL CORPORATION
CALIFORNIA

1   allows it to determine at the conclusion of the arbitration whether the arbitral award has res

2   judicata effect in the action before it. *Dial 800*, 118 Cal. App. 4th at 45, quoting *Brock v. Kaiser*

3   *Foundation Hosp.*, 10 Cal. App. 4th 1790, 1796 (1992).

4           The corresponding provision of the FAA, 9 U.S.C. section 3, states: "If any suit

5   … be brought in any of the courts of the United States upon any issue referable to arbitration

6   … the court in which such suit is pending … shall on application of one of the parties stay the

7   trial of the action ... providing the applicant for a stay is not in default in proceeding with such

8   arbitration."   "This provision is mandatory: If the issues in the case are within reach of the

9   [arbitration] agreement, the district court has no discretion under section 3 to deny the stay."

10  *Complaint of Hornbeck Offshore (1984) Corp.*, 981 F.2d 752, 754 (5th Cir. 1993) (internal

11  quotation marks omitted); *see Amisil Holdings, Ltd. v. Clarium Capital Mgmt.*, 622 F.Supp.2d

12  825, 842 (N.D. Cal. 2007) (ordering a stay where "[n]ot only would a failure to stay prejudice

13  Clarium's right to arbitration but also 'considerations of economy and efficiency' counsel in

14  favor of a stay") (citation omitted).

15          In the event that the Court does not sustain Defendants' demurrer (as set forth

16  in section III.A), the Court should stay this action under either the state or the federal provision

17  until the conclusion of the JAMS Action.  There is no question that Plaintiff's entire dispute is

18  subject to the Arbitration Agreement, given that the proceeding she initiated with JAMS has

19  been actively litigated and is still pending.   Further, as demonstrated above, the parties in

20  both proceedings are virtually identical (save for Plaintiff's confused naming of AT&T

21  Services, Inc.), both actions involve the same subject matter (Plaintiff's September 25, 2012

22  dismissal from Pacific Bell), and in both actions Plaintiff seeks damages under the theories of

23  liability typically asserted in employment discrimination cases. *See Farrow v. Fujitsu America,*

24  *Inc.*, 37 F.Supp.3d 1115, 1126 (N.D. Cal. 2014) (enforcing arbitration agreement in action

25  alleging age discrimination and exercising discretion to dismiss action under 9 U.S.C. § 3).

26          Finally, the JAMS Action is at an advanced stage, and Defendants have

27  expended significant time and resources defending against Plaintiff's claims in that venue.

28  Although Plaintiff desperately seeks a do-over in this Court, that outcome would be highly

MILLER LAW GROUP
A PROFESSIONAL CORPORATION
CALIFORNIA

12

1    prejudicial to Defendants, would undermine the efficacy of the court-approved Arbitration

2    Agreement she signed, and would reward her blatant forum shopping.  The Court instead

3    should order a stay of all proceedings in connection with the Complaint until the conclusion

4    of the JAMS Action.

5

6                                    **IV.    CONCLUSION**

7            For the foregoing reasons, the Court should either sustain Defendants'

8    demurrer under California Code of Civil Procedure section 430.10(c) and stay the action

9    pending resolution of the JAMS Action or, in the alternative, grant Defendants' Motion for Stay

10   as authorized by California and federal law.

11

12   Dated:  May 18, 2015                          MILLER LAW GROUP
                                                    A Professional Corporation
13

14

15                                          By: _____
                                                    Lisa C. Hamasaki
16                                                  Jocelyn M. Chan
                                                    Attorneys for Defendants AT&T
17                                                  SERVICES, INC. and PACIFIC BELL
                                                    TELEPHONE COMPANY

18

19

20

21

22   4829-7474-9731, v. 3

23

24

25

26

27

28

                                          13

MILLER LAW GROUP
A PROFESSIONAL CORPORATION
CALIFORNIA

**EXHIBIT A**

## *McKenzie v. AT&T Services, Inc., et al.*

## COMPARISON OF JAMS ACTION NOTICE OF CLAIM

## AND CIVIL COMPLAINT

| Notice of Claim | Complaint | Notes |
|---|---|---|
| <u>Claim 1</u>: Wrongful Termination in Violation of Public Policy | <u>COA 1</u>: Wrongful Termination in Violation of Public Policy; | Alleged in, and identical to, Claim 1, except for addition of legalese regarding public policy and *prima facie* case for discrimination. |
| | <u>COA 2</u>: Wrongful Termination in Violation of Public Policy – Retaliation | Alleged in Claim 1.  *See* Notice of Claim ¶ 19 ("Defendant terminated Plaintiff's employment due to her age in violation of the public policy of the State of California with respect to disability discrimination, gender discrimination, **retaliation** harassment, and unlawful labor practices.  Said policies are stated in the FEHA, the Labor Code, the California Constitution, and other statutes and in criminal and common laws." (emphasis added)). |
| | <u>COA 3</u>: Wrongful Discharge in Violation of Public Policy  - Cal. Labor Code § 1102.5 | Alleged in Claim 1.  *See* Notice of Claim ¶ 19. |
| | <u>COA 4</u>: Wrongful Termination in Violation of Public Policy – Retaliation Common Law | Alleged in Claim 1.  *See* Notice of Claim ¶ 19. |
| | <u>COA 8</u>: Retaliation For Opposing Age Discrimination | Encompassed in Claims 1 and 4. |
| | <u>COA 10</u>: Wrongful Termination in Violation of Public Policy – Family Medical Leave Act | Encompassed in Claims 1 and 2; also not a valid cause of action. |

| Claim 2: Violations of FEHA (Cal. Gov't Code §§ 12940 *et seq.*) (Disability) | COA 5: Violations of FEHA (Cal. Gov't Code §§12940 *et seq.*) (Disability) | Identical to Claim 2. |
|---|---|---|
| | COA 11: Violation of California Family Rights Act, Cal. Gov. Code § 12945 *et seq.* | Encompassed in Claims 1 and 2. |
| | COA 9: Hostile Work Environment/Harassment Violation of Government § 12940 *et seq.* | Alleged in Claim 1 (*see* Notice of Claim ¶ 19); Claim 2 (*see* Notice of Claim ¶ 33 ("Plaintiff alleges violations of California Government Code §§12940 *et seq.*, against Defendant and Does 1 through 50, inclusive."); Claim 3 (*see* Notice of Claim ¶¶ 41 ("Plaintiff was subjected to harassing conduct") and 42 ("AT&T harassed, berated, and/or subjected Plaintiff to other adverse employment actions")); Claim 4 (*see* Notice of Claim ¶¶ 51 ("the unlawful discrimination of the plaintiff on the basis of her age, was in violation of Cal. Gov. Code § 12940(a) *et seq.*")). |
| Claim 3: Violations of FEHA (Cal. Gov't Code §§ 12940 *et seq.*) (Gender) | COA 6: Violations of FEHA (Cal. Gov't Code §§ 12940 et seq.) (Gender) | Identical to Claim 3. |
| Claim 4: Age Discrimination in Violation of Cal. Govt. Code § 12940, *et seq.* | COA 7: Age Discrimination in Violation of Cal. Govt. Code § 12940, *et seq.* | Identical to Claim 4. |
| Claim 5: Intentional Infliction of Emotional Distress | COA 12: Intentional Infliction of Emotional Distress | Identical to Claim 5. |
| | COA 14: Negligent Infliction of Emotional Distress | Encompassed in Claim 5. |
| | COA 11: Negligent Supervision And Retention | Encompassed in Claims 1-5. |

EXHIBIT 24

1   Timothy L. McCandless, Esq.SBN 147715
    Law Office of Timothy L. McCandless, Esq.
2   820 Main Street, Suite 1
    Martinez, CA  94553
3   Tel:  (925) 957-9797
4   Fax:  (925) 957-9799
    Email:  mccandlesslaw@gmail.com
5

6   *Attorney for Plaintiff*
    Kim McKenzie
7

8

9

10

11              **SUPERIOR COURT FOR THE STATE OF CALIFORNIA
12   IN AND FOR THE COUNTY OF SAN JOAQUIN – STOCKTON COURTHOUSE
                        UNLIMITED CIVIL CASE**

13   KIM MCKENZIE, an individual,              Case No.: 39-2015-00323837-CU-WT-STK

14              PLAINTIFF,                      NOTICE OF EX PARTE APPLICATION FOR
                                               PROVISIONAL REMEDY AND
15              vs.                             TEMPORARY RESTRAINING ORDER
                                               REGARDING PLAINTIFF'S MOTION TO
16   AT&T SERVICES, INC., A CALIFORNIA         STAY AND DISMISS ARBITRATION.
     CORPORATION, PACIFIC BELL
17   TELEPHONE COMPANY; and DOES 1             [FILED CONCURRENTLY WITH THE
     through  50, inclusive,                    DECLARATION OF KIM MCKENZIE,
18                                             JEROME CLAY AND TIMOTHY
                                               MCCANDLESS]
19              DEFENDANTS.
                                               CCP 1281.8(B); CCP 537
20
                                               Hearing Date: May 20th, 2015
21                                             Time: 1:15 p.m .
                                               Dept.:11
22                                             Reservation No. 2064756
23

24

25

26              **NOTICE OF EX PARTE APPLICATION**

27

28   TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD, AND TO THIS HONORABLE

     COURT:

                        NOTICE OF EX PARTE APPLICATION - 1

1  PLEASE TAKE NOTICE that on May 20th , 2015, at 1:15 p.m., or as soon thereafter as counsel

2  may be heard, the Plaintiff Kim McKenzie ("Plaintiff") will appear (before the above-captioned

3  Court to apply ex parte for a temporary restraining order, restraining further proceedings in the

4  JAMS arbitration proceeding that is presently scheduled for a dispositive resolution on May 21,

5  2015.

6  Plaintiff previously filed and scheduled for hearing on June 26th, 2015 a noticed motion to stay

7  and dismiss the pending arbitration proceeding.  The Court denied the motion without prejudice

8  because Plaintiff had erroneously allowed insufficient time and advance notice to opposing

9  counsel under CCP 1005 for a regular noticed motion to be heard.  She has now refiled a new

10  motion requesting the same relief, with hearing scheduled for June 26th, 2015.

11      However, there is now an urgency to the matter because a dispositive conclusion to the

12  arbitration proceeding has been set for May 21, 2015.  It is therefore necessary to stay the

13  arbitration proceeding until the hearing upon Plaintiff's renewed motion to set aside the

14  arbitration proceedings can be heard upon properly notice motion.  Plaintiff now applies ex parte

15  for provisional relief and a temporary restraining order on grounds that the relief to which the

16  Plaintiff is entitled will be rendered ineffectual without provisional relief.  (CCP 1281.8(b)).

17      As more fully set forth in the Declaration of Timothy L McCandless filed concurrently

18  herewith below, Plaintiff has provided notice of this Application to all interested parties.

19

20                              **EX PARTE APPLICATION**

21

22      Plaintiff Pursuant to  California Code of Civil Procedure § 1005, California Rule of Court

23  Rule 379, CCP sections 525, 526 (a), and 527(a), and CCP section 1281.8, Plaintiff hereby

24  applies Ex Parte for a Temporary Restraining Order ("TRO") that will stay the present arbitration

25  that is presently scheduled for dispositive determination on May 21, 2015.

26

27

28

Law Office of Timothy L. McCandless, Esq
820 Main Street, Suite 1
Martinez, CA  94553

**GROUNDS**

- Plaintiff never wanted arbitration in the first place and only requested arbitration after Defendant AT&T's counsel incorrectly represented to plaintiff's representative, Jerome Clay,  that she was required to arbitrate her wrongful termination claim.

- Plaintiff had never executed an arbitration agreement concerning her wrongful termination claim.  She had signed a settlement consent to a class action suit in another matter that contained an arbitration clause for that matter.

- When defendant counsel, Lara Beye-Molina told plaintiff's representative that Ms. McKenzie was required to arbitrate her claim because she had signed an arbitration agreement, Mr. Clay believed her and communicated that understanding to Ms. McKenzie.

- However, Ms. Beye-Molina was referring solely to the arbitration clause that was contained in the class action consent form that Ms. McKenzie had signed.  That clause had no actual bearing upon the present suit.

- Because she had been incorrectly told that she was required to arbitrate, Ms. McKenzie initial applied for arbitration to the American Arbitration Association.

- On June 25, 2013, AT&T counsel Lara-Beye Molina wrote to plaintiff counsel Timothy McCandless again  incorrectly asserting that plaintiff McKenzie was required to arbitrate but stating that the AAA was not the correct forum and that she was required to arbitrate through JAMS.

- At that time, plaintiff counsel had still not viewed the alleged arbitration agreement but believed the representations that Ms. Molina had made.

- Plaintiff accordingly applied for arbitration with JAMS but did not attach two copies of an arbitration agreement as required by JAMS for an arbitration to be initiated. Instead defendant counsel Molina apparently supplied to JAMS the class action consent form that Ms. Molina had earlier signed, but which did not actually pertain to Ms. McKenzie's wrongful termination claim.

- In spite of the fact that no appropriate arbitration had been provided, JAMS commenced the arbitration proceeding.

Law Office of Timothy L. McCandless, Esq
820 Main Street, Suite 1
Martinez, CA  94553

- If the arbitration goes forward, the plaintiff will suffer severe prejudice in the prosecution of her wrongful termination action against defendants.
- Because the present arbitration was never proper in the first place, but plaintiff will be severely prejudiced in her rights if the arbitration is permitted to proceed and arrives at a dispositive determination on May 21, 2015, plaintiff requests a temporary restraining order that will stay the arbitration until her renewed noticed motion can be hard.

In compliance with California Rule of Court 3.1200 and following, defense counsel for AT&T Services, Inc., a California corporation, Pacific Bell Telephone Company, was given proper notice of this ex parte application on 05/18/2015 as set forth in the attached declaration(s)        .

This ex parte application will be based on this attached notice, the Memorandum of Points and Authorities, Declarations of Timothy L McCandless, Jerome Clay and Kim McKenzie filed and served herewith, any matters judicially noticed by this court, the pleadings and papers on file with the court, and on any additional oral or written argument as may be presented at the hearing of this ex parte application.

Notice of this Application has been provided to defendants as stated in the Certificate re Telephonic Notification.

Dated: May 18, 2015

*[signature]*

_____

Timothy L. McCandless
Attorney for Plaintiff Kim McKenzie

NOTICE OF EX PARTE APPLICATION - 4

1

## MEMORANDUM OF POINTS AND AUTHORITIES

2

3    Code of Civil Procedure 1281.8(b) provides as follows:

4        (b) A party to an arbitration agreement may file in the court in
5    the county in which an arbitration proceeding is pending, or if an
     arbitration proceeding has not commenced, in any proper court, an
6    application for a provisional remedy in connection with an arbitrable
7    controversy, but only upon the ground that the award to which the
     applicant may be entitled may be rendered ineffectual without
8    provisional relief. The application shall be accompanied by a
9    complaint or by copies of the demand for arbitration and any response
     thereto. If accompanied by a complaint, the application shall also
10   be accompanied by a statement stating whether the party is or is not
11   reserving the party's right to arbitration.

12

13       In the present case the arbitration proceeding, which is scheduled for a dispositive

14   determination on May 21, 2015, must be stayed pending the hearing upon plaintiff's renewed

15   notice motion to set the arbitration proceeding aside.

16       The ground for provision relief stated in the foregoing subsection is satisfied in that if the

17   present arbitration concludes with a dispositive determination, plaintiff's right to pursue her case

18   in court will be apparently terminated.  Plaintiff never desired arbitration in the first place, but

19   only applied for it because she was misled into believing that she had signed an agreement to

20   arbitrate her claim, which was never true.

21       The foregoing section expressly refers to the court's power to issue a temporary

22   restraining order under CCP § 527.  (CCP 1281.8(a)(3).

23       Accordingly, in order to prevent severe prejudice to the plaintiff's rights by the

24   threatened conclusion of an improper arbitration proceeding, this court must stay further

25   arbitration proceedings pending plaintiff's motion to have said proceedings nullified and set

26   aside in her renewed, regular noticed motion.

27

28

Law Office of Timothy L. McCandless, Esq
820 Main Street, Suite I
Martinez, CA  94553

## I.     BACKGROUND

Plaintiff is making an Ex Parte Application for TRO and OSC re Preliminary Injunction to obtain a TRO and OSC re Preliminary Injunction prohibiting defendant from Participating or going forward with the arbitration pending resolution of his Civil Unlimited case against defendant. On or about January 31st, 2013 Plaintiff was requested to sign and did sign a consent to a class action settlement in the case entitled: *JOE LEWIS LUQUE, ETAL. V AT&TCORP., ETAL., 3:09-CV-05885 (CRB)(JCS).*  The consent contained an arbitration agreement for that case only.  The solicitation for plaintiff's consent in the class action matter stated:

YOU MUST COMPLETE ALL PAGES OF THE CONSENT AND CLAIM FORM AND SIGN IT FULLY WHERE INDICATED, WITHOUT MODIFICATION. PacBell's records show that between December 16, 2005 and May 3, 2012, you held one or more of the following positions: 1) Manager Construction & Engineering ("C&E Field Manager"); 2) Manager Network Services in Installation & Maintenance ("l&M Field Manager"); 3) Manager Network Services in U-verse ("U-verse Field Manager"); or 4) AT&T Corp. Manager Network Operations Center ("T Corp Field Manager") and that you supervised outside technicians in one of the following titles while holding these position(s): Network Technical Specialist, Network Technical Specialist-G, Communications Technician Toll, Company Telecommunications Technician, Outside Plant Technician, Premises Technician, Splicing Technician, Systems Technician, Services Technician, Antenna Technician, and Cable Locator (collectively "the Class Positions"). According to the Company's records, your total number of Compensable Workweeks (i.e., the number of workweeks you received pay for work performed while you were employed in a Class Position within these date ranges) is: Based on the settlement formula, the Parties estimate that the gross amount you will, receive, prior to applicable tax withholdings, if you file a claim is approximately: An additional service payment has been requested on your behalf in the amount of:

Law Office of Timothy L. McCandless, Esq
820 Main Street, Suite1
Martinez, CA  94553

On or about September 25th, 2012 Plaintiff was terminated by defendant. Plaintiff filed for wrongful termination claims with the EEOC and DEFH. Plaintiff at the time was an unemployed I&M Field Manager and therefore she signed the consent and claim form to be compensated. Plaintiff received a right to sue from the DEFH on or about June 10th, 2013. Plaintiff contacted the legal counsel for defendant (Lara Beye Molina) because of the DEFH it gave plaintiff the option to mediate. Defendant told Plaintiff the only option was to arbitrate so Plaintiff filed for arbitration with American Arbitration Association(AAA). Ms Beye –Mollnia states as follows:

> "The Demand for Employment Arbitration attached to your letter is defective as it fails to comply with the requirements set forth in the parties' agreement for initiating an arbitration. First, Ms. McKenzie identified the incorrect third pay responsible for managing the arbitration process. As set forth in the parties' agreement, JAMS, Inc. is the proper entity, not the American Arbitration Association, Second, Ms. McKenzie failed to properly initiate the arbitration and provide notice m required under the parties' agreement. Although the parties' agreement sets forth several ways for Ms. McKenzie to initiate an arbitration. The manner in which Ms. McKenzie seemingly attempted to do so, i.e., completing an American Arbitration Association Demand for Arbitration and serving it on Pacific Bell's agent of process, is not a proper form of notice as set forth in the parties' argument. Third, even if Ms. McKenzie had properly initiated an arbitration and provided the requisite notice (which she has not), her claims as allered in the Demand for Arbitration are subject to a motion to dismiss that will be entertained by an arbitrator that will apply the federal Rules of Civil Procedure. It is not enough simply to allege that a wrong has been committed and demand relief. Rather, a pleading must give "fair notice" of the claim being asserted and the "grounds upon which it resists." Bell Atlantic Corp. v. Twombly. 550 U.S. 544, 555 (2007)."

On or about May 12th, 2014 arbitration with JAMS commence per Ms. Bye-Mollnia's letter. Plaintiff was going through with arbitration but did not understand why she had to arbitrate

Law Office of Timothy L. McCandless, Esq
820 Main Street, Suite I
Martinez, CA 94553

Law Office of Timothy L. McCandless, Esq
820 Main Street, Suite 1
Martinez, CA  94553

1   because she was an *AT WILL* employee[Emphasis Added]. Plaintiff has contended that

2   arbitration was the wrong venue. On or about February 3rd, 2015, plaintiff received the EEOC

3   right to sue letter which allows Plaintiff to bring suit in court. Plaintiff tried to withdrawal from

4   arbitration to seek her claims in this court but the arbitrator denied plaintiff's request. Plaintiff

5   reviewed the agreement and to plaintiff's surprise, the agreement to arbitrate only arose out of

6   claims dealing with the class action lawsuit. Further, defendant must file any answers, briefs or

7   papers on or before June 26th,2015. Accordingly, it is respectfully submitted that the court set the

8   hearings on plaintiff's Motion to Stay Arbitration and Revocation of Arbitration Agreement,

9   defendant's Motion to Stay Action Pending Arbitration and Application for Injunction be heard

10  prior to June 26th , 2015.

12  **II. *FOR GOOD CAUSE, THE COURT MAY RULE EX PARTE DURING THE TIME FOR***
13  **   *NOTICED MOTION***

15  *Code of Civil Procedure* § 1005 provides that, "The court, or a judge thereof may prescribe a

16  shorter time" then the statutory provided notice for a motion. Evidence of a good cause is shown

17  by a factual exposition of a reasonable ground for sought order. See *Waters v. Superior Court*

18  *(1962) 58 Cal.2d 855, 893.*

19  Plaintiffs Motion to Stay Arbitration and Revocation of Arbitration Clause in the Agreement is

20  based on the following grounds:

21       1. This Court shall govern the interpretation and enforceability of a Arbitration

22       agreement;

23       2. This Court is the proper jurisdiction; and

24       3. The arbitration agreement is substantively and procedurally unconscionable;

25  Therefore, with these important issues at stake, good cause exists for the granting of the ex parte

26  application for order shortening time to have these matters heard prior to April 23rd, 2015, 2003,

27  the date set for Defendant's dispositive motion.

28  _____

III.     ARGUMENT

**A. Statutory Basis for Injunction**

An injunction may be granted by the court in which the action is brought, or a by a judge thereof. Code of Civil Procedure, section 525.

An injunction may be granted when it appears by the complaint that the plaintiff is entitled to the relief demanded and the relief consists in restraining the commission or continuance of the act complained of. Code of Civil Procedure, section 526 (a) (1).

An injunction may be granted when it appears by the complaint or affidavit that the commission of some act during the litigation would produce waste, or ***great or irreparable injury*** to a party to the action. Code of Civil Procedure, section 526 (a) (2).

An injunction may be granted when it appears during the litigation that a party is threatening to do some act tending to render the judgment ineffectual. Code of Civil Procedure, section 526 (a) (3).

An injunction may be granted when pecuniary compensation would not afford adequate relief. Code of Civil Procedure, section 526 (a) (4).

**B. Application to Facts of This Case**

In this case, the Plaintiff will be irreparably damaged without injunctive relief because Plaintiff will not have an opportunity to present her wrongful termination case to this court. Plaintiff was terminated on September 25th, 2012 and immediately filed with the EEOC and DEFH to preserve her right to sue. Defendant settled a case and sent Plaintiff a claim and release form to be compensated in a class action lawsuit. Plaintiff signed the release of claim on January 31st, 2013 four months after being terminated. Plaintiff received her EEOC right to sue letter on February 3rd, 2015 in which she has 90 days to bring a wrongful termination claim in this court. Plaintiff has thirteen causes of action against defendant and she is seeking justices.

**C. A TRO is appropriate because Plaintiff is in Immediate Danger of Suffering Irreparable Harm**

"A judge may issue a temporary restraining order to prohibit certain acts by the defendant and to preserve the status quo pending a hearing on whether the plaintiff is entitled to a

1    preliminary injunction." *See Chico Feminist Women's Health Ctr. v. Scully* (1989) 208

2    Cal.App.3d 230, 237 n.1, 256 Cal.Rptr. 194. This standard is met here because it is not possible

3    to have a noticed motion heard *prior* to the commencement of the litigation. Plaintiff will have

4    great prejudice which will result if the arbitration goes forward. Plaintiff faces irreparable harm

5    and immediate danger if a temporary restraining order is not issued pending determination of the

6    motion for a preliminary injunction. The plaintiff will lose her primary role in prosecuting

7    wrongful termination claims actions.

8        The Superior Court must resolve critical questions of fact and law *before* the arbitration

9    begins, including:

10        (1) whether a terminated Plaintiff, by virtue of a unconscionable arbitration agreement

11    contract be deemed to have waived her rights to litigate  and be forced to submit to the

12    arbitration ruling.;

13        (2) whether the invalidity of the contract between Plaintiff and Defendant resulting from

14    plaintiff's signature on the agreement after she was terminated and which it relates to a class

15    action lawsuit.;

16        (3) whether the agreement between Plaintiff and Defendant is void and not arbitrable

17    because Defendant  failed to explain to plaintiff that signing a claim to release, plaintiff waives

18    her rights to litigate if she was terminated even though she had been terminated for four months.

19

20    **D.  There Will be No Prejudice to Defendants if a TRO Issues**

21    In contrast to the grave prejudice which Plaintiff faces if the arbitration goes forward, defendants

22    would suffer no discernible prejudice if a TRO is issued. They would, at most, face a short delay

23    in the arbitration pending Superior Court determination of whether a preliminary injunction

24    should issue. Where the injury to the moving party is "immediate, certain, and great if it is

25    denied, while the loss to the opposing party will be trivial if it is granted," a TRO should issue.

26    *Wilms v. Hand* (1951) 101 Cal.App.2d 811, 815, 226 P.2d 728.

27

28

Law Office of Timothy L. McCandless, Esq
820 Main Street, Suite 1
Martinez, CA  94553

**IV. DEFENSE COUNSEL WAS GIVEN PROPER NOTICE OF THIS EX PARTE APPLICATION**

On 05/19/2015 , defendant's counsel faxed a letter attached hereto marked (EXHIBIT D) giving notice of this ex Parte Application for Order Shortening Time in compliance with <u>California Rule of Court 379</u>.

**V.     CONCLUSION**

For the reasons set forth above, that this court shall govern the interpretation and enforceability of the Arbitration agreement that was signed after Plaintiff was terminated. This court is the proper jurisdiction. Therefore, the Arbitration Agreement is substantively and procedurally unconscionable. Therefore, grounds exist for the revocation of the Arbitration Agreement. Plaintiff respectfully requests that a temporary restraining order issue pending the determination of whether a preliminary injunction should be granted.

Dated: May 18, 2015

Timothy L. McCandless
Attorney for Plaintiff Kim McKenzie

**DECLARATION OF TIMOTHY L. MCCANDLESS**

I, Timothy L. McCandless, declare as follows:

1. I am an attorney duly licensed to practice law before all courts of the State of California. My law firm, Timothy L. McCandless is counsel for Plaintiff Kim Mckenzie, in this action. I am making this declaration in support of plaintiff's Ex Parte Application for Temporary Restraining Order and Order to Show Cause re Preliminary Injunction against Defendants AT&T Services Inc., and PACIFIC BELL TELEPHONE COMPANY;

2. Regular notice of the ex parte hearing for May 20, 2015 was given to opposing counsel on May 18, 2015.

3. On June 23rd, 2013 Lara Beye Molina (Senior Attorney for Defendants) issued a letter (EXHIBIT B) that Plaintiff had to arbitrate her wrongful termination claim due to an arbitration agreement.

4. On August 23rd, 2013 per Ms. Mollnia's letter, Plaintiff filed notice with JAMS to arbitrate.

5. On May 12th, 2014 arbitration with JAMS Commenced.

6. On February 3rd, 2015 Plaintiff received a right to sue letter from The Equal Employment Opportunity Commission ("EEOC") (EXHIBIT C).

7. When I finally had an opportunity to review the purported arbitration agreement signed by Plaintiff on January 31$^{st,}$ 2013. I discovered the supposed arbitration agreement was only a clause contained in the class action settlement for the case brought on behalf of Joe Lewis Luque, I realized that Ms. McKenzie had never signed an arbitration agreement for her wrongful termination claim, in spite of what Jerome Clay and I had been told previously.

8. Plaintiff was terminated from AT&T on September 25th, 2012; four months later plaintiff signed the consent form to receive the compensation in relation to case action law suit.

9. Plaintiff never stipulated or waived her rights to go to arbitration but was misled and wrongly induced to commence arbitration by the representation initially made to Jerome Clay and afterwards in Ms. Lara-Beye Molina's letter.

Law Office of Timothy L. McCandless, Esq
820 Main Street, Suite 1
Martinez, CA 94553

10. Plaintiff never wanted to arbitrate she felt this matter should be resolved by a jury.

I declare under penalty of perjury under the laws of the state of California, the foregoing is true and correct. I am willing to comply with any condition the Court may impose in order to effect a Temporary Restraining Order and Order to Show Cause re Preliminary Injunction.

Dated: May 18, 2015

Timothy L. McCandless
Declarant

Timothy L. McCandless, Esq.SBN 147715
Law Office of Timothy L. McCandless
820 Main Street, Suite 1
Martinez, CA  94553
Tel:  (925) 957-9797
Fax:  (925) 957-9799
Email:  mccandlesslaw@gmail.com

*Attorney for Plaintiff*
Kim McKenzie

## SUPERIOR COURT FOR THE STATE OF CALIFORNIA

## IN AND FOR THE COUNTY OF SAN JOAQUIN – STOCKTON COURTHOUSE

## UNLIMITED CIVIL CASE

| | |
|---|---|
| KIM MCKENZIE, an individual,<br><br>    Plaintiff,<br><br>    vs.<br><br>AT&T SERVICES, INC., A CALIFORNIA CORPORATION, PACIFIC BELL TELEPHONE COMPANY; and DOES 1 through  50, inclusive,<br><br>    Defendants. | Case No.: 39-2015-00323837-CU-WT-STK<br><br>**DECLARATION OF JEROME CLAY**<br><br>Hearing Date: May 20th, 2015<br>Time: 1:15 p.m .<br>Dept.:11<br>Reservation No. 2064756 |

I, Jerome Clay, declare as follows:

1. I am a Certified Law student working under the supervision of Timothy L. McCandless. My Certification No. 36152. I am making this declaration in support of plaintiff's Notice of Ex Parte Application for Provisional Remedy and Temporary Restraining Order Regarding Plaintiff's Motion To Stay and Dismiss Arbitration against Defendants AT&T Services, Inc., a California corporation, Pacific Bell Telephone Company;

2. On or about June, 2013 Ms. McKenzie Received her EEOC mediation notice, I immediate called Lara Beye-Molina to set up a time to mediate

DECLARATION OF JEROME CLAY    1

Law Office of Timothy L. McCandless, Esq<br>820 Main Street, Suite 1<br>Martinez, CA  94553

3. Ms. Beye-Molina refused to mediate and told me that Ms. McKenzie had signed an arbitration agreement and she had to arbitrate.

4. Ms. McKenzie asked if I could be her legal Representative in this matter because I had experience with Labor Law

5. I advised Ms. Beye-Molina that we had the DEFH right to sue letter and we would bring a superior court lawsuit.

6. Ms. Beye-Molina told me we could only arbitrate per a document Ms. McKenzie had signed during a class action lawsuit.

7. I did not view the arbitration contract/ agreement at this particular time.

8. I filed with AAA on June 26th, 2013 because of Ms. Beye-Molina said Ms. McKenzie had to arbitrate.

9. AAA was the wrong venue because Ms. Beye-Molina would not state the proper venue.

10. Ms. Molina sent a letter stating AAA is the wrong venue, and we had to file with JAMS

11. I was working with Timothy McCandless in a limited capacity when Ms. Beye-Molina's June 25th, 2013 letter was received.

12. At this point I still did not see the arbitration agreement.

13. Once JAMS commence Sarah Nevins emailed me the agreement and on the last page I saw JAMS was mentioned in an arbitration clause

14. I spoke to Sarah after the commencement because Defendants had not assigned counsel to the case yet

15. Ms. Nevins advised me that Ms. Beye-Molina now is stating that arbitration is not the proper venue.

16. Finally arbitration commenced and I enlisted the services of Timothy McCandless.

17. I sent Timothy McCandless the arbitration agreement after Ms. McKenzie received her EEOC right to sue letter on or about February, 2015.

18. After reviewing the language of the arbitration clause Tim asked me to file a superior court case to preserve Ms. McKenzie rights since the agreement appears to be unconscionable.

Law Office of Timothy L. McCandless, Esq
820 Main Street, Suite 1
Martinez, CA 94553

DECLARATION OF JEROME CLAY   2

1   I declare under penalty of perjury under the laws of the State of California that the foregoing is

2   true and correct.

3

4   Dated: May 18, 2015

5

6   By: Jerome Clay
    Declarant

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Law Office of Timothy L. McCandless, Esq
820 Main Street, Suite I
Martinez, CA 94553

DECLARATION OF JEROME CLAY   3

1  Timothy L. McCandless, Esq. SBN 147715
2  Law Office of Timothy L. McCandless
   820 Main Street, Suite 1
3  Martinez, CA  94553
   Tel:  (925) 957-9797
4  Fax:  (925) 957-9799
5  Email:  mccandlesslaw@gmail.com

6  *Attorney for Plaintiff*
7  Kim McKenzie

8           **SUPERIOR COURT FOR THE STATE OF CALIFORNIA**

9      **IN AND FOR THE COUNTY OF SAN JOAQUIN – STOCKTON COURTHOUSE**

10                      **UNLIMITED CIVIL CASE**

11  KIM MCKENZIE, an individual,            Case No.: 39-2015-00323837-CU-WT-STK

12              Plaintiff,

13        vs.                             **DECLARATION OF KIM MCKENZIE**

14  AT&T SERVICES, INC., A CALIFORNIA
15  CORPORATION, PACIFIC BELL
    TELEPHONE COMPANY; and DOES 1        Hearing Date: May 20th, 2015
16  through  50, inclusive,              Time: 1:115 p.m .
                                         Dept.:11
17                                       Reservation No. 2064756
              Defendants.
18

19

20

21  I, Kim McKenzie, state as follows:

22        1.  I am over the age of 18 years and am a named party to this action. I have personal

23  knowledge of the facts stated in this declaration, and if called as a witness, could and would

24  testify competently to the truth of the facts as stated herein.

25        2.   I am a Caucasian  female who has been employed with AT&T for 21 years

26            and 7 months.

27

28

Law Office of Timothy L. McCandless, Esq
820 Main Street, Suite 1
Martinez, CA  94553

Law Office of Timothy L. McCandless, Esq
820 Main Street, Suite I
Martinez, CA 94553

3.   During the summer and fall of 2012, my Supervisor, Rick Garcia, began constantly harassing me and nitpicking my work without reason.  He began criticizing me and talking to me in a hostile, intimidating manner.

4.   I believe that because of my age, Rick Garcia wanted me to quit my job, and for some reason he did not like having a female work as his junior.   I was verbally abused by Rick Garcia for a number of months, but I continued my job, and I had no intention of quitting.

5.   I had to work in a hostile/threatening work environment on a daily basis for several months because of my supervisor, Rick Garcia.

6.   On or about September 25th, 2012  Rick Garcia gave me notice that my employment was being terminated, supposedly on the basis that the company was doing cost-cutting or reorganization, and my services were no longer needed.

7.   In October, 2012, I filed a complaint with The Equal Employment Opportunity Commission.

8.   On February 3rd, 2015, I received my Right to Sue letter against the defendants form EEOC.

9.   On or about June 28th, I received my right to sue letter from the California Department of Fair Employment & Housing.

10. On or about January 31st, 2013, I was offered the opportunity to sign a class action consent and claim form in order to receive compensation in a settlement agreement for a case related to employment at AT&T.  The class action lawsuit had nothing to do with my own claims of harassment and wrongful termination. I was apparently a member of the class simply because I had been employed by AT&T.

11. Unbeknownst to me, the settlement consent form for the class action lawsuit contained an arbitration clause for that class action.  It had nothing to do with my own claim against AT&T.

DECLARATION OF KIM MCKENZIE   2

12. At no time did I intend to waive my legal rights to litigate my wrongful termination claim in superior court.

13. I believed that by signing the consent and claim form, I would receive settlement amount offered, and that the signing of the consent form was a mere formality to permit me to obtain my share of the class action settlement.

14. At no time did defendants or defendant's counsel explain to me that there was an arbitration prevision in the consent form or assert that my agreeing to the class action settlement would meant that I would be forced to arbitrate my own case against AT&T.

15. The fact that the consent form for the proposed settlement of the class action lawsuit contained an arbitration clause applicable to that action was not even discussed.

16. At no time did defendants or defendant's counsel every advised me that it was advisable or necessary to obtain counsel or legal advice concerning my signing of the consent form for the class action.

17. The notice that I received from the defendants only stated that in order to receive compensation from the settlement agreement for the class action that I had been offered, I had to sign the consent form and that no alterations were permitted.

18. At the time the class action consent form was presented to me for signing, I was unemployed and I had no income for several months after I had been terminated by AT&T.

19. By signing the consent and claim form, I understood that I would receive approximately $17,000.00 as my share of the class action settlement.

20. I contacted Jerome Clay, who also worked AT&T, and whom I knew while working there, because I knew he was a law student and he works in Labor Law.

21. I asked Jerome if he could call the legal department of defendants because I had received an EEOC mediation form and I wanted to know if the defendants were interested in settling my claim against AT&T.

Law Office of Timothy L. McCandless, Esq.
820 Main Street, Suite 1
Martinez, CA  94553

---

DECLARATION OF KIM MCKENZIE   3

22. Jerome did place the call for me and defendant's counsel, Lara Beye-Molina incorrectly informed him that I was required to arbitrate my claim against AT&T because I had signed an arbitration agreement.

23. Not knowing the full background and circumstances, Jerome took Lara Beye-Molina at her word and he in turn told me that I was required to arbitrate my claim against AT&T. Since I had no idea how any of these things worked, I believed him and initiated a request for arbitration.

24. I have never wanted arbitration but proceeded to request it based defendant's counsel Lara Beye-Molina's that I was required to submit my claim to arbitration because I had signed a consent and claim form that I agreed to binding arbitration.

25. She did not explain to Jerome or to me that the arbitration clause that she was referring to was simply a part of my consent form for the class action and that it had nothing to do with my claim against AT&T at all.

26. I never signed the consent and claim form for the class action with the belief I would engage in binding arbitration for my own claim against AT&T.


VERIFICATION


I, Kim McKenzie, natural person, and one of the People of the state of California, hereby verifies, under penalty of perjury, under the laws of the United States of America, and the state of California that the facts contained in this Declaration are True, and of my own personal knowledge, so help me God,


Dated: May 18, 2015

*Kim McKenzie*

_____

By:  Kim McKenzie
Declarant

DECLARATION OF KIM MCKENZIE   4

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

Law Office of Timothy L. McCandless, Esq
820 Main Street, Suite I
Martinez, CA  94553

# ARBITRATION AGREEMENT (EXHIBIT A)

26
27
28

02/07/2013 00:51 FAX 2095454555          POSTALANNEXPLUS                      ☒002/004

PacBell/Luque Settlement Administrator
c/o KCC Class Action Services
P.O. Box 6177
Novato, CA 94948-6177

## ATQ

000450                              Name/Address Changes, if any:

Claim #: ATQ-100829401 450          First Name        Last Name

KIM MCKENZIE                        Address
4516 WESSEX LN
SALIDA, CA 95368-9188               City               State    Zip

Home or Cell Phone: (   ) 614-1664      E-Mail Address: Pim.mckenzie76@
209                                                    gmail.com

### CONSENT AND CLAIM FORM

*JOE LEWIS LUQUE, ET AL. V. AT&T CORP., ET AL., 3:09-CV-05885 (CRB)(JCS)*

### IF YOU WANT TO RECEIVE MONEY UNDER THIS SETTLEMENT, YOU MUST COMPLETE THIS FORM, WITHOUT MODIFICATION, IN ACCORDANCE WITH THE INSTRUCTIONS BELOW.

YOU MUST COMPLETE, SIGN, AND MAIL (BY FIRST CLASS U.S. MAIL OR EQUIVALENT), FAX, OR EMAIL THIS CONSENT AND CLAIM FORM. IT MUST BE POSTMARKED (IF MAILED), FAXED, OR EMAILED ON OR BEFORE FEBRUARY 9, 2013, ADDRESSED AS FOLLOWS, OR YOU WILL BE INELIGIBLE TO RECEIVE A MONETARY RECOVERY.

MAIL TO:
PacBell/Luque Settlement Administrator, c/o KCC Class Action Services
P.O. Box 6177, Novato, CA 94948-6177
Phone number: 1-888-338-8835
FAX TO: 1-866-858-1434
OR EMAIL TO: ATTLuqueSettlement@kccllc.com

### INSTRUCTIONS

1. You must complete, sign and mail, fax, or email this Consent and Claim Form in order to be eligible for monetary recovery. You must include the last four digits of your Social Security Number (which will be kept confidential) in the space provided below. You will not be eligible for monetary recovery unless you sign and return, without modification, the Release of Claims (page 2), AND the Arbitration Agreement (pages 3-5).

2. If you move to a different address or change other forms of contact information such as telephone numbers and email addresses, please send the Settlement Administrator your new contact information. It is your responsibility to keep current contact information on file with the Settlement Administrator.

3. If you wish to challenge the employment data below, you must submit your challenge by February 9, 2013.

4. If you do not complete the Consent and Claim Form in full without modification, including, but not limited to, the Arbitration Agreement, you will not be eligible to receive any monetary recovery. The Arbitration Agreement is substantially similar to the Arbitration Agreement previously distributed by the Company to all Field Managers on or about December, 2011.

YOU MUST COMPLETE ALL PAGES OF THE CONSENT AND CLAIM FORM AND
SIGN IT FULLY WHERE INDICATED, WITHOUT MODIFICATION.

PacBell's records show that between December 16, 2005 and May 3, 2012, you held one or more of the following positions: 1) Manager Construction & Engineering ("C&E Field Manager"); 2) Manager Network Services in Installation & Maintenance ("I&M Field Manager"); 3) Manager Network Services in U-verse ("U-verse Field Manager"); or 4) AT&T Corp. Manager Network Operations Center ("T Corp Field Manager") and that you supervised outside technicians in one of the following titles while holding these position(s): Network Technical Specialist, Network Technical Specialist-G, Communications Technician Toll, Company Telecommunications Technician, Outside Plant Technician, Premises Technician, Splicing Technician, Systems Technician, Services Technician, Antenna Technician, and Cable Locator (collectively "the Class Positions").

01JU79                         149849_EX_Awa/004/60/004/91          ATQ_POC_ex_121207

02/07/2013 00:52 FAX  209545455      POSTALANNEXPLUS                           003/004

100829401

According to the Company's records, your total number of Compensable Workweeks (i.e., the number of workweeks you received pay for work performed while you were employed in a Class Position within these date ranges) is:

334.57.

Based on the settlement formula, the Parties estimate that the gross amount you will receive, prior to applicable tax withholdings, if you file a claim is approximately:

$17,010.51

**Note:** The amount you receive could be higher or lower than this estimate.

## CHALLENGE

*Check one:*

[X] I do not wish to challenge the number of Compensable Workweeks listed above.

[ ] I wish to challenge the number of Compensable Workweeks listed above. I have included with my signed Claim Form a written statement with what I believe is the correct number of Compensable Workweeks. I have also included documentary evidence that supports my claim. I recognize that my claim will not be reviewed without such evidence. I understand that by submitting this challenge, I hereby authorize the parties and the Settlement Administrator to review PacBell's records and make a determination based on its records and the records I submitted, subject to final determination by the Settlement Administrator. I understand that this determination may increase or decrease the amount of my Settlement Share. I understand that such determinations are final and binding. I understand that I may contact Class Counsel regarding my challenge, if I wish.

**IF YOU WISH TO CHALLENGE THE NUMBER OF COMPENSABLE WORKWEEKS LISTED ABOVE, YOU MUST SUBMIT THIS CHALLENGE, ALONG WITH THE COMPLETED CONSENT AND CLAIM FORM, ON OR BEFORE FEBRUARY 9, 2013 (WITHIN 60 DAYS AFTER THIS FORM WAS MAILED TO YOU).**

### RELEASE OF CLAIMS

My signature below constitutes my full and complete release of all known and unknown claims against AT&T Corp., Pacific Bell Telephone Company, and AT&T Communications of California, Inc., and their present and former parents, subsidiaries, and affiliated companies, and their respective present and former officers, directors, employees, partners, shareholders, and agents, and any other successors, assigns, or legal representatives (collectively, "the Released Parties") from all known and unknown claims they may have against the Released Parties arising from or related to allegations of having not been paid all wages owed in accordance with California or federal law, and any other wage-and-hour or related claims that were or could have been alleged in the Complaint in *Joe Lewis Luque, et al. v. AT&T Corp., et al.*, filed in the United States District Court for the Northern District of California, Case No. 3:09-CV-05885 (CRB)(JCS)("*Luque*") or derive from the same factual predicate, to the fullest extent permitted by law, including, but not limited to, all claims of allegedly unpaid wages, including overtime wages; alleged meal and rest period violations; alleged pay stub violations; alleged failure to pay all wages due upon termination; alleged breach of contract or unjust enrichment; any and all related penalties, including but not limited to record-keeping penalties, pay stub penalties, waiting time penalties, and civil penalties; interest; liquidated damages; and attorneys' fees, costs, and expenses, from December 16, 2005, up to and including the date of final court approval of the Settlement, whether arising under the California Labor Code; California Business and Professions Code section 17200 ct seq.; the California Labor Code Private Attorneys General Act of 2004, Cal. Lab. Code § 2698 et seq.); the California Industrial Welfare Commission Wage Orders; the federal Fair Labor Standards Act ("FLSA"); or common law contract or tort law. This Settlement does not release claims that are not of a wage-and-hour or related nature, such as discrimination claims. This release does not serve as a waiver of your rights to address any claims arising from or related to events that occur after the date of final court approval of the Settlement.

### TAXPAYER IDENTIFICATION NUMBER CERTIFICATION

**Substitute IRS Form W-9**

Enter the last four digits of your Social Security Number:  XXX—XX— 2 1 1 4

I certify that:

1. The partial social security number shown on this form correctly states the last 4 digits of my taxpayer identification number. **and**
2. I am not subject to backup withholding because: (a) I am exempt from backup withholding, or (b) I have not been notified by the Internal Revenue Service (IRS) that I am subject to backup withholding as a result of a failure to report all interest or dividends, or (c) the IRS has notified me that I am no longer subject to backup withholding; and
3. I am a U.S. citizen or authorized to work in the U.S.

Note: If you have been notified by the IRS that you are subject to backup withholding, you must cross out item 2 above.

The IRS does not require your consent to any provision of this document other than this Form W-9 certification to avoid backup withholding.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Signature of Employee/Class Member   KIM MCKENZIE

1-31-2013

Date (mm/dd/yyyy)

2          14JR49_EX_dom/000450/004103

100829401

Should any party refuse or neglect to appear for, or participate in, the arbitration hearing, the Arbitrator shall have the authority to decide the dispute based upon whatever evidence is presented.

Either party shall have the right to file a post-hearing brief. The time for filing such a brief shall be set by the Arbitrator.

### The Arbitration Award

The Arbitrator may award any party any remedy to which that party is entitled under applicable law, but such remedies shall be limited to those that would be available to a party in his or her individual capacity in a court of law for the claims presented to and decided by the Arbitrator.

The Arbitrator will issue a decision or award in writing, stating the essential findings of fact and conclusions of law. A court of competent jurisdiction shall have the authority to enter a judgment upon the award made pursuant to the arbitration.

### Non-Retaliation

It is against Company policy for any employee to be subject to retaliation if he or she exercises his or her right to assert claims under this Agreement. If you believe that you have been retaliated against by anyone at the Company, you should immediately report this to the Ethics and Compliance Hot Line at 1-888-871-2622.

### Sole and Entire Agreement

This is the complete agreement of the parties on the subject of arbitration of disputes. This Agreement supersedes any prior or contemporaneous oral or written understandings on the subject. No party is relying on any representations, oral or written, on the subject of the effect, enforceability or meaning of this Agreement, except as specifically set forth in this Agreement.

### Construction and Severability

If any provision of this Arbitration Agreement is adjudicated to be void or otherwise unenforceable, in whole or in part, such adjudication shall not affect the validity of the remainder of the Arbitration Agreement. All provisions of this Arbitration Agreement not adjudicated to be void or otherwise unenforceable shall remain in full force and effect based on the parties' mutual intent to create a binding agreement to arbitrate their disputes.

### Voluntary Agreement

I ACKNOWLEDGE THAT I HAVE CAREFULLY READ THIS AGREEMENT, THAT I UNDERSTAND ITS TERMS, THAT ALL UNDERSTANDINGS AND AGREEMENTS BETWEEN THE COMPANY AND ME RELATING TO THE ARBITRATION OF EMPLOYMENT DISPUTES ARE CONTAINED IN IT, THAT IT SUPERSEDES ANY PRIOR AGREEMENTS BETWEEN THE COMPANY AND ME ON THE ARBITRATION OF EMPLOYMENT DISPUTES, AND THAT I HAVE ENTERED INTO THE AGREEMENT VOLUNTARILY AND NOT IN RELIANCE ON ANY PROMISES OR REPRESENTATIONS BY THE COMPANY OTHER THAN THOSE CONTAINED IN THIS CONSENT AND CLAIM FORM ITSELF AND THE NOTICE OF PROPOSED CLASS ACTION SETTLEMENT IN *LUQUE*. I FURTHER ACKNOWLEDGE THAT THE EXECUTION OF THIS AGREEMENT IS A TERM OF THE SETTLEMENT IN *LUQUE* AND THAT THE SETTLEMENT SHARE THAT I AM TO RECEIVE IN *LUQUE* IS CONSIDERATION FOR THIS AGREEMENT.

I UNDERSTAND THAT BY SIGNING THIS AGREEMENT I AM GIVING UP MY RIGHT TO A JURY TRIAL.

I FURTHER ACKNOWLEDGE THAT I HAVE BEEN GIVEN THE OPPORTUNITY TO DISCUSS THIS AGREEMENT WITH CLASS COUNSEL AND WITH PRIVATE LEGAL COUNSEL AND HAVE AVAILED MYSELF OF THAT OPPORTUNITY TO THE EXTENT I WISH TO DO SO.

Employee/Class Member:

Signature of Employee/Class Member   KIM MCKENZIE,

1-31-2013

Date (mm/dd/yyyy)

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25  MS. LARA BEYE-MOLINA LETTER (EXHIBIT B)
26
27
28

Law Office of Timothy L. McCandless, Esq
820 Main Street, Suite 1
Martinez, CA 94553

 **at&t**

**Lara-Beye Molina**
*Senior Attorney*
*Legal Department*

AT&T Services, Inc.
525 Market Street
Suite 2030
San Francisco, CA 94105

T: 415-778-1277
F: 415-974-1990
lara-beye.molina@att.com

## DELIVERED VIA U.S. MAIL AND FACSIMILE

June 25, 2013

JUN 2 6 2013

RECEIVED

Timothy L. McCandless, Esq.
Law Office of Timothy L. McCandless
820 Main Street
P.O. Box 149
Martinez, California 94553

Re:   Kim McKenzie

Dear Mr. McCandless:

I am in receipt of your letter dated June 20, 2013 and the attached Demand for Employment Arbitration on behalf of Kim McKenzie.

As you know, Ms. McKenzie and her former employer, Pacific Bell Telephone Company ("Pacific Bell" or the "Company"), have agreed that any disputes arising out of or related to Ms. McKenzie's employment or termination of employment are subject to an arbitration agreement signed by Ms. McKenzie on January 31, 2013. The parties' agreement sets forth the notice requirements for commencing an arbitration and the third party managing the arbitration process, among other things.

The Demand for Employment Arbitration attached to your letter is defective as it fails to comply with the requirements set forth in the parties' agreement for initiating an arbitration. First, Ms. McKenzie identified the incorrect third party responsible for managing the arbitration process. As set forth in the parties' agreement, JAMS, Inc. is the proper entity, not the American Arbitration Association. Second, Ms. McKenzie failed to properly initiate the arbitration and provide notice as required under the parties' agreement. Although the parties' agreement sets forth several ways for Ms. McKenzie to initiate an arbitration, the manner in which Ms. McKenzie seemingly attempted to do so, i.e., completing an American Arbitration Association Demand for Arbitration and serving it on Pacific Bell's agent of process, is not a proper form of notice as set forth in the parties' agreement. Third, even if Ms. McKenzie had properly initiated an arbitration and provided the requisite notice (which she has not), her claims as alleged in the Demand for Arbitration are subject to a motion to dismiss that will be entertained by an arbitrator that will apply the Federal Rules of Civil Procedure. It is not enough simply to allege that a wrong has been committed and demand relief. Rather, a pleading must give "fair notice" of the claim being asserted and the "grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

If you wish to remedy the defects in Ms. McKenzie's demand and properly initiate the arbitration as required by the parties' agreement, please also note that as the party initiating the claim, she is responsible to contribute "an amount equal to the filing fee to initiate a claim in the court of general jurisdiction in the state in which [she was last] employed by the

Timothy L. McCandless, Esq.
June 25, 2013
Page 2

Company." Alternatively, if your client wishes, you may provide me with a demand letter
that more fully outlines Ms. McKenzie's claims and request for damages. I can review such
a letter and discuss the possibility of engaging in settlement negotiations outside of the
arbitration process with my client.

I look forward to hearing from you.

Very truly yours,

Lara-Beye Molina

#593195

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Law Office of Timothy L. McCandless, Esq
820 Main Street, Suite I
Martinez, CA 94553

EQUAL EMPLOYMENT OPPORTUNITY COMMISSION ("EEOC") (EXHIBIT C)

EEOC Form 161-B (11/09)            U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

## NOTICE OF RIGHT TO SUE *(ISSUED ON REQUEST)*

| To: | Kim E. McKenzie<br>4516 Wessex Lane<br>Salida, CA 95368 | From: | San Francisco District Office<br>450 Golden Gate Avenue<br>5 West, P.O. Box 36025<br>San Francisco, CA 94102 |
|---|---|---|---|

| | On behalf of person(s) aggrieved whose identity is<br>CONFIDENTIAL (29 CFR §1601.7(a)) |
|---|---|

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 550-2013-00472 | Deborah Randall,<br>Enforcement Manager | (415) 522-3107 |

*(See also the additional information enclosed with this form.)*

**NOTICE TO THE PERSON AGGRIEVED:**

**Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Act (ADA), or the Genetic Information Nondiscrimination Act (GINA):** This is your Notice of Right to Sue, issued under Title VII, the ADA or GINA based on the above-numbered charge. It has been issued at your request. Your lawsuit under Title VII, the ADA or GINA **must be filed in a federal or state court <u>WITHIN 90 DAYS</u> of your receipt of this notice**; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

| [X] | More than 180 days have passed since the filing of this charge. |
|---|---|
| [ ] | Less than 180 days have passed since the filing of this charge, but I have determined that it is unlikely that the EEOC will be able to complete its administrative processing within 180 days from the filing of this charge. |
| [X] | The EEOC is terminating its processing of this charge. |
| [ ] | The EEOC will continue to process this charge. |

**Age Discrimination in Employment Act (ADEA):** You may sue under the ADEA at any time from 60 days after the charge was filed until 90 days after you receive notice that we have completed action on the charge. In this regard, **the paragraph marked below applies to your case:**

| [X] | The EEOC is closing your case. Therefore, your lawsuit under the ADEA **must be filed in federal or state court <u>WITHIN 90 DAYS</u>** of your receipt of this Notice. Otherwise, your right to sue based on the above-numbered charge will be lost. |
|---|---|
| [ ] | The EEOC is continuing its handling of your ADEA case. However, if 60 days have passed since the filing of the charge, you may file suit in federal or state court under the ADEA at this time. |

**Equal Pay Act (EPA):** You already have the right to sue under the EPA (filing an EEOC charge is not required.) EPA suits must be brought in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred <u>more than 2 years (3 years)</u>** before you file suit may not be collectible.

If you file suit, based on this charge, please send a copy of your court complaint to this office.

On behalf of the Commission

Enclosures(s)

_____         02/03/2015
Michael P. Connolly,                        *(Date Mailed)*
**Acting District Director**

cc:

Gerald (Gerry) Connors
Sr. EEO Consultant
AT&T Communications
2600 CAMINO RAMON, Rm. 3E502
San Ramon, CA 94583



Enclosure with EEOC
Form 161-B (11/09)

# INFORMATION RELATED TO FILING SUIT
## UNDER THE LAWS ENFORCED BY THE EEOC

*(This information relates to filing suit in Federal or State court under Federal law.*
*If you also plan to sue claiming violations of State law, please be aware that time limits and other*
*provisions of State law may be shorter or more limited than those described below.)*

**PRIVATE SUIT RIGHTS     --     Title VII of the Civil Rights Act, the Americans with Disabilities Act (ADA), the Genetic Information Nondiscrimination Act (GINA), or the Age Discrimination in Employment Act (ADEA):**

In order to pursue this matter further, you must file a lawsuit against the respondent(s) named in the charge **within 90 days** of the date you *receive* this Notice. Therefore, you should **keep a record of this date**. Once this 90-day period is over, your right to sue based on the charge referred to in this Notice will be lost. If you intend to consult an attorney, you should do so promptly. Give your attorney a copy of this Notice, and its envelope, and tell him or her the date you received it. Furthermore, in order to avoid any question that you did not act in a timely manner, it is prudent that your suit be filed **within 90 days of the date this Notice was *mailed* to you** (as indicated where the Notice is signed) or the date of the postmark, if later.

Your lawsuit may be filed in U.S. District Court or a State court of competent jurisdiction. (Usually, the appropriate State court is the general civil trial court.) Whether you file in Federal or State court is a matter for you to decide after talking to your attorney. Filing this Notice is not enough. You must file a "complaint" that contains a short statement of the facts of your case which shows that you are entitled to relief. Your suit may include any matter alleged in the charge or, to the extent permitted by court decisions, matters like or related to the matters alleged in the charge. Generally, suits are brought in the State where the alleged unlawful practice occurred, but in some cases can be brought where relevant employment records are kept, where the employment would have been, or where the respondent has its main office. If you have simple questions, you usually can get answers from the office of the clerk of the court where you are bringing suit, but do not expect that office to write your complaint or make legal strategy decisions for you.

**PRIVATE SUIT RIGHTS     --     Equal Pay Act (EPA):**

EPA suits must be filed in court within 2 years (3 years for willful violations) of the alleged EPA underpayment: back pay due for violations that occurred **more than 2 years (3 years) before you file suit** may not be collectible. For example, if you were underpaid under the EPA for work performed from 7/1/08 to 12/1/08, you should file suit before 7/1/10 – *not* 12/1/10 -- in order to recover unpaid wages due for July 2008. This time limit for filing an EPA suit is separate from the 90-day filing period under Title VII, the ADA, GINA or the ADEA referred to above. Therefore, if you also plan to sue under Title VII, the ADA, GINA or the ADEA, in addition to suing on the EPA claim, suit must be filed within 90 days of this Notice and within the 2- or 3-year EPA back pay recovery period.

**ATTORNEY REPRESENTATION     --     Title VII, the ADA or GINA:**

If you cannot afford or have been unable to obtain a lawyer to represent you, the U.S. District Court having jurisdiction in your case may, in limited circumstances, assist you in obtaining a lawyer. Requests for such assistance must be made to the U.S. District Court in the form and manner it requires (you should be prepared to explain in detail your efforts to retain an attorney). Requests should be made well before the end of the 90-day period mentioned above, because such requests do not relieve you of the requirement to bring suit within 90 days.

**ATTORNEY REFERRAL AND EEOC ASSISTANCE     --     All Statutes:**

You may contact the EEOC representative shown on your Notice if you need help in finding a lawyer or if you have any questions about your legal rights, including advice on which U.S. District Court can hear your case. If you need to inspect or obtain a copy of information in EEOC's file on the charge, please request it promptly in writing and provide your charge number (as shown on your Notice). While EEOC destroys charge files after a certain time, all charge files are kept for at least 6 months after our last action on the case. Therefore, if you file suit and want to review the charge file, **please make your review request within 6 months of this Notice**. (Before filing suit, any request should be made within the next 90 days.)

*IF YOU FILE SUIT, PLEASE SEND A COPY OF YOUR COURT COMPLAINT TO THIS OFFICE.*

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Law Office of Timothy L. McCandless, Esq
820 Main Street, Suite I
Martinez, CA 94553

DEFENDANT'S COUNSEL FAXED LETTER (EXHIBIT D)

1    Timothy L. McCandless, Esq.SBN 147715
2    Law Office of Timothy L. McCandless, Esq.
     820 Main Street, Suite 1
3    Martinez, CA  94553
     Tel:  (925) 957-9797
4    Fax:  (925) 957-9799
5    Email:  mccandlesslaw@gmail.com

6    *Attorney for Plaintiff*
7    Kim McKenzie

8

9

10

### SUPERIOR COURT FOR THE STATE OF CALIFORNIA
### IN AND FOR THE COUNTY OF SAN JOAQUIN – STOCKTON COURTHOUSE
### UNLIMITED CIVIL CASE

| | |
|---|---|
| KIM MCKENZIE, an individual,<br><br>        PLAINTIFF,<br><br>        vs.<br><br>AT&T SERVICES, INC., A CALIFORNIA CORPORATION, PACIFIC BELL TELEPHONE COMPANY; and DOES 1 through  50, inclusive,<br><br>        DEFENDANTS. | Case No.: 39-2015-00323837-CU-WT-STK<br><br>**CERTIFICATE OF TELEPHONIC NOTIFICATION RE EX PARTE APPLICATION FOR INJUNCTION RE ARBITRATION ORDER AND ORDER TO SHOW CAUSE RE PRELIMINARY INJUNCTION**<br><br>Hearing Date: May 20th, 2015<br>Time: 1:15 p.m .<br>Dept.:11<br>Reservation No. 2064756 |

     I, Jerome Clay, declare and certify as follows:

     1.    I am over eighteen years of age, not a party to this action, and a resident of San Joaquin County. I have personal knowledge of the facts alleged herein below except as to those matters alleged on information and belief and as to those matters I believe them to be true. If

Law Office of Timothy L. McCandless, Esq.
820 Main Street, Suite 1
Martinez, CA 94553

1   called upon to testify in court as to the matters alleged hereinbelow, I could and would be able to
2   competently testify as to the matters alleged herein.

3       2.    On May 18th, 2015 at 1:00 p.m. I called **Jocelyn M. Chan** at (415) 464.4300
4   This person's relationship to the Defendant AT&T Services, Inc., a California corporation,
5   Pacific Bell Telephone Company is Defendant's counsel. I informed them that on May,
6   20th,2015., Plaintiff Kim McKenzie would be making an Ex Parte appearance in Department of
7   the Stockton Courthouse of the San Joaquin County Superior Court located at 222 E. Weber
8   Avenue, Stockton, California 95202 to request that the court issue a Temporary Restraining
9   Order and Order to Show Cause re Preliminary Injunction against Defendant AT&T Services,
10  Inc., a California corporation, Pacific Bell Telephone Company prohibiting them from going
11  forward with an arbitration hearing on May21[st], 2015.
12  without further permission of the Superior Court.

13      3.    I explained that on April 10th,2015 , Plaintiff kim McKenzie filed a civil unlimited
14  Superior Court case alleging causes of action for Wrongful Termination against Defendants
15  AT&T Services, INC., a California corporation, PACIFIC BELL TELEPHONE COMPANY.
16  The case number is 39-2015-00323837-CU-WT-STK.

17      4.    The person I spoke to said that they understood the message and would relay it to the
18  appropriate persons.

19      I declare under penalty of perjury under the laws of the State of California that the
20  foregoing is true and correct.
21  Dated: May 18, 2015

24  _____
25  Declarant

Certificate re Telephonic Notification

- 2

EXHIBIT 25

1  Lisa C. Hamasaki (SBN 197628)
       lch@millerlawgroup.com
2  Jocelyn M. Chan (SBN 267937)
       jchan@millerlawgroup.com
3  MILLER LAW GROUP
   A Professional Corporation
4  111 Sutter Street, Suite 700
   San Francisco, CA 94104
5  Tel. (415) 464-4300
   Fax (415) 464-4336
6
   Attorneys for Defendants
7  AT&T SERVICES, INC. and
   PACIFIC BELL TELEPHONE COMPANY
8

9

10              SUPERIOR COURT OF CALIFORNIA

11            COUNTY OF COUNTY OF SAN JOAQUIN

12  KIM MCKENZIE, an individual,          Case No.: 39-2015-00323837-CU-WT-STK

13                                        THIS CASE HAS BEEN ASSIGNED TO
                 Plaintiff,               JUDGE LINDA L. LOFTHUS IN
14                                        DEPARTMENT 11 FOR ALL PURPOSES
    v.                                    INCLUDING TRIAL
15
                                          **NOTICE OF ENTRY OF ORDER DENYING**
16  AT&T SERVICES, INC., A CALIFORNIA     **PLAINTIFF'S EX PARTE APPLICATION**
    CORPORATION, PACIFIC BELL             **FOR PROVISIONAL REMEDY AND**
17  TELEPHONE COMPANY; and DOES 1         **TEMPORARY RESTRAINING ORDER**
    through 50, inclusive,                **REGARDING PLAINTIFF'S MOTION TO**
18                                        **STAY AND DISMISS ARBITRATION**

19               Defendants.

20                                        Complaint filed:  April 10, 2015

21

22

23

24

25

26

27

28



Superior Court stamp:
SUPERIOR
2015 JUN 16  PM 12: 13
ROSA JUNQUEIRO, CLERK
Angela Constantino
BY_____
DEPUTY

By Fax

MILLER LAW GROUP
A PROFESSIONAL CORPORATION
CALIFORNIA

1          PLEASE TAKE NOTICE that on June 8, 2015, the Court entered its Order

2   Denying Plaintiff KIM McKENZIE's Ex Parte Application for Provisional Remedy and

3   Temporary Restraining Order Regarding Plaintiff's Motion to Stay and Dismiss Arbitration in

4   the above-referenced case.   A true and correct copy of that Order is attached hereto as

5   Exhibit A, and incorporated into this notice by reference.

6

7   Dated:  June 15, 2015                MILLER LAW GROUP
                                      A Professional Corporation

8

9                               By: _____

10                               Jocelyn M. Chan
                               Attorneys for Defendants

11                               AT&T  SERVICES,  INC.  and  PACIFIC
                               BELL TELEPHONE COMPANY

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MILLER LAW GROUP
A PROFESSIONAL CORPORATION
CALIFORNIA

NOTICE OF ENTRY OF ORDER DENYING PLAINTIFF'S EX PARTE APPLICATION
Case No.: 39-2015-00323837-CU-WT-STK

# EXHIBIT A

1  Lisa C. Hamasaki (SBN 197628)
       lch@millerlawgroup.com
2  Jocelyn M. Chan (SBN 267937)
       jchan@millerlawgroup.com
3  MILLER LAW GROUP
   A Professional Corporation
4  111 Sutter Street, Suite 700
   San Francisco, CA 94104
5  Tel. (415) 464-4300
   Fax (415) 464-4336
6
   Attorneys for Defendants
7  AT&T SERVICES, INC. and
   PACIFIC BELL TELEPHONE COMPANY
8

Filed _____ JUN 0 8 2015 _____
ROSA JUNQUEIRO, CLERK

By ____ ALICIA MARTIN ____
                 DEPUTY

9         **SUPERIOR COURT FOR THE STATE OF CALIFORNIA**

10          **IN AND FOR THE COUNTY OF SAN JOAQUIN**

11

12

13  KIM MCKENZIE, an individual,

14              Plaintiff,

15  v.

16

17  AT&T SERVICES, INC., A CALIFORNIA
    CORPORATION, PACIFIC BELL
18  TELEPHONE COMPANY; and DOES 1
    through 50, inclusive,
19

20              Defendants.

21

22

23

24

25

26

27

28

Case No.: 39-2015-00323837-CU-WT-STK

THIS CASE HAS BEEN ASSIGNED TO
JUDGE LINDA L. LOFTHUS IN
DEPARTMENT 11 FOR ALL PURPOSES
INCLUDING TRIAL

**[PROPOSED] ORDER DENYING
PLAINTIFF'S EX PARTE APPLICATION
FOR PROVISIONAL REMEDY AND
TEMPORARY RESTRAINING ORDER
REGARDING PLAINTIFF'S MOTION TO
STAY AND DISMISS ARBITRATION**

**Date:    May 20, 2015**
**Time:    1:15 p.m.**
**Dept.:   11**

**Reservation No.: 2064756**

Complaint filed: April 10, 2015



_MILLER LAW GROUP_
_A PROFESSIONAL CORPORATION_
_CALIFORNIA_

1          Plaintiff Kim McKenzie's ("McKenzie") Ex Parte Application for Provisional

2   Remedy and Temporary Restraining Order Regarding Plaintiff's Motion to Stay and Dismiss

3   Arbitration ("Ex Parte Application") was set for hearing on May 20, 2015 at 1:15 p.m. in

4   Department 11 of this Court, the Honorable Linda Lofthus presiding.  Lisa C. Hamasaki of

5   Miller Law Group appeared on behalf of Defendants Pacific Bell Telephone Company and

6   AT&T Services, Inc.   George S. Wynns of the Law Office of Timothy L. McCandless

7   appeared on behalf of McKenzie.

8

9          After full consideration of all papers filed in support of and in opposition to the

10   Ex Parte Application, the Court HEREBY ORDERS that McKenzie's Ex Parte Application is

11   DENIED in its entirety.

12

13   JUN 0 8 2015                 LINDA LOFTHUS

14   Dated: _____     _____

15                           HON. LINDA LOFTHUS
                        JUDGE OF THE SUPERIOR COURT

16

17

    Approved as to Form:

18

19   _____

20   Timothy L. McCandless
    Attorneys for Plaintiff Kim McKenzie

21

22

23

24

25   4836-4567-4276, v. 1

26

27

28

[[PROPOSED] ORDER DENYING PLAINTIFF'S EX PARTE APPLICATION FOR PROVISIONAL REMEDY AND
TEMPORARY RESTRAINING ORDER - Case No.: 39-2015-00323837-CU-WT-STK

MILLER LAW GROUP
A PROFESSIONAL CORPORATION
CALIFORNIA

# PROOF OF SERVICE

I, Tyhera Payton, declare that I am employed at Miller Law Group, A Professional Corporation, whose address is 111 Sutter Street, Suite 700, San Francisco, CA 94104; I am over the age of eighteen (18) years and am not a party to this action.  On the below date, by the method noted below, I served the following document(s):

**NOTICE OF ENTRY OF ORDER DENYING PLAINTIFF'S EX PARTE APPLICATION FOR PROVISIONAL REMEDY AND TEMPORARY RESTRAINING ORDER REGARDING PLAINTIFF'S MOTION TO STAY AND DISMISS ARBITRATION**

on the interested parties in this action by placing a true and correct copy thereof, enclosed in a sealed envelope addressed as follows:

Timothy L. McCandless, Esq.                    Attorney for Plaintiff:  *Kim McKenzie*
Law Office of Timothy L. McCandless, Esq.
4740 Green River Road, Suite 206
Corona, CA 92880

Tel:  (925) 957-9797
Fax:  (925) 957-9799
Email:  mccandlesslaw@gmail.com

Timothy L. McCandless, Esq.
Law Office of Timothy L. McCandless, Esq.
5665 N Pershing Avenue, Suite A1
Stockton, CA  95207

Timothy L. McCandless, Esq.
Law Office of Timothy L. McCandless, Esq.
820 Main Street, Suite 1
Martinez, CA  94553

☒    **BY MAIL:**   By placing a true copy thereof enclosed in a sealed envelope with postage thereon fully prepaid, in the ordinary course of business for collection and mailing on this date at Miller Law Group, 111 Sutter Street, Suite 700, San Francisco, CA  94104.  I declare that I am readily familiar with the business practice of Miller Law Group for collection and processing of correspondence for mailing with the United States Postal Service and that the correspondence would be deposited with the United States Postal Service that same day in the ordinary course of business.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on June 16, 2015 at San Francisco, California.

Tyhera Payton

EXHIBIT 26

1   Lisa C. Hamasaki (SBN 197628)
      lch@millerlawgroup.com
2   Jocelyn M. Chan (SBN 267937)
      jchan@millerlawgroup.com
3   MILLER LAW GROUP
    A Professional Corporation
4   111 Sutter Street, Suite 700
    San Francisco, CA 94104
5   Tel. (415) 464-4300
    Fax (415) 464-4336
6
    Attorneys for Defendants
7   AT&T SERVICES, INC. and
    PACIFIC BELL TELEPHONE COMPANY
8

9

10              SUPERIOR COURT OF CALIFORNIA

11             COUNTY OF COUNTY OF SAN JOAQUIN

12   KIM MCKENZIE, an individual,            Case No.: 39-2015-00323837-CU-WT-STK

13                                           THIS CASE HAS BEEN ASSIGNED TO
                   Plaintiff,                JUDGE LINDA L. LOFTHUS IN
14                                           DEPARTMENT 11 FOR ALL PURPOSES
     v.                                      INCLUDING TRIAL
15
                                             **NOTICE OF ENTRY OF ORDER**
16   AT&T SERVICES, INC., A CALIFORNIA       **GRANTING DEFENDANTS AT&T**
     CORPORATION, PACIFIC BELL               **SERVICES, INC. AND PACIFIC BELL**
17   TELEPHONE COMPANY; and DOES 1           **TELEPHONE COMPANY'S DEMURRER**
     through 50, inclusive,                  **PURSUANT TO CAL. CODE CIV. PROC. §**
18                                           **430.10(c), OR IN THE ALTERNATIVE,**
                                             **MOTION FOR STAY**
19                 Defendants.

20

21                                           Complaint filed:  April 10, 2015

22

23

24

25

26

27

28

MILLER LAW GROUP
A PROFESSIONAL CORPORATION
CALIFORNIA

1    PLEASE TAKE NOTICE that on June 18, 2015, the Court entered its Order

2  Granting Defendants AT&T SERVICES, INC. AND PACIFIC BELL TELEPHONE

3  COMPANY'S Demurrer Pursuant to Cal. Code Civ. Proc. § 430.10(c), or in the Alternative,

4  Motion for Stay in the above-referenced case.   A true and correct copy of that Order is

5  attached hereto as Exhibit A, and incorporated into this notice by reference.

6

7  Dated:  June 18, 2015                    MILLER LAW GROUP
                                           A Professional Corporation

8

9                                          By:  Jocelyn Chan

10                                             Jocelyn M. Chan
                                              Attorneys for Defendants
11                                            AT&T  SERVICES,  INC.  and  PACIFIC
                                              BELL TELEPHONE COMPANY
12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MILLER LAW GROUP
A PROFESSIONAL CORPORATION
CALIFORNIA

# EXHIBIT A

1 | Lisa C. Hamasaki (SBN 197628)
   lch@millerlawgroup.com
2 | Jocelyn M. Chan (SBN 267937)
   jchan@millerlawgroup.com
3 | MILLER LAW GROUP
   A Professional Corporation
4 | 111 Sutter Street, Suite 700
   San Francisco, CA 94104
5 | Tel. (415) 464-4300
   Fax (415) 464-4336
6 |
   Attorneys for Defendants
7 | AT&T SERVICES, INC. and
   PACIFIC BELL TELEPHONE COMPANY
8 |

Filed   JUN 1 8 2015

ROSA JUNQUEIRO, CLERK

By _____
              DEPUTY

9 |
10 |                    SUPERIOR COURT OF CALIFORNIA
11 |                 COUNTY OF COUNTY OF SAN JOAQUIN
12 | KIM MCKENZIE, an individual,               Case No.: 39-2015-00323837-CU-WT-STK
13 |                                            THIS CASE HAS BEEN ASSIGNED TO
                 Plaintiff,                     JUDGE LINDA L. LOFTHUS IN
14 |                                            DEPARTMENT 11 FOR ALL PURPOSES
     v.                                         INCLUDING TRIAL
15 |
16 | AT&T SERVICES, INC., A CALIFORNIA          [PROPOSED] ORDER GRANTING
     CORPORATION, PACIFIC BELL                  DEFENDANTS AT&T SERVICES, INC.
17 | TELEPHONE COMPANY; and DOES 1              AND PACIFIC BELL TELEPHONE
     through 50, inclusive,                     COMPANY'S DEMURRER PURSUANT TO
18 |                                            CAL. CODE CIV. PROC. § 430.10(c), OR
                                                IN THE ALTERNATIVE, MOTION FOR
19 |             Defendants.                     STAY
20 |                                            DATE:   June 18, 2015
                                                TIME:   9:00 a.m.
21 |                                            DEPT:   11
22 |                                            Complaint filed: April 10, 2015
23 |
24 |
25 |
26 |
27 |
28 |

[PROPOSED] ORDER GRANTING DEFENDANTS' DEMURRER PURSUANT TO CAL. CODE CIV. PROC. § 430.10(c),
OR IN THE ALTERNATIVE, MOTION FOR STAY - Case No.: 39-2015-00323837-CU-WT-STK

MILLER LAW GROUP
A Professional Corporation
California

1          Defendants AT&T SERVICES, INC. and PACIFIC BELL TELEPHONE

2   COMPANY's (together, "Defendants") demurrer under California Code of Civil Procedure

3   section 430.10(c) and request for an Order staying this action pending resolution of the

4   arbitration filed by Plaintiff Kim McKenzie with JAMS, Inc. ("JAMS Action") came on for

5   hearing in Department 11 on June 18, 2015.   Lisa C. Hamasaki appeared on behalf of

6   Defendants AT&T Services, Inc  and Pacific Bell Telephone Company.   Timothy L.

7   McCandless *did not* appear    on behalf of Plaintiff Kim McKenzie.

8   *The Court finds the demurrer is moot due to the filing of the First Amended Complaint*

9          Having read the motion, the memoranda, the request for judicial notice, and the

10  declarations filed by the parties, and having heard argument of counsel, this Court finds that *Defendants'*

11  there is another action pending between Defendants and Plaintiff in arbitration at JAMS,

12  involving the same subject matter, same parties, and same causes of action.  The Court also

13  finds that the JAMS Action was filed before Plaintiff filed this action.

14

15         THEREFORE, GOOD CAUSE APPEARING, IT IS ORDERED THAT this action

16  be abated and/or stayed pending resolution of the JAMS Action. *The motion set*

17  *for June 26, 2015 is vacated.*

18  Dated: 6/18/15 _____         _____

19                    HON. LINDA LOFTHUS
                      JUDGE OF THE SUPERIOR COURT

20

21  4840-7477-1235, v.  1

22

23

24

25

26

27

28

**[PROPOSED] ORDER GRANTING DEFENDANTS' DEMURRER PURSUANT TO CAL. CODE CIV. PROC. § 430.10(c),
OR IN THE ALTERNATIVE, MOTION FOR STAY - Case No.: 39-2015-00323837-CU-WT-STK**

# PROOF OF SERVICE

I, Tyhera Payton, declare that I am employed at Miller Law Group, A Professional Corporation, whose address is 111 Sutter Street, Suite 700, San Francisco, CA 94104; I am over the age of eighteen (18) years and am not a party to this action. On the below date, by the method noted below, I served the following document(s):

**NOTICE OF ENTRY OF ORDER GRANTING DEFENDANTS AT&T SERVICES, INC. AND PACIFIC BELL TELEPHONE COMPANY'S DEMURRER PURSUANT TO CAL. CODE CIV. PROC. § 430.10(c), OR IN THE ALTERNATIVE, MOTION FOR STAY**

on the interested parties in this action by placing a true and correct copy thereof, enclosed in a sealed envelope addressed as follows:

Timothy L. McCandless, Esq.          Attorney for Plaintiff: *Kim McKenzie*
Law Office of Timothy L. McCandless, Esq.
4740 Green River Road, Suite 206
Corona, CA 92880

Tel: (925) 957-9797
Fax: (925) 957-9799
Email: mccandlesslaw@gmail.com

Timothy L. McCandless, Esq.
Law Office of Timothy L. McCandless, Esq.
5665 N Pershing Avenue, Suite A1
Stockton, CA 95207

Timothy L. McCandless, Esq.
Law Office of Timothy L. McCandless, Esq.
820 Main Street, Suite 1
Martinez, CA 94553

☒ **BY MAIL:** By placing a true copy thereof enclosed in a sealed envelope with postage thereon fully prepaid, in the ordinary course of business for collection and mailing on this date at Miller Law Group, 111 Sutter Street, Suite 700, San Francisco, CA 94104. I declare that I am readily familiar with the business practice of Miller Law Group for collection and processing of correspondence for mailing with the United States Postal Service and that the correspondence would be deposited with the United States Postal Service that same day in the ordinary course of business.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on June 19, 2015 at San Francisco, California.

_____
Tyhera Payton

NOTICE OF ENTRY OF ORDER GRANTING DEFENDANTS AT&T SERVICES, INC. AND PACIFIC BELL TELEPHONE DEMURRER
Case No.: 39-2015-00323837-CU-WT-STK

EXHIBIT 27



1  Lisa C. Hamasaki (SBN 197628)
     lch@millerlawgroup.com
2  Jocelyn M. Chan (SBN 267937)
     jchan@millerlawgroup.com
3  MILLER LAW GROUP
   A Professional Corporation
4  111 Sutter Street, Suite 700
   San Francisco, CA 94104
5  Tel. (415) 464-4300
   Fax (415) 464-4336
6
   Attorneys for Petitioner
7  PACIFIC BELL TELEPHONE COMPANY

8

9                SUPERIOR COURT OF THE STATE OF CALIFORNIA

10                         COUNTY OF SAN JOAQUIN

11

12  PACIFIC BELL TELEPHONE COMPANY,        Case No.: STK-CV-UAW-2015-0010981

13                                         Related to:
                 Petitioner,               Case No.: 39-2015-00323837 (CV-3155)
14
    v.                                     THESE RELATED CASES HAVE BEEN
15                                         ASSIGNED TO JUDGE LINDA L. LOFTHUS
                                           IN DEPARTMENT 11 FOR ALL PURPOSES
16  KIM MCKENZIE,                          INCLUDING TRIAL

17                                         **NOTICE OF FURTHER CASE
                 Respondent.               MANAGEMENT CONFERENCE IN
18                                         RELATED CASES**

19
                                           Petition filed:  November 25, 2015
20

21

22        **PLEASE TAKE NOTICE THAT** on Thursday, February 4, 2016 at 8:30 a.m. in

23  Department 11 of this Court, pursuant to the Court's Order on Notice of Related Cases,

24  CRC 3.300(h) dated December 28, 2015, a case management conference was held in the

25  two related cases (39-2015-00323837 (CV-3155) and STK-CV-UAW-2015-0010981).  Lisa

26  C. Hamasaki of Miller Law Group appeared on behalf of Pacific Bell Telephone Company

27  and AT&T Services, Inc.  No appearance was made on behalf of Kim McKenzie.

28  ///

MILLER LAW GROUP
A PROFESSIONAL CORPORATION
CALIFORNIA

FILED

2016 FEB 17  PM 4: 08

ROSA JUNQUEIRO, CLERK

BY ___ Deana Edwards
           DEPUTY

1       **A further case management conference in these related cases has been**

2 **set for <u>Wednesday, April 13, 2016 at 9:00 a.m. in Department 11</u> of this Court.** The

3 parties are not required to submit additional case management statements. Pacific Bell

4 Telephone Company was ordered to provide notice of this further case management

5 conference and, by this document, does so.

6

7 Dated: February 10, 2016                MILLER LAW GROUP
                                      A Professional Corporation

8

9                                   By: *Jocelyn Chan*

10                                       Lisa C. Hamasaki
                                      Jocelyn M. Chan

11                                       Attorneys for Petitioner
                                      PACIFIC  BELL TELEPHONE COMPANY

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28          4825-7753-8349, v. 1

MILLER LAW GROUP
A PROFESSIONAL CORPORATION
CALIFORNIA

NOTICE OF FURTHER CASE MANAGEMENT CONFERENCE IN RELATED CASES
Case No.: STK-CV-UAW-2015-0010981

1

## PROOF OF SERVICE

2

I, Willette Moore, declare that I am employed at Miller Law Group, A Professional
3   Corporation, whose address is 111 Sutter Street, Suite 700, San Francisco, CA 94104; I am
over the age of eighteen (18) years and am not a party to this action.  On the below date, by
4   the method noted below, I served the following document(s):

5   • **NOTICE OF FURTHER CASE MANAGEMENT CONFERENCE IN RELATED
CASES**
6

7   on the interested parties in this action by placing a true and correct copy thereof, enclosed
in a sealed envelope addressed as follows:
8

Timothy L. McCandless, Esq.                Attorney for Plaintiff: *Kim McKenzie*
9   Law Office of Timothy L. McCandless
26875 Calle Hermosa, Ste. A
10  Capistrano Beach, CA  92624

11
Tel:  (925) 957-9797
12  Fax:  (925) 957-9799
Email:  mccandlesslaw@gmail.com
13

14  ☒   **BY MAIL:**  By placing a true copy thereof enclosed in a sealed envelope with postage
thereon fully prepaid, in the ordinary course of business for collection and mailing on
15        this date at Miller Law Group, 111 Sutter Street, Suite 700, San Francisco, CA  94104.
I declare that I am readily familiar with the business practice of Miller Law Group for
16        collection and processing of correspondence for mailing with the United States Postal
Service and that the correspondence would be deposited with the United States Postal
17        Service that same day in the ordinary course of business.

18        I declare under penalty of perjury under the laws of the State of California that the
foregoing is true and correct.
19

20        Executed on February 10, 2016 at San Francisco, California.

21

22        _____
Willette Moore
23

24

25

26

27

28

MILLER LAW GROUP
A PROFESSIONAL CORPORATION
CALIFORNIA